
FILED
2021 Apr-28  PM 04:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JEFFERSON LOFT, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 7:21-cv-00389-LSC** |
| **CONSTRUCTION ENTERPRISES, INC. and PHOENIX FRAMING, LLC,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF JEFFERSON LOFT, LLC'S RESPONSE TO DEFENDANT PHOENIX FRAMING, LLC'S MOTION TO DISMISS

Charles A. Burkhart
Joseph D. Leavens
Michael Taunton
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

10131133.4

## **TABLE OF CONTENTS**

INTRODUCTION AND FACTS ..............................................................2

STANDARD OF REVIEW ...................................................................5

ARGUMENT ..................................................................................5

I.     PRIVITY IS NOT REQUIRED TO STATE A NEGLIGENCE CLAIM. .....5

II.    PHOENIX OWED JEFFERSON LOFT A DUTY OF CARE. .....................6

    A.    It is the foreseeability of the specific injury, rather than the specific plaintiff, that informs the duty analysis.................................8

    B.    The *Berkel* factors weigh in favor of imposing a duty.......................11

        1.    The extent to which the transaction was intended to affect the other person...............................................................12

        2.    The foreseeability of the harm. ..................................13

        3.    The degree of certainty that Jefferson Loft suffered injury......15

        4.    The closeness of the connection between Jefferson Loft's injury and Phoenix's work. .....................................................15

        5.    The moral blame associated with Phoenix's conduct..............16

        6.    The public policy of preventing future harm. ...........................16

    C.    *Howe* and *Keck* are distinguishable because both were decided at summary judgment and there was affirmative evidence that the plaintiff was not foreseeable. ..............................................17

III.    JEFFERSON LOFT FILED ITS CLAIMS WITHIN TWO YEARS OF THE TIME OF INJURY OR DAMAGE. ....................................................22

IV.    JEFFERSON LOFT HAS PLAUSIBLY PLEAD A NUISANCE CLAIM................................................................................25

CONCLUSION ...............................................................................25

CERTIFICATE OF SERVICE ..............................................................27

Plaintiff Jefferson Loft, LLC ("Jefferson Loft") submits this Response in Opposition to Defendant Phoenix Framing, LLC's ("Phoenix") Motion to Dismiss.[1] (*See* Doc. 7). Phoenix's Motion should be denied because:

(1) privity is not required to establish a negligence claim under Alabama law;

(2) Phoenix owed a duty to Jefferson Loft because the injury was foreseeable and because CEI and Phoenix expressly represented in their contracts that they would be bound to successors owners of the Lofts;

(3) the *Berkel* factors for duty in the construction context weigh in favor of finding a duty;

(4) Jefferson Loft properly plead that it discovered the damage, and its claim accrued, within the seven-year repose period;

(5) Jefferson Loft filed its claims within two years of the claim accrual, as expressly permitted by Ala. Code 6-5-225; and

(6) Alabama courts have recognized nuisance claims in the construction context and Jefferson Loft sufficiently plead the facts necessary to support a nuisance claim.

Jefferson Loft requests the Court deny Phoenix's motion.

---

[1] As an initial note, Phoenix's Motion is untimely. Phoenix was served with the initial complaint on January 26, 2021. (*See* Doc. 1-3, at 34.) Phoenix did not file a responsive pleading in the Tuscaloosa County Circuit Court (the matter was placed on the Court's administrative docket (Doc. 1-3, at 29)). CEI removed this matter to this Court on March 15, 2021. (Doc. 1.) Under Fed. R. Civ. P. 81(c), Phoenix had until March 22, 2021 to file its Motion. Phoenix did not do so until April 9, 2021. (Doc. 6.) Phoenix's Motion is thus belated.

## INTRODUCTION AND FACTS

Jefferson Loft filed this lawsuit against CEI and Phoenix on January 13, 2021, and asserted claims of breach of contract, negligence, and nuisance in connection with the construction of the Lofts at City Center (the "Lofts")—an apartment complex owned by Jefferson Loft in Tuscaloosa. Defendant CEI was the general contractor on the Project and subcontracted Phoenix to perform siding work. (Doc 1-1, ¶¶ 8–10.)

The Lofts was constructed in two (2) phases. (Doc. 1-1, ¶ 12.) The City of Tuscaloosa issued a Commercial Certificate of Occupancy for Phase I on August 5, 2013. (Doc. 1-1, ¶ 13.) The City issued a Commercial Certificate of Occupancy for Phase II on December 4, 2014. (Doc. 1-1, ¶ 14.) In late spring or early summer of 2020, Jefferson Loft discovered the fiber cement panel cladding system in a state of disrepair, improperly affixed to the buildings and with numerous fiber cement panels in the system exhibiting visible cracks and bowing, thereby exposing the core of portions of the building to the elements and causing other damage to the building (the "Defects"). (Doc 1-1, ¶¶ 15–16.)

Article A.13.2 of the 2012 design-build construction contract between CEI and Tuscaloosa I, LLC ("the General Contract") contained the following provision governing the parties' responsibilities to their respective successors:

> The Owner and Design-Builder[2] respectively bind themselves, their partners, <u>successors</u>, assigns and legal representatives to the other party hereto and to partners, <u>successors</u>, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Design-Build Documents.

(*See* Exhibit 1 at 48) (emphasis added).[3]

Article 1 of the 2012 subcontract between CEI and Phoenix ("the Subcontract") (which governed Phoenix's work installing the fiber cement panel cladding system) contained the following provision binding Phoenix to CEI by the same terms in the General Contract. Phoenix also declared in the Subcontract that it reviewed and understood the terms of the General Contract. The Subcontract states:

> The Contract Documents[4] are available for examination by Subcontractor at all reasonable times at the office of Contractor.

---

[2] The General Contract defines the Owner to be Tuscaloosa I, LLC and the Design-Builder to be CEI. (*See* Exhibit 1 at 1.)

[3] Jefferson Loft wishes to file Exhibits 1 to this Response under seal. Counsel for Jefferson Loft attempted to contact the Court's clerk about the Court's preferred process for doing so prior to filing. At the time of filing, Counsel for Jefferson Loft and the clerk were not able to make contact and discuss the proper course of action. To avoid prejudice to all counsel, a PDF copy of Exhibit 1 was emailed to all counsel shortly after the filing of this Response. Counsel for Jefferson Loft will be glad to provide the Court with a copy of that correspondence for its records, if desired. Jefferson Loft is also willing to file an amended Response with Exhibit 1, file it under seal, or take any other action the Court deems appropriate to ensure the Exhibits are timely and properly before the Court.

[4] The Subcontract defines the Contract Documents to include "the August 17, 2012 contract between Tuscaloosa I, LLC and CEI, along with the plans specifications, addenda and other documents." (*See* Exhibit 2 at 2.) The August 17, 2012 contract was an Early Start Agreement, which predated the General Contract and allowed the parties to start work while finalizing more comprehensive terms. The General Contract is the October 3, 2012 Contract between CEI and Tuscaloosa I, LLC. But, the Subcontract expressly notes that the October 3, 2012 General Contract would become part of "the Contract Documents" and be the governing contract in the Subcontract. At the end of Article I in the Subcontract, the parties stated: "Subcontractor is aware that Contractor and Owner are preparing to enter into a more comprehensive GMP Agreement between Contractor and Owner (the "Agreement"), and that the Agreement will supersede this Contract.

<u>Subcontractor represents and agrees that it has carefully examined and understands the Contract Documents relevant to the Work</u>; has adequately investigated the nature and conditions of the Project site and locality, has familiarized itself with conditions affecting the difficulty of the Work; <u>and has entered into this Subcontract based on its own examination, investigation and evaluation</u> and not in reliance upon any opinions or representations of Contractor.

With respect to the Work, <u>the Subcontractor shall be bound to the Contractor by the terms of this Subcontract and all the Contract Documents and shall assume toward the Contractor all the obligations and responsibilities which the Contractor by those documents assumes toward the Owner</u> and shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor by those documents has against the Owner, insofar as applicable, relevant or pertinent to the Work and this Subcontract. With respect to the Work, the Contractor shall be bound to the Subcontractor by the terms of this Subcontract and of the Contract Documents and shall assume toward the Subcontractor all the obligations and responsibilities that the Owner, by those documents, assumes toward the Contractor, and shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, by those documents has against the Contractor, insofar as applicable, relevant or pertinent to this Subcontract and the Work.

(*See* Exhibit 2 at 2) (emphasis added).

In summary, Phoenix was aware at the time it entered the Subcontract that CEI had bound itself by the terms of the General Contract (which included the scope of work Phoenix ultimately performed) to Tuscaloosa I, LLC and its successors. (*See*

---

Upon that event, the Agreement will [sic] and replace this Contract and will be substituted for same in all respects in this Article I." (*See* Exhibit 2 at 2.)

The General Contract was executed October 3, 2012 prior to the execution of the October 22, 2012 Subcontract, meaning that the General Contract, including the portion binding successors of the parties, was finalized and available for Phoenix's review prior to execution of the Subcontract. (*See generally* Exhibits 1 and 2.)

*generally* Exhibits 1 and 2, *supra.*) And, Phoenix agreed in its Subcontract to assume those same duties when installing the fiber cement panel cladding system. (*See* Exhibit 2 at 2.)

<u>**STANDARD OF REVIEW**</u>

"In evaluating a motion to dismiss, this Court 'accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff.'" *Edwards v. Pruitt*, 7:20-cv-01400-LSC, 2020 WL 6712272 n.1 (N.D. Ala. Nov. 16, 2020) (Coogler, J.) (citing *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012)). "A complaint that 'succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible' will survive a motion to dismiss." *Id.* at *1 (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007)).

<u>**ARGUMENT**</u>

## I. **PRIVITY IS NOT REQUIRED TO STATE A NEGLIGENCE CLAIM.**

Phoenix argues that it was not in privity with Jefferson Loft and therefore Jefferson Loft cannot assert a negligence claim against Phoenix. (*See* Doc. 7 at 6.) "Alabama courts have rejected the absence of privity of contract as a defense to a negligence action." *Berkel and Co. Contractors, Inc. v. Providence Hosp.*, 454 So. 2d 496, 501 (Ala. 1984). In *Federal Mogul Corp. v. Universal Constr. Co.*, 376 So. 2d 716 (Ala. Civ. App. 1979) the Court held an owner could maintain a negligence claim against a subcontractor despite a lack of privity. *Id.* ("As a matter of law,

plaintiff's theory of recovery against the [defendant subcontractor] was properly cognizable in the trial court…Although plaintiff may be barred from recovering from defendant as a third party beneficiary to defendant's contract with another, plaintiff may nevertheless recover in negligence for defendant's breach of duty where defendant negligently performs his contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable.")

Indeed, some of the very cases Phoenix cites expressly note that privity is not required for a negligence claim. *See*, *e.g.*, *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 10 (Ala. 2002) ("where one party to a contract assumes a duty to another party to that contract, and it is foreseeable that injury to a third party – not a party to the contract – may occur upon a breach of that duty, the promisor owes that duty to all those within the foreseeable area of risk."). At best, Phoenix's argument about the lack of privity might preclude a breach of contract claim. But, Jefferson Loft did not assert a breach of contract claim against Phoenix and so the lack of privity is irrelevant.

## II.    PHOENIX OWED JEFFERSON LOFT A DUTY OF CARE.

Phoenix's second argument is that it did not and could not owe a duty to Jefferson Loft because it claims it did not <u>know</u> Jefferson Loft when it performed

the work. Thus, according to Phoenix, Jefferson Loft was an unforeseeable plaintiff to whom it could not owe a duty.[5] The argument is flawed for two reasons.

First, "foreseeability is not the only factor courts consider in determining whether a duty exists." *Richardson v. County of Mobile*, Nos. 1190468, 1190469, 2020 WL 6932809, *9 (Ala. Nov. 25, 2020). To the extent Phoenix's duty argument hinges solely on the foreseeability analysis, the argument loses the forest for the trees.

Second, Phoenix's argument incorrectly focuses on whether the *specific plaintiff was foreseeable*, rather than whether the *specific injury was foreseeable*. In doing so, Phoenix fails to inform the Court that it declared, in its Subcontract, that it was aware that CEI was bound to Tuscaloosa I, LLC's successors and that Phoenix was bound to CEI, and in turn Jefferson Loft, by the same terms. Said another way, Phoenix knew, from the moment it signed its Subcontract, that its work was being performed, or might be performed, for a successor of Tuscaloosa I, LLC, thereby making Jefferson Loft a foreseeable plaintiff.

Third, the argument is premature because the existence of a duty is a "fact-intensive" question of law best suited for summary judgment, not a Rule 12(b)

---

[5] The argument presumes facts that are not alleged – namely that Phoenix did not know Jefferson Loft when it performed its work. The Complaint does not allege that fact.

motion to dismiss.  *Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 186 (Ala. 2010).

The Court should reject Phoenix's argument and deny Phoenix's Motion.

### A.      It is the foreseeability of the specific injury, rather than the specific plaintiff, that informs the duty analysis.

"[E]very person owes every other person a duty imposed by law to be careful not to hurt him." *Southeastern Greyhound Lines v. Callahan*, 13 So. 2d 660, 663 (Ala. 1943). "In a variety of circumstances, [the Alabama Supreme Court] has recognized a duty to foreseeable third parties, based on a 'general obligation imposed in tort to act reasonably." *Taylor v. Smith*, 892 So. 2d 887, 893 (Ala. 2004) (quoting *Berkel & Co. Contractors, Inc. v. Providence Hosp.*, 454 So. 2d 496, 502 (Ala. 1984)).  "In determining whether a duty exists in a given situation, however, courts should consider a number of factors, including public policy, social considerations, and foreseeability. The key factor is whether the <u>injury</u> was foreseeable by the defendant." *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993) (emphasis added).

The Court in *Hammonds v. United States* quoted *Smitherman* and stated,

> The key factor is <u>whether the injury was foreseeable by the defendant</u>. The essential question is whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. Because the key factor in establishing a duty is <u>whether the injury is foreseeable by the defendant, this court must determine if the defendant created a risk of harm under the circumstances so as to warrant the imposition of a legal duty upon it</u>.

No. 2:07-cv-00349, 2009 WL 10675135, *6 (N.D. Ala. Aug. 28, 2009) (emphasis added); *see also Raley v. Bank of America, N.A.*, No. 2:14-cv-857-WMA, 2014 WL 6684906, *4 (N.D. Ala. Nov. 25, 2014) ("To determine whether a specific duty existed, this court should consider a number of factors, including public policy, social considerations, and <u>whether the injury was foreseeable to the Bank</u>.") (emphasis added); *Stewart v. Hewlett-Packard Co.,* No. 7:12-cv-589-LSC, 2012 WL 6043642, *3 (N.D. Ala. Nov. 29, 2012) ("[t]he ultimate test of the existence of a duty to use due care is found <u>in the foreseeability that harm may result if care is not exercised</u>.") (emphasis added); *see also Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204, 1209 (Ala. 1999); *Stull v. STO Corp.*, No. 01-CV-2004-004220, 2007 WL 868557 (Ala. Cir. Ct. Jan. 31, 2007).

In *Bobo v. Tennessee Valley Authority*, 855 F.3d 1294 (11th Cir. 2017), the Eleventh Circuit held that TVA owed a duty of care to the wife of a former employee – a plaintiff with whom the defendant had no legal relationship of any kind. Barbara Bobo, whose estate was the plaintiff, was married to Neal Bobo, a 22-year TVA employee regularly exposed to asbestos while performing maintenance work. *Id.* at 1297–98. She was diagnosed with mesothelioma 14 years after his death and claimed asbestos exposure from repeatedly washing his work clothes. *Id.* She was not employed at TVA, did not have a contract with TVA, nor was there any evidence that she visited TVA property or that TVA even knew she existed.

Nevertheless, the Eleventh Circuit (affirming this Court's bench verdict) held TVA owed her – a previously unknown and unidentified plaintiff – a duty of care because it took affirmative steps in using asbestos and protecting (or failing to protect) against its harms. *Id.* at 1307. The Court wrote that TVA, by its actions, necessarily involved itself in the consequences of those actions and made the injuries to Mrs. Bobo foreseeable, notwithstanding the lack of a legal relationship:

> The Alabama Supreme Court has held that when an injury is foreseeable and a defendant affirmatively acts in a way that involves the defendant directly in the foreseeable consequences, that factor weighs in favor of imposing a duty. *See also Taylor v. Smith*, 892 So. 2d 887, 895 (Ala. 2004) (explaining that where there is an 'affirmative act which creates the risk that unidentifiable third parties might be injured, there is most certainly a duty to unidentifiable third parties who may be injured as a result.')
>
> …
>
> The Alabama Supreme Court has said that in determining whether there is a legal duty sufficient to support an action for negligence, the relationship between the parties is one of three primary considerations (the other two factors being the nature of the defendant's activity and the type of injury or harm threatened). *Morgan v. S. Cent. Bell Tel. Co.*, 466 So. 2d 107, 114 (Ala. 1985) <u>But there is a difference between one of three primary considerations and a requirement</u>. The Supreme Court of Alabama has in 'a variety of circumstances' imposed 'a duty to foreseeable third parties based on a general obligation imposed in tort to act reasonably,' even where the parties had no 'legal' relationship…This case fits comfortably within the line of Alabama decisions imposing a legal duty based on foreseeability of harm even in the absence of a legal relationship between the parties.

*Bobo*, 855 F.3d at 1305–06 (emphasis added). In short, when analyzing foreseeability, the Court asks whether the particular injury complained of – that is,

the specific legal interest harmed – was foreseeable to the defendant, not whether the *identity* of the plaintiff was known to the defendant at the time of his or her conduct – the argument that Phoenix makes here.

Under *Bobo*, Phoenix owed a duty to Jefferson Loft because the injuries complained of in this action were more foreseeable than those in *Bobo*. Jefferson Loft is the owner of the Lofts and common sense tells us that Phoenix always knew there would be an owner of the building having an interest in the work Phoenix performed. But this case involves an even closer connection than *Bobo* because here, Phoenix announced, in its Subcontract, that it was aware CEI was binding itself to Tuscaloosa I, LLC's successors and simultaneously agreed to bind itself by those same terms.

### B. The *Berkel* factors weigh in favor of imposing a duty.

In *Berkel and Co. Contractors, Inc. v. Providence Hosp.*, the Alabama Supreme Court identified six factors for analyzing the existence of a duty in the construction context. "In deciding whether to impose a duty in a construction context, the trial court should analyze six factors:

> (1) The extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.

*Berkel and Co. Contractors, Inc. v. Providence Hosp.*, 454 So. 2d 496, 502–503 (Ala. 1984).

Here, the six factors from *Berkel* weigh in favor of imposing a duty on Phoenix. Or, at the very least, the possibility that the factors might weigh in favor of Jefferson Loft weighs in favor of the Court denying Phoenix's Motion and allowing the parties to conduct discovery on the facts surrounding the duty analysis.

### 1. The extent to which the transaction was intended to affect the other person.

By the terms of the General Contract and the Subcontract, Phoenix expressly intended to benefit Jefferson Loft. Jefferson Loft is the contractually contemplated successor to Tuscaloosa I, LLC. The General Contract states:

> The Owner and Design-Builder respectively bind themselves, their partners, <u>successors</u>, assigns and legal representatives to the other party hereto and to partners, <u>successors</u>, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Design-Build Documents.

(*See* Exhibit 1 at 48) (emphasis added).

The Subcontract states:

> <u>Subcontractor represents and agrees that it has carefully examined and understands the Contract Documents relevant to the Work</u>; has adequately investigated the nature and conditions of the Project site and locality, has familiarized itself with conditions affecting the difficulty of the Work; <u>and has entered into this Subcontract based on its own examination, investigation and evaluation</u> and not in reliance upon any opinions or representations of Contractor.

> With respect to the Work, <u>the Subcontractor shall be bound to the Contractor by the terms of this Subcontract and all the Contract Documents and shall assume toward the Contractor all the obligations and responsibilities which the Contractor by those documents assumes toward the Owner</u>.

(*See* Exhibit 2 at 2) (emphasis added).

This factor weighs in favor of finding a duty because the transaction – the General Contract and Subcontract – specifically contemplated benefitting Tuscaloosa I, LLC's successor: Jefferson Loft.

But even the above contract language did not exist, it is undisputable common sense that Phoenix's work was always intended to benefit the property and the owner of the Lofts. Indeed, Phoenix's entire contract and payment for its work was premised on the owner of the Lofts needing the work done and paying for it so that it could then operate the Lofts after construction. Jefferson Loft is the owner of the Lofts. Its interests have been harmed by Phoenix. "The essential question is whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Smitherman,* 622 So. 2d at 324 (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 53, at 357 (5th ed. 1984)). This factor weighs in favor of imposing a duty.

## 2. *The foreseeability of the harm.*

The second factor, whether the harm was foreseeable, also merits imposing a duty on Phoenix. In this case, the harm is the damaged siding on the Lofts, and the

underlying structural damage resulting from Phoenix's poor work. Phoenix argues it did not and could not owe a duty because, essentially, it knew nothing about Jefferson Loft when it performed its work. (*See* Doc. 7, 11–12.) Based on the language in the General Contract and Subcontract, that position is false. But also, under *Smitherman* and *Bobo*, that analysis is short-sighted and incorrectly focuses on *the identity of the plaintiff* rather than *the type of injury suffered*.

The question this Court must ask is, "Could Phoenix foresee that failing to properly install the fiber cement panel cladding system would cause damage?" There is no intellectually honest way to answer that question in the negative. Phoenix affirmatively performed work installing the fiber cement panel cladding system without taking reasonable precautions to install or affix it correctly. (*See* Doc. 1-1 at ¶ 18.) In doing so, Phoenix involved itself directly in the foreseeable consequences – damage to the Lofts. *See Taylor,* 892 So. 3d 897 (holding physician owed duty to unknown third-party motorist injured in accident with physician's patient and stating "the administration of methadone on an outpatient basis without taking reasonable precautions, is an affirmative act which involves the administering physician directly in the foreseeable consequences.") (emphasis added). It is disingenuous for Phoenix to argue it could not foresee the damage that would result from its faulty work. This factor weighs in favor of finding a duty owed.

### 3.   *The degree of certainty that Jefferson Loft suffered injury.*

The third factor, the degree to which Jefferson Loft suffered injury is undisputed. The fiber cement panel cladding system is damaged and needs repair. The parties already have conducted an on-site inspection, and viewed and discussed the problems. This factor weighs in favor of imposing a duty on Phoenix. But, to the extent there is a question about whether Jefferson Loft's injury is certain, all doubts must be resolved in Jefferson Loft's favor at the motion to dismiss stage and denial of Phoenix's motion is appropriate. *See Edwards, supra.*

### 4.   *The closeness of the connection between Jefferson Loft's injury and Phoenix's work.*

The fourth factor is the closeness of the connection between Phoenix's conduct and the injury. Phoenix tries to distance itself from the injury and distract the Court from both the Subcontract terms and applicable law by highlighting Jefferson Loft's transaction with Tuscaloosa I, LLC in 2016. That is a red-herring. Phoenix knew both it and CEI would be responsible to Tuscaloosa I, LLC's successor. The 2016 transaction had no impact on how well (or how poorly) Phoenix performed its work in 2013 and 2014 (before the transaction took place). The allegation in Jefferson Loft's Complaint is that Phoenix's poor workmanship caused the deteriorated condition of the siding. That is, had Phoenix properly spaced the nail fasteners, properly anchored them into the underlying sheathing, etc. then the siding would not be cracking, bowing, etc. In its notice of removal, CEI provided

the Court with Jefferson Loft's July 2020 engineering report detailing the nexus between the faulty work and the resulting damage. (*See* Doc. 1-8 at 2–7.) The alleged connection between Phoenix's conduct and the complained of injury *could not be any closer*.

### 5.    The moral blame associated with Phoenix's conduct.

The fifth factor is the moral blame associated with Phoenix's conduct. *Berkel* held that because the relationship between the parties in the construction context is of a business nature where the alleged injury is financial, rather than a personal injury, the question of moral blame is an irrelevant factor. *See Berkel*, 454 So. 2d at 503 ("Given the business relationship and lack of personal injury, the question of moral blame is not relevant in this case."). This factor does not weigh in favor of either party.

### 6.    The public policy of preventing future harm.

The sixth factor, the policy of preventing future harm, supports finding a duty. Jefferson Loft does not seek to impose any duty on Phoenix that Phoenix did not already assume when it signed its Subcontract and performed the work. At the time Phoenix performed its work it was under a contractual duty to CEI to perform the work correctly. Phoenix also owed a duty of reasonable care to Tuscaloosa I, LLC and its successor.

The claims asserted in this action arose within the statute of repose period to which Phoenix was already subject for its work. Finding that Phoenix does not owe a duty in this case on the basis of the 2016 Jefferson Loft-Tuscaloosa I, LLC transaction both (1) contradicts Phoenix's expressly declared knowledge and voluntarily assumed contractual obligations in the Subcontract and (2) arbitrarily shortens the repose period in contravention of legislative policy. The Alabama Supreme Court has held that Alabama's general contractor licensure statute "express[es] firm public policy of this state to guard our citizens against incompetent contractors for certain-type structures, and also to better assure properly constructed structures which are free from defects and dangers to the public." *Brown v. Mountain Lakes Resort, Inc.*, 521 So. 2d 24, 25 (Ala. 1988). Finding no duty in this case runs contrary to that policy and relieves Phoenix, through no act of Phoenix's, of a duty it already assumed when it signed the Subcontract and performed the work. This factor also weighs in favor of finding a duty.

Because the *Berkel* factors weigh in favor of finding Phoenix owed a duty, the Court should deny Phoenix's motion.

### C. *Howe* and *Keck* are distinguishable because both were decided at summary judgment and there was affirmative evidence that the plaintiff was not foreseeable.

Phoenix relies on *Howe v. Bishop*, 446 So. 2d 11 (Ala. 1984) and *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 11 (Ala. 2002) for its argument that it did not owe

Jefferson Loft a duty of care. In both cases, the Alabama Supreme Court affirmed summary judgment for the defendants. Neither case was decided at the Rule 12(b) stage, nor would they have been appropriately decided at that stage, before the plaintiffs were permitted to put on evidence of either privity of foreseeability. The cases are distinguishable not just in their procedural posture, but also in the evidence supporting their rulings. Unlike this case, neither case references contractual provisions obligating the parties and their expressly foreseeable successors to the terms of the contracts.

In *Howe*, the Court held the defendants did not owe a duty because affirmative evidence showed the original owner (not the plaintiffs) "constructed the apartments for himself and had no plans to sell them upon completion," and therefore "it was not foreseeable that these plaintiffs would be harmed." *Howe*, 446 So. 2d at 12, 13. The plaintiffs cited cases holding that a duty was owed to a subsequent purchaser in an attempt to defeat summary judgment. The Court distinguished those cases as instances where "the defendants knew the purposes for which the buildings were constructed, i.e. sales or rentals to the public, and thus it was foreseeable that the work being done was for the benefit of third parties." *Id*. at 14. In other words, the Court held that if there had been evidence – even disputed evidence – that the defendants knew or might have known the building would be sold, then a duty might have existed. Here, at the Rule 12(b) stage, Jefferson Loft did not allege that

Tuscaloosa I, LLC never intended to sell the property, nor are there any allegations that Phoenix affirmatively believed Tuscaloosa I, LLC would never sell the property. Rather, Phoenix expressly declared its knowledge that both it and CEI were bound to the successor owner. Neither the terms of the General Contract or Subcontract, nor the allegations in the complaint support the legal inference Phoenix asks this Court to make.

At its core, *Keck* is an unsuccessful design-defect products liability case, not a case about defective workmanship. In *Keck*, the defendants manufactured, distributed, and installed a defective exterior insulation finishing system ("EIFS") on a home built by a homebuilder, sold to the initial homeowners, and then subsequently purchased by the plaintiffs – the Kecks. *See Keck,* 830 So. 2d at 11. The Kecks sued after defects in the EIFS allowed water damage to their home and brought Alabama Extended-Manufacturer's Liability Doctrine ("AEMLD"), breach of implied-warranty, negligence, and fraudulent-suppression claims. The trial court granted summary judgment for the defendants and the Supreme Court affirmed. The Court held EIFS was not a "product" for purposes of the AEMLD, and because it was not a "good" under the UCC, the lack of privity barred the breach of implied warranty claim. The Court affirmed summary judgment on the fraudulent suppression claim as well after noting that imposing a duty on the defendants in that particular case "would impose an endless duty upon the manufacturers and sellers

of construction materials to disclose alleged defects in materials to every purchaser of a used home..." *Id*. at 11.

Those are not the facts alleged in this case. There are no products liability claims in this case, nor any breach of implied warranty or fraudulent suppression claims. Jefferson Loft simply alleges Phoenix was negligent when it installed the fiber cement panel cladding system, its negligence caused damage to the building, and that damage was foreseeable when Phoenix performed the work. In a 2014 dissent, Justice Murdock agreed. *See Wyeth Inc. v. Weeks*, 159 So. 3d 649, 700 (Ala. 2014) (Murdock, J., dissenting) (stating that in *Keck* "it <u>was</u> foreseeable that the plaintiff would be injured by the tortious conduct of the defendant") (emphasis added). Likewise, the Honorable Lynwood Smith denied a motion to dismiss in this Court and expressly noted that the injuries in *Keck* were certainly foreseeable. *See Tuscumbia City School System v. Pharmacia Corp.*, 871 F. Supp. 2d 1241 (N.D. Ala. 2012) ("In reaching that conclusion, the Court rejected the plaintiffs' <u>wholly logical argument that it was clearly foreseeable that a house would, at some point, be sold to someone other than the original purchaser</u>.") (emphasis added). *See also Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204, 1209 (Ala. 1999) ("The parents say that they submitted substantial evidence that it was foreseeable that injury could occur if the vending machine was not properly installed and maintained, and that, therefore, the question of foreseeability was properly submitted to the jury. We agree."); *Stull v.*

*STO Corp.*, No. 01-CV-2004-004220, 2007 WL 868557, *3 (Ala. Cir. Ct. Jan. 31, 2007) ("It was reasonably foreseeable at the time STO entered into contracts with BMW and Hinkle that residential homeowners, such as the Stulls, may purchase STO's EIFS system and apply it to their homes, and that any defect or failure in the design or application of its EIFS system would likely result in damage to that particular class of individuals. It is not necessary to establish foreseeability of damages to the Stulls, as the particular plaintiffs in this case.").

*Howe* and *Keck* are different and were ripe for summary judgment because the parties had discovered and produced substantial evidence of their claims and defenses, including the scope of foreseeability and the existence of the duty owed. This case is different factually and unripe for a declaration that no duty was owed. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (reversing trial court's Rule 12(b) dismissal of claims and stating "Carnival's argument on foreseeability is more appropriate after discovery at the summary judgment stage or at trial."); *Tew v. Fairhope Yacht Club*, No. CV 18-0176-CG-MU, 2018 WL 3194886, *7 (S.D. Ala. May 22, 2018) ("Stated somewhat differently, since this Court asks, at this stage, only if the Plaintiff has adequately stated claims for which relief may be granted, FYC's arguments on duty (which also include an element of foreseeability, []) are 'more appropriate after discovery at the summary judgment stage or at trial.").

Because the specific injury alleged here was at all times foreseeable, because Jefferson Loft was a contractually contemplated plaintiff, and because the *Berkel* factors weigh in favor of Phoenix owing Jefferson Loft a duty, the Court should reject Phoenix's arguments and deny Phoenix's motion to dismiss. At the very least, Jefferson Loft has stated a plausible claim for relief and the Court should deny Phoenix's Motion as premature without discovery.

## III.   JEFFERSON LOFT FILED ITS CLAIMS WITHIN TWO YEARS OF THE TIME OF INJURY OR DAMAGE.

Like CEI, Phoenix argues that Jefferson Loft's Phase I claims are due to be dismissed as untimely under the Alabama statute of repose for construction defects. (*See* Doc. 7 at 12.) In the interest of brevity, Jefferson Loft incorporates by reference the arguments made in its Response to CEI's Motion to Dismiss (*See* Doc. 10 at 3–9) and summarizes that argument below. Jefferson Loft requests that the Court deny Phoenix's Motion as it relates to the Phase I claims.

In summary, Ala. Code 6-5-225 requires claims to ACCRUE within seven years – not to be brought within seven years. The statute provides claimants with a two (2) year limitations period from the accrual of a claim, so long as it accrues within seven years of substantial completion of the work. The claim accrues when injury or damage occurs, or when a latent defect manifests itself. Though parties only have two (2) years to file a claim, the statute extends the claims period up to nine (9) years from substantial completion of the project. *See* Ala. Code 6-5-225

("<u>Where causes of action accrue during the seven years from completion, an action may be brought within two years of accrual even though this extends beyond the seven-year period.</u> This permits all injured parties a period of two years to file suit unless already barred because the cause of action accrues after the passage of seven years, <u>which would in certain circumstances permit the filing of an action up to nine years after the completion of the improvement.</u>")

The statute of repose for Phase I, according to Phoenix, expired on August 5, 2020, seven (7) years from the issuance of the certificate of occupancy for Phase I (August 5, 2013). Jefferson Loft first discovered damage to the exteriors of the Lofts in late spring or early summer of 2020 (months before the expiration of the seven (7) year statute of repose) and plead this fact in its Complaint. (*See* Doc. 1-1 at ¶ 15.) ("In late spring, early summer of 2020, Jefferson Loft discovered the fiber cement panel cladding system in a state of disrepair.") CEI filed proof of this discovery with its Notice of Removal when it filed the report from Jefferson Loft's engineering consultant detailing the problems and their causes. (*See* Doc. 1-8 at 2–7.) According to Alabama law, Jefferson Loft had two (2) years from that discovery to file its claims. Jefferson Loft filed this action on January 13, 2021, well within the two (2) year limitations period. Thus, Jefferson Loft's Phase I claims are timely.

In its Reply in Support of its Motion to Dismiss, CEI argued that Jefferson Loft is not entitled to invoke the two (2) year discovery rule in Ala. Code 6-5-225

because it did not plead that the defect was latent nor did it plead that Jefferson Loft took all reasonable steps to timely discover the defect.[6] To the extent Phoenix intends to make a similar argument, the argument is incorrect. The argument altogether ignores that portion of the statute explaining that the claim does not accrue until the damage occurs. *See* Ala. Code. 6-5-225 (the two-year discovery rule does not commence "until the time of injury or damage…or where latent…does not commence until the time of discovery.") The argument also wrongfully assumes the damage existed, and therefore the claim accrued, when Phoenix completed the work in 2013. But nothing in the Complaint suggests that. To the contrary, Jefferson Loft alleged that it discovered the damage in late spring or early summer 2020. Just because Phoenix performed poor work in 2013 does not mean the claim accrued in 2013.[7]

---

[6] CEI relies on two fraud cases decided at the summary judgment stage to support this argument. *Amason v. First State Bank of Lineville*, 369 So. 2d 547 (Ala. 1979) and *Angell v. Shannon*, 455 So. 2d 823 (Ala. 1984). Neither construes the language or pleadings requirements associated with Ala. Code § 6-5-220, *et seq*. and both consider the heightened pleading requirements for fraud under Rule 9. Jefferson Loft did not assert a fraud claim in this action.

[7] Notably, CEI's Reply in Support of its Motion to Dismiss cites *Bella Investments, Inc. v. Multi-Family Services, Inc.*, 97 So. 3d 787 (Ala. Civ. App. 2012) where the Court reversed a summary judgment for the defendants on a siding installation claim. The Court rejected the argument that the siding defects were visible to passersby, and noted that there was a question of fact about the accrual of the claims. The Court stated, "we cannot conclude that the alleged defective-siding issues were clearly visible to a passerby because the building inspector did not indicate any deficiencies in the siding when he issued the certificate of occupancy for the hotel in April 2006. Thus, we reverse the trial court's summary judgment in favor of MFS on Bella's negligent-construction claim regarding the improper installation of the fiber cement siding." *Id.* at 797.

Given that its claim accrued in 2020 when the injury or damage occurred, Jefferson Loft had two (2) years to file its claims. Jefferson Loft's Phase I claims are not barred by the statute of repose.

## IV.    JEFFERSON LOFT HAS PLAUSIBLY PLEAD A NUISANCE CLAIM.

Also like CEI, Phoenix argues that Jefferson Loft has failed to state a valid claim for nuisance. Again, in the interest of brevity, Jefferson Loft incorporates by reference the arguments made in its Response to CEI's Motion to Dismiss (*See* Doc. 10 at 9–10.).

To summarize, Phoenix does not cite a single Alabama case holding that a nuisance claim cannot be made in the construction defect context. Nor does Phoenix argue that Jefferson Loft has not plead the necessary facts or elements to support a nuisance claim. Instead, Phoenix argues the nuisance claim is merely duplicative of the negligence claim and this Court must dismiss it. (*See* Doc. 7 at 18–19). But, multiple Alabama courts have allowed nuisance claims in the construction defect context to proceed past the Rule 12(b) stage, and even to trial. (*See* Doc. 10 at 9–10.) Jefferson Loft has stated a plausible nuisance claim for relief and Phoenix's Motion should be denied.

## <u>CONCLUSION</u>

Jefferson Loft requests the Court to enter an Order denying Phoenix's Motion to Dismiss because privity is not required for a negligence claim, Phoenix owed

Jefferson Loft a duty, Jefferson Loft's Phase I claims were timely filed, and Alabama law permits nuisance claims in construction defect actions.

Respectfully submitted this 28th day of April, 2021.

/s/ *Joseph D. Leavens*
Balch & Bingham LLP
*Attorney for Jefferson Loft LLC*

**OF COUNSEL:**
Charles A. Burkhart
Joseph D. Leavens
Michael Taunton
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 28th day of April, 2021, upon:

E. Britton Monroe
Bryan A. Grayson
Laura C. Bell
LLOYD, GRAY, WHITEHEAD & MONROE, P.C.
880 Montclair Road, Suite 100
Birmingham, AL 35213

*Attorneys for Defendant Construction Enterprises, Inc.*


Howard K. Glick
SIMPSON MCMAHAN GLICK & BURFORD PLLC
2700 Highway 280, Suite 203W
Birmingham, AL 35223

*Attorney for Phoenix Framing LLC*


/s/ *Joseph D. Leavens*
Of Counsel