FILED

2021 May-10  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1
# (Redacted Version)



# AIA® Document A141™ – 2004

## *Standard Form of Agreement Between Owner and Design-Builder*

**AGREEMENT** made as of the 3rd day of October in the year 2012
*(In words, indicate day, month and year.)*
Third day of October in the year Two Thousand Twelve

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Tuscaloosa I, LLC (hereinafter "Owner")
c/o  CAPSTONE COLLEGIATE COMMUNITIES, LLC
431 Office Park Drive
Birmingham, AL  35223

and the Design-Builder:
*(Name, legal status, address and other information)*

Construction Enterprises, Inc. (hereinafter "Design-Builder")
325 Seaboard Ln, Suite 170
Franklin, TN 37067

for the following Project:
*(Name, location and detailed description)*
~~The Lofts of Tuscaloosa~~  The Lofts at City Center  *JFN 10/6/12*
Tuscaloosa, AL

The Owner and Design-Builder agree as follows.

TABLE OF ARTICLES

| | |
|---|---|
| 1 | THE DESIGN-BUILD DOCUMENTS |
| 2 | WORK OF THIS AGREEMENT |
| 3 | DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION |
| 4 | CONTRACT SUM |
| 5 | PAYMENTS |
| 6 | DISPUTE RESOLUTION |
| 7 | MISCELLANEOUS PROVISIONS |
| 8 | ENUMERATION OF THE DESIGN-BUILD DOCUMENTS |

TABLE OF EXHIBITS

| | |
|---|---|
| A | TERMS AND CONDITIONS |

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed  A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification

Consultation with an attorney is also encouraged with respect to professional licensing requirements in the jurisdiction where the Project is located.

AIA Document A141™ – 2004. Copyright © 2004 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No 8574102181_1 which expires on 06/08/2013, and is not for resale
User Notes:                                                                                              (1951493682)

Init.

1



**B**    DETERMINATION OF THE COST OF THE WORK

**C**    INSURANCE AND BONDS

## ARTICLE 1   THE DESIGN-BUILD DOCUMENTS
§ **1.1** The Design-Build Documents form the Design-Build Contract. The Design-Build Documents consist of this Agreement between Owner and Design-Builder (hereinafter, the "Agreement") and its attached Exhibits; Supplementary and other Conditions; Addenda issued prior to execution of the Agreement; the Project Criteria, as defined in Exhibit D attached hereto and made a part hereof, including changes to the Project Criteria proposed by the Design-Builder and accepted by the Owner, if any; the Design-Builder's Proposal and written modifications to the Proposal accepted by the Owner, if any; other documents listed in this Agreement; and Modifications issued after execution of this Agreement. The Design-Build Documents shall not be construed to create a contractual relationship of any kind (1) between  the Owner and a Contractor (other than the Architect) or Subcontractor, or (2) between any persons or entities other than the Owner and Design-Builder, including but not limited to any consultant retained by the Owner to prepare or review the Project Criteria. An enumeration of the Design-Build Documents, other than Modifications, appears in Article 8.

§ **1.2** The Design-Build Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral.

§ **1.3** The Design-Build Contract may be amended or modified only by a Modification. A Modification is (1) a written amendment to the Design-Build Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Owner.

## ARTICLE 2   THE WORK OF THE DESIGN-BUILD CONTRACT
§ **2.1** The Design-Builder shall fully execute the Work described in the Design-Build Documents, except to the extent specifically indicated in the Design-Build Documents to be the responsibility of others.

## ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
§ **3.1** The date of commencement of the Work shall be fixed in a notice to proceed issued by the Owner to the Design-Builder, provided the Owner and Design-Builder have agreed in writing to the Project Design Schedule attached hereto and made a part hereof as Exhibit E to this Agreement including, but not limited to, deadlines for the procuring of all required permits for performance and completion of the Work, and provided Owner has given adequate proof of financing to the Design-Builder.  Notice to Proceed must be issued no later than five (5) days from the date of execution of this Agreement (unless a different date is stated below or provision is made for the date to be fixed in a notice issued by the Owner); otherwise, Design-Builder reserves the right to renegotiate the Contract.

*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

If, prior to the commencement of Work, the Owner requires time to file mortgages, documents related to mechanic's liens and other security interests, the Owner's time requirement shall be as follows:
*(Insert Owner's time requirements.)*

§ **3.2** The Contract Time shall be measured from the date of commencement, subject to adjustments of this Contract Time as provided in the Design-Build Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

§ **3.2.1** The Design-Builder acknowledges that meeting the Substantial Completion deadline of August 1, 2013 ("SCD") for Phase 1 and August 1, 2014, for Phase 2 of the Work, as set forth in the Project Schedule attached hereto as Exhibit E, to allow student occupancy of all student housing facilities, subject to any adjustments to the schedule hereunder, is critical to the Project's success.  The Final Completion Deadline for Phase 1 shall be August 15, 2013,

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                    (1951493682)

2

and the Final Completion Deadline for Phase 2 shall be August 15, 2014.  Accordingly, Owner and Design-Builder agree that (1) the harm caused by late completion, failure to meet the SCD or the interruption of the critical path for the Project is incapable of being estimated or extremely difficult or impossible to estimate at the present time, (2) the Owner and Design-Builder believe that the liquidated damage rate and sum agreed herein is a reasonable forecast of just compensation for damages in the event of a delay and that the amount of liquidated damages set forth herein does not constitute a penalty nor is it designed to secure the Design-Builder's performance by any threat of punishment for any breach of this Agreement, and (3) the liquidated damages rate and sum estimated below is a reasonable pre-breach estimate of the probable loss.

"Substantial Completion" is the date when (i) Architect certifies to Owner and Owner reasonably approves, or in the absence of such certifications, Owner determines in its judgment (reasonably exercised), that the entire Work has been substantially completed in accordance with, and as required by, the Design-Build Documents; (ii) all requisite temporary or final Certificate(s) of Occupancy (with no conditions to such final Certificate of Occupancy) and all other applicable Project approvals permitting legal use and occupancy of the Project shall have been issued and delivered to Owner by all governmental authorities; and (iii) only those minor Punch List items, if any, remain incomplete that do not interfere with the intended use and occupancy of any portion of the Project.

In the event of a failure by Design-Builder to achieve Substantial Completion by the SCD, then Design-Builder agrees to pay to Owner, or the Owner may withhold, liquidated damages for each leased apartment unit for which the Owner is not in receipt of a temporary or final Certificate of Occupancy by the SCD.  The liquidated damages will be calculated as follows:  For each Phase, the total number of leased beds in each of the leased apartment units without a temporary or final Certificate of Occupancy (with no conditions to such final Certificate of Occupancy) and all ▉ per bed per day (the "LD Fee") from the SCD of such Phase until such time as each uncompleted apartment unit for that Phase has received a temporary or final Certificate of Occupancy permitting the tenants to legally occupy the apartment for its intended use, provided, however, that the total liquidated damages may not exceed the total, aggregate amount of the Design-Builder's Fee.

**§ 3.3** The Design-Builder shall achieve Substantial Completion of the Work not later than    days from the date of commencement, or as follows:  The Design-Builder shall achieve Substantial Completion (as defined in §A.9.8.1) for Phase 1 of the Work, not later than  August 1, 2013.  The Design-Builder shall cooperate with the Owner to schedule and sequence furniture installation so that furniture installation is complete by the SCD on August 1, 2013, but same is not a condition precedent to achieving Substantial Completion.  The Design-Builder shall achieve Substantial Completion (as defined in §A.9.8.1) for Phase 2 of the Work not later than  August 1, 2014.  The Design-Builder shall cooperate with the Owner to schedule and sequence furniture installation so that furniture installation is complete by the SCD on August 1, 2014, but same is not a condition precedent to achieving Substantial Completion.

*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Design-Build Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

**Portion of Work**                          **Substantial Completion Date**

## ARTICLE 4   CONTRACT SUM
**§ 4.1** The Owner shall pay the Design-Builder the Contract Sum in current funds for the Design-Builder's performance of the Design-Build Contract. The Contract Sum shall be one of the following:
*(Check the appropriate box.)*

[  ]     Stipulated Sum in accordance with Section 4.2 below;

Init.

/

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:52:34 on 10/04/2012 under Order No.8574102181_1 which expires on 06/08/2013, and is not for resale.
**User Notes:**                                                                                                      (1816221044)

**3**

October 3, 2012                              The Lofts of Tuscaloosa - Tuscaloosa, Alabama
                                             A141 DB/Owner Contract Agreement

[   ]   Cost of the Work Plus Design-Builder's Fee in accordance with Section 4.3 below;

[ X ]   Cost of the Work Plus Design-Builder's Fee with a Guaranteed Maximum Price in accordance with
Section 4.4 below.

*(Based on the selection above, complete either Section 4.2, 4.3 or 4.4 below.)*

*(Paragraphs deleted)*
*(Table deleted)*
*(Paragraphs deleted)*
*(Table deleted)*
*(Paragraphs deleted)*

**§ 4.4 COST OF THE WORK PLUS DESIGN-BUILDER'S FEE WITH A GUARANTEED MAXIMUM PRICE**
**§ 4.4.1** The Cost of the Work is as defined in Exhibit B, plus the Design-Builder's Fee.

**§ 4.4.2** The Design-Builder's Fee is: ▮ Design-Builder is not entitled to its ▮ fee on the lump sum fee to be paid
to Architect by Owner at the closing of Owner's construction loan, but Design-Builder is entitled to its ▮ fee on all
sums paid to Architect thereafter.

*(State a lump sum, percentage of Cost of the Work or other provision for determining the Design-Builder's Fee and
the method of adjustment to the Fee for changes in the Work.)*

**§ 4.4.3 GUARANTEED MAXIMUM PRICE**

**§ 4.4.3.1**
The sum of the Cost of the Work and the Design-Builder's Fee is guaranteed by the Design-Builder not to exceed ▮
▮
subject to additions and deductions by changes in the Work as provided in the Design-Build Documents.  Such
maximum sum is referred to in the Design-Build Documents as the Guaranteed Maximum Price ("GMP").  Costs
which would cause the GMP to be exceeded shall be paid by the Design-Builder without reimbursement by the Owner.

If the Project has reached Substantial Completion by the  SCD established by the Design-Build Documents and at a
Contract Sum less than the Guaranteed Maximum Price, as adjusted per the Design-Build Documents ("the Savings"),
the Savings will first be reduced by ▮ (the Savings reduced by ▮ shall be referred to as the "Net
Savings") and the said $▮ will be placed in Escrow to pay for warranty items for one (1) year beyond
Substantial Completion.  Design-Builder may then include in its Application for Final Payment a request for an
amount, in addition to the Cost of the Work plus Fee, equal to Fifty Percent (50%) of the Net Savings as its share of the
Savings. Any portion of the ▮ remaining after one (1) year after Substantial Completion will be split 50/50
between Owner and Design-Builder. All warranty costs in excess of the ▮ in Escrow will be the responsibility
of the Design-Builder.

At the time Design-Builder submits its final Requisition to Owner for the Project, Design-Builder also shall submit to
Owner (and, if requested by Owner, to those members of the Design Team as may be designated by Owner) for review
and certification an accounting statement, in a form acceptable to Owner, detailing the calculation and itemization of
Costs to determine the Savings.  If Owner disputes the accuracy of the amounts contained in such accounting
statement, Owner shall, within fifteen (15) days following its receipt, submit the same for auditing to a certified public
accountant designated by Owner, and the determination by such public accountant of the correct amounts shall be
final and binding on the parties.  If, based upon the accounting statement and any audit thereof by Owner, it shall be
determined that there shall be Savings, then, in such event, Design-Builder's Share of such Savings shall be paid by
Owner to  Design-Builder within fifteen (15) days after determination by such public accountant of the Savings.
Design-Builder's final payment/retainage shall be due in accordance with Section 5.5 of this A141 and Section
A9.10.2 of the A141 Exhibit A irrespective of any dispute and/or delay in payment of said Savings.

*(Insert specific provisions if the Design-Builder is to participate in any savings.)*

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by
U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in
severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at
18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                    (1951493682)

Init.

**4**

**§ 4.4.3.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Design-Build Documents and are hereby accepted by the Owner:

The GMP is subject to adjustment for (i) scope changes and (ii) Change Orders, authorized in writing in advance of such proposed changed or extra work or time in accordance with the Contract Documents. Once all adjustments are made pursuant to the GMP per the Contract Documents, the resulting GMP shall be termed the "Final Adjusted GMP." In addition to all other line items, any and all amounts billed to Contingencies and General Conditions shall fall under and constitute part of the total GMP and in no event shall funds be paid to or recovered by the Design-Builder exceeding the GMP except by fully executed Change Order entered into pursuant to the terms of the Agreement

**§ 4.4.3.2.1** Design-Builder shall invoice Owner for Fees and General Conditions performed, earned and/or incurred in the period covered by its monthly Application for Payment for the duration of the Project, subject to the Final Payment accounting described herein.  Further, Design-Builder shall include on its Applications for Payment all billings received for Work performed and materials supplied and/or purchased up to and including the period covering the Application for Payment presented each month    In no event shall Design-Builder fail to invoice Owner for all Work performed and materials supplied in its final Application for Payment.  To the extent unbilled Work or materials are omitted from the final Application for Payment, all claims for payment for such omitted items shall be waived and released unless otherwise agreed in writing by Owner and Design-Builder in advance of the submission of the final Application for Payment.

**§ 4.4.3.3** Unit Prices, if any, are as follows:

| Description | Units | Price ($0.00) |
|---|---|---|
| N/A | | |

**§ 4.4.3.4** Allowances, if any, are as follows:
*(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)*

| Allowance | Amount ($0.00) | Included Items |
|---|---|---|
| See Exhibit H. | | |

**§ 4.4.3.5** Assumptions, if any, on which the Guaranteed Maximum Price is based, are as follows
*(Identify the assumptions on which the Guaranteed Maximum Price is based.)*

N/A

**§ 4.5 CHANGES IN THE WORK**
**§ 4.5.1** Adjustments of the Contract Sum on account of changes in the Work may be determined by any of the methods listed in Article A.7 of Exhibit A, Terms and Conditions.

**§ 4.5.2** Where the Contract Sum is the Cost of the Work, with or without a Guaranteed Maximum Price, and no specific provision is made in Sections 4.3.2 or 4.4.2 for adjustment of the Design-Builder's Fee in the case of Changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment will cause substantial inequity to the Owner or Design-Builder, the Design-Builder's Fee shall be equitably adjusted on the basis of the Fee established for the original Work, and the Contract Sum shall be adjusted accordingly.

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                (1951493682)

Init.

5



**ARTICLE 5    PAYMENTS**
**§ 5.1 PROGRESS PAYMENTS**
**§ 5.1.1** Based upon Applications for Payment submitted to the Owner by the Design-Builder, the Owner shall make progress payments on account of the Contract Sum to the Design-Builder as provided below and elsewhere in the Design-Build Documents.

**§ 5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

See § 5.1.3

**§ 5.1.3** Provided that an Application for Payment is received not later than the 25th day of month, the Owner shall make payment to the Design-Builder not later than the 10th day of the following month provided that there are no nationally-recognized holidays between the receipt of the Application and the 10th of the following month. If so, Owner's deadline for payment shall be extended by the same number of days as holidays occurring during that period. If an Application for Payment is received by the Owner after the application date fixed above, payment shall be made by the Owner not later than fifteen ( 15 ) days after the Owner receives the Application for Payment, provided that there are no nationally recognized holidays during such 15 day period. If so, Owner's deadline for payment shall be extended by the same number of days as holidays occurring during that period.

*(Paragraph deleted)*
**§ 5.1.4** Prior to the Owner's receipt of the second Application for Payment, and with each monthly Application for Payment thereafter, Design-Builder shall submit a detailed job cost report in the same format and detail as the Sample Job Cost Report attached hereto as a part of Exhibit G, showing all job cost incurred as of the date of the prior month's Application for Payment. It is understood that this job cost report will not be represented to be a report that balances with the Design-Builder's prior Application for Payment. Design-Builder will also provide lien waivers as set forth in 5.4.4 hereinbelow and such other supporting documentation as Owner may reasonably require.

**§ 5.1.5** With each Application for Payment where the Contract Sum is based Cost of the Work with a Guaranteed Maximum Price, the Design-Builder shall submit the most recent schedule of values in such detail that the Owner may easily confirm the progress percentage completion of each item in accordance with the Design-Build Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. Compensation for design services shall be shown separately. Where the Contract Sum is based on the Cost of the Work with a Guaranteed Maximum Price, the Design-Builder's Fee shall be shown separately. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Owner may reasonably require. This schedule of values, unless objected to by the Owner, shall be used as a basis for reviewing the Design-Builder's Applications for Payment.

**§ 5.1.6** In taking action on the Design-Builder's Applications for Payment, the Owner shall be entitled to rely on the accuracy and completeness of the information furnished by the Design-Builder and shall not be deemed to have made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Sections 5.1.4 or 5.1.5, or other supporting data; to have made exhaustive or continuous on-site inspections; or to have made examinations to ascertain how or for what purposes the Design-Builder has used amounts previously paid on account of the Agreement. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

**§ 5.1.7** Except with the Owner's prior written approval, the Design-Builder shall not make advance payments to subcontractors or suppliers for materials or equipment which have not been delivered and stored at the site.

*(Paragraphs deleted)*
**§ 5.1.8** The Owner has the right, at its sole discretion, to perform periodic examinations, audits, and verifications of the Design-Builder's cost accounting records and other Project documentation. The Owner will perform at least two (2) such audits with one (1) being conducted at 50% completion and the other being conducted following Final Completion, as shown on the Design-Builder's Applications for Payment. The Design-Builder shall make all its records available to the Owner upon reasonable advance notice and shall provide the Owner with copies of specific

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                    (1951493682)

Init.
/

6

records from time to time upon reasonable request.

§ 5.1.8.1 The Owner's audits shall assess costs as of the date of the first Application for Payment showing 50% and 100% completion, respectively. If the Owner's audits indicate that the actual costs incurred by the Design-Builder in performance of the Work are less than the amounts paid by the Owner to the Design-Builder as of the date of the audit, the Owner will notify the Design-Builder in writing of the results of the audit and the Owner's entitlement to deduct the difference from the next Application for Payment. Within 60 days of receipt of such notice from the Owner, if the Design-Builder disagrees with the results of the Owner's audit, the Design-Builder must notify the Owner in writing of the basis of such disagreement  If the Owner and Design-Builder cannot agree, the Owner will withhold the difference from future Applications for Payment and the Design-Builder may submit a claim that will be handled in accordance with Article 4 of the A141-Exhibit A, as amended for the this Project

**§5.2  Intentionally Omitted**

**§5.3  Intentionally Omitted**

**§ 5.4 PROGRESS PAYMENTS - COST OF THE WORK PLUS A FEE WITH A GUARANTEED MAXIMUM PRICE**
§ 5.4.1 Applications for Payment where the Contract Sum is based upon the Cost of the Work Plus a Fee with a Guaranteed Maximum Price shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment

§ 5.4.2 Subject to other provisions of the Design-Build Documents, the amount of each progress payment shall be computed as follows:

    .1   Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values  Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section A.7.3.8 of Exhibit A, Terms and Conditions;

    .2   Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

    .3   Add the Design-Builder's Fee, less retainage of ten percent ( 10 %) until the Project is 50% complete. Owner shall keep the retainage withheld on the first 50% of the job until Final Payment but will not withhold retainage from Design-Builder on pay applications submitted after the first 50% of the job is completed  The Design-Builder's Fee shall be computed upon the Cost of the Work described in the two preceding sections at the rate stated in Section 4.4.2 or, if the Design-Builder's Fee is stated as a fixed sum in that section, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work in the two preceding sections bears to a reasonable estimate of the probable Cost of the Work upon its completion;

    .4   Subtract the aggregate of previous payments made by the Owner;

    .5   Subtract the shortfall, if any, indicated by the Design-Builder in the documentation required by Section 5.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation; and

    .6   Subtract amounts, if any, for which the Owner has withheld or nullified a Certificate for Payment as provided in Section A.9.5 of Exhibit A, Terms and Conditions.

§ 5.4.3 Except with the Owner's prior approval, payments for the Work, other than for services provided by design professionals and other consultants retained directly by the Design-Builder, shall be subject to retainage of ten percent ( 10%) until the Project is 50% complete.  Owner shall keep the retainage withheld on the first 50% of the job until Final Payment but will not withhold retainage from Design-Builder on pay applications submitted after the first 50% of the job is completed.   The Owner and Design-Builder shall agree on a mutually acceptable procedure for review and approval of payments and retention for lower-tier contractors.

§ 5.4.4 Design-Builder's Applications for Progress Payments (after the first such Application) must be accompanied by (i) the Design-Builder's unconditional lien waiver for the prior Application for Payment, (ii) the Design-Builder's conditional lien waiver for the current Application for Payment, and (iii) the lien waivers of all subcontractors and suppliers paid to date for the prior Application for Payment. As it relates to conditional lien waivers, the only condition

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:
(1951493682)



shall be the subcontractor's and supplier's receipt of good funds for current payment due (at which time the lien waiver shall be self-effectuating and become an unconditional lien waiver). Design-Builder agrees to defend, indemnify and hold harmless the Owner and its successors and assigns against claims and claims for mechanics' liens and liens of subcontractors and materialmen with respect to Work for which payment has been made to the Design-Builder under an Application of Payment  Design-Builder is not, however, required to indemnify Owner or its successors or assigns for any lien that arises from Owner's failure to make payment to Design-Builder for conforming work that is due and payable

## § 5.5 FINAL PAYMENT

**§ 5.5.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Design-Builder no later than 30 days after the Design-Builder has fully performed the Design-Build Contract, and achieved Final Completion, including the requirements in Section A.9.10 of Exhibit A, Terms and Conditions, except for the Design-Builder's responsibility to correct non-conforming Work discovered after final payment or to satisfy other requirements, if any, which extend beyond final payment.  The following are conditions precedent to Owner's obligation to make final payment: (1) Design-Builder and all of its Subcontractors have provided final, conditional lien waivers for all sums not disputed by Owner that are due, with the only condition being Subcontractors' receipt of good funds for current payment due (at which time the lien waiver shall be self-effectuating and become a final, unconditional lien waiver), except as set out in (2) following; (2) where any Subcontractor may be in dispute with Design-Builder or has asserted a lien claim against the Project site, Design-Builder shall provide Owner with documentation necessary to demonstrate that any and all such liens have been bonded off of title to the Project site and that Design-Builder will indemnify and defend Owner and its successors and assigns from any such lien or claim or dispute outstanding, except for liens or claims arising from Owner's failure to pay as set out in 5.4.4 hereinabove; and (3) Owner has received any and all warranty and close out documentation.  Owner shall not be required to make payment to Design-Builder for non-conforming Work at any time during the Project until such non-conforming Work is remedied and/or cured to Owner's reasonable satisfaction, which shall not be unreasonably withheld.  Within three (3) business days of Design-Builder's receipt of good funds for Final Payment from Owner, Design-Builder shall provide Owner with copies of the checks for final payment sent to all subcontractors and suppliers on the Project, provided that there are no nationally recognized holidays during such 3 day period.  If so, Design-Builder's deadline for submitting such check copies to Owner shall be extended by the same number of days as holidays occurring during that period.  As it relates to the timing for the payment of any Savings owed to Design-Builder, the terms of Section 4.4.3.1 shall govern.

## ARTICLE 6   DISPUTE RESOLUTION
**§ 6.1**
*(Paragraphs deleted)*
**INITIAL DISPUTE RESOLUTION**
The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement between their respective project representatives within fourteen (14) days of such dispute arising.  If unsuccessful, within the next thirty (30) days, the parties shall engage in confidential mediation under the mediation procedures commonly used in the jurisdiction of the Project before initiating any binding dispute resolution action.  The parties shall equally split any mediator fees and expenses.  Any dispute not resolved by mediation shall be resolved in accordance with the dispute resolution procedures of Section A.4.4 of Exhibit A Terms and Conditions.

**§ 6.2** If the parties do not resolve their dispute through mediation pursuant to Section A 4.3 of Exhibit A, Terms and Conditions, the method of binding dispute resolution shall be the following:
*(If the parties do not select a method of binding dispute resolution, then the method of binding dispute resolution shall be by litigation in a court of competent jurisdiction.)*
*(Check one.)*

      [ **X** ]   Arbitration pursuant to Section A.4.4 of Exhibit A, Terms and Conditions

      [ ]    Litigation in a court of competent jurisdiction

AIA Document A141™ – 2004. Copyright © 2004 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                    (1951493682)

Init.

**8**

[   ]   Other *(Specify)*

**§ 6.3 ARBITRATION**
**§ 6.3.1** If Arbitration is selected by the parties as the method of binding dispute resolution, then any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration as provided in Section A.4.4 of Exhibit A, Terms and Conditions and subject to the provisions of Section 6.1 above and A.4.3 of Exhibit A.

**ARTICLE 7   MISCELLANEOUS PROVISIONS**
**§ 7.1** The Architect, other design professionals and consultants engaged by the Design-Builder shall be persons or entities duly licensed to practice their professions in the jurisdiction where the Project is located and are listed as follows:
*(Insert name, address, license number, relationship to Design-Builder and other information.)*

| Name and Address | License Number | Relationship to Design-Builder | Other Information |
|---|---|---|---|
| Humphreys & Partners Architects, L.P.<br>5339 Alpha Road<br>Suite 300<br>Dallas, Texas 75240<br>T: (972) 701-9636<br>F: (972) 701-9639 | | | |

**§ 7.2** Consultants, if any, engaged directly by the Owner, their professions and responsibilities are listed below:
*(Insert name, address, license number, if applicable, and responsibilities to Owner and other information.)*

| Name and Address | License Number | Responsibilities to Owner | Other Information |
|---|---|---|---|
| Gonzalez-Strength & Associates, Inc.<br>2176 Parkway Lake Drive<br>Birmingham, AL  35244 | | Civil Engineer | |

**§ 7.3** Separate contractors, if any, engaged directly by the Owner, their trades and responsibilities are listed below:
*(Insert name, address, license number, if applicable, responsibilities to Owner and other information.)*

| Name and Address | License Number | Responsibilities to Owner | Other Information |
|---|---|---|---|
| N/A | | | |

**§ 7.4** The Owner's Designated Representative is
*(Insert name, address and other information.)*

Mr. John Acken
Ms. Angie Rawie
Tuscaloosa I, LLC
431 Office Park Drive
Birmingham, AL 35223
Phone:  205-414-6400
Fax:  205- 414-6405.



Init.

AIA Document A141™ – 2004. Copyright © 2004 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                            (1951493682)

9



**§ 7.4.1** The Owner's Designated Representative identified above shall be authorized to act on the Owner's behalf with respect to the Project.

**§ 7.5** The Design-Builder's Designated Representative is:
*(Insert name, address and other information.)*

Giny S. Knudsen
Construction Enterprises, Inc.
325 Seaboard Lane, Suite 170
Franklin, TN  37067
Phone:  615-332-8880
Fax:  615-771-0818

**§ 7.5.1** The Design-Builder's Designated Representative identified above shall be authorized to act on the Design-Builder's behalf with respect to the Project.

**§ 7.6** Neither the Owner's nor the Design-Builder's Designated Representative shall be changed without ten days written notice to the other party.

**§ 7.7** Other provisions:


**§ 7.7.1** Where reference is made in this Agreement to a provision of another Design-Build Document, the reference refers to that provision as amended or supplemented by other provisions of the Design-Build Documents.

**§ 7.7.2** Payments due and unpaid under the Design-Build Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

One percent (  1  %)  over the Prime Rate as shown in the Wall Street Journal on the date that payment was due to Design-Builder.

(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Design-Builder's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)

**§ 7.7.3** The Owner and Design-Builder represent and warrant the following in addition to any other representations and warranties contained in the Design-Build Documents, as a material inducement to the execution of this Agreement:

**§ 7.7.3.1** Owner and Design-Builder are financially solvent, able to pay all debts as they mature, and/or possessed of sufficient working capital or financing to complete the Work and perform all their respective obligations hereunder;

**§ 7.7.3.2** Design-Builder is able to furnish the plant, tools, materials, supplies, equipment, and labor required to complete the Work and perform its obligations hereunder and has sufficient experience and competence to do so;

**§ 7.7.3.3** Owner and Design-Builder are authorized to do business in the State where the project is located and are properly licensed by all necessary governmental and public and quasi-public authorities having jurisdiction over the Design-Builder and over the Work and the Project; and

**§ 7.7.3.4** Owner and Design-Builder's execution of this Agreement and performance thereof is within the Owner and Design-Builder's duly authorized powers.

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                   (1951493682)

Init.

**10**

§ **7.7.4** The provisions of the Design-Build Documents shall not be changed, amended, waived, or otherwise modified in any respect except by a writing signed by Owner and Design-Builder. No person is authorized on behalf of Owner and Design-Builder to orally change, amend, waive, or otherwise modify the terms of the Design-Build Documents or any of the Owner and Design-Builder's duties or obligations under or arising out of the Design-Build Documents Any change, waiver, approval, or consent shall be limited to the specific matters stated in writing signed by both parties, and shall not relieve either of any other duties and obligations hereunder.

## ARTICLE 8   ENUMERATION OF THE DESIGN-BUILD DOCUMENTS
§ **8.1** The Design-Build Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

§ **8.1.1** The Agreement is this executed edition of the Standard Form of Agreement Between Owner and Design-Builder, AIA Document A141-2004

§ **8.1.2** The Supplementary and other Conditions of the Agreement, if any, are as follows:
*(Either list applicable documents below or refer to an exhibit attached to this Agreement.)*
N/A

| Document | Title | Pages |
|----------|-------|-------|

§ **8.1.3** The Project Criteria, including changes to the Project Criteria proposed by the Design-Builder, if any, and accepted by the Owner, consist of the following:
*(Either list applicable documents and their dates below or refer to an exhibit attached to this Agreement.)*
See Exhibit D – Project Criteria attached hereto

| Title | Date |
|-------|------|

§ **8.1.4** The Design-Builder's Proposal, dated    , consists of the following:
*(Either list applicable documents below or refer to an exhibit attached to this Agreement.)*

See Exhibit D – Project Criteria - Schedule of Values

§ **8.1.5** Amendments to the Design-Builder's Proposal, if any, are as follows:
*(Either list applicable documents below or refer to an exhibit attached to this Agreement.)*

N/A

§ **8.1.6** The Addenda, if any, are as follows:
*(Either list applicable documents below or refer to an exhibit attached to this Agreement.)*

N/A

| Number | Date | Pages |
|--------|------|-------|

§ **8.1.7** Exhibit A, Terms and Conditions
*(If the parties agree to substitute terms and conditions other than those contained in AIA Document A141-2004, Exhibit A, Terms and Conditions, then identify such terms and conditions and attach to this Agreement as Exhibit A.)*

See Exhibit A attached hereto.

Init.

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                   (1951493682)

11



§ 8.1.8 Exhibit B, Determination of the Cost of the Work, if applicable.
*(If the parties agree to substitute a method to determine the cost of the Work other than that contained in AIA Document A141-2004, Exhibit B, Determination of the Cost of the Work, then identify such other method to determine the cost of the Work and attach to this Agreement as Exhibit B. If the Contract Sum is a Stipulated Sum, then Exhibit B is not applicable.)*

See Exhibit B attached hereto

§ 8.1.9 Exhibit C, Insurance and Bonds, if applicable
*(Complete AIA Document A141-2004, Exhibit C, Insurance and Bonds or indicate "not applicable.")*

See Exhibit C attached hereto.

§ 8.1.10 Other documents, if any, forming part of the Design-Build Documents are as follows:
*(Either list applicable documents below or refer to an exhibit attached to this Agreement.)*

Exhibit E – Project Schedule
Exhibit F – General Warranty Agreement
Exhibit G – Project Forms
     G.1 – Subcontractor Lien Release
     G.2 – Design-Builder Lien Release
     G.3 – Full and Final Release
     G.4 – Sample Job Cost Report
     G.5 – G702/703 Invoice
Exhibit H – Allowances
Exhibit I – Quality Control Program
Exhibit J – Design-Builder Key Personnel
Exhibit K – Listing of Owner Provided Documents
Exhibit L – Early Start Agreement

**ARTICLE 9 DESIGN-BUILDER'S REPRESENTATIONS** In order to induce Owner to enter into this Agreement, Design-Builder makes the following representations:

§ 9.1 Design-Builder has examined and carefully studied the Design-Build Documents.

§ 9.2 Design-Builder has read the Design-Build Documents, visited the Site and surrounding environs and become familiar with and is satisfied as to the site conditions that may affect cost, progress, and performance of the Work to the extent observable on a careful site investigation, except for those existing site conditions involving geotechnical matters, archeological matters, paleontological matters, Hazardous Materials, and/or the Remediation of any Hazardous Materials that are not observable or that have not been disclosed to or were not reasonably discoverable by Design-Builder.   Design-Builder has received the documentation relating to the Project Site conditions listed in Exhibit K attached hereto, and OWNER represents that as of the time of the execution of this Contract, it has provided to Design-Builder and the Architect all documents within the scope of this paragraph as enumerated in Exhibit K and intends that Design-Builder and Architect be able to rely on such documents.

Design-Builder further represents that before executing this Agreement it has inspected and investigated the Site and it is not aware of any subsurface conditions that will impact the cost to Design-Builder of properly and timely performing the Work   Should there be site conditions, including subsurface conditions, not disclosed to Design-Builder or reasonably discoverable by the Design-Builder's review of information and documentation referenced above or inspection of the Project site, and such undiscovered conditions will materially affect the Design-Builder's ability to achieve the SCD, affect any potential Cost Savings, or increase the GMP, then Design-Builder shall advise Owner in writing immediately of the same and Owner and Design-Builder may enter into a Change Order to equitably adjust the terms of this Agreement, as the case may be

§ 9.3 Design-Builder, through its consultants, is familiar with and is satisfied as to all federal, state, and local

AIA Document A141™ – 2004. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                                (1951493682)

Init.

12

applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities that may affect cost, progress, and performance of the Work except where either standard industry practice or the Design-Build Documents impose responsibility for such applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities on Owner, or on some other entity for whose acts and omissions Design-Builder is not responsible

**§ 9.4**  Design-Builder has exercised the degree of care prevailing in the design-build profession generally to acquaint itself with the general nature of the Work, the conditions under which it is to be performed, and the information contained in reports of subsurface conditions supplied to it and has correlated all of such information with the Design-Build Documents.

**§ 9.5**  Design-Builder is aware of the general nature of work to be performed by Owner and others at the Site that relates to the Work as indicated in the Design-Build Documents; however, Design-Builder shall not be held responsible for the performance of any work performed by Owner or others at the Site prior to the date of this Agreement.

**§ 9.6**  Design-Builder has given Owner written notice of all conflicts, errors, ambiguities, or discrepancies that Design-Builder has discovered in the Design-Build Documents as of the date of this Agreement, and has accepted any written resolutions of same provided by Owner   Design-Builder and Owner agree that as the Design-Build Documents progress to completion, Design-Builder will continue to provide Owner with written notice of any conflicts, errors, ambiguities, or discrepancies that Design-Builder discovers in said Documents; and Owner will promptly provide written resolution for said items to Design-Builder.

**§ 9.7**  The Design-Build Documents are generally sufficient to indicate and convey understanding of all terms and conditions for performance and finishing of the Work

**§ 9.8**  Design-Builder is able to furnish the plant, tools, materials, supplies, equipment and labor, and is experienced in and competent to perform the Work contemplated by the Design-Build Documents, and it is qualified to do the Work called for by the Design-Build Documents and is authorized to do business in the state where the Work will occur.

**§ 9.9**  Design-Builder holds all licenses, permits or other special licenses to perform the Work, under the Design-Build Documents, as required by applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities.  It is acknowledged by both parties that the architectural design portion of the Work specified under this Agreement will be performed by outside consultants properly licensed to perform the architectural and engineering portions of this Agreement.

**§ 9.10**  Design-Builder is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and has full power, authority and legal right to execute and deliver, and perform its obligations under, this Agreement ("Laws and Regulations").

**§ 9.11**  The execution and delivery of this Agreement and the performance of Design-Builder's obligations hereunder have been duly and validly authorized and approved by all necessary action on its part and this Agreement has been duly executed and delivered and constitutes legal, valid and binding obligations of Design-Builder, enforceable against it in accordance with its terms.

**§ 9.12**  This execution and delivery of, and performance by Design-Builder of its obligations under, this Agreement do not and will not result in a violation of any provision of its organizational documents or constitute a default under or breach of any contract, agreement or other instrument to which it is a party or by which it or any of its property is bound, or result in a violation of, or be in conflict with any term or provisions of, any Laws or Regulations applicable to or binding upon it or any of its property.

**§ 9.13**  The due execution, delivery and performance of obligations under this Agreement by Design-Builder do not and will not require any consent, approval, or authorization, except for those which have been obtained by it on or prior to the date hereof and are in full force and effect on the date hereof.

Init.

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No.6574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                                        (1951493682)

13

**§ 9.14** There is no action, suit, proceeding, inquiry or investigation pending or, to Design-Builder 's knowledge, threatened against it before any court or other tribunal, or by any governmental authority or regulatory body that would materially and adversely affect its ability to perform its obligations under this Agreement.

**§ 9.15** The Work shall be carried out at all times, and, as completed, shall be in accordance with the provisions of the Design-Build Documents and the standards stated in the Design-Build Documents or, where none are stated, in accordance with good construction practice.

**§ 9.16**  The Design-Builder has reviewed the ingress to and egress from the Site as observable on visit to the Site and as described and represented by Owner in that survey and/or documents referenced in Section 9.2 above and confirms that the access to the Owner's interest in the lands on which the Work is to be performed, rights-of-way and easements of access thereto, and such other lands which are designated for use of Design-Builder appear on such basis to be satisfactory and adequate to enable Design-Builder to perform its obligations under the Design-Build Documents. This Agreement entered into as of the day and year first written above.

**TUSCALOOSA I, LLC**                                    **CONSTRUCTION ENTERPRISES, INC.**

OWNER *(Signature)*                                      DESIGN-BUILDER *(Signature)*

JOHN E. VAN TER - MEMBER                    Gini S. Knudsen, Executive Vice President
*(Printed name and title)*                                *(Printed name and title)*

**AIA Document A141™ – 2004.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:26:46 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                      (1951493682)

Init.

**14**



# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## <u>EXHIBIT A</u>

# Terms and Conditions





# AIA® Document A141™ – 2004 Exhibit A

## *Terms and Conditions*

**for the following PROJECT:**
*(Name and location or address)*

The Lofts of Tuscaloosa

**THE OWNER:**
*(Name, legal status and address)*

Tuscaloosa I, LLC
Tuscaloosa, AL

**THE DESIGN-BUILDER:**
*(Name, legal status and address)*
Construction Enterprises, Inc. (hereinafter "Design-Builder")
325 Seaboard Ln, Suite 170
Franklin, TN 37067

**TABLE OF ARTICLES**

A.1   GENERAL PROVISIONS

A.2   OWNER

A.3   DESIGN-BUILDER

A.4   DISPUTE RESOLUTION

A.5   AWARD OF CONTRACTS

A.6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

A.7   CHANGES IN THE WORK

A.8   TIME

A.9   PAYMENTS AND COMPLETION

A.10  PROTECTION OF PERSONS AND PROPERTY

A.11  INSURANCE AND BONDS

A.12  UNCOVERING AND CORRECTION OF WORK

A.13  MISCELLANEOUS PROVISIONS

A.14  TERMINATION OR SUSPENSION OF THE DESIGN-BUILD CONTRACT

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed  A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Consultation with an attorney is also encouraged with respect to professional licensing requirements in the jurisdiction where the Project is located

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                  (1752527221)

**1**



## ARTICLE A.1    GENERAL PROVISIONS
### § A.1.1 BASIC DEFINITIONS
### § A.1.1.1 THE DESIGN-BUILD DOCUMENTS
The Design-Build Documents are identified in Section 1.1 of the Agreement

### § A.1.1.2 PROJECT CRITERIA
The Project Criteria are identified in Section 8.1.3 of the Agreement and may describe the character, scope, relationships, forms, size and appearance of the Project, materials and systems and, in general, their quality levels, performance standards, requirements or criteria, and major equipment layouts.

### § A.1.1.3 ARCHITECT
The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and having a direct contract with the Design-Builder to perform design services for all or a portion of the Work, and is referred to throughout the Design-Build Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

### § A.1.1.4 CONTRACTOR
A Contractor is a person or entity, other than the Architect, that has a direct contract with the Design-Builder to perform all or a portion of the construction required in connection with the Work. The term "Contractor" is referred to throughout the Design-Build Documents as if singular in number and means a Contractor or an authorized representative of the Contractor. The term "Contractor" does not include a separate contractor, as defined in Section A.6.1.2, or subcontractors of a separate contractor.

### § A.1.1.5 SUBCONTRACTOR
A Subcontractor is a person or entity who has a direct contract with a Contractor to perform a portion of the construction required in connection with the Work at the site. The term "Subcontractor" is referred to throughout the Design-Build Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor.

### § A.1.1.6 THE WORK
The term "Work" means the design, construction and services required by the Design-Build Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Design-Builder to fulfill the Design-Builder's obligations. The Work may constitute the whole or a part of the Project.

### § A.1.1.7 THE PROJECT
The Project is the total design and construction of which the Work performed under the Design-Build Documents may be the whole or a part, and which may include design and construction by the Owner or by separate contractors.

### § A.1.1.8 NEUTRAL
The Neutral is the individual appointed by the parties to decide Claims and disputes pursuant to Section A.4.2.1., if applicable.

### § A.1.1.9 FINANCING ENTITY
The term "Financing Entity" shall denote one or more of the following:  (i) Lender or (ii) their designated representative or (iii) any institution providing financing or favorable tax treatment in connection with the Project. Design/Builder shall reasonably cooperate with any such Financing Entity and its representatives at all times in the performance of the Work and execute such Financing Entity's customary and reasonable form of collateral assignment of this Agreement.

### § A.1.2 COMPLIANCE WITH APPLICABLE LAWS
### § A.1.2.1 If the Design-Builder believes that implementation of any instruction received from the Owner would cause a violation of any applicable law, statute, ordinance, building code, rule or regulation, the Design-Builder shall promptly notify the Owner in writing  Neither the Design-Builder nor any Contractor or Architect shall be obligated to perform any act which they believe will violate any applicable law, ordinance, rule or regulation.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                                                   (1752527221)

Init.



2

§ **A.1.2.2** The Design-Builder shall be entitled to rely on the completeness and accuracy of the information contained in the Project Criteria, but not that such information complies with applicable laws, regulations and codes, which shall be the obligation of the Design-Builder to determine. In the event that a specific requirement of the Project Criteria conflicts with applicable laws, regulations and codes, the Design-Builder shall furnish Work which complies with such laws, regulations and codes. In such case, the Owner shall issue a Change Order to the Design-Builder unless the Design-Builder recognized such non-compliance prior to execution of this Agreement and failed to notify the Owner in writing.

### § A.1.3 CAPITALIZATION
§ **A.1.3.1** Terms capitalized in these Terms and Conditions include those which are (1) specifically defined, (2) the titles of numbered articles and identified references to sections in the document, or (3) the titles of other documents published by the American Institute of Architects.

### § A.1.4 INTERPRETATION
§ **A.1.4.1** In the interest of brevity, the Design-Build Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ **A.1.4.2** Unless otherwise stated in the Design-Build Documents, words which have well-known technical or construction industry meanings are used in the Design-Build Documents in accordance with such recognized meanings.

### § A.1.5 EXECUTION OF THE DESIGN-BUILD DOCUMENTS
§ **A.1.5.1** The Design-Build Documents shall be signed by the Owner and Design-Builder.

§ **A.1.5.2** Execution of the Design-Build Contract by the Design-Builder is a representation that the Design-Builder has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Design-Build Documents.

### § A.1.6 OWNERSHIP AND USE OF DOCUMENTS AND ELECTRONIC DATA
§ **A.1.6.1** Drawings, specifications, and other documents including those in electronic form, prepared by the Architect and furnished by the Design-Builder are Instruments of Service for use solely with respect to this Project, unless otherwise agreed to in a writing signed by Owner and Architect. The Design-Builder, Architect and other providers of professional services individually shall be retain all common law, statutory and other reserved rights, including copyrights in those Instruments of Service furnished by them. Notwithstanding the ownership of the Instruments of Service, the Design-Builder, the Architect and its design professionals and consultants, shall not be entitled to use the same unit plans and elevations in Tuscaloosa, Alabama without Owner's prior written consent.

§ **A.1.6.2** Upon execution of the Design-Build Contract, the Design-Builder grants to the Owner a non-exclusive, irrevocable license to reproduce and use the Instruments of Service solely in connection with the Project, including the Project's further development by the Owner and others retained by the Owner for such purposes and for constructing, using, maintaining, altering and adding to the Project. The license for an Instrument of Service shall be revocable only if (i) Owner fails to pay any amount for the Instrument of Service when due, which Owner does not reasonably dispute, or (ii) Owner fails to pay within ten (10) days the full amount, plus applicable interest thereon, that Owner wrongly withheld from the Architect (as determined by an arbitrator, or an agreement of the parties).Subject to the Owner's compliance with such payment obligations, such license shall extend to those parties retained by the Owner for such purposes, including other design professionals. The Design-Builder shall obtain similar non-exclusive, irrevocable licenses from its design professionals. The Owner shall not otherwise assign or transfer any license herein to another party, other than to a purchaser of Owner's interest in the Project or any affiliate or partner of Owner, without prior written agreement of the Design-Builder or Architect. Any unauthorized reproduction or use of the Instruments of Service by the Owner or others shall be at the Owner's sole risk and expense without liability to the Design-Builder and its design professionals. Except as provided in Section A.1.6.4, termination of this Agreement prior to completion of the Design-Builder's services to be performed under this Agreement shall terminate this license as to then-irrevocable licenses. In no event shall this section A.1.6 be construed as requiring Design-Builder to convey to Owner any licenses beyond what Design-Builder receives from Architect.



Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                (1752527221)

3

**§ A.1.6.3** Prior to any electronic exchange by the parties of the Instruments of Service or any other documents or materials to be provided by one party to the other, the Owner and the Design-Builder shall agree in writing on the specific conditions governing the format thereof, including any special limitations or licenses not otherwise provided in the Design-Build Documents.

**§ A.1.6.4** If this Agreement is terminated for any reason other than the default of the Owner, each of the Design-Builder's design professionals, including the Architect, shall be contractually required to convey to the Owner a non-exclusive, irrevocable license to use that design professional's Instruments of Service for the completion, use and maintenance of the Project, conditioned upon the Owner's written notice to that design professional of the Owner's assumption of the Design-Builder's contractual duties and obligations to that design professional and payment to that design professional of all amounts then due and owing to that design professional and its consultants, which Owner does not reasonably dispute. Thereafter, the license granted to Owner shall be revocable only if (i) Owner fails to pay any amount for the Instruments of Service when due, which Owner does not reasonably dispute, or (ii) Owner fails to pay within ten (10) days the full amount, plus applicable interest thereon, which an arbitrator finally decides that Owner wrongly withheld from the Architect. If the Owner does not assume the remaining duties and obligations of the Design-Builder to that design professional under this Agreement, then the Owner shall indemnify and hold harmless that design professional from all claims and any expense, including legal fees, which that design professional shall thereafter incur by reason of the Owner's improper and unauthorized use of such Instruments of Service to the extent such claims and/or expenses do not arise out of the negligence, in whole or part, of that design professional. The Design-Builder shall incorporate the requirements of this Section A.1.6.4 in all agreements with its design professionals.

**§ A.1.6.5** Submission or distribution of the Design-Builder's documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the rights reserved in Section A.1.6.1.

**ARTICLE A.2   OWNER**
**§ A.2.1 GENERAL**
**§ A.2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Design-Build Documents as if singular in number. The term "Owner" means the Owner or the Owner's authorized representative. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all Project matters requiring the Owner's approval or authorization. The Owner shall render decisions in a timely manner and in accordance with the Design-Builder's schedule submitted to the Owner.

**§ A.2.1.2** The Owner shall furnish to the Design-Builder within 15 days after receipt of a written request information necessary and relevant for the Design-Builder to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

**§ A.2.1.3** The Owner will arrange financing of the Project through one or more institutional Lenders or other sources. Design-Builder agrees to reasonably cooperate with the Owner in satisfying any requirements imposed by the agreement(s) with such Lender(s), including, but not limited to, affording access to the Project Site at any reasonable time to, and cooperating with, any Lender representative appointed by said Lender(s), and providing any representative of such Lender at any time with reasonable requested copies of documentation otherwise being furnished to the Owner. Design-Builder also acknowledges that the consent of such Lender(s) may be a condition precedent to the effectiveness of any Change Order hereunder, and may be required before an Application for Payment should be considered approved, and will take any reasonable steps necessary to secure such consent and/or approval in a timely way.

**§ A.2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER**
**§ A.2.2.1** Information or services required of the Owner by the Design-Build Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Design-Builder's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Design-Builder of a written request for such information or services.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale **User Notes:**                                    (1752527221)

Init.



4



**§ A.2.2.2** The Owner shall be responsible to provide surveys, if not required by the Design-Build Documents to be provided by the Design-Builder, describing physical characteristics, legal limitations, and utility locations for the site of this Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements, and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restriction, boundaries, and contours of the site; locations, dimensions, and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

**§ A.2.2.3** The Owner shall provide, to the extent available to the Owner and if not required by the Design-Build Documents to be provided by the Design-Builder, the results and reports of prior tests, inspections or investigations conducted for the Project involving structural or mechanical systems, chemical, air and water pollution, hazardous materials or environmental and subsurface conditions , including all geotechnical and subsurface reports and environmental surveys/examinations it has conducted or commissioned to be conducted relating to the Project, and information regarding the presence of pollutants at the Project site.  Design-Builder shall promptly notify Owner in writing if Design-Builder believes that other reports or investigations are necessary for the completion of the Project. Owner represents that as of the time of the execution of this Contract, it has provided to Design-Builder all documents in its possession within the scope of this paragraph as enumerated on Exhibit K  and intends that Design-Builder be able to rely on such documents.

**§ A.2.2.4** The Owner may obtain independent review of the Design-Builder's design, construction and other documents by a separate architect, engineer, and contractor or cost estimator under contract to or employed by the Owner. Such independent review shall be undertaken at the Owner's expense in a timely manner and shall not delay the orderly progress of the Work.

**§ A.2.2.5** The Owner shall cooperate with the Design-Builder in securing building and other permits, licenses and inspections. Unless otherwise specified in the Design-Build Documents, the Design-Builder shall be responsible for paying for the following building and other permits, licenses and inspections as part of the GMP:

City of Tuscaloosa Building Permit Fee - ███████████

**§ A.2.2.6** The services, information, surveys and reports required to be provided by the Owner under Section A.2.2, shall be furnished at the Owner's expense, and the Design-Builder shall be entitled to rely upon the accuracy and completeness thereof, except as otherwise specifically provided in the Design-Build Documents or to the extent the Owner advises the Design-Builder to the contrary in writing.

**§ A.2.2.7** If the Owner observes or otherwise becomes aware of a fault or defect in the Work or non-conformity with the Design-Build Documents, the Owner shall give prompt written notice thereof to the Design-Builder.

**§ A.2.2.8** The Owner shall, at the request of the Design-Builder, prior to execution of the Design-Build Contract and promptly upon request thereafter, furnish to the Design-Builder reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Design-Build Documents.

**§ A.2.2.9** The Owner shall communicate through the Design-Builder with persons or entities employed or retained by the Design-Builder, unless otherwise directed by the Design-Builder.

**§ A.2.2.10** The Owner shall furnish the services of geotechnical engineers or other consultants, if not required by the Design-Build Documents to be provided by the Design-Builder, for subsoil, air and water conditions when such services are deemed reasonably necessary by the Design-Builder to properly carry out the design services provided by the Design-Builder and the Design-Builder's Architect. Such services may include, but are not limited to, test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, and necessary operations for anticipating subsoil conditions. The services of geotechnical engineer(s) or other consultants shall include preparation and submission of all appropriate reports and professional recommendations.

**§ A.2.2.11** The Owner shall promptly obtain easements, zoning variances, and legal authorizations regarding site utilization where essential to the execution of the Owner's program.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                                                                    (1752527221)

Init.

5

/

**§ A.2.3 OWNER REVIEW AND INSPECTION**
**§ A.2.3.1**   With regard to the terms Owner "approval" or Owner to "approve(s)" as referenced in this Agreement for review of submittals, samples, or other documents in the submittal process, Owner "approval" or Owner "approve(s)" shall mean that the Owner takes no exception to the submittal, and that the Design Builder may proceed with the submittal  Owner review of submittals shall be limited to a general review that the data or materials submitted are from a manufacturer, or exhibit the finish or color specified in the Design-Build Documents.  Said review, however, shall be made by Owner with such reasonable promptness as to cause no delay in the Work or in the activities of the Design-Builder or separate contractors.  The Owner's review shall not address compliance with codes, city regulations, or any technical analysis of equipment specifications, capabilities or performance  Such in-depth reviews shall remain the responsibility of the Design-Builder  The Design-Builder shall review all submittals before submitting them to the Owner for review. The Owner shall only review only those submittals pertinent to the exterior skin or finish materials or equipment impacting the appearance or performance of the buildings.

**§ A.2.3.2** Upon review of the design documents, construction documents, or other submittals required by the Design-Build Documents, the Owner promptly shall take one of the following actions:

    **.1**    Determine that the documents or submittals are in conformance with the Design-Build Documents and approve them.

    **.2**    Determine that the documents or submittals are in conformance with the Design-Build Documents but request changes in the documents or submittals which shall be implemented by a Change in the Work.

    **.3**    Determine that the documents or submittals are not in conformity with the Design-Build Documents and reject them.

    **.4**    Determine that the documents or submittals are not in conformity with the Design-Build Documents, but accept them by implementing a Change in the Work

    **.5**    Determine that the documents or submittals are not in conformity with the Design-Build Documents, but accept them and request changes in the documents or submittals which shall be implemented by a Change in the Work

**§ A.2.3.3** The Design-Builder shall submit to the Owner for the Owner's approval, pursuant to Section A 2 3.1, any proposed change or deviation to previously approved documents or submittals  The Owner shall review each proposed change or deviation to previously approved documents or submittals which the Design-Builder submits to the Owner for the Owner's approval with reasonable promptness in accordance with Section A.2.3.1 and shall make one of the determinations described in Section A.2.3.2.

**§ A.2.3.4** Notwithstanding the Owner's responsibility under Section A.2.3.2, the Owner's review and approval of the Design-Builder's documents or submittals shall not relieve the Design-Builder of responsibility for compliance with the Design-Build Documents unless a) the Design-Builder has notified the Owner in writing of the deviation prior to approval by the Owner or, b) the Owner has approved a Change in the Work reflecting any deviations from the requirements of the Design-Build Documents.

**§ A.2.3.5** The Owner may visit the site to keep informed about the progress and quality of the portion of the Work completed. However, the Owner shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. Visits by the Owner shall not be construed to create an obligation on the part of the Owner to make on-site inspections to check the quantity or quality of the Work. The Owner shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Design-Builder's rights and responsibilities under the Design-Build Documents, except as provided in Section A.3.3.7.

**§ A.2.3.6** The Owner shall not be responsible for the Design-Builder's failure to perform the Work in accordance with the requirements of the Design-Build Documents. The Owner shall not have control over or charge of and will not be responsible for acts or omissions of the Design-Builder, Architect, Contractors, or their agents or employees, or any other persons or entities performing portions of the Work for the Design-Builder.  Nothing within this document shall be interpreted as creating a contractual relationship between the Design-Builder, its contractors, subcontractors, suppliers and labor and the Financing Entity, nor shall the Financing Entity have any authority to direct Work or authorize changes directly to the Design-Builder, contractors, subcontractors, suppliers, or trade personnel. If the Design-Builder, its contractors, subcontractors, vendors, tradesperson, or employees proceed with work at the direction of the Financing Entity that is not authorized by the Owner, the Owner shall have no obligation to reimburse

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                                                                                            (1752527221)

Init.

6

the Design-Builder for the cost of such unauthorized work, or for the costs associated with correcting such unauthorized work.

**§ A.2.3.7** The Owner may reject Work that does not conform to the Design-Build Documents. Whenever the Owner considers it necessary or advisable, the Owner shall have authority to require inspection or testing of the Work in accordance with Section A.13.5.2, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Owner nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Owner to the Design-Builder, the Architect, Contractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ A.2.3.8** The Owner may appoint an on-site project representative to observe the Work and to have such other responsibilities as the Owner and the Design-Builder agree to in writing.

**§ A.2.3.9** The Owner shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion.

**§ A.2.4 OWNER'S RIGHT TO STOP WORK**
**§ A.2.4.1** If the Design-Builder fails to correct Work which is not in accordance with the requirements of the Design-Build Documents as required by Section A.12.2 or persistently fails to carry out Work in accordance with the Design-Build Documents, the Owner may issue a written order to the Design-Builder to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to any delay, interference, idle equipment , extended overhead, extended general conditions claims, or claims for additional payment or compensation whatsoever by Design-Builder(unless Owner's order was not reasonably justified considering the materiality or significance of Design-Builder's failure), or a duty on the part of the Owner to exercise this right for the benefit of the Design-Builder or any other person or entity, except to the extent required by Section A.6.1.3.

**§ A.2.5 OWNER'S RIGHT TO CARRY OUT THE WORK**
**§ A.2.5.1** If the Design-Builder defaults or neglects to carry out the Work in accordance with the Design-Build Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Design-Builder a second written notice to correct such deficiencies within a three-day period. If the Design-Builder within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case, an appropriate Change Order shall be issued deducting from payments then or thereafter due the Design-Builder the reasonable cost of correcting such deficiencies. If payments due the Design-Builder are not sufficient to cover such amounts, the Design-Builder shall pay the difference to the Owner.

**ARTICLE A.3    DESIGN-BUILDER**
**§ A.3.1 GENERAL**
**§ A.3.1.1** The Design-Builder is the person or entity identified as such in the Agreement and is referred to throughout the Design-Build Documents as if singular in number. The Design-Builder may be an architect or other design professional, a construction contractor, a real estate developer or any other person or entity legally permitted to do business as a design-builder in the location where the Project is located. The term "Design-Builder" means the Design-Builder or the Design-Builder's authorized representative. The Design-Builder's representative is authorized to act on the Design-Builder's behalf with respect to the Project

**§ A.3.1.2** The Design-Builder shall perform the Work in accordance with the Design-Build Documents. Where Owner modifies the Design-Build Documents by the methods in Article 1.3 of the Agreement, Owner has reviewed the Design-Build documents solely for meeting Owner's expectations of Project appearance and suitability for housing students. The Owner shall have no responsibility for completeness of design or construction documents, compliance with codes, statutes, laws, city regulations, or any responsibility for technical analysis of systems and equipment nor building systems capabilities or performance. The Project design shall remain the responsibility of the Design-Builder.

Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                     (1752527221)

**7**

§ **A.3.1.3** The Design-Builder shall disclose any financial, stock, partnership or family relationships between any officers of the Design-Builder or affiliated businesses and any trade contractor, subcontractors or vendors for approval by the Owner before executing any agreements  The Design-Builder shall not have any profit sharing or rebate agreements with any trade contractor, subcontractor or vendor except normal trade discounts for early payment, which shall be passed on to the Owner, when Owner funding is provided to take advantage of such discounts. The Design-Builder shall provide the Owner with copies of all applicable trade contracts, subcontracts, Purchase orders and any subsequent change orders to these agreements upon Owner request.

§ **A.3.2 DESIGN SERVICES AND RESPONSIBILITIES**
§ **A.3.2.1** When applicable law requires that services be performed by licensed professionals, the Design-Builder shall provide those services through the performance of qualified persons or entities duly licensed to practice their professions. The Owner understands and agrees that the services performed by the Design-Builder's Architect and the Design-Builder's other design professionals and consultants are undertaken and performed in the sole interest of and for the exclusive benefit of the Design-Builder and the Owner.

§ **A.3.2.2** The agreements between the Design-Builder and Architect or other design professionals identified in the Agreement, and in any subsequent Modifications, shall be in writing. These agreements, including services and financial arrangements with respect to this Project, shall be promptly and fully disclosed to the Owner upon the Owner's written request.

§ **A.3.2.3** The Design-Builder shall be responsible to the Owner for acts and omissions of the Design-Builder's employees, Architect, Contractors, Subcontractors and their agents and employees, and other persons or entities, including the Architect and other design professionals, performing any portion of the Design-Builder's obligations under the Design-Build Documents.

§ **A.3.2.4** The Design-Builder shall carefully study and compare the Design-Build Documents, materials and other information provided by the Owner pursuant to Section A.2.2, shall take field measurements of any existing conditions related to the Work, shall observe any conditions at the site affecting the Work, and report promptly to the Owner any errors, inconsistencies or omissions discovered.

§ **A.3.2.5** The Design-Builder shall provide to the Owner for Owner's written approval design documents sufficient to establish the size, quality and character of the Project; its architectural, structural, mechanical and electrical systems; and the materials and such other elements of the Project to the extent required by the Design-Build Documents. Deviations, if any, from the Design-Build Documents shall be disclosed in writing.

§ **A.3.2.6** Upon the Owner's written approval of the design documents submitted by the Design-Builder, the Design-Builder shall provide construction documents for review and written approval by the Owner  The construction documents shall set forth in detail the requirements for construction of the Project. The construction documents shall include drawings and specifications that establish the quality levels of materials and systems required. Deviations, if any, from the Design-Build Documents shall be disclosed in writing. Construction documents may include drawings, specifications, and other documents and electronic data setting forth in detail the requirements for construction of the Work, and shall:
    .1    be consistent with the approved design documents;
    .2    provide information for the use of those in the building trades; and
    .3    include documents customarily required for regulatory agency approvals.

§ **A.3.2.7** The Design-Builder shall meet with the Owner periodically to review progress of the design and construction documents.

§ **A.3.2.8** Upon the Owner's written approval of construction documents, the Design-Builder, with the assistance of the Owner, shall prepare and file documents required to obtain necessary approvals of governmental authorities having jurisdiction over the Project.

§ **A.3.2.9** The Design-Builder shall obtain from each of the Design-Builder's professionals and furnish to the Owner certifications with respect to the documents and services provided by such professionals (a) that, to the best of their knowledge, information and belief, the documents or services to which such certifications relate (i) are consistent with

Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**

8

(1752527221)

the Project Criteria set forth in the Design-Build Documents, except to the extent specifically identified in such certificate, (ii) comply with applicable professional practice standards, and (iii) comply with applicable laws, ordinances, codes, rules and regulations governing the design of the Project; and (b) that the Owner and its consultants shall be entitled to rely upon the accuracy of the representations and statements contained in such certifications.

**§ A.3.2.10** If the Owner requests the Design-Builder, the Architect or the Design-Builder's other design professionals to execute certificates other than those required by Section A.3.2.9, the proposed language of such certificates shall be submitted to the Design-Builder, or the Architect and such design professionals through the Design-Builder, for review and negotiation at least 14 days prior to the requested dates of execution. Neither the Design-Builder, the Architect nor such other design professionals shall be required to execute certificates that would require knowledge, services or responsibilities beyond the scope of their respective agreements with the Owner or Design-Builder.

**§ A.3.2.11** Design-Builder warrants, subject to the applicable standard of care, that its designs, Design-Build Documents, and services shall conform to all federal, state, and local statutes and regulations governing its services, the Project, and the Work. Without limiting the generality of the foregoing, it is expressly agreed that the Design-Builder (including the Architect and any Contractors and consultants to Design-Builder (collectively "Consultants")) will perform all professional services hereunder, subject to the applicable standard of care, so that the Project will be designed and constructed in all respects in compliance with the requirements of the Fair Housing Act and the Americans with Disabilities Act, and any regulations and rules promulgated thereunder, and agrees that it and its Consultants will defend, indemnify and hold the Owner harmless against any and all claims, demands, liabilities, damages, penalties, actions or causes of action alleging noncompliance of the Project, as designed and as constructed, with any of said requirements. However, Design-Builder shall not be required to defend, indemnify or hold harmless the Owner for the amounts of such claims, demands, liabilities, penalties, actions or causes of action caused in whole or part from Owner's negligence or unlawful acts or omissions.

Notwithstanding any language in this Agreement to the contrary, Design-Builder shall not be liable for, and Owner may not recover from Design-Builder, liquidated damages for the failure to achieve Substantial Completion by the SCD for the amount of said delay that is due to Architect's negligence or unlawful acts or omissions, or Architect's failure to perform in accordance with its agreement with Design Builder. Furthermore, the Design-Builder's maximum liability under this Section A.3.2.11, or otherwise under the Agreement, for the amount that is attributable to Architect's negligence, failures, unlawful acts or omissions or Architect's failure to perform in accordance with its agreement with Design Builder, shall not exceed the monetary sum of the of the insurance maintained and listed in Section A.1.9 of Exhibit A to the B143 contract between the Design-Builder and Architect, plus  (ii) the monetary amount of excess Errors and Omissions/Professional Liability coverage on the Architect procured by the Owner at Owner's expense in cooperation with the Architect.  The contract between Design-Builder and the Architect shall state that the Architect acknowledges and assumes a duty to the Owner, subject to the applicable standard of care, as to the requirements of A. 3.2.11 and that the Owner is a third-party intended beneficiary of the contract between the Design Builder and Architect.

**§ A.3.3 CONSTRUCTION**
**§ A.3.3.1** Unless otherwise agreed by the parties in a separate instrument, the Design-Builder shall perform no construction Work prior to the Owner's review and approval of the construction documents. The Design-Builder shall perform no portion of the Work for which the Design-Build Documents require the Owner's review of submittals, such as Shop Drawings, Product Data and Samples, until the Owner has approved each submittal.

**§ A.3.3.2** The construction Work shall be in accordance with approved submittals, except that the Design-Builder shall not be relieved of responsibility for deviations from requirements of the Design-Build Documents by the Owner's approval of design and construction documents or other submittals such as Shop Drawings, Product Data, Samples or other submittals unless the Design-Builder has specifically informed the Owner in writing of such deviation at the time of submittal and (1) the Owner has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Design-Builder shall not be relieved of responsibility for errors or omissions in design and construction documents or other submittals such as Shop Drawings, Product Data, Samples or other submittals by the Owner's approval thereof.

**§ A.3.3.3** The Design-Builder shall direct specific attention, in writing or on resubmitted design and construction documents or other submittals such as Shop Drawings, Product Data, Samples or similar submittals, to revisions other

Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                                    (1752527221)

9

than those requested by the Owner on previous submittals  In the absence of such written notice, the Owner's approval of a resubmission shall not apply to such revisions.

§ **A.3.3.4** When the Design-Build Documents require that a Contractor provide professional design services or certifications related to systems, materials or equipment, or when the Design-Builder in its discretion provides such design services or certifications through a Contractor, the Design-Builder shall cause professional design services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professionals, if prepared by others, shall bear such design professional's written approval. The Owner shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals.

§ **A.3.3.5** The Design-Builder shall be solely responsible for and have control over all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Design-Build Documents.

§ **A.3.3.5.1**  Design-Builder agrees that the Owner may install at its option and cost, web-based camera(s) on the site and within buildings for purposes of monitoring work progress and marketing, as long as camera locations do not interfere with the Design-Builder's ability to proceed with the Work. The Design-Builder shall be advised of the camera web addresses and will have access to the camera website. These cameras are not intended for security and are not monitored for security.

§ **A.3.3.5.2** The Design-Builder shall keep the Owner informed of the progress and quality of the Work and at least once per month meet with the Owner/Developer to review progress, the schedule for the upcoming few weeks, quality control, safety, submittals and approvals, change orders or any other issue related to the Work that needs discussion, clarification or coordination.  The Design-Builder shall attend other meetings with the Owner, as reasonably required to address Project coordination issues, quality control, schedule, safety, or other project Work issues, to address Design-Builder deficiencies or as necessary to facilitate the timely completion of the Project, when such issues cannot be reasonably addressed in the DAC meetings.

§ **A.3.3.6** Deleted.

§ **A.3.3.7** The Design-Builder shall be responsible for the supervision and direction of the Work, using the Design-Builder's best skill and attention. If the Design-Build Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Design-Builder shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures  If the Design-Builder determines that such means, methods, techniques, sequences or procedures may not be safe, the Design-Builder shall give timely written notice to the Owner and shall not proceed with that portion of the Work without further written instructions from the Owner. If the Design-Builder is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Design-Builder, the Owner shall be solely responsible for any resulting loss or damage.

§ **A.3.3.8** The Design-Builder shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

§ **A.3.4 LABOR AND MATERIALS**
§ **A.3.4.1** Unless otherwise provided in the Design-Build Documents, the Design-Builder shall provide or cause to be provided and shall pay for design services, labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work

§ **A.3.4.2** When a material is specified in the Design-Build Documents, the Design-Builder may make substitutions only with the consent of the Owner and, if appropriate, in accordance with a Change Order.

Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                    (1752527221)

**10**

§ **A.3.4.3** The Design-Builder shall enforce strict discipline and good order among the Design-Builder's employees and other persons carrying out the Design-Build Contract. The Design-Builder shall not permit employment of unfit persons or persons not skilled in tasks assigned to them. The Design-Builder shall provide subcontractors and suppliers/vendors that are duly licensed, qualified and capable of providing all services within their scope necessary to complete the Work satisfactorily

§ **A.3.5 WARRANTY**
§ **A.3.5.1** The Design-Builder warrants to the Owner that materials and equipment furnished under the Design-Build Documents will be of good quality and new unless otherwise required or permitted by the Design-Build Documents, that the Work will be free from defects not inherent in the quality required or permitted by law or otherwise, and that the Work will conform to the requirements of the Design-Build Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective The Design-Builder's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Design-Builder, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Owner, the Design-Builder shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

§ **A.3.6 TAXES**
§ **A.3.6.1** The Design-Builder shall pay all sales, consumer, use and similar taxes for the Work provided by the Design-Builder which had been legally enacted on the date of the Agreement, whether or not yet effective or merely scheduled to go into effect.

§ **A.3.7 PERMITS, FEES AND NOTICES**
§ **A.3.7.1** The Design-Builder shall secure and pay for building and other permits and governmental fees, licenses and inspections necessary for the proper execution and completion of the Work as set forth in Section 2.2.5 hereinabove

§ **A.3.7.2** The Design-Builder shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities relating to the Project.

§ **A.3.7.3** It is the Design-Builder's responsibility to ascertain that the Work is in accordance with applicable laws, ordinances, codes, rules and regulations.

§ **A.3.7.4** If the Design-Builder performs Work contrary to applicable laws, ordinances, codes, rules and regulations, the Design-Builder shall assume responsibility for such Work and shall bear the costs attributable to correction.

§ **A.3.8 ALLOWANCES**
§ **A.3.8.1** The Design-Builder shall include in the Contract Sum all allowances stated in the Design-Build Documents and all such allowances shall constitute part of the GMP. In no event shall such allowances cause the GMP to be exceeded or be in addition to the GMP in the absence of a fully executed Change Order contemplating and authorizing the same Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Design-Builder shall not be required to employ persons or entities to which the Design-Builder has reasonable objection.

§ **A.3.8.2** Unless otherwise provided in the Design-Build Documents:
  .1   allowances shall cover the cost to the Design-Builder of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
  .2   Design-Builder's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and
  .3   whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section A.3.8.2.1 and (2) changes in Design-Builder's costs under Section A.3.8.2.2.

§ **A.3.8.3** Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                            (1752527221)

Init.

11

### § A.3.9 DESIGN-BUILDER'S SCHEDULE

§ A.3.9.1 The Design-Builder, promptly after execution of the Design-Build Contract, shall prepare and submit for the Owner's approval the Design-Builder's schedule for the Work. The schedule shall not exceed time limits and shall be in such detail as required under the Design-Build Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, and as further stated below, shall be related to the entire Project (including design work and, to the extent as can be anticipated by Design-Builder, submittal approvals to the Owner and jurisdictional authorities) to the extent required by the Design-Build Documents, shall provide for expeditious and practicable execution of the Work and shall include allowances for periods of time required for the Owner's review and for approval of submissions and building inspections by authorities having jurisdiction over the Project, all of which are to be integrated and coordinated with the overall schedule

§ A.3.9.2 The Design-Builder agrees to take a proactive approach to scheduling the Project, understanding that an on-time completion is critical. The Design-Builder agrees to furnish an Overall Project Schedule using the Design-Builder's scheduling software in a CPM format acceptable to the Owner  The Design-Builder agrees to issue to the Owner an updated Project Schedule in the format shown on Exhibit E  hereto denoting the actual progress on each scheduled work activity and the Work to be performed going forward on the critical path  once a month to the Owner (or in more frequent intervals if reasonably requested by Owner), and other parties as required by the Owner.

§ A.3.9.3 Design-Builder shall monitor the progress of the Work for conformance with the requirements of the construction schedule and shall promptly advise the Owner of any delays or potential delays in the critical path. In the event  Design-Builder reports any delays in the critical path that would result in a delay in achieving Substantial Completion by the SCD, Design-Builder shall propose an affirmative plan to correct the delay and get the construction progress back on schedule. Such affirmative plan may include, but not be limited to:

  (i) Requiring an increasing construction workforce in such quantities and crafts as will substantially improve the scheduled progress.
  (ii) Requiring and increasing the number of working hours per shift, working days per week or any combination of the foregoing to overcome any delays in the scheduled work progress. If the Design-Builder intends to use overtime, the Design-Builder shall provide a detailed breakdown and estimate for each trade who will work overtime.
  (iii) Rescheduling or re-sequencing of activities to achieve most practical concurrent accomplishment of work activities.
  (iv) Other measures as reasonably required by the Owner to make up for lost time or productivity in a cost efficient manner.

§ A.3.9.4 The Design-Builder shall prepare and keep current a schedule of submittals required by the Design-Build Documents.

§ A.3.9.5 The Design-Builder shall perform the Work in general accordance with the most recent schedules submitted to the Owner.

### § A.3.10 DOCUMENTS AND SAMPLES AT THE SITE
§ A.3.10.1 The Design-Builder shall maintain at the site for the Owner one record copy of the drawings, specifications, addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be delivered to the Owner upon completion of the Work.

### § A.3.11 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES
§ A.3.11.1 Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Design-Builder or a Contractor, Subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ A.3.11.2 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Design-Builder to illustrate materials or equipment for some portion of the Work.

AIA Document A141™ – 2004 Exhibit A, Copyright © 2004 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                         (1752527221)

Init. / 

12

**§ A.3.11.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged

**§ A.3.11.4** Shop Drawings, Product Data, Samples and similar submittals are not Design-Build Documents  The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Design-Build Documents the way by which the Design-Builder proposes to conform to the Design-Build Documents.

**§ A.3.11.5** The Design-Builder shall review for compliance with the Design-Build Documents and approve and submit to the Owner only those Shop Drawings, Product Data, Samples and similar submittals required by the Design-Build Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

**§ A.3.11.6** By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Design-Builder represents that the Design-Builder has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Design-Build Documents.

**§ A.3.12 USE OF SITE**
**§ A.3.12.1** The Design-Builder shall confine operations at the site to areas permitted by law, ordinances, permits and the Design-Build Documents, and shall not unreasonably encumber the site with materials or equipment.

**§ A.3.13 CUTTING AND PATCHING**
**§ A.3.13.1** The Design-Builder shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**§ A.3.13.2** The Design-Builder shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction or by excavation. The Design-Builder shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Design-Builder shall not unreasonably withhold from the Owner or a separate contractor the Design-Builder's consent to cutting or otherwise altering the Work

**§ A.3.14 CLEANING UP**
**§ A.3.14.1** The Design-Builder shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Design-Build Contract. At completion of the Work, the Design-Builder shall remove from and about the Project waste materials, rubbish, the Design-Builder's tools, construction equipment, machinery and surplus materials

**§ A.3.14.2** If the Design-Builder fails to clean up as provided in the Design-Build Documents, the Owner may do so and the cost thereof shall be charged to the Design-Builder.

**§ A.3.15 ACCESS TO WORK**
**§ A.3.15.1** The Design-Builder shall provide the Owner access to the Work in preparation and progress wherever located.

**§ A.3.16 ROYALTIES, PATENTS AND COPYRIGHTS**
**§ A.3.16.1** The Design-Builder shall pay all royalties and license fees. The Design-Builder shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required or where the copyright violations are contained in drawings, specifications or other documents prepared by or furnished to the Design-Builder by the Owner. However, if the Design-Builder has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Design-Builder shall be responsible for such loss unless such information is promptly furnished to the Owner.

Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                              (1752527221)

13

## § A.3.17 INDEMNIFICATION

§ A.3.17.1 To the fullest extent permitted by law, the Design-Builder shall defend, indemnify and hold harmless the Owner and its successors and assigns, Owner's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death or to or injury to or destruction of tangible property other than the Work itself, but only  for such claim,  damage, loss or expense caused by the negligent acts or omissions of the Design-Builder, Architect, a Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable  Such obligation shall not be construed to negate, abridge or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section A 3.17

§ A.3.17.2 In claims against any person or entity indemnified under this Section A.3.17 by an employee of the Design-Builder, the Architect, a Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section A.3.17.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Design-Builder, the Architect or a Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE A.4   DISPUTE RESOLUTION
### § A.4.1 CLAIMS AND DISPUTES

§ A.4.1.1 Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Design-Build Contract terms, payment of money, extension of time or other relief with respect to the terms of the Design-Build Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Design-Builder arising out of or relating to the Design-Build Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim

§ A.4.1.2 Notice of Claims and Time Limits on Claims. The parties shall take all reasonable steps to provide notice of potential Claims to the other party in writing by facsimile or e-mail within  two (2) business days after the claimant first recognizes, or reasonably should have recognized, that the condition or event may give rise to a potential Claim. This obligation shall not constitute a condition precedent to the assertion of a Claim.

§ A.4.1.2.1 Assertion of Claims. Actual assertion of Claims must be provided to the other party in writing by facsimile or e-mail within 21 calendar days after the occurrence of the event giving rise to such Claim or within 21 calendar days after the claimant first recognizes, or reasonably should have recognized, that the condition or event may give rise to a Claim. Owner and Design-Builder agree that the submission of a written Claim assertion is a condition precedent to the right to claim any remedy under this Agreement, and the Owner's or Design-Builder's failure to comply with this requirement shall constitute a waiver of any Claims, rights or other remedy otherwise available.

§ A.4.1.3 Continuing Performance. Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section A 9 7.1 and Article A.14, the Design-Builder shall proceed diligently with performance of the Design-Build Contract and the Owner shall continue to make payments in accordance with the Design-Build Documents.

§ A.4.1.4 Claims for Concealed or Unknown Conditions.
If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Design-Build Documents or (2) unknown physical conditions of an unusual nature in the local area and which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Design-Build Documents, then the observing party shall take all reasonable steps to give written notice by e-mail or facsimile to the other party promptly  before conditions are disturbed within two (2) business  days after the observing party first recognizes, or reasonably should have recognized, that the said conditions may give rise to a potential Claim.  Any assertion of Claims by Design-Builder associated therewith must be in accordance with Section A 4.1.2.1.  The Owner shall promptly investigate such conditions and, if they differ materially and cause  an increase or decrease in the Design-Builder's cost of, or time required for, performance of any part of the Work, shall negotiate with the Design-Builder an equitable adjustment in the Contract Sum or Contract Time, or both, to be accomplished by a written and signed Change Order setting forth the specific number of days of any increase or decrease to the Contract Time and a specific amount of increase or decrease to the Contract Sum. "TBD" shall in no event be acceptable as it relates to changes in Contract

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                                                          (1752527221)

14

Time or Contract Sum in a Change Order. If the Owner, in its reasonable discretion, determines that the conditions at the site are not materially different from those indicated in the Design-Build Documents and that no change in the terms of the Design-Build Contract is justified, the Owner shall so notify the Design-Builder in writing, stating the reasons. Claims by the Design-Builder in opposition to such determination must be made in writing and sent to the Owner by e-mail or facsimile within 21 calendar days after the Owner has given notice of the decision  If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted by fully executed Change Order as set forth herein, but if the Owner and Design-Builder cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall proceed pursuant to Section A.4 2 through 4.4.  This Section is subject to the representation in § 9.2 of the Agreement.

**§ A.4.1.5 Claims for Additional Cost.** If the Design-Builder wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section A.10.6.

**§ A.4.1.6** If the Design-Builder believes additional cost is involved for reasons including but not limited to (1) an order by the Owner to stop the Work where the Design-Builder was not at fault, (2) a written order for the Work issued by the Owner, (3) failure of payment by the Owner, (4) termination of the Design-Build Contract by the Owner, (5) Owner's suspension or (6) other reasonable grounds, Claim shall be filed in accordance with this Section A.4.1

**§ A.4.1.7 Claims for Additional Time**
**§ A.4.1.7.1** If the Design-Builder wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Design-Builder's Claim shall include an estimate of the time and its effect on the progress of the Work. In the case of a continuing delay, only one Claim is necessary.

**§ A.4.1.7.2** If adverse weather conditions are the basis for a Claim for additional time, such claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**§ A.4.1.8 Injury or Damage to Person or Property.** If either party to this Design-Build Contract suffers injury or damage to person or property because of a condition created, or an act or omission of the other party or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate and evaluate the matter, including all pertinent data and information then available.

**§ A.4.1.9** If unit prices are stated in the Design-Build Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Design-Builder, the applicable unit prices shall be equitably adjusted

**§ A.4.1.10 Claims for Consequential Damages.** Design-Builder and Owner waive Claims against each other for consequential damages arising out of or relating to the Design-Build Contract. This mutual waiver includes:
.1    damages incurred by the Owner for rental expenses, income, for losses of use, profit, financing, loss of business and reputation, and for loss of management or employee productivity or of the services of such persons; and
.2    damages incurred by the Design-Builder for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article A.14  Nothing contained in this Section A.4.1.10 shall be deemed to preclude an award of direct damages, when applicable, in accordance with the requirements of the Design-Build Documents.

Notwithstanding the foregoing, Owner does not waive claims for consequential damages or otherwise against the Architect that arise out of or relate to Architect's failure to perform as is set out in  Architect's B143 Agreement with the Design-Builder up to the monetary amounts set forth in Section A.1.9 of the B143 Agreement.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                                                         (1752527221)

Init.

15

§ **A.4.1.11** If the enactment or revision of codes, laws or regulations or official interpretations which govern the Project cause an increase or decrease of the Design-Builder's cost of, or time required for, performance of the Work, the Design-Builder shall be entitled to an equitable adjustment in Contract Sum or Contract Time which shall be accomplished and evidenced by Change Order. If the Owner and Design-Builder cannot agree upon an adjustment in the Contract Sum or Contract Time, the Design-Builder shall submit a Claim pursuant to Section A.4 1

## § A.4.2 RESOLUTION OF CLAIMS AND DISPUTES

§ **A.4.2.1** Intentionally omitted.

§ **A.4.2.2** Intentionally omitted.

§ **A.4.2.3** Intentionally omitted.

§ **A.4.2.4** In the event of a Claim against the Design-Builder, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Design-Builder's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ **A.4.2.5** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to initial resolution of the Claim.

## § A.4.3 MEDIATION
§ **A.4.3.1** Any Claim arising out of or related to the Design-Build Contract, except those waived as provided for in Sections A.4.1.10, A.9.10.4 and A.9.10.5, shall proceed as set forth in Section A.4.3.2 through A.4.3.3, as a condition precedent to arbitration.

§ **A.4.3.2** The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement between their respective project representatives within fourteen (14) days of such dispute arising. If unsuccessful, within the next thirty (30) days, the parties shall engage in confidential mediation under the mediation procedures commonly used in the jurisdiction of the Project before initiating any binding dispute resolution action. The parties shall equally split any mediator fees and expenses.

§ **A.4.3.3** The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

## § A.4.4 ARBITRATION
§ **A.4.4.1** Claims, except those waived as provided for in Sections A.4.1.10, A.9.10.4 and A 9.10.5, for which initial decisions have not become final and binding, and which have not been resolved by mediation but which are subject to arbitration pursuant to Sections 6.2 and 6.3 of the Agreement or elsewhere in the Design-Build Documents, shall be decided by arbitration unless the parties mutually agree otherwise. Such arbitration shall be conducted in accordance with the Construction Industry Rules of the American Arbitration Association. However, any such arbitration shall not be administered by the American Arbitration Association. The parties agree that there shall be one (1) arbitrator who shall be a recognized construction attorney/arbitrator and that the parties shall be allowed to take reasonable discovery. Any such arbitration proceeding shall be held in the city of the Project unless otherwise mutually agreed by the parties. Each party shall bear its own attorneys' fees and costs associated with the dispute and arbitration of the dispute and shall split equally any and all arbitrator fees and expenses. Notwithstanding the foregoing dispute resolution requirements, either party may initiate litigation for statute of limitations reasons or to seek a preliminary injunction or other provisional judicial relief if in such party's sole judgment such action is necessary to preserve its rights. Despite such action, the parties will continue to participate in good faith in the dispute resolution processes required herein.



Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:** (1752527221)

16



§ **A.4.4.2** A demand for arbitration may be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Section A.13.6

§ **A.4.4.3** An arbitration pursuant to this Section A.4 4 may be joined with an arbitration involving common issues of law or fact between the Owner or Design-Builder and any person or entity with whom the Owner or Design-Builder has a contractual obligation to arbitrate disputes which does not prohibit consolidation or joinder  No other arbitration arising out of or relating to the Design-Build Contract shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to the Design-Build Contract or not a party to an agreement with the Owner or Design-Builder, except by written consent containing a specific reference to the Design-Build Contract signed by the Owner and Design-Builder and any other person or entities sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to the Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

§ **A.4.4.4 Claims and Timely Assertion of Claims.** The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ **A.4.4.5 Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be a reasoned award and final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE A.5   AWARD OF CONTRACTS
§ **A.5.1** Unless otherwise stated in the Design-Build Documents or the bidding or proposal requirements, the Design-Builder, as soon as practicable after award of the Design-Build Contract, shall furnish in writing to the Owner the names of additional persons or entities not originally included in the Design-Builder's proposal or in substitution of a person or entity (including those who are to furnish design services or materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Owner will promptly reply to the Design-Builder in writing stating whether or not the Owner has reasonable objection to any such proposed additional person or entity. Failure of the Owner to reply promptly shall constitute notice of no reasonable objection.

§ **A.5.2** The Design-Builder shall not contract with a proposed person or entity to whom which the Owner has made reasonable and timely objection. The Design-Builder shall not be required to contract with anyone to whom the Design-Builder has made reasonable objection.

§ **A.5.3** If the Owner has reasonable objection to a person or entity proposed by the Design-Builder, the Design-Builder shall propose another to whom the Owner has no reasonable objection. If the proposed but rejected additional person or entity was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute person's or entity's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Design-Builder has acted promptly and responsively in submitting names as required.

§ **A.5.4** The Design-Builder shall not change a person or entity previously selected if the Owner makes, or has previously made, reasonable objection to such substitute.

§ **A.5.5 CONTINGENT ASSIGNMENT OF CONTRACTS**
§ **A.5.5.1** Each agreement for a portion of the Work is assigned by the Design-Builder to the Owner provided that:
.1   assignment is effective only after termination of the Design-Build Contract by the Owner for cause pursuant to Section A.14.2 and only for those agreements which the Owner accepts by notifying the contractor in writing; and
.2   assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Design-Build Contract

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                                                          (1752527221)

**17**



**§ A.5.5.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Contractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**ARTICLE A.6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
**§ A.6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS**
**§ A.6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces and to award separate contracts in connection with other portions of the Project or other construction or operations on the site. The Design-Builder shall cooperate with the Owner and separate contractors whose work might interfere with the Design-Builder's Work. If the Design-Builder claims that delay or additional cost is involved because of such action by the Owner, the Design-Builder shall make such Claim as provided in Section A.4.1.

**§ A.6.1.2** The term "separate contractor" shall mean any contractor retained by the Owner pursuant to Section A 6.1.1.

**§ A.6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the work of the Design-Builder, who shall cooperate with them. The Design-Builder shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Design-Builder shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Design-Builder, separate contractors and the Owner until subsequently revised.

**§ A.6.2 MUTUAL RESPONSIBILITY**
**§ A.6.2.1** The Design-Builder shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities and shall connect and coordinate the Design-Builder's construction and operations with theirs as required by the Design-Build Documents.

**§ A.6.2.2** If part of the Design-Builder's Work depends for proper execution or results upon design, construction or operations by the Owner or a separate contractor, the Design-Builder shall, prior to proceeding with that portion of the Work, promptly report to the Owner in writing apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Design-Builder so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Design-Builder's Work, except as to defects not then reasonably discoverable.

**§ A.6.2.3** The Owner shall be reimbursed by the Design-Builder for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Design-Builder The Owner shall be responsible to the Design-Builder for costs incurred by the Design-Builder because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

**§ A.6.2.4** The Design-Builder shall promptly remedy damage wrongfully caused by the Design-Builder to completed or partially completed construction or to property of the Owner or separate contractors.

**§ A.6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described in Section A.3.13.

**§ A.6.2.6** The Design-Builder shall not be required to accept assignment of any purchase orders or other agreements for procurement of materials or equipment entered into by Owner that do not meet the Design-Builder's reasonable qualification requirements. The Cost of the Work includes costs and expenses connected with delivery, storage, insurance, installation, and testing of materials or equipment purchased by Owner, if Design-Builder accepts assignment of such an agreement. Upon accepting such an assignment, Design-Builder shall warrant and correct the Work associated with the material or equipment as if Design-Builder had purchased it directly.

**§ A.6.3 OWNER'S RIGHT TO CLEAN UP**
**§ A.6.3.1** If a dispute arises among the Design-Builder, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Owner shall allocate the cost among those responsible.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                      (1752527221)

Init.



18

## ARTICLE A.7   CHANGES IN THE WORK
### § A.7.1 GENERAL
§ **A.7.1.1** Changes in the Work may be accomplished after execution of the Design-Build Contract, and without invalidating the Design-Build Contract, by Change Order or Construction Change Directive, subject to the limitations stated in this Article A.7 and elsewhere in the Design-Build Documents.

§ **A.7.1.2**  A Change Order shall be based upon agreement between the Owner and Design-Builder and shall be in a form approved by Owner and shall state specifically the change in amounts (either increased or decreased) to the Contract Sum and the specific number of change in days (either increased or decreased) to the Contract Time.  In no event shall a Change Order form contain an indeterminate change in time or amount, or the phrase "TBD."  If so, such Change Order form shall be deemed ineffective.  A Construction Change Directive may be issued by the Owner with or without agreement by the Design-Builder.

§ **A.7.1.3** Changes in the Work shall be performed under applicable provisions of the Design-Build Documents, and the Design-Builder shall proceed promptly, unless otherwise provided in the Change Order or Construction Change Directive.  Except as permitted in Article 4 above or Article A.7.3, a change in the Contract Sum or the Contract Time shall be accomplished only by Change Order.  Accordingly, no course of conduct or dealings between the parties, nor express or implied acceptance of alterations or additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work shall be the basis of any claim for an increase in any amounts due under the Design-Build Documents or for a change in any time period provided for in the Design-Build Documents

### § A.7.2 CHANGE ORDERS
§ **A.7.2.1**  A Change Order is a written instrument signed by the Owner and Design-Builder stating their agreement upon all of the following:
- .1     a change in the Work;
- .2     the amount of the adjustment, if any, in the Contract Sum; and
- .3     the extent of the adjustment, if any, in the Contract Time

§ **A.7.2.2** If the Owner requests a proposal for a change in the Work from the Design-Builder and subsequently elects not to proceed with the change, a Change Order shall be issued to reimburse the Design-Builder for any costs incurred for estimating services, design services or preparation of proposed revisions to the Design-Build Documents.

§ **A.7.2.3** Methods used in determining adjustments to the Contract Sum may include those listed in Section A 7 3 3.  Agreement on any Change Order shall constitute a final settlement of all matters relating to the change in the Work that is the subject of the Change Order, including, but not limited to, all direct and indirect costs associated with such change, any impact (singular or cumulative) such change may have on the unchanged Work, and any and all adjustments to the Contract Sum, Contract Time and the construction schedule.  In the event a Change Order increases the Contract Sum, the Design-Builder shall include the Work covered by such Change Orders in Applications for Payment as if such Work were originally part of the Design-Build Documents and do so on the Payment Application form for the month covering the Work was performed that is the subject of the Change Order as set forth previously in this Agreement.

### § A.7.3 CONSTRUCTION CHANGE DIRECTIVES
§ **A.7.3.1**  A Construction Change Directive is a written order signed by the Owner directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Design-Build Contract, order changes in the Work within the general scope of the Design-Build Documents consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ **A.7.3.2**  A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ **A.7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                          (1752527221)

Init.

**19**

.1 mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2 unit prices stated in the Design-Build Documents or subsequently agreed upon, or equitably adjusted as provided in Section A.4 1.9;

.3 cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4 as provided in Section A.7.3.6

**§ A.7.3.4** Upon receipt of a Construction Change Directive, the Design-Builder shall promptly proceed with the change in the Work involved and advise the Owner of the Design-Builder's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**§ A.7.3.5** A Construction Change Directive signed by the Design-Builder indicates the agreement of the Design-Builder therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ A.7.3.6** If the Design-Builder does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Owner on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Section A.7.3.3.3, the Design-Builder shall keep and present, in such form as the Owner may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Design-Build Documents, costs for the purposes of this Section A.7.3.6 shall be limited to the following:

.1 additional costs of professional services;

.2 costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.3 costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.4 rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Design-Builder or others;

.5 costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.6 additional costs of supervision and field office personnel directly attributable to the change.

**§ A.7.3.7** The amount of credit to be allowed by the Design-Builder to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ A.7.3.8** Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Owner shall make an interim determination for purposes of monthly payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of the Design-Builder to disagree and assert a Claim in accordance with Article A.4.

**§ A.7.3.9** When the Owner and Design-Builder reach agreement concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

## § A.7.4 MINOR CHANGES IN THE WORK
**§ A.7.4.1** The Owner shall have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Design-Build Documents. Such changes shall be effected by written order and shall be binding on the Design-Builder. The Design-Builder shall carry out such written orders promptly.

**AIA Document A141™ -- 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:** (1752527221)

**20**

## ARTICLE A.8    TIME

### § A.8.1 DEFINITIONS

§ A.8.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Design-Build Documents for Substantial Completion of the Work.

§ A.8.1.2 The date of commencement of the Work shall be the date stated in the Agreement unless provision is made for the date to be fixed in a notice to proceed issued by the Owner.

§ A.8.1.3 The date of Substantial Completion is the date determined by the Owner in accordance with Section A.9.8.

§ A.8.1.4 The term "day" as used in the Design-Build Documents shall mean calendar day unless otherwise specifically defined.

### § A.8.2 PROGRESS AND COMPLETION

§ A.8.2.1 Time limits stated in the Design-Build Documents are of the essence of the Design-Build Contract. By executing the Design-Build Contract, the Design-Builder confirms that the Contract Time is a reasonable period for performing the Work.

§ A.8.2.2 The Design-Builder shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence construction operations on the site or elsewhere prior to the effective date of insurance required by Article A.11 to be furnished by the Design-Builder and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Design-Build Documents or a notice to proceed given by the Owner, the Design-Builder shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ A.8.2.3 The Design-Builder shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

### § A.8.3 DELAYS AND EXTENSIONS OF TIME

§ A.8.3.1
If the Design-Builder is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, delays as set out in §3 6.18 of the B143 agreement between Design-Builder and Architect that are not the result of errors by Architect, unavoidable casualties or other causes beyond the Design-Builder's control, or by delay authorized by the Owner pending resolution of disputes pursuant to the Design-Build Documents, or by other causes which the Owner determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as permitted under the Design-Build Documents, to the extent such delay will prevent the Design-Builder from achieving substantial Completion within the Contract Time and if the performance of the Work is not work delayed by any other cause for which the Design-Builder is not entitled to an extension in the Contract Time under the Design-Build Documents. The Design-Builder further acknowledges and agrees that adjustments in the Contract Time will be permitted for a delay only to the extent such delay is not caused, or could not have been anticipated, by the Design-Builder, could not be limited or avoided by the Design-Builder's timely notice to the Owner of the delay, and is of a duration not less than one (1) day.

§ A.8.3.2 If the Design-Builder maintains that it has been delayed by any cause justifying an extension of time or other remedy permitted by the Design-Build Documents, the Design-Builder shall provide the Owner with written notice of that claim in accordance with A.4.1.2.1. The Design-Builder agrees that such notice is a condition precedent to the Design-Builder's right to claim an extension of time or other remedy, and the Design-Builder's failure to comply with this notice requirement shall constitute a waiver of any claims, rights or other remedy otherwise available to the Design-Builder for such delay, obstruction, or interference

§ A.8.3.3 An extension of time shall be the Design-Builder's sole and exclusive remedy for any such delay or hindrance, excepting any delay occasioned by a Change in the Work governed by Article A.7 hereof. In no event shall the Design-Builder be entitled to any increase in the Contract Sum, damages of any type, or additional compensation or reimbursement resulting from or occasioned by such delay or hindrance. If the delay or hindrance is due in whole or in part to (1) a cause reasonably foreseeable by the Design-Builder, or (2) a cause within the control of the

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®️ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®️ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                        (1752527221)

Init.

21



Design-Builder is responsible, the Design-Builder shall not be entitled to any extension of time or remedy whatsoever

## ARTICLE A.9   PAYMENTS AND COMPLETION
### § A.9.1 CONTRACT SUM
§ A.9.1.1 The Contract Sum is stated in the Design-Build Documents and, including authorized adjustments, is the total amount payable by the Owner to the Design-Builder for performance of the Work under the Design-Build Documents.

### § A.9.2 SCHEDULE OF VALUES
§ A.9.2.1 Before the first Application for Payment, where the Contract Sum is based upon a Stipulated Sum or the Cost of the Work plus Contractor's Fee with a Guaranteed Maximum Price, the Design-Builder shall submit to the Owner an initial schedule of values allocated to various portions of the Work prepared in such form and supported by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Design-Builder's Applications for Payment. The schedule of values may be updated periodically to reflect changes in the allocation of the Contract Sum.

### § A.9.3 APPLICATIONS FOR PAYMENT
§ A.9.3.1 At least ten days before the date established for each progress payment, the Design-Builder shall submit to the Owner an itemized Application for Payment for all Work performed and all materials supplied and/or purchased during the payment period covered by the Payment Application in accordance with the current schedule of values. Such application shall be notarized, if required, and supported by such data substantiating the Design-Builder's right to payment as the Owner may require, such as copies of requisitions from Contractors and material suppliers, and reflecting retainage if provided for in the Design-Build Documents:

§ A.9.3.1.1 As provided in Section A.7.3.8, such applications may include requests for payment on account of Changes in the Work which have been properly authorized by Construction Change Directives but are not yet included in Change Orders.

§ A.9.3.1.2 Such applications may not include requests for payment for portions of the Work for which the Design-Builder does not intend to pay to a Contractor, Subcontractor or material supplier or other parties providing services for the Design-Builder, unless such Work has been performed by others whom the Design-Builder intends to pay

§ A.9.3.2 Unless otherwise provided in the Design-Build Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance in writing by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Design-Builder with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

§ A.9.3.3 The Design-Builder warrants that title to all Work other than Instruments of Service covered by an Application for Payment will pass to the Owner no later than the time of payment. The Design-Builder further warrants that, upon submittal of an Application for Payment, all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Design-Builder's knowledge, information and belief, be free and clear of liens, Claims, security interests or encumbrances in favor of the Design-Builder, Contractors, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

 .1 The Design-Builder further expressly undertakes to defend the Owner and its successors and assigns, at the Design-Builder's sole expense, against any actions, lawsuits, or proceedings brought against the Owner as a result of liens filed against the Work, the site of any of the Work, the Project site and any improvements on it, payments from the Design-Builder, or any portion of the property of the Owner (referred to collectively as "liens" in this Subsection A.9.3.3), if said liens or claims of lien relate to the

**Init.** AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes: (1752527221) **22**

Work for which the Owner has made payment to the Design-Builder (even if the lien claimant and the Design-Builder disagree about the value of said portion of the Work). The Design-Builder agrees to defend, indemnify and hold the Owner and its successors and assigns harmless against any such liens or claims of lien and agrees to pay any judgment or lien resulting from any such actions, lawsuits, or proceedings.

.2 In the event that the Design-Builder fails to take effective action to remove any lien from the Work or the Owner's property, within a reasonable time, the Owner reserves the right to bond over any disputed mechanic's or material supplier's lien claim. The Owner may then withhold from the Design-Builder the costs, including any legal fees and expenses, incurred for bonding over such a lien

3 Notwithstanding the foregoing, Owner shall release any payments withheld due to a lien or claim of lien if the Design-Builder obtains security acceptable to the Owner or a lien bond that is (1) issued by a surety reasonably acceptable to the Owner; (2) in form and substance reasonably satisfactory to the Owner; and (3) in an amount as required by controlling law. By posting a lien bond or other reasonably acceptable security, however, Design-Builder shall not be relieved of any responsibilities to defend and indemnify the Owner and its successors and assigns. The cost of any premiums incurred in connection with such bonds and security shall be the Design-Builder's responsibility and shall not be part of, or cause any adjustment to, the Contract Sum

.4 Owner agrees to defend, indemnify and hold the Design-Builder and its successors and assigns harmless against any such liens or claims of lien resulting from Owner's failure to pay Design-Builder funds due and payable to Design-Builder for conforming work, and agrees to pay any judgment or lien resulting from any such actions, lawsuits, or proceedings.

### § A.9.4 ACKNOWLEDGEMENT OF APPLICATION FOR PAYMENT
§ A.9.4.1 The Owner shall, within seven days after receipt of the Design-Builder's Application for Payment, issue to the Design-Builder a written acknowledgement of receipt of the Design-Builder's Application for Payment indicating the amount the Owner has determined to be properly due and, if applicable, the reasons for withholding payment in whole or in part. Design-Builder shall attend a monthly Application for Payment review meeting with the Owner to review and approve the Design-Builder's Application for Payment once a month

### § A.9.5 DECISIONS TO WITHHOLD PAYMENT
§ A.9.5.1 The Owner may withhold a payment in whole or in part to the extent reasonably necessary to protect the Owner due to the Owner's determination that the Work has not progressed to the point indicated in the Application for Payment or that the quality of Work is not in accordance with the Design-Build Documents. The Owner may also withhold a payment or, because of subsequently discovered evidence, may nullify the whole or a part of an Application for Payment previously issued to such extent as may be necessary to protect the Owner from loss for which the Design-Builder is responsible, including loss resulting from acts and omissions, because of the following:

.1 defective Work not remedied;

.2 third-party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Design-Builder;

.3 failure of the Design-Builder to make payments properly to Contractors or for design services labor, materials or equipment;

.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5 damage to the Owner or a separate contractor;

.6 reasonable evidence that the Work will not be completed within the Contract Time and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7 persistent failure to carry out the Work in accordance with the Design-Build Documents

§ A.9.5.2 When the above reasons for withholding payment are removed, payment will be made for amounts previously withheld.

### § A.9.6 PROGRESS PAYMENTS
§ A.9.6.1 After the Owner has issued a written acknowledgement of receipt of the Design-Builder's Application for Payment, the Owner shall make payment of the amount, in the manner and within the time provided in the Design-Build Documents.

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/08/2013, and is not for resale.
User Notes:                                                                                                              (1752527221)

Init.

23



§ **A.9.6.2** Owner shall pay the Architect for the work and services provided by the Architect for the Project in the amount to which the Architect is entitled pursuant to the terms of the B143 Agreement.

§ **A.9.6.3** The Design-Builder shall pay each Contractor within seven (7) days of receipt of payment from the Owner, out of the amount paid to the Design-Builder on account of such Contractor's portion of the Work, the amount to which said Contractor is entitled, reflecting percentages actually retained from payments to the Design-Builder on account of the Contractor's portion of the Work  The Design-Builder shall, by appropriate agreement with each Contractor, require each Contractor to make payments to Subcontractors in a similar manner.

§ **A.9.6.4** The Owner shall have no obligation to pay or to see to the payment of money to a Contractor except as may otherwise be required by law.

§ **A.9.6.5** Payment to material suppliers shall be treated in a manner similar to that provided in Sections A.9.6.3 and A.9.6.4.

§ **A.9.6.6** A progress payment, or partial or entire use or occupancy of the Project by the Owner, shall not constitute acceptance of Work not in accordance with the Design-Build Documents.

§ **A.9.6.7** Unless the Design-Builder provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Design-Builder for Work properly performed by Contractors and suppliers shall be held by the Design-Builder for those Contractors or suppliers who performed Work or furnished materials, or both, under contract with the Design-Builder for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not be commingled with money of the Design-Builder, shall create any fiduciary liability or tort liability on the part of the Design-Builder for breach of trust or shall entitle any person or entity to an award of punitive damages against the Design-Builder for breach of the requirements of this provision.

### § A.9.7 FAILURE OF PAYMENT
§ **A.9.7.1** If for reasons other than those enumerated in Section A.9.5.1, the Owner does not issue a payment within the time period required by Section 5.1.3 of the Agreement through no fault of the Design-Builder, then the Design-Builder may, upon  seven (7) additional days' written notice to the Owner, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Design-Builder's reasonable costs of shutdown, delay and start-up, plus interest as provided for in the Design-Build Documents.

### § A.9.8 SUBSTANTIAL COMPLETION
§ **A.9.8.1** "Substantial Completion" is the date when (i) Architect certifies to Owner and Owner reasonably approves, or in the absence of such certifications, Owner determines in its judgment (reasonably exercised), that the entire Work has been substantially completed in accordance with, and as required by, the Design-Build Documents; (ii) all requisite temporary or final Certificate(s) of Occupancy (with no conditions to such final Certificate of Occupancy) and all other applicable Project approvals permitting legal use and occupancy of the Project shall have been issued and delivered to Owner by all governmental authorities; and (iii) only those minor Punch List items, if any, remain incomplete that do not interfere with the intended use and occupancy of any portion of the Project.

§ **A.9.8.2** When the Design-Builder considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Design-Builder shall prepare and submit to the Owner a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Design-Builder to complete all Work in accordance with the Design-Build Documents.

§ **A.9.8.3** Upon receipt of the Design-Builder's list, the Owner shall make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Owner's inspection discloses any item, whether or not included on the Design-Builder's list, which is not substantially complete, the Design-Builder shall complete or correct such item. In such case, the Design-Builder shall then submit a request for another inspection by the Owner to determine whether the Design-Builder's Work is substantially complete.



Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                        (1752527221)

**24**

§ **A.9.8.4** In the event of a dispute regarding whether the Design-Builder's Work is substantially complete, the dispute shall be resolved pursuant to Article A.4.

§ **A.9.8.5** When the Work or designated portion thereof is substantially complete, the Design-Builder shall prepare for the Owner's signature an Acknowledgement of Substantial Completion which, when signed by the Owner, shall establish (1) the date of Substantial Completion of the Work or designated portion thereof, (2) responsibilities between the Owner and Design-Builder for security, maintenance, heat, utilities, damage to the Work and insurance, and (3) the time within which the Design-Builder shall finish all items on the list accompanying the Acknowledgement. When the Owner's inspection discloses that the Work or a designated portion thereof is substantially complete, the Owner shall sign the Acknowledgement of Substantial Completion. Warranties required by the Design-Build Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Acknowledgement of Substantial Completion.

§ **A.9.8.6** Upon execution of the Acknowledgement of Substantial Completion and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Design-Build Documents.

### § A.9.9 PARTIAL OCCUPANCY OR USE
§ **A.9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Design-Builder, provided such occupancy or use is consented to by the insurer, if so required by the insurer, and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Design-Builder have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for completion or correction of the Work and commencement of warranties required by the Design-Build Documents. When the Design-Builder considers a portion substantially complete, the Design-Builder shall prepare and submit a list to the Owner as provided under Section A.9.8.2. Consent of the Design-Builder to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Design-Builder.

§ **A.9.9.2** Immediately prior to such partial occupancy or use, the Owner and Design-Builder shall jointly inspect the area to be occupied or portion of the Work to be used to determine and record the condition of the Work.

§ **A.9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Design-Build Documents.

### § A.9.10 FINAL COMPLETION AND FINAL PAYMENT
§ **A.9.10.1** Final Completion shall occur within a reasonable time, not more than 15 days after the occurrence of Substantial Completion, and in no event later than August 15, 2013. Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Owner shall promptly make such inspection and, when the Owner finds the Work acceptable under the Design-Build Documents and fully performed, the Owner shall, subject to Section A.9.10.2, promptly make final payment to the Design-Builder.

"Final Completion" shall be reached when all Work has been performed in accordance with the Design-Build Documents, final Certificates of Occupancy have been provided to the Owner for all facets of the Project and Owner has confirmed that all punch list items have been completed.

§ **A.9.10.2**
The conditions precedent to Owner's obligation to make final payment are as set out in §5.5.1 of the A141 to which reference is hereby made and the same is hereby incorporated herein by reference as if fully copied herein.

§ **A.9.10.3** If, after the Owner determines that the Design-Builder's Work or designated portion thereof is substantially completed, Final Completion thereof is materially delayed through no fault of the Design-Builder or by issuance of a

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes: (1752527221)



Init.

**25**

Change Order or a Construction Change Directive affecting Final Completion, the Owner shall, upon application by the Design-Builder, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Design-Build Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Design-Builder. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ A.9.10.4** Subject to the warranty obligations in the Design-Build Documents, the making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

.1   liens, Claims, and security interests or encumbrances arising out of the Design-Build Documents;
.2   failure of the Work to comply with the requirements of the Design-Build Documents; or
.3   terms of special warranties required by the Design-Build Documents.

**§ A.9.10.5** Acceptance of final payment by the Design-Builder, a Contractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**ARTICLE A.10   PROTECTION OF PERSONS AND PROPERTY**
**§ A.10.1 SAFETY PRECAUTIONS AND PROGRAMS**
**§ A.10.1.1** The Design-Builder shall be responsible for initiating and maintaining all safety precautions and programs in connection with the performance of the Design-Build Contract.

**§ A.10.2 SAFETY OF PERSONS AND PROPERTY**
**§ A.10.2.1** The Design-Builder shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1   employees on the Work and other persons who may be affected thereby;
.2   the Work and materials and equipment to be incorporated therein, whether in storage on or off the site or under the care, custody or control of the Design-Builder or the Design-Builder's Contractors or Subcontractors; and
.3   other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ A.10.2.2** The Design-Builder shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**§ A.10.2.3** The Design-Builder shall erect and maintain, as required by existing conditions and performance of the Design-Build Documents, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities. The Design-Builder shall also be responsible, at the Design-Builder's sole cost and expense, for all measures necessary to protect any property and improvements adjacent to the Project. Any damage to such property or improvements due to Design-Builder's negligence or fault or that of its Contractors or Subcontractors shall be promptly repaired by the Design-Builder. Without limiting the indemnity provisions elsewhere in the Design-Build Documents, the Design-Builder shall defend, indemnify and hold harmless the Owner and its successors and assigns from and against any and all claims, actions or damages resulting from damage to such property or improvements , but only for amounts of such claims, actions or damages caused by the negligence or fault of the Design-Builder or that of its Contractors, Subcontractors, material suppliers or the Architect or the agents or employees of any of them.

**§ A.10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Design-Builder shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ A.10.2.5** The Design-Builder shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Design-Build Documents) to property referred to in Sections A.10.2.1.2 and A.10.2.1.3 caused in whole or in part by the Design-Builder, the Architect, a Contractor, a Subcontractor, or anyone directly or indirectly employed by any of them or by anyone for whose acts they may be liable and for which the

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                (1752527221)

26

Design-Builder is responsible under Sections A.10.2.1.2 and A.10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or anyone directly or indirectly employed by the Owner, or by anyone for whose acts the Owner may be liable, and not attributable to the fault or negligence of the Design-Builder or its Contractors, Subcontractors or material suppliers. The foregoing obligations of the Design-Builder are in addition to the Design-Builder's obligations under Section A.3.17.

**§ A.10.2.6** The Design-Builder shall designate in writing to the Owner a responsible individual whose duty shall be the prevention of accidents.

**§ A.10.2.7** The Design-Builder shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

**§ A.10.3 HAZARDOUS MATERIALS**
**§ A.10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Design-Builder, the Design-Builder shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner.

**§ A.10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Design-Builder and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Design-Build Documents, the Owner shall furnish in writing to the Design-Builder the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Design-Builder shall promptly reply to the Owner in writing stating whether or not the Design-Builder has reasonable objection to the persons or entities proposed by the Owner. If the Design-Builder has an objection to a person or entity proposed by the Owner, the Owner shall propose another with whom the Design-Builder has no reasonable objection. When the material or substance has been rendered harmless, work in the affected area shall resume upon written agreement of the Owner and Design-Builder. The Contract Time shall be extended appropriately, and the Contract Sum shall be increased in the amount of the Design-Builder's reasonable additional costs of shutdown, delay and start-up, which adjustments shall be accomplished as provided in Article A.7.

**§ A.10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Design-Builder, Contractors, Subcontractors, Architect, Architect's consultants and the agents and employees of any of them from and against Claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance exists on site as of the date of the Agreement, is not disclosed in the Design-Build Documents and presents the risk of bodily injury or death as described in Section A.10.3.1 and has not been rendered harmless, provided that such Claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself) but only for the amounts of such damage, loss or expense that are due to Owner's negligence and not due to the negligence of the Design-Builder, Contractors, Subcontractors, Architect, Architect's consultants or the agents and employees of any of them.

**§ A.10.4** The Owner shall not be responsible under Section A.10.3 for materials and substances brought to the site by the Design-Builder or its lower-tier contractors or suppliers unless such materials or substances were required by the Design-Build Documents.

**§ A.10.5** If, without negligence on the part of the Design-Builder, the Design-Builder is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Design-Build Documents, the Owner shall indemnify the Design-Builder for all cost and expense thereby incurred.

**§ A.10.6 EMERGENCIES**
**§ A.10.6.1** In an emergency affecting safety of persons or property, the Design-Builder shall act, at the Design-Builder's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Design-Builder on account of an emergency shall be determined as provided in Section A.4.1.7 and Article A.7.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                            (1752527221)

Init.
/

27

## ARTICLE A.11   INSURANCE AND BONDS

§ A.11.1 Except as may otherwise be set forth in the Agreement or elsewhere in the Design-Build Documents, the Owner and Design-Builder shall purchase and maintain the following types of insurance with limits of liability and deductible amounts and subject to such terms and conditions, as set forth in this Article A.11.

### § A.11.2 DESIGN-BUILDER'S LIABILITY INSURANCE

§ A.11.2.1 The Design-Builder shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance in the types and coverage amounts as set forth on Exhibit C  and as will protect the Design-Builder from claims set forth below that may arise out of or result from the Design-Builder's operations under the Design-Build Contract and for which the Design-Builder may be legally liable, whether such operations be by the Design-Builder, by a Contractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

    .1   claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

    .2   claims for damages because of bodily injury, occupational sickness or disease, or death of the Design-Builder's employees;

    .3   claims for damages because of bodily injury, sickness or disease, or death of any person other than the Design-Builder's employees;

    .4   claims for damages insured by usual personal injury liability coverage;

    .5   claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

    .6   claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

    .7   claims for bodily injury or property damage arising out of completed operations; and

    .8   claims involving contractual liability insurance applicable to the Design-Builder's obligations under Section A.3.17.

§ A.11.2.2 The insurance required by Section A.11.2 1 shall be written for not less than limits of liability specified in the Design-Build Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

§ A.11.2.3 Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Section A.11.2 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section A 9 10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Design-Builder with reasonable promptness in accordance with the Design-Builder's information and belief.

§ A.11.2.4  The Design-Builder, by its legal name on this Agreement, shall be the named insured on each policy of insurance and the Owner and Financing Entity shall be named as additional insureds on all such insurance policies which shall be maintained throughout the applicable statute of repose.  Moreover, the Design-Builder shall cause each and all of its lower-tier contractors and the Architect to name and maintain the Owner and Financing Entity as additional insureds on their insurance policies of the type set forth in this Article A.11 and on Exhibit C. Design-Builder shall deliver to Owner the documentation demonstrating that it has complied with the additional insured provision. Design-Builder's failure to perform the obligations set forth in this section shall constitute a material breach of this Agreement.  If any part of the Additional Insured obligations provided herein are interpreted as inconsistent with Alabama law, those additional insured obligations shall not be rendered invalid or void but shall survive and be applied to the greatest extent an additional insured obligation would be permitted by Alabama law.

### § A.11.3 OWNER'S LIABILITY INSURANCE

§ A.11.3.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                   (1752527221)

**28**

**§ A.11.4 PROPERTY INSURANCE**
**§ A.11.4.1** Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk, "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus the value of subsequent Design-Build Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles  Such property insurance shall be maintained, unless otherwise provided in the Design-Build Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section A.9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section A.11 4 to be covered, whichever is later. This insurance shall include interests of the Owner, Design-Builder, Contractors and Subcontractors in the Project

**§ A.11.4.1.1** Property insurance shall be on an "all-risk" (Special Causes of Loss) or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal, including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Design-Builder's services and expenses required as a result of such insured loss

**§ A.11.4.1.2** If the Owner does not intend to purchase such property insurance required by the Design-Build Contract and with all of the coverages in the amount described above, the Owner shall so inform the Design-Builder in writing prior to commencement of the Work. The Design-Builder may then effect insurance that will protect the interests of the Design-Builder, Contractors and Subcontractors in the Work, and, by appropriate Change Order, the cost thereof shall be charged to the Owner. If the Design-Builder is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above without so notifying the Design-Builder in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**§ A.11.4.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles, except any such costs as may result from a failure to perform the Design-Builder's obligations under Section A.10.2 hereof.

**§ A.11.4.1.4** This property insurance shall cover portions of the Work stored off the site and also portions of the Work in transit.

**§ A.11.4.1.5** Partial occupancy or use in accordance with Section A 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use, by endorsement or otherwise. The Owner and the Design-Builder shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance

**§ A.11.4.2 Boiler and Machinery Insurance.** The Owner shall purchase and maintain boiler and machinery insurance required by the Design-Build Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Design-Builder, Contractors and Subcontractors in the Work, and the Owner and Design-Builder shall be named insureds.

**§ A.11.4.3 Loss of Use Insurance.** The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Design-Builder, Architect, the Design-Builder's other design professionals, if any, Contractors and Subcontractors for loss of use of the Owner's property, including consequential losses due to fire or other hazards, however caused.

**§ A.11.4.4** If the Design-Builder requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Design-Builder by appropriate Change Order.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                       (1752527221)

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
                                                A141 DB/Owner Contract Agreement

§ **A.11.4.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section A.11 4 7 for damages caused by fire or other causes of loss covered by this separate property insurance  All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ **A.11.4.6** Before an exposure to loss may occur, the Owner shall file with the Design-Builder a copy of each policy that includes insurance coverages required by this Section A.11.4  Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire and that its limits will not be reduced until at least 30 days' prior written notice has been given to the Design-Builder.

§ **A.11.4.7 Waivers of Subrogation.** The Owner and Design-Builder waive all rights against each other and any of their consultants, separate contractors described in Section A 6.1, if any, Contractors, Subcontractors, agents and employees, each of the other, and any of their contractors, subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section A.11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner or third party as fiduciary. The Owner or Design-Builder, as appropriate, shall require of the separate contractors described in Section A.6.1, if any, and the Contractors, Subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, even though the person or entity did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ **A.11.4.8** A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section A.11.4.10. The Design-Builder shall pay Contractors their just shares of insurance proceeds received by the Design-Builder, and, by appropriate agreements, written where legally required for validity, shall require Contractors to make payments to their Subcontractors in similar manner

§ **A.11.4.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach. If after such loss no other special agreement is made and unless the Owner terminates the Design-Build Contract for convenience, replacement of damaged property shall be performed by the Design-Builder after notification of a Change in the Work in accordance with Article A 7.

§ **A.11.4.10** The Owner as fiduciary, or any independent third-party agreed to by Owner and Design-Builder to serve as fiduciary, shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to this exercise of this power. The fiduciary shall, in the case of a decision or award, make settlement with insurers in accordance with directions of a decision or award.  If distribution of insurance proceeds by arbitration is required the arbitrator(s) will direct such distribution.

§ **A.11.5 PERFORMANCE BOND AND PAYMENT BOND**
§ **A.11.5.1** The Owner shall have the right to require the Design-Builder to furnish bonds covering faithful performance of the Design-Build Contract and payment of obligations arising thereunder, including payment to design professionals engaged by or on behalf of the Design-Builder, as stipulated in bidding requirements or specifically required by the Financing Entity or in the Agreement or elsewhere in the Design-Build Documents on the date of execution of the Design-Build Contract.

§ **A.11.6 MISCELLANEOUS INSURANCE ISSUES**
§ **A11.6.1** Policy and Carrier Requirements. All policies required of the Design/Builder or Owner pursuant to this Agreement shall be maintained with insurance carriers which are: (a) authorized to do business in the

Init.

/

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**

30

(1752527221)

State where the property is located; and (b) rated by A.M. BEST Company to be A minus VIII or better. Neither party shall cancel or allow such policies to lapse without first giving thirty (30) days prior written notice to the other party (10 days prior written notice for non-payment of premium), provided that such notification is commercially and reasonably available.

**§ A11.6.2  Certificates of Insurance.**  The parties shall provide one another Certificates of Insurance from each of their respective insurers.  Each certificate shall evidence all requirements set forth in this Article A.11 or as required elsewhere in the Contract Documents, including the amounts of coverage, policy endorsements and coverage renewals as necessary to comply therewith.  Each certificate shall also be endorsed with an acknowledgement that the policy shall not be cancelled or not renewed, without thirty (30) days prior written notice (10 days for non-payment of premium) to the Owner and/or Design/Builder provided that such notification is commercially and reasonably available.  A failure to demand such Certificate or other evidence of full compliance with these insurance requirements or failure to identify a deficiency from evidence provided will not be construed as a waiver of either party's obligation to maintain such insurance.  The acceptance of delivery of any Certificate of Insurance evidencing the required coverages and limits does not constitute approval or agreement that the insurance requirements have been met or that the insurance policies shown in the Certificates of Insurance are in compliance with the requirements.  The Owner will have the right, but not the obligation, of prohibiting the Design/Builder from entering the Project site until such certificates or other evidence that insurance has been placed in complete compliance with these requirements is received and approved by the Owner.  In addition, the Design/Builder shall not have any obligation to mobilize to the site and start work unless and until the Owner's insurance requirements have been met and satisfactory proof thereof has been provided to Design/Builder in the form of a certificate of insurance.  If the Design/Builder fails to maintain the insurance as set forth herein, the Owner will have the right, but not the obligation, to purchase said insurance at the Design/Builder's expense.  Alternatively, either party's failure to procure or maintain the required insurance may result in termination of this Contract for default.  If any of the coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage will be submitted with the Design/Builder's final invoice.

**§ A11.6.3  Deductibles.**  If any policy (except Builder's Risk) required to be purchased pursuant to this Contract is subject to a deductible, self-insured retention (SIR) or similar self-insurance mechanism which limits or otherwise reduces coverage, the deductible shall be paid by the insured.

**§ A11.6.4  Duration.**  All General Liability, Automobile Liability, Umbrella/Excess Liability and Worker's Compensation insurance required by this Contract shall be kept in force without interruption until final completion of the Work.  The Builder's All-Risk Insurance shall remain in force until the Design/Builder has achieved Substantial Completion of the Work in its entirety.  Products and Completed Operations Coverage shall remain in force until the applicable Statute of Repose expires

**§ A11.6.5  Cooperation by the Parties.**  The Owner the Design/Builder shall fully cooperate with each other in connection with the collection of any insurance monies that may be due in the event of a loss.  The Owner and the Design/Builder shall promptly execute and deliver such proofs of loss and other instruments, which may be required for the purpose of obtaining recovery of any such insurance monies

## ARTICLE A.12   UNCOVERING AND CORRECTION OF WORK
### § A.12.1 UNCOVERING OF WORK
**§ A.12.1.1** If a portion of the Work is covered contrary to requirements specifically expressed in the Design-Build Documents, it must be uncovered for the Owner's examination and be replaced at the Design-Builder's expense without change in the Contract Time.

**§ A.12.1.2** If a portion of the Work has been covered which the Owner has not specifically requested to examine prior to its being covered, the Owner may request to see such Work and it shall be uncovered by the Design-Builder. If such Work is in accordance with the Design-Build Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Design-Build Documents, correction shall be at the Design-Builder's expense unless the condition was caused by the Owner or a separate contractor, in which event the Owner shall be responsible for payment of such costs.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                    (1752527221)

Init.

October 3, 2012                 The Lofts of Tuscaloosa - Tuscaloosa, Alabama
                                A141 DB/Owner Contract Agreement



§ **A.12.2** CORRECTION OF WORK
§ **A.12.2.1** BEFORE OR AFTER SUBSTANTIAL COMPLETION.
§ **A.12.2.1.1** The Design-Builder shall promptly correct Work rejected by the Owner or failing to conform to the requirements of the Design-Build Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing, shall be at the Design-Builder's expense

§ **A.12.2.2** AFTER SUBSTANTIAL COMPLETION
§ **A.12.2.2.1** In addition to the Design-Builder's obligations under Section A.3.5, if, within one year after the date of Substantial Completion or after the date for commencement of warranties established under Section A.9.8 5 or by terms of an applicable special warranty required by the Design-Build Documents, any of the Work is found to be not in accordance with the requirements of the Design-Build Documents, the Design-Builder shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Design-Builder a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Design-Builder and give the Design-Builder an opportunity to make the correction, the Owner waives the rights to require correction by the Design-Builder and to make a claim for breach of warranty. If the Design-Builder fails to correct non-conforming Work within a reasonable time during that period after receipt of notice from the Owner, the Owner may correct it in accordance with Section A.2.5.

§ **A.12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

§ **A.12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Design-Builder pursuant to this Section A.12.2

§ **A.12.2.3** The Design-Builder shall remove from the site portions of the Work which are not in accordance with the requirements of the Design-Build Documents and are neither corrected by the Design-Builder nor accepted by the Owner.

§ **A.12.2.4** The Design-Builder shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Design-Builder's correction or removal of Work which is not in accordance with the requirements of the Design-Build Documents

§ **A.12.2.5** Nothing contained in this Section A.12 2 shall be construed to establish a period of limitation with respect to other obligations the Design-Builder might have under the Design-Build Documents Establishment of the one-year period for correction of Work as described in Section A 12.2 2 relates only to the specific obligation of the Design-Builder to correct the Work, and has no relationship to the time within which the obligation to comply with the Design-Build Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Design-Builder's liability with respect to the Design-Builder's obligations other than specifically to correct the Work.

§ **A.12.3** ACCEPTANCE OF NONCONFORMING WORK
§ **A.12.3.1** If the Owner prefers to accept Work not in accordance with the requirements of the Design-Build Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be equitably adjusted by Change Order. Such adjustment shall be effected whether or not final payment has been made.

§ **A.12.3.2** Special Conditions Affecting Resident Living:  At least forty-eight (48) hours prior to Substantial Completion, the Design-Builder shall provide to the Owner normal business hour and Emergency service phone numbers (operating 24 hours a day) for critical trades such as roofing, plumbing, mechanical, controls, electrical, fire alarm, fire sprinkler, door hardware, windows, and security system and other trades as mutually determined and an emergency contact number for the Contractor.  The Owner shall designate a person or persons who are authorized to contact the Contractor or subcontractor regarding corrective work or warranty work.

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                          (1752527221)

32



§ **A.12.3.3** Upon incurring a problem within the facility, the Owner's authorized representative shall determine if the problem is a maintenance issue, or corrective work or warranty issue. If corrective work or warranty issue, the Owner shall determine whether it is an emergency (affecting the life safety of the facility, endangering the occupants, affecting keeping critical building systems in operation or rendering a residence unlivable) or an issue that can be resolved during normal business hours. If an emergency, the Owner's Authorized representative(s) shall contact the respective Contractor and Design-Builder. If the Contractor or Design-Builder cannot respond on an expedited basis, the Owner shall have the right to have the work corrected and charged to the Design-Builder. The Contractor or Design-Builder shall conduct such emergency Work on an expedited basis until the Work is completed or the system is operational or the facility may be reasonably occupied by the Owner's tenant  The trade contractor or Design-Builder shall respond to non-emergency requests for corrective work within three (3) business days of written notification of request by Property Owner or Owner.

§ **A.12.3.5** If any dispute arises as to whether the condition was an emergency or nonconforming or warranty work or a dispute arises related to the costs of such repairs conducted by others at request of the Owner, the resolution of the matter shall be determined in accordance with terms for Dispute Resolution herein.

§ **A.12.3.6** All requests for corrective work by the Owner shall be confirmed in writing by fax or email with copies to the Design-Builder. If the Design-Builder takes exception to Owner's decision, the Design-Builder may submit a claim under article A.4.1.If the Contractor or Design-Builder respond to a request for corrective work by the Owner, and find that such work is not corrective work or warranty work, the Contractor or Design-Builder may charge the Owner for such work at reasonable rates for such service calls within the local area

**ARTICLE A.13   MISCELLANEOUS PROVISIONS**
§ **A.13.1 GOVERNING LAW**
§ **A.13.1.1** The Design-Build Contract shall be governed by the law of the place where the Project is located.

§ **A.13.2 SUCCESSORS AND ASSIGNS**
§ **A.13.2.1** The Owner and Design-Builder respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Design-Build Documents. Except as provided in Section A.13.2.2, neither party to the Design-Build Contract shall assign the Design-Build Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Design-Build Contract

§ **A.13.2.2** The Owner may, without consent of the Design-Builder, assign the Design-Build Contract to an institutional lender providing construction financing for the Project, or to any such entity acquiring Owner's interest in the Project. In such event, the lender, or entity acquiring Owner's interest in the Project, shall assume the Owner's rights and obligations under the Design-Build Documents. The Design-Builder shall execute all consents reasonably required to facilitate such assignment.

§ **A.13.3 WRITTEN NOTICE**
§ **A.13.3.1** Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if sent by registered or certified mail to the last business address known to the party giving notice.

§ **A.13.4 RIGHTS AND REMEDIES**
§ **A.13.4.1** Duties and obligations imposed by the Design-Build Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ **A.13.4.2** No action or failure to act by the Owner or Design-Builder shall constitute a waiver of a right or duty afforded them under the Design-Build Documents, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

Init. **AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No 8574102181_1 which expires on 06/06/2013, and is not for resale
User Notes:                                                                                          (1752527221)

33



**§ A.13.5 TESTS AND INSPECTIONS**

**§ A.13.5.1** Tests, inspections and approvals of portions of the Work required by the Design-Build Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Design-Builder shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Design-Builder shall give timely notice of when and where tests and inspections are to be made so that the Owner may be present for such procedures.

**§ A.13.5.2** If the Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section A.13.5 1, the Owner shall in writing instruct the Design-Builder to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Design-Builder shall give timely notice to the Owner of when and where tests and inspections are to be made so that the Owner may be present for such procedures. Such costs, except as provided in Section A.13 5 3, shall be at the Owner's expense.

**§ A.13.5.3** If such procedures for testing, inspection or approval under Sections A.13.5.1 and A.13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Design-Build Documents, all costs made necessary by such failure, including those of repeated procedures, shall be at the Design-Builder's expense.

**§ A.13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Design-Build Documents, be secured by the Design-Builder and promptly delivered to the Owner

**§ A.13.5.5** If the Owner is to observe tests, inspections or approvals required by the Design-Build Documents, the Owner will do so promptly and, where practicable, at the normal place of testing.

**§ A.13.5.6** Tests or inspections conducted pursuant to the Design-Build Documents shall be made promptly to avoid unreasonable delay in the Work.

**§ A.13.6 COMMENCEMENT OF STATUTORY LIMITATION PERIOD**
**§ A.13.6.1** The commencement of the statutory limitations period as between the Owner and Design-Builder shall be governed by the laws of the state in which the Project is located.

**§ A.13.7 COMPLIANCE WITH LAWS AND REGULATIONS.**
**§ A.13.7.1**   Design-Builder shall comply with and include within its contracts with its lower-tier contractors a provision requiring compliance with all applicable Federal, state, county, and municipal laws, regulations, rules, codes, ordinances, policies, guidance, directives, orders and decrees which in any manner affect this Agreement or its performance or the Project, including but not limited to, all applicable employment and immigration laws and regulations.

*(Paragraphs deleted)*
Both parties will take all reasonable steps to notify the other within one (1) business day of its knowledge or discovery of any scheduled or unscheduled inspection, worksite enforcement action, investigation, inquiry, receipt of Notice of Inspection of its I-9 Forms, receipt of Notice of Intent to Fine, receipt of Notice of Suspect Documents, visit or audit by the United States Department of Homeland Security ("DHS"), E-Verify desk audit or compliance notice, United States Department of Labor ("DOL"), Department of Justice, Office of Special Counsel ("DOJ-OSC") any other Federal, State or municipal governmental agency or authority related to immigration issues of Design-Builder or its Contractors, Subcontractors, sub-subcontractors, and their corresponding employees and/or agents, related to its workforce or the workforce of any Contractor, Subcontractor or sub-subcontractors employees or agents performing any work on Owner's premises Furthermore, Design-Builder will subsequently provide to Owner a detailed explanation of its response and the results of any such notice, inspection/audit request. This obligation applies as well to any compliance notices received from any applicable State or municipal authority.  Furthermore, Design-Builder warrants that during the term of this Agreement, it shall and shall cause its directors, officers, managers, agents and employees to fully cooperate in all respects with any such audit, inquiry, inspection, investigation conducted by any Federal, State or Municipal governmental authority, including but not limited to the DHS, DOL and/or DOJ-OSC of Design-Builder, Contractor, Subcontractor or any of their employees or the employees of their sub-subcontractors and its use of the E-Verify program.

Init.

AIA Document A141™ – 2004 Exhibit A. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                       (1752527221)

34



**ARTICLE A.14   TERMINATION OR SUSPENSION OF THE DESIGN/BUILD CONTRACT**
**§ A.14.1 TERMINATION BY THE DESIGN-BUILDER**
**§ A.14.1.1** The Design-Builder may terminate the Design-Build Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Design-Builder or a Contractor, Subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Design-Builder, for any of the following reasons:

.1   issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;

.2   an act of government, such as a declaration of national emergency which requires all Work to be stopped;

.3   the Owner has failed to make payment to the Design-Builder in accordance with the Design-Build Documents; or

.4   the Owner has failed to furnish to the Design-Builder promptly, upon the Design-Builder's request, reasonable evidence as required by Section A.2.2.8.

**§ A.14.1.2** The Design-Builder may terminate the Design-Build Contract if, through no act or fault of the Design-Builder or a Contractor, Subcontractor, the Architect or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Design-Builder, repeated suspensions, delays or interruptions of the entire Work by the Owner, as described in Section A.14.3, constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ A.14.1.3** If one of the reasons described in Sections A.14.1.1 or A.14.1.2 exists, the Design-Builder may, upon seven days' written notice to the Owner, terminate the Design-Build Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

**§ A.14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Design-Builder or a Contractor or their agents or employees or any other persons performing portions of the Work under a direct or indirect contract with the Design-Builder because the Owner has persistently failed to fulfill the Owner's obligations under the Design-Build Documents with respect to matters important to the progress of the Work, the Design-Builder may, upon seven additional days' written notice to the Owner, terminate the Design-Build Contract and recover from the Owner as provided in Section A.14.1.3.

**§ A.14.2 TERMINATION BY THE OWNER FOR CAUSE**
**§ A.14.2.1** The Owner may terminate the Design-Build Contract if the Design-Builder:

.1   persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

.2   fails to make payment to Contractors for services, materials or labor in accordance with the respective agreements between the Design-Builder and the Architect and Contractors;

.3   persistently disregards laws, ordinances or rules, regulations or orders of a public authority having jurisdiction; or

.4   otherwise is guilty of substantial breach of a provision of the Design-Build Documents.

**§ A.14.2.2** When any of the above reasons exist, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Design-Builder and the Design-Builder's surety, if any, seven days' written notice, terminate employment of the Design-Builder and may, subject to any prior rights of the surety:

.1   take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Design-Builder;

.2   accept assignment of contracts pursuant to Section A.5.5.1; and

.3   finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Design-Builder, the Owner shall furnish to the Design-Builder a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ A.14.2.3** When the Owner terminates the Design-Build Contract for one of the reasons stated in Section A.14.2.1, the Design-Builder shall not be entitled to receive further payment until the Work is finished.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
**User Notes:**                                                                                     (1752527221)

35


Init.

/

**§ A.14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Design-Builder. If such costs and damages exceed the unpaid balance, the Design-Builder shall pay the difference to the Owner.

### § A.14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE

**§ A.14.3.1** The Owner may, without cause, order the Design-Builder in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**§ A.14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section A.14 3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

    .1   that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Design-Builder is responsible; or

    .2   that an equitable adjustment is made or denied under another provision of the Design-Build Contract

### § A.14.4 TERMINATION BY THE OWNER FOR CONVENIENCE

**§ A.14.4.1** The Owner may, at any time, terminate the Design-Build Contract for the Owner's convenience and without cause.

**§ A.14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Design-Builder shall:

    .1   cease operations as directed by the Owner in the notice;

    .2   take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

    .3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing contracts and purchase orders and enter into no further contracts and purchase orders.

**§ A.14.4.3**
In the event of termination for the Owner's convenience within 90 days of execution of this Agreement by both parties, the Design-Builder shall be entitled to receive payment for Work executed and costs incurred by reason of such termination. In case of termination for the Owner's convenience more than 90 days following the execution of this Agreement by both parties, the Design-Builder shall be entitled to receive payment for Work executed and costs incurred by reason of such termination along with reasonable profit on the Work not executed.


Init.

**AIA Document A141™ – 2004 Exhibit A.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 18:46:22 on 10/03/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
**User Notes:**           (1752527221)

36



# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## <u>EXHIBIT B</u>

## Cost of the Work





# AIA® Document A141™ – 2004 Exhibit B

## *Determination of the Cost of the Work*

**for the following PROJECT:**
*(Name and location or address)*

The Lofts of Tuscaloosa
Tuscaloosa, AL

**THE OWNER:**
*(Name, legal status and address)*

Tuscaloosa I, LLC (hereinafter "Owner")
c/o  CAPSTONE COLLEGIATE COMMUNITIES
431 Office Park Drive
Birmingham, AL  35223

**THE DESIGN-BUILDER:**
*(Name, legal status and address)*

Construction Enterprises, Inc. (hereinafter "Design-Builder")
325 Seaboard Ln., Suite 170
 Franklin, TN 37067

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Consultation with an attorney is also encouraged with respect to professional licensing requirements in the jurisdiction where the Project is located.

**AIA Document A141™ – 2004 Exhibit B.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:12:13 on 10/02/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                                                                    (926430306)

1



**ARTICLE B.1   CONTROL ESTIMATE**

**§ B.1.1** Intentionally Omitted.
**§ B.1.2**
*(Paragraphs deleted)*
**Intentionally Omitted.**
**§ B.1.3** Intentionally Omitted.

**§ B.1.4** The Design-Builder shall develop and implement a detailed system of cost control that will provide the Owner with timely information as to the anticipated total Cost of the Work in the same format and detail as the Sample Job Cost Report attached as Exhibit G.5 to the A141 Agreement between Design-Builder and Owner. This information shall be reported to the Owner, in writing, no later than the Design-Builder's first Application for Payment and shall be revised monthly..

**ARTICLE B.2    COSTS TO BE REIMBURSED**
**§ B.2.1** COST OF THE WORK
The term Cost of the Work shall mean costs necessarily incurred by the Design-Builder in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article B.2.

**§ B.2.2** LABOR COSTS
**§ B.2.2.1** Wages of construction workers directly employed by the Design-Builder to perform the construction of the Work at the site or, with the Owner's approval, at off-site locations.

**§ B.2.2.2** Only to the extent not already included in the General Conditions to be paid by Owner, wages or salaries of the Design-Builder's supervisory and administrative personnel when stationed at the site with the Owner's approval, plus Owner-approved portions of those individuals at Design-Builder's home offices as follows:  Project Executive (30%), Construction Director (75%), Project Manager (100%),  regardless of whether they are physically on site, but only for time spent working on the Project.

**§ B.2.2.3** Wages and salaries of the Design-Builder's supervisory or administrative personnel engaged at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**§ B.2.2.4** Costs paid or incurred by the Design-Builder for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections B.2.2.1 through B.2.2.3.

**§ B.2.2.5** Reasonable costs of labor, material, and equipment required for handling, placing, and storing equipment.

**§ B.2.3** CONTRACT COSTS
**§ B.2.3.1** Payments made by the Design-Builder to Contractors and the Architect (and if applicable, Architect's consultants) in accordance with the requirements of their contracts.

**§ B.2.4** COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
**§ B.2.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

**§ B.2.4.2** Costs of materials described in the preceding Section B.2.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Design-Builder. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

**AIA Document A141™ – 2004 Exhibit B.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:12:13 on 10/02/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                                   (926430306)

**2**

**§ B.2.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS**
**§ B.2.5.1** Costs, including transportation and storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers, that are provided by the Design-Builder at the site and fully consumed in the performance of the Work; and cost (less salvage value) of such items if not fully consumed, whether sold to others or retained by the Design-Builder. The basis for the cost of items previously used by the Design-Builder shall mean the fair market value.

**§ B.2.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Design-Builder at the site, whether rented from the Design-Builder or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be charged at the prevailing rate.

**§ B.2.5.3** Costs of removal of debris from the site.

**§ B.2.5.4** Cost of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**§ B.2.5.5** That portion of the reasonable expenses of the Design-Builder's personnel incurred while traveling in discharge of duties connected with the Work.

**§ B.2.5.6** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, if approved in advance by the Owner.

**§ B.2.5.6** Costs of utilities prior to Substantial Completion. Costs of utilities after Substantial Completion are the responsibility of Owner and Design-Builder shall provide necessary information for getting utility services transferred into the Owner's name, or the name of its designee, after Substantial Completion.

**§ B.2.6 DESIGN AND OTHER CONSULTING SERVICES**
**§ B.2.6.1** Compensation, including fees and reimbursable expenses, paid by the Design-Builder for design and other consulting services required by the Design-Build Documents, including but not limited to any and all fees, payments, reimbursables and compensation due to the Architect for its services, materials and Instruments of Service provided that arise out of or relate to the Project, to the extent not already paid by the Owner.

**§ B.2.7 MISCELLANEOUS COSTS**
**§ B.2.7.1** That portion of insurance and bond premiums that can be directly attributed to this Design-Build Contract.

**§ B.2.7.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work.

**§ B.2.7.3** Fees and assessments for the building permit and for other permits, licenses and inspections for which the Design-Builder is required by the Design-Build Documents to pay.

**§ B.2.7.4** Fees of laboratories for tests required by the Design-Build Documents, except those related to defective or non-conforming Work for which reimbursement is excluded by Section A.13.5.3 of Exhibit A, Terms and Conditions, or other provisions of the Design-Build Documents, and which do not fall within the scope of Section A.13.5.3.

**§ B.2.7.5** Royalties and license fees paid for the use of a particular design, process or product required by the Design-Build Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Design-Build Documents; and payments made in accordance with legal judgments against the Design-Builder resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Design-Builder's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section A.3.16.1 of Exhibit A, Terms and Conditions, or other provisions of the Design-Build Documents, then they shall not be included in the Cost of the Work.

**§ B.2.7.6** Only to the extent not already included in the General Conditions paid by the Owner, data processing costs related to the Work at a rate of ■ per 1,000 based upon the final GMP.

AIA Document A141™ – 2004 Exhibit B. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:57:57 on 10/04/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes: (1935172940)

Init. /

3

§ **B.2.7.7** Deposits lost for causes other than the Design-Builder's negligence or failure to fulfill a specific responsibility to the Owner as set forth in the Design-Build Documents.

§ **B.2.7.8** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Design-Builder, reasonably incurred by the Design-Builder in the performance of the Work and with the Owner's prior written approval, which approval shall not be unreasonably withheld.

§ **B.2.7.9** Expenses incurred in accordance with the Design-Builder's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, if approved by the Owner.

§ **B.2.8 OTHER COSTS AND EMERGENCIES**
§ **B.2.8.1** Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

§ **B.2.8.2** Costs due to emergencies incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section A.10.6 of Exhibit A, Terms and Conditions.

§ **B.2.8.3** Cost of repairing or correcting damaged or non-conforming Work executed by the Design-Builder, Contractors, Subcontractors or suppliers, provided that such damaged or non-conforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Design-Builder and only to the extent that the cost of repair or correction is not recoverable by the Design-Builder from insurance, sureties, Contractors, Subcontractors or suppliers.

**ARTICLE B.3   COSTS NOT TO BE REIMBURSED**
§ **B.3.1** The Cost of the Work shall not include:

§ **B.3.1.1** Salaries and other compensation of the Design-Builder's personnel stationed at the Design-Builder's principal office or offices other than the site office, except as specifically provided in Sections B.2.2.2 and B.2.2.3.

§ **B.3.1.2** Expenses of the Design-Builder's principal office and offices other than the site office.

§ **B.3.1.3** Overhead and general expenses, except as may be expressly included in Article B.2 of this Exhibit.

§ **B.3.1.4** The Design-Builder's capital expenses, including interest on the Design-Builder's capital employed for the Work.

§ **B.3.1.5** Rental costs of machinery and equipment, except as specifically provided in Section B.2.5.2.

§ **B.3.1.6** Except as provided in Section B.2.8.3 of this Agreement, costs due to the negligence or failure of the Design-Builder to fulfill a specific responsibility of the Design-Builder, Contractors, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

§ **B.3.1.7** Any cost not specifically and expressly described in Article B.2, Costs to be Reimbursed.

§ **B.3.1.8** Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price, if any, to be exceeded.

**ARTICLE B.4   DISCOUNTS, REBATES AND REFUNDS**
§ **B.4.1** Cash discounts obtained on payments made by the Design-Builder shall accrue to the Owner if (1) before making the payment, the Design-Builder included them in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Design-Builder with which to make payments; otherwise, cash discounts shall accrue to the Design-Builder. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Design-Builder shall make provisions so that they can be secured.

**AIA Document A141™ – 2004 Exhibit B.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:12:13 on 10/02/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale
**User Notes:**                                                                (926430306)

4

**§ B.4.2** Amounts that accrue to the Owner in accordance with the provisions of Section B.4.1 shall be credited to the Owner as a deduction from the Cost of Work.

### ARTICLE B.5   CONTRACTS AND OTHER AGREEMENTS OTHER THAN FOR DESIGN PROFESSIONALS HIRED BY THE DESIGN-BUILDER

**§ B.5.1** Those portions of the Work that the Design-Builder does not customarily perform with the Design-Builder's own personnel shall be performed by others under contracts or by other appropriate agreements with the Design-Builder. The Owner may designate specific persons or entities from whom the Design-Builder shall obtain bids. The Design-Builder shall obtain bids from Contractors and from suppliers of materials or equipment fabricated especially for the Work. The Design-Builder shall not be required to contract with anyone to whom the Design-Builder has reasonable objection.

**§ B.5.2** Contracts or other agreements shall conform to the applicable payment provisions of this Design-Build Contract, and shall not be awarded on the basis of cost plus a fee without the Owner's prior consent.

### ARTICLE B.6   ACCOUNTING RECORDS

**§ B.6.1** The Design-Builder or any affiliated person or entity which performs a portion of the Work shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Agreement, and the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to, and shall be permitted to audit and copy, the Design-Builder's records, books, correspondence, instructions, receipts, contracts, bids and bid invitations, purchase orders, vouchers, memoranda and other data relating to this Agreement, and the Design-Builder shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

**§ B.6.2** When the Design-Builder believes that all the Work required by the Agreement has been fully performed, the Design-Builder shall deliver to the Owner's accountant a final accounting of the Cost of the Work.

**§ B.6.3** The Owner's accountants will review and report in writing on the Design-Builder's final accounting within 21 days after delivery of the final accounting. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Design-Builder's final accounting, and provided the other conditions of Section A.9.10 of the Agreement have been met, the Owner will, within seven days after receipt of the written report of the Owner's accountants, notify the Design-Builder in writing of the Owner's intention to make final payment or to withhold final payment.

**§ B.6.4** If the Owner's accountants report the Cost of the Work as substantiated by the Design-Builder's final accounting to be less than claimed by the Design-Builder, the Design-Builder shall be entitled to initiate resolution of the dispute pursuant to Article 6 of the Agreement and Article A.4 of Exhibit A, Terms and Conditions, for the disputed amount. If the Design-Builder fails to so initiate resolution of the dispute within the period of time required by Section A.4.1.2 of Exhibit A, Terms and Conditions, the substantiated amount reported by the Owner's accountants shall become binding on the Design-Builder. Pending a final resolution pursuant to Article 6 of the Agreement and Article A.4 of Exhibit A, Terms and Conditions, the Owner shall pay the Design-Builder the amount, if any, determined by the Owner's accountant to be due the Design-Builder.

**§ B.6.5** If, subsequent to final payment and at the Owner's request, the Design-Builder incurs costs in connection with the correction of defective or non-conforming work as described in Article B.2, Costs to be Reimbursed, and not excluded by Article B.3, Costs Not to be Reimbursed, the Owner shall reimburse the Design-Builder such costs and the Design-Builder's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price, if any. If the Design-Builder has participated in savings as provided in Section 4.4.3.1 of the Agreement, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Design-Builder.

**Init.**

AIA Document A141™ – 2004 Exhibit B. Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:12:13 on 10/02/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                 (926430306)

**5**

# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## EXHIBIT C

## Insurance and Bonds

**C.1 – GL Owner Certificate**
**C.2 – GL Lender Certificate**
**C.3 – Perfomance Bond**
**C.4 – Payment Bond**
**C.5 – Dual Obligee Rider**







# **AIA®** Document A141™ – 2004 Exhibit C

## *Insurance and Bonds*

**for the following PROJECT:**
*(Name and location or address)*

The Lofts of Tuscaloosa
Tuscaloosa, AL

**THE OWNER:**
*(Name, legal status and address)*

Tuscaloosa I, LLC (hereinafter "Owner")
c/o  CAPSTONE COLLEGIATE COMMUNITIES
431 Office Park Drive
Birmingham, AL  35223

**THE DESIGN-BUILDER:**
*(Name, legal status and address)*

Construction Enterprises, Inc.  (hereinafter "Design-Builder")
325 Seaboard Ln., Suite 170
Franklin, TN 37067

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Consultation with an attorney is also encouraged with respect to professional licensing requirements in the jurisdiction where the Project is located.

**AIA Document A141™ – 2004 Exhibit C.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:14:02 on 10/02/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
User Notes:                                                                                          (2033669429)



Init.

1

**ARTICLE C.1**
The Owner and Design-Builder shall provide policies of liability insurance as required by the Design-Build Documents, or as follows:
*(Specify changes, if any, to the requirements of the Design-Build Documents, and for each type of insurance identify applicable limits and deductible amounts.)*

See Insurance Certificates attached hereto as Exhibits C.1 and C.2.

**ARTICLE C.2**
The Design-Builder shall provide surety bonds as follows:
*(Specify type and penal sum of bonds.)*

| Type | Penal Sum ($0.00) |
|---|---|
| See Payment and Performance Bonds and Dual Obligee Rider attached hereto as Exhibits C.3, C.4, and C.5. | |

**§ C.2.1** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Agreement, the Design-Builder shall promptly furnish a copy of the bonds or shall permit a copy to be made.



**AIA Document A141™ – 2004 Exhibit C.** Copyright © 2004 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:14:02 on 10/02/2012 under Order No.8574102181_1 which expires on 06/06/2013, and is not for resale.
**User Notes:**                                                                                                    (2033669429)

2

**Exhibit C.1**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
08/17/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | |
|---|---|---|---|---|
| Marsh USA, Inc. 1801 West End Avenue, Suite 1500 Nashville, TN 37219 | | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| 033700--GAWU-11-12 | N/A | INSURER A : Zurich American Insurance Company | | 16535 |
| INSURED CONSTRUCTION ENTERPRISES, INC. 325 SEABOARD LANE, SUITE 170 FRANKLIN, TN 37067 | | INSURER B : American Guarantee & Liability Ins Co | | 26247 |
| | | INSURER C : | | |
| | | INSURER D : | | |
| | | INSURER E : | | |
| | | INSURER F : | | |

**COVERAGES**   CERTIFICATE NUMBER: ATL-003107051-02   REVISION NUMBER: 9

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY  X COMMERCIAL GENERAL LIABILITY  CLAIMS-MADE X OCCUR | | | PRA 9377866-08 | 12/16/2011 | 12/16/2012 | EACH OCCURRENCE | |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | |
| | | | | | | | MED EXP (Any one person) | |
| | | | | | | | PERSONAL & ADV INJURY | |
| | | | | | | | GENERAL AGGREGATE | |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | |
| A | AUTOMOBILE LIABILITY  X ANY AUTO  ALL OWNED AUTOS  SCHEDULED AUTOS  X HIRED AUTOS X NON-OWNED AUTOS | | | BAP 9377865-08  Deductibles: Owned Comp/Coll: Hired Comp/Coll: | 12/16/2011 | 12/16/2012 | COMBINED SINGLE LIMIT (Ea accident) | |
| | | | | | | | BODILY INJURY (Per person) | |
| | | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | | PROPERTY DAMAGE (Per accident) | |
| B | X UMBRELLA LIAB X OCCUR  EXCESS LIAB CLAIMS-MADE  DED RETENTION $ | | | AUC 5945574-03 | 12/16/2011 | 12/16/2012 | EACH OCCURRENCE | |
| | | | | | | | AGGREGATE | |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WC 9377867 08 | 12/16/2011 | 12/16/2012 | X WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Re: The Lofts of Tuscaloosa
Tuscaloosa I, LLC is included as additional insured where required by written contract with respect to general liability.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Tuscaloosa I, LLC 431 Office Park Drive Birmingham, AL 35223 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE of Marsh USA Inc.  John A. Goley |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)      The ACORD name and logo are registered marks of ACORD

**Exhibit C.2**

 ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 09/11/2012 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER<br>Marsh USA, Inc.<br>1801 West End Avenue, Suite 1500<br>Nashville, TN 37219 | CONTACT<br>NAME: | | |
|---|---|---|---|
| | PHONE<br>(A/C, No, Ext): | | FAX<br>(A/C, No): |
| | E-MAIL<br>ADDRESS: | | |
| 033700--GAWU-11-12 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Zurich American Insurance Company | | 16535 |
| INSURED<br>CONSTRUCTION ENTERPRISES, INC.<br>325 SEABOARD LANE, SUITE 170<br>FRANKLIN, TN 37067 | INSURER B : American Guarantee & Liability Ins Co | | 26247 |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES    CERTIFICATE NUMBER: ATL-003109929-02    REVISION NUMBER: 19

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>◻ CLAIMS-MADE  X OCCUR | | | PRA 9377866-08 | 12/16/2011 | 12/16/2012 | EACH OCCURRENCE<br>DAMAGE TO RENTED PREMISES (Ea occurrence)<br>MED EXP (Any one person)<br>PERSONAL & ADV INJURY | |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>◻ POLICY  X PRO-JECT  ◻ LOC | | | | | | GENERAL AGGREGATE<br>PRODUCTS - COMP/OP AGG | |
| A | **AUTOMOBILE LIABILITY**<br>X ANY AUTO<br>◻ ALL OWNED AUTOS  ◻ SCHEDULED AUTOS<br>X HIRED AUTOS  X NON-OWNED AUTOS | | | BAP 9377865-08<br><br>Deductibles:<br>Owned Comp/Coll:<br>Hired Comp/Coll: | 12/16/2011 | 12/16/2012 | COMBINED SINGLE LIMIT (Ea accident)<br>BODILY INJURY (Per person)<br>BODILY INJURY (Per accident)<br>PROPERTY DAMAGE (Per accident) | |
| B | X **UMBRELLA LIAB**  X OCCUR<br>◻ **EXCESS LIAB**  ◻ CLAIMS-MADE<br>◻ DED  ◻ RETENTION $ | | | AUC 5945574-03 | 12/16/2011 | 12/16/2012 | EACH OCCURRENCE<br>AGGREGATE | |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N  N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | WC 9377867 08 | 12/16/2011 | 12/16/2012 | X WC STATU-TORY LIMITS  OTH-ER<br>E.L. EACH ACCIDENT<br>E.L. DISEASE - EA EMPLOYEE<br>E.L. DISEASE - POLICY LIMIT | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
RE: THE LOFTS OF TUSCALOOSA
REGIONS BANK, AS ADMINISTRATIVE AGENT, ITS SUCCESSORS & ASSIGNS ARE INCLUDED AS ADDITIONAL INSURED (EXCEPT WORKERS' COMPENSATION) WHERE REQUIRED BY WRITTEN CONTRACT.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| REGIONS BANK,<br>AS ADMINISTRATIVE AGENT,<br>ITS SUCCESSORS & ASSIGNS ATIMA<br>ATTN: LOAN OPERATIONS<br>PO BOX 12926<br>BIRMINGHAM, AL 35202 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>of Marsh USA Inc.<br><br>John A. Goley  *J.R. A. Goley* |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2010/05)**    The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 033700

LOC #: Nashville

**ACORD®**

## ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | | NAMED INSURED |
|---|---|---|
| Marsh USA, Inc. | | CONSTRUCTION ENTERPRISES, INC |
| **POLICY NUMBER** | | 325 SEABOARD LANE, SUITE 170 |
| | | FRANKLIN, TN 37067 |
| **CARRIER** | **NAIC CODE** | |
| | | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25     FORM TITLE: Certificate of Liability Insurance

Crime Coverage:

Carrier: Zurich American Insurance Company
Policy #: PRA 9377866-08
Policy Period: 12/16/11 to 12/16/12

Employee Dishonesty:
Forgery or Alteration: ███████

Contractors Equipment:

Carrier: Zurich American Insurance Company
Policy #: PRA 9377866-08
Policy Period: 12/16/11 to 12/16/12

Owned/Scheduled: $ ███████
Equipment Leased/Rented: ██████

All risk except where excluded

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

63 of 174

# Additional Insured – Automatic – Owners, Lessees Or Contractors



**ZURICH**

| Policy No | Exp. Date or Pol. | Eff. Date of End. | Agency No | Addn'l Prem. | Return Prem. |
|---|---|---|---|---|---|
| | | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Named Insured:**
**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

- **A.** **Section II – Who Is An Insured** is amended to include as an insured any person or organization who you are required to add as an additional insured on this policy under a written contract or written agreement.

- **B.** The insurance provided to the additional insured person or organization applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under **SECTION I - Coverage A - Bodily Injury And Property Damage Liability** and **Section I – Coverage B – Personal And Advertising Injury Liability**, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by:

  - **1.** Your acts or omissions; or

  - **2.** The acts or omissions of those acting on your behalf; and resulting directly from:

    - **a.** Your ongoing operations performed for the additional insured, which is the subject of the written contract or written agreement; or

    - **b.** "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured which is the subject of the written contract or written agreement.

- **C.** However, regardless of the provisions of paragraphs **A.** and **B.** above:

  - **1.** We will not extend any insurance coverage to any additional insured person or organization:

    - **a.** That is not provided to you in this policy; or

    - **b.** That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

  - **2.** We will not provide limits of insurance to any additional insured person or organization that exceed the lower of:

    - **a.** The Limits of Insurance provided to you in this policy; or

    - **b.** The Limits of Insurance you are required to provide in the written contract or written agreement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GL-1175-B CW (03-2005)
Page 1 of 2

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

**D.** The insurance provided to the additional insured person or organization does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

1. The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

**E.** The additional insured must see to it that:

1. We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

2. We receive written notice of a claim or "suit" as soon as practicable; and

3. A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**F.** For the coverage provided by this endorsement:

1. The following paragraph is added to Paragraph 4.a. of the Other Insurance Condition of Section IV – Commercial General Liability Conditions:

This insurance is primary insurance as respects our coverage to the additional insured person or organization, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured person or organization is a Named Insured.

2. The following paragraph is added to Paragraph 4.b. of the Other Insurance Condition of Section IV – Commercial General Liability Conditions.

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, on which the additional insured is or our policy is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", offense or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributing basis.

**G.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds and which endorsement applies specifically to that identified additional insured.

Any provisions in this Coverage Part not changed by the terms and conditions of this endorsement continue to apply as written.

Agreement

October 3, 2012                    The Lofts of Tuscaloosa - Tuscaloosa, Alabama                    65 of 174
                                   A141 DB/Owner Contract Agreement

**COMMERCIAL INSURANCE**

---

**CANCELLATION BY US**

This endorsement changes the policy.  Please read it carefully.

This endorsement modifies insurance provided by the following:

BOILER AND MACHINERY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE FORM
FARM COVERAGE FORM
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

SCHEDULE

**Number of Days' Notice:** 60

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days secured for notice of cancellation, as provided in paragraph 2. of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

IL-GU-298-0 C.W. (2-94)
Page 1 of 1

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Bond No. 83B108541



**Liberty Mutual.**

Exhibit C.3

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## *Performance Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Construction Enterprises, Inc.
325 Seaboard Lane Ste 170
Franklin, TN 37067

**OWNER:**
*(Name, legal status and address)*

Tuscaloosa I, LLC
c/o  CAPSTONE COLLEGIATE
COMMUNITIES, 431 Office Park Drive
Birmingham, AL  35223

**SURETY:**
*(Name, legal status and principal place of business)*

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA  02116
**Mailing Address for Notices**
Liberty Mutual Insurance Company
Attention: Surety Claims Department
1001 4th Avenue, Suite 1700
Seattle, WA 98154

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date:        October 3, 2012

Amount: $ ████████████

**Description:**
*(Name and location)*

Design-Build - The Lofts of Tuscaloosa, Tuscaloosa, AL

**BOND**
Date:        October 3, 2012
*(Not earlier than Construction Contract Date)*

Amount: $ ████████████

Modifications to this Bond:        [X] None        [ ] See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:        *(Corporate Seal)*
Construction Enterprises, Inc.

Signature:
Name and Title:  Mike St Knudsen
E.V.P.

**SURETY**
Company:        *(Corporate Seal)*
Liberty Mutual Insurance Company

Signature:
Name and Title:  Chris James
Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
James A. Scott and Son Inc.
6640 Carothers Pkwy, Ste. 100
Franklin, TN 37067
October 3, 2012

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

67 of 174

S-1852/AS 8/10

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

**§ 2** If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1  the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2  the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3  the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

**§ 4** Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

**§ 5** When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

**§ 5.1** Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

**§ 5.2** Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

**§ 5.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

**§ 5.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1  After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2  Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

**§ 6** If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**§ 7** If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

.1    the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

.2    additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

.3    liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**§ 8** If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

**§ 9** The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

**§ 10** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**§ 11** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**§ 12** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

**§ 13** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

### § 14 Definitions

**§ 14.1 Balance of the Contract Price.** The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

**§ 14.2 Construction Contract.** The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

**§ 14.3 Contractor Default.** Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

**§ 14.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 14.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 15** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

S-1852/AS 8/10

**§ 16** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| **CONTRACTOR AS PRINCIPAL** | | **SURETY** | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| | | | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address | | Address | |

October  3, 2012

S-1852/AS 8/10

THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

5395347

Certificate No. _____

American Fire and Casualty Company
The Ohio Casualty Insurance Company
West American Insurance Company

Liberty Mutual Insurance Company
Peerless Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That American Fire & Casualty Company and The Ohio Casualty Insurance Company are corporations duly organized under the laws of the State of Ohio, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, that Peerless Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, **MICHAEL D. REGAN, H. A. WRIGHT, JR., TRACY L. CARLILE, B. JONES, III, CHRIS JAMES, CHRISTI HORN,** ................................................................................................................

..........................................................................................................................................................................................................................................

all of the city of ____FRANKLIN____ , state of ____TENNESSEE____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this ___21st___ day of ____MAY____ , _2012_ .

American Fire and Casualty Company
The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
Peerless Insurance Company
West American Insurance Company

By: _____
Gregory W. Davenport, Assistant Secretary

STATE OF WASHINGTON   ss
COUNTY OF KING

On this ___21st___ day of ____MAY____ , _2012_ , before me personally appeared Gregory W. Davenport, who acknowledged himself to be the Assistant Secretary of American Fire and Casualty Company, Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Peerless Insurance Company and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at Seattle, Washington, on the day and year first above written.

By: _KD Riley_____
KD Riley , Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, West American Insurance Company and Peerless Insurance Company, which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS – Section 12. Power of Attorney.** Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings.** Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes Gregory W. Davenport, Assistant Secretary to appoint such attorney-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and biding upon the Company with the same force and effect as though manually affixed.

I, David M. Carey, the undersigned, Assistant Secretary, of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, West American Insurance Company and Peerless Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _3rd_ day of _October_ , 20 _12_ .

By: _David M. Carey_____
David M. Carey, Assistant Secretary

October 3, 2012

POA - AFCC, LMIC, OCIC, PIC & WAIC
LMS_12873_041012

The Long... Tuscaloosa & Tuscaloosa, Alabama
A14; Homeowner Contract Agreement

*Left margin (vertical):* Not valid for mortgage, note, loan, letter of credit, bank deposit, currency rate, interest rate or residual value guarantees.

*Right margin (vertical):* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

**Exhibit C.4**

Bond No.   83B108541

 **Liberty Mutual.**

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## *Payment Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

Construction Enterprises, Inc.

325 Seaboard Lane Ste 170

Franklin, TN  37067

**SURETY:**
*(Name, legal status and principal place of business)*

Liberty Mutual Insurance Company

175 Berkeley Street

Boston, MA  02116
**Mailing Address for Notices**
Liberty Mutual Insurance Company
**Attention: Surety Claims Department
1001 4th Avenue, Suite 1700
Seattle, WA 98154**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**OWNER:**
*(Name, legal status and address)*
Tuscaloosa I, LLC
c/o  CAPSTONE COLLEGIATE
COMMUNITIES, 431 Office Park Drive
Birmingham, AL  35223

**CONSTRUCTION CONTRACT**
Date:     October 3, 2012

Amount: $ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Description:
*(Name and location)*

Design-Build - The Lofts of Tuscaloosa, Tuscaloosa, AL

**BOND**
Date:     October 3, 2012

*(Not earlier than Construction Contract Date)*

Amount: $ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Modifications to this Bond:     ☒ None     ☐ See Section 18

| **CONTRACTOR AS PRINCIPAL** | **SURETY** |
|---|---|
| Company:     *(Corporate Seal)* | Company:     *(Corporate Seal)* |
| Construction Enterprises, Inc. | Liberty Mutual Insurance Company |
| Signature: | Signature: |
| Name and Title:  Gina S. Mousden  E.V.P. | Name and Title:  Chris James  Attorney-in-Fact |

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
James A. Scott and Son Inc.
6640 Carothers Pkwy, Ste. 100
Franklin, TN  37067
October 3, 2012

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

S-2149/AS 8/10

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

**§ 2** If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

**§ 4** When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

**§ 5** The Surety's obligations to a Claimant under this Bond shall arise after the following:

**§ 5.1** Claimants, who do not have a direct contract with the Contractor,

    **.1**    have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

    **.2**    have sent a Claim to the Surety (at the address described in Section 13).

**§ 5.2** Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

**§ 6** If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

**§ 7** When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

**§ 7.1** Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

**§ 7.2** Pay or arrange for payment of any undisputed amounts.

**§ 7.3** The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

**§ 8** The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**§ 9** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

**§ 10** The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

**§ 11** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**§ 12** No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**§ 13** Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

**§ 14** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**§ 15** Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

**§ 16 Definitions**
**§ 16.1 Claim.** A written statement by the Claimant including at a minimum:

.1 the name of the Claimant;
.2 the name of the person for whom the labor was done, or materials or equipment furnished;
.3 a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
.4 a brief description of the labor, materials or equipment furnished;
.5 the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
.6 the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
.7 the total amount of previous payments received by the Claimant; and
.8 the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

**§ 16.2 Claimant.** An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

**§ 16.3 Construction Contract.** The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**  
Company:                    *(Corporate Seal)*

**SURETY**  
Company:                              *(Corporate Seal)*

Signature: _____  
Name and Title:  
Address

Signature: _____  
Name and Title:  
Address

October 3, 2012

S-2149/AS 8/10

5395348

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. _____

American Fire and Casualty Company
The Ohio Casualty Insurance Company
West American Insurance Company

Liberty Mutual Insurance Company
Peerless Insurance Company

# POWER OF ATTORNEY

**KNOWN ALL PERSONS BY THESE PRESENTS:** That American Fire & Casualty Company and The Ohio Casualty Insurance Company are corporations duly organized under the laws of the State of Ohio, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, that Peerless Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint,  **MICHAEL D. REGAN, H. A. WRIGHT, JR., TRACY L. CARLILE, B. JONES, III, CHRIS JAMES, CHRISTI HORN,** ......................................................................................................................................................................................

all of the city of    **FRANKLIN**    state of    **TENNESSEE**    each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this   **21st**   day of   **MAY**      **2012** .

American Fire and Casualty Company
The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
Peerless Insurance Company
West American Insurance Company

By: _____
Gregory W. Davenport, Assistant Secretary

STATE OF WASHINGTON      ss
COUNTY OF KING

On this   **21st**   day of   **MAY**      **2012** , before me personally appeared Gregory W. Davenport, who acknowledged himself to be the Assistant Secretary of American Fire and Casualty Company, Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Peerless Insurance Company and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at Seattle, Washington, on the day and year first above written.

By: _KD Riley_____
KD Riley , Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, West American Insurance Company and Peerless Insurance Company, which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation.  When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company.  When executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes Gregory W. Davenport, Assistant Secretary to appoint such attorney-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and biding upon the Company with the same force and effect as though manually affixed.

I, David M. Carey, the undersigned, Assistant Secretary, of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, West American Insurance Company and Peerless Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this   3rd   day of   October , 20  12 .

By: _David M. Carey_____
David M. Carey, Assistant Secretary

October 3, 2012

The Lons w..   colabusa  Tuscaloosa, Alabama
A141 De Owner Contract Agreement

POA - AFCC, LMIC, OCIC, PIC & WAIC
LMS_12873_041012

*Left margin:* Not valid for mortgage, note, loan, letter of credit, bank deposit, currency rate, interest rate or residual value guarantees.

*Right margin:* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.



**Exhibit C.5**

Interchange Corporate Center
450 Plymouth Road, Suite 400
Plymouth Meeting, PA. 19462-1644
Ph. (610) 832-8240

# RIDER ADDING ADDITIONAL OBLIGEE

This rider is to be attached to and form a part of surety bond number 83B108541 , dated the 3rd day of October , 2012 executed by LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts stock insurance company, as surety (the "Surety"), on behalf of _____
Construction Enterprises, Inc.
325 Seaboard Lane Ste 170, Franklin, TN 37067 , as principal (the "Principal"),
in favor of _____
Tuscaloosa I, LLC
c/o CAPSTONE COLLEGIATE COMMUNITIES, 431 Office Park Drive, Birmingham, AL 35223 , as obligee (the "Obligee").

WHEREAS, the Principal has by written agreement dated the 3rd day of October , 2012 , entered into a contract (the "Contract") with the Obligee for: Design-Build - The Lofts of Tuscaloosa, Tuscaloosa, AL

WHEREAS, upon the request of the Principal and Obligee, the attached bond is hereby amended to add _____
Regions Bank, as Administrative Agent
_____ , as additional obligee(s) [the "Additional Obligee(s)"] to the bond, and the Obligee and Additional Obligees shall be joint and several beneficiaries of the bond and shall be collectively referred to as the "Bond Obligee(s)".

PROVIDED, HOWEVER, there shall be no liability of the Surety under the attached bond to the Bond Obligee(s), either jointly or severally, unless and until the Bond Obligee(s), shall make payment to the Principal or to the Surety (should the Surety arrange for or undertake the completion of the Contract upon the default of the Principal), strictly in accordance with the terms of the Contract; and otherwise satisfy all terms and conditions and perform all of the other obligations to be performed under the Contract at the time and in the manner therein set forth; all of the acts of one Bond Obligee being binding upon the other.

In no event shall the aggregate liability of the Surety to the Bond Obligee(s), either jointly or severally, exceed the penal sum of the attached bond, nor shall the Surety be liable except for a single payment for each single breach or default. At the Surety's election, any payment due any Bond Obligee may be made by its check issued to all Bond Obligee(s).

This change is effective the 3rd day of October , 2012 .

The attached bond shall be subject to all of its terms, conditions and limitations except as herein modified.

IN WITNESS WHEREOF, said Principal, Surety, Obligee and Additional Obligee have caused these presents to be duly signed and sealed this 3rd day of October , 2012 .

| | | |
|---|---|---|
| Construction Enterprises, Inc. | By: | (Seal) |
| (Principal) | Title: | |
| | Date: | 10-3-12 |
| **LIBERTY MUTUAL INSURANCE COMPANY** | By: | |
| (Surety) | Title: Attorney-In-Fact/ Chris James | |
| | Date: October 3, 2012 | |
| Tuscaloosa I, LLC | By: | |
| (Obligee) | Title: | MEMBER |
| | Date: 10/4/12 | |
| Regions Bank, as Administrative Agent | By: | |
| (Additional Obligee) | Title: | |
| | Date: | |
| | By: | (Seal) |
| (Additional Obligee) | Title: | |
| | Date: | |

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

5395349

Certificate No. _____

American Fire and Casualty Company
The Ohio Casualty Insurance Company
West American Insurance Company

Liberty Mutual Insurance Company
Peerless Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That American Fire & Casualty Company and The Ohio Casualty Insurance Company are corporations duly organized under the laws of the State of Ohio, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, that Peerless Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, **MICHAEL D. REGAN, H. A. WRIGHT, JR., TRACY L. CARLILE, B. JONES, III, CHRIS JAMES, CHRISTI HORN,** ‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

all of the city of _____FRANKLIN____ , state of _____TENNESSEE____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this **21st** day of **MAY** , **2012** .

American Fire and Casualty Company
The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
Peerless Insurance Company
West American Insurance Company

By: _Gregory W. Davenport_
Gregory W. Davenport, Assistant Secretary

STATE OF WASHINGTON
COUNTY OF KING          ss

On this **21st** day of **MAY** , **2012** , before me personally appeared Gregory W. Davenport, who acknowledged himself to be the Assistant Secretary of American Fire and Casualty Company, Liberty Mutual Insurance Company, The Ohio Casualty Company, Peerless Insurance Company and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at Seattle, Washington, on the day and year first above written.



By: _KD Riley_
KD Riley , Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, West American Insurance Company and Peerless Insurance Company, which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes Gregory W. Davenport, Assistant Secretary to appoint such attorney-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and biding upon the Company with same force and effect as though manually affixed.

I, David M. Carey, the undersigned, Assistant Secretary, of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, West American Insurance Company and Peerless Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this **3rd** day of October, 20 **12** .

By: _David M. Carey_
David M. Carey, Assistant Secretary

October 3, 2012

The Lofts of ... ... ... ... ... loosa, Alabama
A141 Db/Owner Contract Agreement

78 of 174

POA - AFCC, LMIC, OCIC, PIC & WAIC
LMS_12873_041012

*Not valid for mortgage, note, loan, letter of credit, bank deposit, currency rate, interest rate or residual value guarantees.*

*To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.*

# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## <u>EXHIBIT D</u>

## Project Criteria

**D.1 – Qualifications and Clarifications**
**D.2 – Schedule of Values**
**D.3 – Index of Drawings**
**D.4 – Specification Table of Contents**



**Exhibit D.1**



**CONSTRUCTION ENTERPRISES, INC.**

325 Seaboard Lane, Suite 170
Franklin, TN  37067
Phone: 615-332-8880
Fax: 615-771-0818
www.constructionenterprises.com

### DESIGN BUILDER'S MODIFICATIONS AND CLARIFICATIONS
### THE LOFTS AT TUSCALOOSA CITY CENTER
### 9/28/12

**GENERAL REQUIREMENTS**

| | |
|---|---|
| a. | We include supervision, field administration, temporary utilities and project facilities. |
| b. | The performance and payment bond is included. |
| c. | We do not include the builders risk insurance. |
| d. | We include the building permit. |
| e. | We do not include any utility company fees, impact fees, utility connection fees. |
| f. | The cost for concrete testing is included. The cost for all other testing is not included. |

**SITEWORK**

| | |
|---|---|
| a. | Our budget for site grading is classified excavation. Additionally we include an allowance of ▓▓▓▓ for the removal of unsuitable soil, hauled off site and replaced with hauled in select fill. |
| b. | The site utility budget includes labor and material for the storm sewer and sanitary sewer. The water system estimate includes only labor. You have told us the  material for the water system including meters and vaults is to be supplied by the City of Tuscaloosa. The 54" storm sewer pipe and related structures is not included. |
| c. | We include 14 grate inlet skimmer boxes as manufactured by Suntree Technologies. |
| d. | Offsite work and improvements are excluded. |
| e. | We include rubble stone retaining walls in the location shown at 13th Street on the plan by Gonzalez-Strength & Associates dated 8/16/12. |
| f. | An allowance of ▓▓▓▓▓ is included for landscaping and irrigation. |
| g. | An allowance of $▓▓▓▓ is included for courtyard hardscape features. |
| h. | An allowance of ▓▓▓▓ is included for the courtyard amenities. |
| i. | An allowance of ▓▓▓▓ is included for the sand volleyball court. |
| j. | There is a gas service line included at a $▓▓▓▓▓ allowance. |
| k. | We included stamped concrete paving at the circle street intersections. |

**CONCRETE**

| | |
|---|---|
| a. | We include post tension slab on grade foundations with a design by the post tension subcontractor. The design will be provided by a registered engineer. |
| b. | We include U.S. Gypsum Levelrock ¾" gypsum floor underlayment in all living units except those units located at the slab on grade level and the podium deck level. The 1/8" thick sound attenuation mat is included at all areas receiving gypsum underlayment. |



October  3, 2012       Page 1 of 5
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement      80 of 174

| | |
|---|---|
| c. | Above grade corridors and balconies will be concrete with trowel finish over 60 mil bituthene waterproofing within 10 feet of a corridor opening. The "dry" corridors will be poured over 15# felt. Concrete is to be stained and sealed. Sound mat is not included at the corridors. |

**MASONRY**

| | |
|---|---|
| a. | An allowance of ▮▮▮▮▮ per thousand for queen size brick material is included. |
| b. | 8" CMU walls are included at the masonry firewalls, elevator shafts and stairways. |

**METALS**

| | |
|---|---|
| a. | We include an the structural steel framing at the clubhouse and the caves. |
| b. | Steel stair assemblies with closed risers and precast concrete treads are included. Fabricated using MC 10x10.6 # channel stringers, 14 gauge bent closed riser, precast 44" wide concrete treads supported with 3"x2"x3/16" angles. The stair guardrail is TS 1-1/2" square 14 gauge top and bottom runners with ½" 16 gauge pickets 4" center. Handrail is 1-1/4" diameter sch. 40 metal pipe. |
| c. | The balcony railings, building pedestrian entry gates and mesh infill, screen panels, canopies and miscellaneous rails are painted steel. There is no powder coating included. |
| d. | An allowance of ▮▮▮▮▮ is included for the pedestrian bridge connecting buildings 2 and 3. |

**WOOD & PLASTICS**

| | |
|---|---|
| a. | The typical wood wall framing will use #2 SYP material and fire treated where indicated. |
| b. | The building wrap and tape we include is Fortifiber Weathersmart and Fortiflash tape. |
| c. | The high parapet structure is included. The TPO roof membrane will cover the back vertical wall surface of the parapet. A 5" wide aluminum gutter with 3" x 4" downspout will be installed to catch rain water draining from the the raised roof surface. There will not be a parapet wall at this location. |
| d. | The interior wood trim will be 1 x 4 square edge finger jointed pine for the casing, base and window apron. The finger jointed wood window sill will be standard profile. |
| e. | We include smooth cement siding panels with metal connectors. The exterior corridors will receive exterior rated drywall. Exterior trim will be fiber cement boards. |
| f. | Metal awnings are included to the best of our interpretation of the plans. |
| g. | Closet shelving is vinyl coated wire. |

**THERMAL & MOISTURE PROTECTION**

| | |
|---|---|
| a. | We include a standard 60 mil TPO for the flat roof. |
| b. | Sprayed on fire proofing is included for the 3 hour floor/ceiling assembly above the ground level entry to the parking garage. |

**DOORS & WINDOWS**

| | |
|---|---|
| a. | The entry doors from the corridor to the living unit are 3'-0"x 6'-8" insulated, 6-panel metal with finger jointed wood frame 20 minute rated. |
| b. | The clubhouse doors are included at an estimated price of ▮▮▮▮▮ |
| c. | Interior doors are hollow core hardboard 2 panel prehung in FJ wood frame. |
| d. | We include vinyl frame windows. Fire rated windows are not included. |
| e. | We include the aluminum store front system at the clubhouse exterior. |

| | |
|---|---|
| f. | Door hardware is quoted as typical for apartment usage. Manufacturers are Faultless, Pamex, or BHP. Programmable deadbolts at the apartment entry doors are included. Bedroom doors will receive locksets. |

**FINISHES**

| | |
|---|---|
| a. | We will install moisture resistant drywall at the tub/shower surrounds. We do not include any cement board product for the wet areas. |
| b. | We include unit floor finishes as follows. |
| | - Carpet in the bedrooms and closets is Mohawk Season Ticket or equal with 6# pad. |
| | - Vinyl Plank in the entryway, living, dining and bathrooms will be Mohawk Endurance Plank or equal. |
| c. | All finishes for the clubhouse are provided as an allowance of ████. This includes paint, mirrors, ceilings, tile, casework, toilet partitions, sauna, tanning, etc. |
| d. | We include one color of paint for the walls and one color for the ceilings. Kitchens and Bathrooms receive semi-gloss paint, the rest of the interior walls receive flat paint. |
| e. | All interior trim will receive semi-gloss paint |

**SPECIALTIES**

| | |
|---|---|
| a. | The mailboxes and mail kiosk are included. |
| b. | The bath accessories are included as typical apartment grade. |
| c. | We include one 5# fire extinguisher in each living unit and 10# fire extinguishers in semi-recessed mounted non-fire rated cabinets in the corridors. |
| d. | All signage for the project is an allowance of ████ |

**EQUIPMENT**

| | |
|---|---|
| a. | We include kitchen appliances and clothes washer and dryer by General Electric. |
| b. | Kitchen and vanity cabinets for the apartments are the Arlington style by SACO with standard pulls. |
| c. | We include 3 cm thick granite countertops in the kitchen and 2 cm thick granite tops for the bathroom vanities. Both are prepared for under mount sinks. |

**FURNISHINGS**

| | |
|---|---|
| a. | We include 2" wide slat fauxwood blinds for the apartment and clubhouse windows. |

**SPECIAL CONSTRUCTION**

| | |
|---|---|
| a. | An allowance of ████ is provided for the swimming pool and deck. |
| b. | An allowance of ████ is included for the audio/visual equipment at the clubhouse, pool and cave areas. |

**CONVEYING SYSTEMS**

| | |
|---|---|
| a. | We include the elevator. The smoke curtains are excluded. |
| b. | The trash chute with 24" diameter shaft, mini compactor and 2 carts is included. |

**MECHANICAL**

| | |
|---|---|
| a. | Fire Protection: |
| | - The fire sprinkler system is included. |
| b. | Plumbing: |



| | |
|---|---|
| | - We are including a price for a plumbing system installed to comply with local code requirement. Water piping will be CPVC Schedule 80 for all piping 2-1/2" or larger and CPVC Schedule 40 for all piping 2" or smaller. The drain pipe will be PVC DWV. |
| | - The fixtures are priced as shown on your outline specifications. |
| | - Pressure reducing valves are not included. |
| | - We include insulation of water piping only in unheated areas which may subject to freezing. |
| | |
| | -Sound proofing of plumbing pipe is not included. |
| | - We include a water sub-metering system installation in each unit. |
| | |
| c. | HVAC: |
| | - We include 13SEER Goodman or equal equipment with R-410a coolant. |
| | - The bath exhaust fans will be apartment grade from Broan, 50cfm using hooded plastic wall caps. |
| | - The corridors will not be conditioned or heated since they are open air. |
| | - We include duct board trunk line and flexible branch ducts. Registers with radiation dampers will be provided. Metal paint grip wall caps on the exterior. We do not include 8 x 8 louvers. |
| | |
| | - Condensate drains will be PVC pipe. |
| | - We exclude the UV paint and aluminum jacket on exterior refrigerant lines. |
| | - We exclude any independent test and balance. |
| | |
| **ELECTRICAL** | |
| a. | The electrical pricing is based on romex type cable circuit wiring. Conduit is not included except at the garages. Service entrance cable will be aluminum SER cable. Emergency generator is not included. |
| b. | Secondary electric service is included. |
| c. | CFL bulbs are included. |
| d. | A fire alarm system is included. |
| f. | An allowance of ▮▮▮▮▮▮ is included for all site lighting. |
| g. | There is ▮▮▮▮▮▮ included as an allowance for the primary power distribution system. |
| h. | We include the underground exterior conduit and pull box for the low voltage wiring and the conduit from the MDF room to the IDF rooms all as shown on Infinisys plans dated 9-6-12. |
| | |
| **PARKING GARAGES:** | |
| a. | General conditions |
| | Sitework |
| | -The rammed aggregate piers are included. |
| | |
| b. | Structure |
| | - Our price is based on using precast concrete structures, decks, walls, stairs and a poured in place foundation. |
| | |
| c. | Masonry |
| | |
| d. | Metals |
| | - We include metal railings at the stairs. We do not any structural steel for the garages. One steel stair assembly is included for stair G3 between the 6th and 7th floors. |
| | |
| e. | Thermal and Moisture |



|   |   |
|---|---|
|   | - We include sealer on the top level concrete parking surface and traffic coating over the maintenance area. |
|   | -Waterproofing is included for the poured in place ramp wall adjacent to the building corridor. |
|   |   |
| f. | Doors |
|   |   |
| g. | Painting |
|   | - Includes stair railings, doors and striping. Garage structure is to be exposed unpainted concrete. |
|   |   |
| h. | Gates |
|   | - Entry gates are included at each vehicle entry/exit to the garages. |
|   |   |
| i. | Fire extinguishers are included. Signage allowance of ▮▮▮▮ is included. |
|   |   |
| j. | One trash chute with a mini compactor and two carts is included. |
|   |   |
| k. | Elevators |
|   | - There is one Otis Gen2 Traction machine roomless elevator. There is no smoke curtain at the elevator doors. |
| l. | Fire Protection System |
|   | - Fire protection system will be dry standpipe. |
|   |   |
| m. | HVAC |
|   | -Heating and air conditioning at the maintenance room, trash room and trash chute room at tier 1. |
| n. | Plumbing |
|   | - Includes drains and plumbing. |
|   |   |
| o. | Electrical |
|   | We exclude a fire alarm for the garage. |
|   |   |



**Exhibit D.2**

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached
In tabulations below, amounts are stated to the nearest dollar
Use Column 1 on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO.

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D + E + F) | H % (G ÷ C) | BALANCE TO FINISH (C - G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | General Requirements | | - | - | - | - | 0% | | - |
| 2 | Building Permit | | - | - | - | - | 0% | | - |
| 3 | Owner Provided Contingency | | - | - | - | - | 0% | | - |
| 4 | Site Grading, Paving, Utilities | | - | - | - | - | 0% | | - |
| 5 | Unsuitable Soil Allowance | | - | - | - | - | 0% | | - |
| 6 | Primary Electric System Allowance | | - | - | - | - | 0% | | - |
| 7 | Gas Service Line Allowance | | - | - | - | - | 0% | | - |
| 8 | Geopiers | | - | - | - | - | 0% | | - |
| 9 | Striping, Traffic Coating, Parking Signs | | - | - | - | - | 0% | | - |
| 10 | Soil Treatment | | - | - | - | - | 0% | | - |
| 11 | Landscape/Irrigation Allowance | | - | - | - | - | 0% | | - |
| 12 | Courtyard Hardscape Allowance | | - | - | - | - | 0% | | - |
| 13 | Courtyard Amenity Allowance | | - | - | - | - | 0% | | - |
| 14 | Volleyball Court Allowance | | - | - | - | - | 0% | | - |
| 15 | Site Fencing & Rails | | - | - | - | - | 0% | | - |
| 16 | Sidewalks & Steps | | - | - | - | - | 0% | | - |
| 17 | Stamped Concrete at Street | | - | - | - | - | 0% | | - |
| 18 | Retaining Walls | | - | - | - | - | 0% | | - |
| 19 | Concrete Foundations/SOG for Apartments | | - | - | - | - | 0% | | - |
| 20 | Concrete Foundation & SOG for Garage | | - | - | - | - | 0% | | - |
| 21 | Garage Precast | | - | - | - | - | 0% | | - |
| 22 | Gypsum Underlayment | | - | - | - | - | 0% | | - |
| 23 | Lightweight Concrete | | - | - | - | - | 0% | | - |
| 24 | Masonry | | - | - | - | - | 0% | | - |
| 25 | Structural & Architectural Metals | | - | - | - | - | 0% | | - |

Lofts at City Center Tuscaloosa

October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

**AIA DOCUMENT G703**

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO.

| A ITEM NO | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 26 | Bridge Allowance (complete finish) | ██ | - | - | - | - | 0% | ██ | - |
| 27 | Gates - Vehicle | ██ | - | - | - | - | 0% | ██ | - |
| 28 | Rough Carpentry | ██ | - | - | - | - | 0% | ██ | - |
| 29 | Roof & Floor Trusses | ██ | - | - | - | - | 0% | ██ | - |
| 30 | Interior Trim Carpentry | ██ | - | - | - | - | 0% | ██ | - |
| 31 | Siding & Trim | ██ | - | - | - | - | 0% | ██ | - |
| 32 | Waterproofing | ██ | - | - | - | - | 0% | ██ | - |
| 33 | Insulation | ██ | - | - | - | - | 0% | ██ | - |
| 34 | Roofing | ██ | - | - | - | - | 0% | ██ | - |
| 35 | Flashing & Vents | ██ | - | - | - | - | 0% | ██ | - |
| 36 | Caulk/Sealant at Garage CMU | ██ | - | - | - | - | 0% | ██ | - |
| 37 | Gutters & Downspouts | ██ | - | - | - | - | 0% | ██ | - |
| 38 | Exterior Doors | ██ | - | - | - | - | 0% | ██ | - |
| 39 | Overhead Door | ██ | - | - | - | - | 0% | ██ | - |
| 40 | Interior Doors | ██ | - | - | - | - | 0% | ██ | - |
| 41 | Aluminum Storefront | ██ | - | - | - | - | 0% | ██ | - |
| 42 | Windows | ██ | - | - | - | - | 0% | ██ | - |
| 43 | Door Hardware | ██ | - | - | - | - | 0% | ██ | - |
| 44 | Drywall & Metal Stud | ██ | - | - | - | - | 0% | ██ | - |
| 45 | Floor Covering | ██ | - | - | - | - | 0% | ██ | - |
| 46 | Painting | ██ | - | - | - | - | 0% | ██ | - |
| 47 | Club Finishes & Equipment | ██ | - | - | - | - | 0% | ██ | - |
| 48 | Signs - Allowance | ██ | - | - | - | - | 0% | ██ | - |
| 49 | Bath Accessories, Misc. Specialties, Mirrors | ██ | - | - | - | - | 0% | ██ | - |
| 50 | Appliances | ██ | - | - | - | - | 0% | ██ | - |
| 51 | Cabinets & Tops | ██ | - | - | - | - | 0% | ██ | - |
| 52 | Window Blinds | ██ | - | - | - | - | 0% | ██ | - |

Lofts at City Center Tuscaloosa

# CONTINUATION SHEET

AIA DOCUMENT G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO.:

PAGE 3 OF 3 PAGES

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D FROM PREVIOUS APPLICATION (D + E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D + E + F) | (G ÷ C) % | H BALANCE TO FINISH (C - G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | | | | | |
| 53 | Swimming Pool & related features allowance | ████ | - | | - | - | 0% | ████ | - |
| 54 | Elevators | | - | - | - | - | 0% | | - |
| 55 | Trash Chute | | - | - | - | - | 0% | | - |
| 56 | Fire Sprinkler | | - | - | - | - | 0% | | - |
| 57 | Plumbing | | - | - | - | - | 0% | | - |
| 58 | Water Submetering | | - | - | - | - | 0% | | - |
| 59 | HVAC | | - | - | - | - | 0% | | - |
| 60 | Electrical | | - | - | - | - | 0% | | - |
| 61 | Street Light Allowance | | - | - | - | - | 0% | | - |
| 62 | AV Equipment Allowance | | - | - | - | - | 0% | | - |
| 63 | P & P Bond | | - | - | - | - | 0% | | - |
| 64 | Architect Fee | | - | - | - | - | 0% | | - |
| 65 | Contractor Fee | | - | - | - | - | 0% | | - |
| | Totals | | - | - | - | - | 0% | | - |

Lofts at City Center Tuscaloosa

October 3, 2012

## Exhibit D.3

The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | Description | Stamp Date | Revised Date |
|---|---|---|---|

Architect:

Humphreys & Partners
5339 Alpha Road, Suite 300
Dallas, TX. 75240
T: 972.701.9636
F: 972.701.9639

Civil Engineer:

Gonzales-Strength and Associates, Inc
2176 Parkway Lake Drive
Birmingham, Alabama 35244
205-942-2486
205-942-3033

| Sheet | No. | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| — | — | Cover Sheet | 09/10/12 | 09/10/12 |
| | | | | |
| — | — | 13TH Street Improvements | 9/20/2012 | — |
| C | 101 | Site Grading/Utility Plan | 9/20/2012 | — |
| C | 201 | Paving, Signing and Striping Plan/Erosion Control Plan | 9/20/2012 | — |
| C | 301 | Standard Details | 9/20/2012 | — |
| C | 302 | Standard Details | 9/20/2012 | — |
| | | | | |
| | Civils | | | |
| S1 | R0 | ALTA/ACSM Land Title Survey | 5/21/2012 | — |
| C1 | R3 | Demolition Plan | 9/10/2012 | 09/13/12 |
| C2 | R3 | Phase I CBMPP | 9/10/2012 | 09/13/12 |
| C3 | R0 | Master Plan | — | 06/25/12 |
| C4 | R3 | Phase I Site Layout Plan | 9/10/2012 | 09/13/12 |
| C5 | R3 | Master Grading and Drainage Plan | 9/10/2012 | 09/13/12 |
| C6 | R3 | Phase I Site Grading Plan | 9/10/2012 | 09/13/12 |
| C7 | R3 | Phase II CBMPP | 9/10/2012 | 09/13/12 |
| C8 | R3 | Storm Sewer Profiles | 9/10/2012 | 09/13/12 |
| C9 | R3 | Storm Sewer Profiles | 9/10/2012 | 09/13/12 |
| C10 | R3 | Site Utility Plan | 9/10/2012 | 09/13/12 |
| C11 | R3 | Sanitary Sewer Plan and Profile | 9/10/2012 | 09/13/12 |
| C12A | R0 | Sanitary Sewer Details | 8/3/2012 | 06/25/12 |
| C12B | R0 | Sanitary Sewer Details | 8/3/2012 | 06/25/12 |
| C13 | R0 | Sections and Details | 8/3/2012 | 06/25/12 |
| C14 | R0 | Sections and Details | 8/3/2012 | 06/25/12 |
| C15 | R0 | Sections and Details | 8/3/2012 | 06/25/12 |

Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama
October 3, 2012



The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| Landscape | | | | |
| L | 1 | Site Hardscape Plan | 9/10/2012 | 09/10/12 |
| L | 2 | Hardscape Plan | 9/10/2012 | 09/10/12 |
| L | 3 | Courtyard Hardscape Plans | 9/10/2012 | 08/16/12 |
| L | 4 | Landscape Plan | 9/10/2012 | 09/10/12 |
| L | 5 | Landscape Plan | 9/10/2012 | 09/10/12 |
| L | 6 | Courtyard Landscape Plans | 9/10/2012 | 08/16/12 |
| L | 7 | Irrigation Plan | 9/10/2012 | 09/10/12 |
| L | 8 | Irrigation Plan | 9/10/2012 | 09/10/12 |
| L | 9 | Courtyard Irrigation Plans | 8/16/2012 | 08/16/12 |
| L | 10 | Site Details | 12/31/2012 | 08/16/12 |
| L | 11 | Site Details | 12/31/2012 | 08/16/12 |
| L | 12 | Site Details | 12/31/2012 | 08/16/12 |

Apartments

| | | | | |
|---|---|---|---|---|
| Architectural | | | | |
| A | 1.01 | Drawing Index | 9/10/2012 | 9/10/2012 |
| A | 1.02 | General Notes | 8/16/2012 | 8/16/2012 |
| A | 1.02a | Codes and Tabulations | 9/10/2012 | 9/10/2012 |
| A | 1.02b | Com Check  (date unchanged) | 8/16/2012 | 8/16/2012 |
| A | 1.02c | Com Check | 8/16/2012 | 8/16/2012 |
| A | 1.05 | Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.05a | Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06 | Rated Penetrations Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06a | Rated Penetrations Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06b | UL Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06c | UL Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06d | UL Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06e | UL Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06f | UL Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.06g | UL Rated Assemblies | 8/16/2012 | 8/16/2012 |
| A | 1.07 | STC Notes | 8/16/2012 | 8/16/2012 |
| A | 1.08 | Door Schedule and Notes | 8/16/2012 | 8/16/2012 |
| A | 1.08a | Door Details and Notes | 8/16/2012 | 8/16/2012 |
| A | 1.08b | Door Hardware Schedule | 8/16/2012 | 8/16/2012 |
| A | 1.09 | Window Schedule and Notes | 8/16/2012 | 8/16/2012 |
| A | 1.09a | Window Details and Notes | 8/16/2012 | 8/16/2012 |
| A | 1.20 | Unit Egress Plans | 8/16/2012 | 8/16/2012 |
| A | 1.30 | First Floor Egress Plan-Building 1 | 8/16/2012 | 8/16/2012 |
| A | 1.31 | Second Floor Egress Plan-Building 1 | 8/16/2012 | 8/16/2012 |
| A | 1.32 | Third Floor Egress Plan-Building 1 | 8/16/2012 | 8/16/2012 |
| A | 1.33 | Building 1A and 1B Fourth Floor Egress Plan | 8/16/2012 | 8/16/2012 |
| A | 1.34 | Fifth Floor Egress Plan-Building 1 | 8/16/2012 | 8/16/2012 |
| A | 1.60 | Hose Length Diagrams Building 1A and 1B | 8/16/2012 | 8/16/2012 |
| A | 2.01 | Architectural Site Plan | 9/10/2012 | 9/10/2012 |
| A | 3.01 | Floor Plan Unit B1 | 8/16/2012 | 8/16/2012 |

Lofts at Tuscaloosa aka Wood Square
October 3, 2012 Tuscaloosa, Alabama

2 of 10
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

10/2/2012
89 of 174

The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| A | 3.01a | Floor Plan Unit B1-ANSI A | 8/16/2012 | 8/16/2012 |
| A | 3.02 | Floor Plan Unit B2 | 8/16/2012 | 8/16/2012 |
| A | 3.03 | Floor Plan Unit C1 | 8/16/2012 | 8/16/2012 |
| A | 3.03a | Floor Plan Unit C1 ANSI A | 8/16/2012 | 8/16/2012 |
| A | 3.04 | Floor Plan Unit D1 | 8/16/2012 | 8/16/2012 |
| A | 3.05 | Floor Plan Unit D2 | 8/16/2012 | 8/16/2012 |
| A | 3.05a | Floor Pland Unit D2 ANSI A | 8/16/2012 | 8/16/2012 |
| A | 3.06 | Floor Plan Unit D3-Lower Level | 8/16/2012 | 8/16/2012 |
| A | 3.06a | Floor Plan Unit D3-Upper Level | 8/16/2012 | 8/16/2012 |
| A | 4.10 | Buildiing 1A and 1B Overall First Floor Plan | 9/10/2012 | 9/10/2012 |
| A | 4.10a | Building 1A and 1B Partial First Floor Plan 'A' | 8/16/2012 | 8/16/2012 |
| A | 4.10b | Building 1A and 1B Partial First Floor Plan 'B' | 9/10/2012 | 9/10/2012 |
| A | 4.10c | Building 1A and 1B Partial First Floor Plan 'C' | 9/10/2012 | 9/10/2012 |
| A | 4.10d | Building 1A and 1B Partial First Floor Plan 'D' | 9/10/2012 | 9/10/2012 |
| A | 4.11 | Buildiing 1A and 1B Overall Second Floor Plan | 9/10/2012 | 9/10/2012 |
| A | 4.11a | Building 1A and 1B Partial Second Floor Plan 'A' | 8/16/2012 | 8/16/2012 |
| A | 4.11b | Building 1A and 1B Partial Second Floor Plan 'B' | 9/10/2012 | 9/10/2012 |
| A | 4.11c | Building 1A and 1B Partial Second Floor Plan 'C' | 9/10/2012 | 9/10/2012 |
| A | 4.11d | Building 1A and 1B Partial Second Floor Plan 'D' | 8/16/2012 | 8/16/2012 |
| A | 4.12 | Buildiing 1A and 1B Overall Third Floor Plan | 8/16/2012 | 8/16/2012 |
| A | 4.12a | Building 1A and 1B Partial Third Floor Plan 'A' | 8/16/2012 | 8/16/2012 |
| A | 4.12b | Building 1A and 1B Partial Third Floor Plan 'B' | 8/16/2012 | 8/16/2012 |
| A | 4.12c | Building 1A and 1B Partial Third Floor Plan 'C' | 8/16/2012 | 8/16/2012 |
| A | 4.12d | Building 1A and 1B Partial Third Floor Plan 'D' | 8/16/2012 | 8/16/2012 |
| A | 4.13 | Buildiing 1A and 1B Overall Fourth Floor Plan | 8/16/2012 | 8/16/2012 |
| A | 4.13a | Building 1A and 1B Partial Fourth Floor Plan 'A' | 8/16/2012 | 8/16/2012 |
| A | 4.13b | Building 1A and 1B Partial Fourth Floor Plan 'B' | 8/16/2012 | 8/16/2012 |
| A | 4.13c | Building 1A and 1B Partial Fourth Floor Plan 'C' | 8/16/2012 | 8/16/2012 |
| A | 4.13d | Building 1A and 1B Partial Fourth Floor Plan 'D' | 8/16/2012 | 8/16/2012 |
| A | 4.14 | Buildiing 1A and 1B Overall Fifth Floor Plan | 8/16/2012 | 8/16/2012 |
| A | 4.14a | Building 1A and 1B Partial Fifth Floor Plan 'A' | 8/16/2012 | 8/16/2012 |
| A | 4.14b | Building 1A and 1B Partial Fifth Floor Plan 'B' | 8/16/2012 | 8/16/2012 |
| A | 4.14c | Building 1A and 1B Partial Fifth Floor Plan 'C' | 8/16/2012 | 8/16/2012 |
| A | 4.14d | Building 1A and 1B Partial Fifth Floor Plan 'D' | 8/16/2012 | 8/16/2012 |
| A | 4.15 | Roof Overall Building I Plan | 9/10/2012 | 9/10/2012 |
| A | 4.15a | Building 1A and 1B Partial Roof Floor Plan 'A' | 9/10/2012 | 9/10/2012 |
| A | 4.15b | Building 1A and 1B Partial Roof Floor Plan 'B' | 9/10/2012 | 9/10/2012 |
| A | 4.15c | Building 1A and 1B Partial Roof Floor Plan 'C' | 9/10/2012 | 9/10/2012 |
| A | 4.15d | Roof Partial Building I Plan | 9/10/2012 | 9/10/2012 |
| A | 4.16 | Reference Elevations | 9/10/2012 | 9/10/2012 |
| A | 4.16a | Building 1A West and East Elevations | 9/10/2012 | 9/10/2012 |
| A | 4.16b | Building 1B West and East Elevations | 9/10/2012 | 9/10/2012 |
| A | 4.17 | Elevations | 9/10/2012 | 9/10/2012 |
| A | 4.18a | Courtyard 1A Elevations | 9/10/2012 | 9/10/2012 |
| A | 4.18b | Courtyard 1A Elevations | 9/10/2012 | 9/10/2012 |
| A | 4.19 | Courtyard 1B Elevations | 9/10/2012 | 9/10/2012 |

Lofts at Tuscaloosa aka Wood Square
October 3, 2012 Alabama    3 of 10    The Lofts of Tuscaloosa - Tuscaloosa, Alabama    10/2/2012
A141 DB/Owner Contract Agreement    90 of 174

The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| A | 5.10 | Wall Sections | 8/16/2012 | 8/16/2012 |
| A | 5.11 | Wall Sections | 9/10/2012 | 9/10/2012 |
| A | 5.11a | Wall Sections | 8/16/2012 | 8/16/2012 |
| A | 5.12 | Wall Sections | 9/10/2012 | 9/10/2012 |
| A | 5.13 | Wall Sections | 9/10/2012 | 9/10/2012 |
| A | 5.14 | Wall Sections | 9/10/2012 | 9/10/2012 |
| A | 6.10 | Building 1 Stair 1 Plans and Sections | 8/16/2012 | 8/16/2012 |
| A | 6.11 | Building 1 Stair 2 Plans and Sections | 8/16/2012 | 8/16/2012 |
| A | 6.12 | Building 1 Stair 3 and Elevator 1 Plans and Sections | 8/16/2012 | 8/16/2012 |
| A | 6.12a | Building 1A and 1B Elevator Section | 8/16/2012 | 8/16/2012 |
| A | 6.17 | Building 1 First Floor Enlarged Plans | 8/16/2012 | 8/16/2012 |
| A | 6.18 | Building 1 Floor 2 Enlarged Plans | 8/16/2012 | 8/16/2012 |
| A | 6.19 | Building 1 Floors 3-5 Enlarged Plans | 8/16/2012 | 8/16/2012 |
| A | 6.20 | Stair Details | 8/16/2012 | 8/16/2012 |
| A | 6.40 | Bridge Plans | 8/16/2012 | 8/16/2012 |
| A | 6.41 | Bridge Sections and Elevations | 8/16/2012 | 8/16/2012 |
| A | 7.01 | Details | 8/16/2012 | 8/16/2012 |
| A | 7.02 | Details | 8/16/2012 | 8/16/2012 |
| A | 7.03 | Details | 8/16/2012 | 8/16/2012 |
| A | 7.04 | Details | 8/16/2012 | – |
| A | 7.05 | Details | 8/16/2012 | – |
| A | 7.06 | Details | 8/16/2012 | – |
| A | 7.07 | Details | 8/16/2012 | 8/16/2012 |
| A | 7.08 | Details | 8/16/2012 | 8/16/2012 |
| A | 7.09 | Details | 8/16/2012 | 8/16/2012 |
| A | 7.10 | Details | 8/16/2012 | 8/16/2012 |
| A | 8.01 | Clubhouse Door and Window Schedule | 8/16/2012 | 8/16/2012 |
| A | 8.10 | Clubhouse First and Second Overall Plan | 9/10/2012 | 9/10/2012 |
| A | 8.10a | Clubhouse First Floor Partial Plan (DIM) | 9/10/2012 | 9/10/2012 |
| A | 8.10b | Clubhouse First Floor Partial Plan (DIM) | 9/10/2012 | 9/10/2012 |
| A | 8.10c | Clubhouse Second Floor Partial Plan (DIM) | 8/16/2012 | 8/16/2012 |
| A | 8.11a | Clubhouse First Floor Partial Plan (Notes) | 9/10/2012 | 9/10/2012 |
| A | 8.11b | Clubhouse First Floor Partial Plan (Notes) | 9/10/2012 | 9/10/2012 |
| A | 8.11c | Clubhouse Second Floor Partial Plan (Notes) | 8/16/2012 | 8/16/2012 |
| A | 8.12 | Clubhouse Enlarged Plans | 8/16/2012 | 8/16/2012 |
| A | 8.13 | Clubhouse Interior Elevations | 8/16/2012 | 8/16/2012 |
| A | 9.10 | Mail Kiosk | 8/16/2012 | 8/16/2012 |

Interior Design

| | | | | |
|---|---|---|---|---|
| ID | 0.0 | Cover Sheet | 7/17/2012 | 9/6/2012 |
| ID | 1.0 | Floor Plan and Accent Paint Location Plan Clubhouse | 7/17/2012 | 8/16/2012 |
| ID | 1.1 | Floor and Accent Paint Plan Building 1 Caves | 7/17/2012 | 9/6/2012 |
| ID | 2.0 | Furniture Plan Clubhouse | 7/17/2012 | 8/16/2012 |
| ID | 2.1 | furniture Plan Building 1 Caves | 7/17/2012 | 9/6/2012 |
| ID | 3.0 | Floor Finish Plan Clubhouse | 7/17/2012 | 8/16/2012 |
| ID | 3.1 | Floor Finish Plan Units B1-C1 ANSI | 7/17/2012 | 8/16/2012 |

Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama
October 3, 2012                    4 of 10
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement
10/2/2012          91 of 174

The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| | Sheet Name | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| ID | 3.2 | Floor Finish Plan Units D1-D2 ANSI | 7/17/2012 | 8/16/2012 |
| ID | 3.3 | Floor Finish Plan Unit D3 | 7/17/2012 | 8/16/2012 |
| ID | 4.0 | Decorative Reflected Ceiling Plan Clubhouse | 7/17/2012 | 9/6/2012 |
| ID | 4.1 | Decorative Reflected Ceiling Plans Units B1-C1 ANSI | 7/17/2012 | 8/16/2012 |
| ID | 4.2 | Decorative Reflected Ceiling Plans Units D1-D2 ANSI | 7/17/2012 | 8/16/2012 |
| ID | 4.3 | Decorative Reflected Ceiling Plans Unit D3 | 7/17/2012 | 8/16/2012 |
| ID | 4.4 | Decorative Reflected Ceiling Plan Building 1 Caves | 7/17/2012 | 9/6/2012 |
| ID | 5.0 | Electrical Plan Clubhouse | 7/17/2012 | 8/16/2012 |
| ID | 5.1 | Electrical Plan Building 1 Caves | 7/17/2012 | 9/6/2012 |
| ID | 6.0 | Schedule of Materials Clubhouse | 7/17/2012 | 9/6/2012 |
| ID | 6.1 | Schedule of Materials Units | 7/17/2012 | 9/6/2012 |
| ID | 6.2 | Schedule of Materials Units | 7/17/2012 | 9/6/2012 |
| ID | 7.0 | Interior Elevations Clubhouse | 7/17/2012 | 8/16/2012 |
| ID | 7.1 | Interior Elevations Clubhouse | 7/17/2012 | 8/16/2012 |

| | Structural | | | |
|---|---|---|---|---|
| S | 0-1 | Title Sheet and Structural Specifications (1 of 1) | 9/7/2012 | 9/10/2012 |
| S | 0-2A | Standard Reinforced Concrete Details | 9/7/2012 | 9/10/2012 |
| S | 0-2B | Standard Wood Framing Details (1 of 2) | 9/7/2012 | 9/10/2012 |
| S | 0-2-C | Standard Wood Framing Details (2 of 2) | 9/7/2012 | 9/10/2012 |
| S | 0-3A | Unit Framing Plans | 9/7/2012 | 9/10/2012 |
| S | 0-3B | Unit Framing Plans | 9/7/2012 | 9/10/2012 |
| S | 0-3C | Unit Framing Plans | 9/7/2012 | 9/10/2012 |
| S | 0-3D | Unit Framing Plans | 9/7/2012 | 9/10/2012 |
| S | 0-3E | Unit Framing Plans | 9/7/2012 | 9/10/2012 |
| S | 1-1A1 | Building 1A Partial Slab Forming Plan (1 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1A2 | Building 1A Partial Slab Foundation Plan (1 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1A3 | Building 1A Partial Slab Reinforcement Plan (1 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1B1 | Building 1B Partial Slab Forming Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1B2 | Building 1B Partial Slab Foundation Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1B3 | Building 1B Partial Slab Reinforcement Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1C1 | Building 1B Partial Slab Forming Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1C2 | Building 1B Partial Slab Foundation Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1C3 | Building 1B Partial Slab Reforcement Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1D1 | Building 1A Partial Slab Forming Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1D2 | Building 1A Partial Slab Foundation Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-1D3 | Building 1A Partial Slab Reinforcement Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-2A | Building 1B Partial Second Floor Framing Plan (1 of 4 | 9/7/2012 | 9/10/2012 |
| S | 1-2B | Building 1B Partial Second Floor Framing Plan (2 of 4 | 9/7/2012 | 9/10/2012 |
| S | 1-2C | Building 1B Partial Second Floor Framing Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-2D | Building 1B Partial Second Floor Framing Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-3A | Building 1A Partial Third Floor Framing Plan (1 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-3B | Building 1B Partial Third Floor Framing Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-3C | Building 1B Partial Third Floor Framing Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-3D | Building 1A Partial Third Floor Framing Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-4A | Building 1A Partial Fourth Floor Framing Plan (1 of 4) | 9/7/2012 | 9/10/2012 |



Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama
October 3, 2012

5 of 10
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

10/2/2012
92 of 174

The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| S | 1-4B | Building 1B Partial Fourth Floor Framing Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-4C | Building 1B Partial Fourth Floor Framing Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-4D | Building 1A Partial Fourth Floor Framing Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-5A | Building 1A Partial Fifth Floor Framing Plan (1 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-5B | Building 1B Partial Fifth Floor Framing Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-5C | Building 1B Partial Fifth Floor Framing Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-5D | Building 1A Partial Fifth Floor Framing Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-6A | Building 1A Partial Roof Framing Plan (1 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-6B | Building 1B Partial Roof Framing Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-6C | Building 1B Partial Roof Framing Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-6D | Building 1A Partial Roof Framing Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-7A | Building 1A Partial Shearwall Location Plan (1 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-7B | Building 1B Partial Shearwall Location Plan (2 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-7C | Building 1B Partial Shearwall Location Plan (3 of 4) | 9/7/2012 | 9/10/2012 |
| S | 1-7D | Building 1A Partial Shearwall Location Plan (4 of 4) | 9/7/2012 | 9/10/2012 |
| S | 4-1 | Foundation Sections and Details | 9/7/2012 | 9/10/2012 |
| S | 4-2 | Foundation Sections and Details | 9/7/2012 | 9/10/2012 |
| S | 5-1 | Wood Framing Sections (1 of 1) changed to (1 of 3) | 9/7/2012 | 9/10/2012 |
| S | 5-2 | Wood Framing Sections (2 of 3) | 9/7/2012 | 9/10/2012 |
| S | 5-3 | Wood Framing Sections (3 of 3) | 9/7/2012 | 9/10/2012 |
| S | 6-1 | Roof Framing Sections (1 of 1) | 9/7/2012 | 9/10/2012 |
| S | 6-2 | Roof Framing Sections (2 of 2) | 9/7/2012 | 9/10/2012 |

Electrical

| | | | | |
|---|---|---|---|---|
| E | 0.01 | Electrical Symbols, Legends, and General Notes | 8/16/2012 | 8/16/2012 |
| E | 1.00 | Electrical Site Plan | 9/10/2012 | 9/10/2012 |
| E | 2.01 | Electrical Unit Plan | 9/10/2012 | 9/10/2012 |
| E | 2.02 | Electrical Unit Plan | 9/10/2012 | 9/10/2012 |
| E | 2.03 | Electrical Unit Plan | 9/10/2012 | 9/10/2012 |
| E | 3.11A | Building 1A Level 1 Electrical Plan | 9/10/2012 | 9/10/2012 |
| E | 3.11B | Building 1B Level 1 Electrical Plan | 9/10/2012 | 9/10/2012 |
| E | 3.12A | Building 1A Level 2-5 Electrical Plan | 9/10/2012 | 9/10/2012 |
| E | 3.12B | Building 1B Level 2-5 Electrical Plan | 9/10/2012 | 9/10/2012 |
| E | 3.16A | Building 1A roof Electrical Plan | 8/16/2012 | 8/16/2012 |
| E | 3.16B | Building 1B Roof Electrical Plan | 9/10/2012 | 9/10/2012 |
| E | 3.41 | Clubhouse Electrical Plan | 9/10/2012 | 9/10/2012 |
| E | 5.01 | Riser Diagram Building 1 | 8/16/2012 | 8/16/2012 |
| E | 5.02 | Electrical Load Analysis and Schedules | 8/16/2012 | 8/16/2012 |
| E | 5.03 | Electrical Schedules | 9/10/2012 | 9/10/2012 |
| E | 6.00 | Electrical Site Lighting Calculations Plan | 8/16/2012 | 8/16/2012 |

Mechanical

| | | | | |
|---|---|---|---|---|
| M | 0.01 | Mechanical Symbols, Legends, General Notes and Schedules | 8/16/2012 | 8/16/2012 |
| M | 2.01 | Mechanical Unit Plans | 8/16/2012 | 8/16/2012 |
| M | 2.02 | Mechanical Unit Plans | 8/16/2012 | 8/16/2012 |
| M | 2.03 | Mechanical Unit Plans | 8/16/2012 | 8/16/2012 |

Lofts at Tuscaloosa aka Wood Square
October 3, 2012     Tuscaloosa, Alabama                6 of 10                                    10/2/2012
                                      The Lofts of Tuscaloosa - Tuscaloosa, Alabama                93 of 174
                                      A141 DB/Owner Contract Agreement



The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| M | 3.11A | Building 1A First Floor Mechanical Plan | 8/16/2012 | 8/16/2012 |
| M | 3.11B | Building 1B First Floor Mechanical Plan | 8/16/2012 | 8/16/2012 |
| M | 3.16A | Building 1A Roof Mechanical Plan | 8/16/2012 | 8/16/2012 |
| M | 3.16B | Building 1B Roof Mechanical Plan | 8/16/2012 | 8/16/2012 |
| M | 3.41 | Clubhouse Mechanical Plan | 8/16/2012 | 8/16/2012 |
| M | 4.01 | Mechanical Details | 8/16/2012 | 8/16/2012 |
| M | 4.02 | Mechanical Schedules | 9/10/2012 | 9/10/2012 |

Plumbing

| | | | | |
|---|---|---|---|---|
| P | 0.01 | Plumbing Symbols, Legends, and General Notes | 7/17/2012 | 8/16/2012 |
| P | 2.01 | Plumbing Unit Plans | 7/17/2012 | 8/16/2012 |
| P | 2.02 | Plumbing Unit Plans | 7/17/2012 | 8/16/2012 |
| P | 2.03 | Plumbing Unit Plans | 7/17/2012 | 8/16/2012 |
| P | 3.10A | Building 1 Underslab Plumbing Plan | 9/10/2012 | 9/10/2012 |
| P | 3.10B | Building 1 Underslab Plumbing Plan | 9/10/2012 | 9/10/2012 |
| P | 3.11A | Building 1A Above Ground Plumbing Plan | 9/10/2012 | 9/10/2012 |
| P | 3.11B | Building 1B Above Ground Plumbing Plan | 9/10/2012 | 9/10/2012 |
| P | 3.16A | Building 1A Roof Plumbing Plan | 8/16/2012 | 8/16/2012 |
| P | 3.16B | Building 1AB Roof Plumbing Plan | 8/16/2012 | 8/16/2012 |
| P | 3.41 | Clubhouse Above Ground Plumbing Plan | 8/16/2012 | 8/16/2012 |
| P | 4.01 | Plumbing Details | 8/16/2012 | 8/16/2012 |
| P | 4.02 | Plumbing Schedules | 8/16/2012 | 8/16/2012 |
| P | 4.03 | Plumbing Schedules | 9/10/2012 | 9/10/2012 |
| P | 5.01 | Sanitary Sewer Riser Diagrams | 8/16/2012 | 8/16/2012 |
| P | 5.02 | Domestic Unit Riser Diagrams | 8/16/2012 | 8/16/2012 |
| P | 5.03 | Domestic Unit Riser Diagrams | 9/10/2012 | 9/10/2012 |

Garage

Architectural

| | | | | |
|---|---|---|---|---|
| CS | GA | Cover Sheet | 9/13/2012 | 9/13/2012 |
| GA | 1.01 | Drawing Index | 9/16/2012 | 9/16/2012 |
| GA | 1.02 | General Notes, Codes & Tabulations | 9/13/2012 | 9/13/2012 |
| GA | 1.02a | Com. Check | 8/16/2012 | 8/16/2012 |
| GA | 1.03 | Public Accessibility | 8/16/2012 | 8/16/2012 |
| GA | 1.05 | Rated Assemblies- Garage | 9/13/2012 | 9/13/2012 |
| GA | 1.10 | Door Schedule & Notes | 9/13/2012 | 9/13/2012 |
| GA | 1.10a | Door Harware Schedule | 8/16/2012 | 8/16/2012 |
| GA | 1.20 | Building I and II Egress Plans | 9/13/2012 | 9/13/2012 |
| GA | 2.01 | Architectural Site Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.01a | Building IG Basement Plan  (add c no date change) | 8/16/2012 | 8/16/2012 |
| GA | 4.10 | Building IG Tier 1 Reference Building Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.10a | Building IG Tier 1 Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.11 | Building IG Tier 2-4 Reference Building Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.11a | Building IG Tier 2-4 Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.12 | Building IG Tier 5 Reference Building Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.12a | Building IG Tier 5 Plan | 9/13/2012 | 9/13/2012 |

Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama
October 3, 2012

7 of 10
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

10/2/2012
94 of 174

The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| GA | 4.13 | Building IG Tier 6 Reference Building Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.13a | Building IG Tier 6 Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.14 | Building IG Tier 6 Reference Building Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.14a | Building IG Tier 6 Plan | 9/13/2012 | 9/13/2012 |
| GA | 4.20 | Garage I & II Elevations | 9/13/2012 | 9/13/2012 |
| GA | 5.20 | Building I Garage Section | 9/13/2012 | 9/13/2012 |
| GA | 5.21 | Building I Garage Section | 9/13/2012 | 9/13/2012 |
| GA | 5.24 | Garage Wall Sections | 9/13/2012 | 9/13/2012 |
| GA | 6.10 | Stair GI and Elevator G1 Plans and Sections | 9/13/2012 | 9/13/2012 |
| GA | 6.11 | Stair G2 Plans and Sections | 9/13/2012 | 9/13/2012 |
| GA | 6.12 | Stair G3 Plans and Sections | 9/13/2012 | 9/13/2012 |
| GA | 6.20 | Garage Stair Details | 8/16/2012 | 8/16/2012 |
| GA | 6.30 | Typ Trash Chute Section | 9/13/2012 | 9/13/2012 |
| GA | 6.31 | Trash Chute Plans and Details | 8/16/2012 | 8/16/2012 |
| GA | 6.32 | Garage Elevator Section and Details | 9/10/2012 | 9/10/2012 |
| GA | 7.20 | Striping Details and Notes | 8/16/2012 | 8/16/2012 |
| GA | 7.21 | Sign Details | 8/16/2012 | 8/16/2012 |
| GA | 7.22 | Sign Details | 8/16/2012 | 8/16/2012 |
| GA | 7.23 | Details Garage | 9/13/2012 | 9/13/2012 |

Structural Engineer:

Integrity Structural Corporation
12777 Jones Road, Suite 388
Houston, TX. 77070
281-894-7099
281-894-8943

Structural

| | | | | |
|---|---|---|---|---|
| GS0 | 1 | Title Sheet and Structural Specs | 9/13/2012 | 9/13/2012 |
| GS0 | 2 | Standard Reinforced Concrete Details | 9/13/2012 | 9/13/2012 |
| GS1 | 1 | Garage I - Foundation Plan | 9/13/2012 | 9/13/2012 |
| GS2 | 1 | Foundation Sections (1 of 2) | 9/13/2012 | 9/13/2012 |
| GS2 | 2 | Foundation Sections (2 of 2) | 9/13/2012 | 9/13/2012 |
| GS2 | 3 | Foundation Sections (3 of 3) | 9/13/2012 | 9/13/2012 |

MEPs

| | | | | |
|---|---|---|---|---|
| M | 0.01 | Mechanical symbols, Legends, General Notes and Schedules | 9/13/2012 | 9/13/2012 |
| M | 3.10 | Garage 1 Basement Mechanical Plan | 9/13/2012 | 9/13/2012 |
| M | 3.11 | Garage 1 Grade Level Mechanical Plan | 9/13/2012 | 9/13/2012 |
| M | 3.12 | Garage 1 Levels 2-4 Mechanical Plan | 9/13/2012 | 9/13/2012 |
| M | 3.15 | Garage 1 Level 5 Mechanical Plan | 9/13/2012 | 9/13/2012 |
| M | 3.16 | Garage 1 Roof Mechanical Plan | 9/13/2012 | 9/13/2012 |
| M | 4.01 | Mechanical Details | 9/13/2012 | 9/13/2012 |
| M | 4.02 | Mechanical Schedules | 9/13/2012 | 9/13/2012 |



Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama
October 3, 2012

10/2/2012



The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| E | 0.01 | Electrical Symbols, Legends, and General Notes | 9/13/2012 | 9/13/2012 |
| E | 3.10 | Garage 1G Basement Electrical Plan | 9/13/2012 | 9/13/2012 |
| E | 3.11 | Garage 1G Grade Level Electrical Plan | 9/13/2012 | 9/13/2012 |
| E | 3.12 | Garage 1G Levels 2-4 Electrical Plan | 9/13/2012 | 9/13/2012 |
| E | 3.13 | Garage 1G Level 5 Electrical Plan | 9/13/2012 | 9/13/2012 |
| E | 3.14 | Garage 1G Level 6 Electrical Plan | 9/13/2012 | 9/13/2012 |
| E | 5.01 | Riser Diagram Building 1G | 9/13/2012 | 9/13/2012 |
| | | | | |
| P | 0.01 | Plumbing Symbols, Legends and General Notes | 9/13/2012 | 9/13/2012 |
| P | 3.10 | Garage 1 Basement Plumbing Plan | 9/13/2012 | 9/13/2012 |
| P | 3.11 | Garage 1 Grade Level Plumbing Plan | 9/13/2012 | 9/13/2012 |
| P | 3.12 | Garage 1 Levels 2 Plumbing Plan | 9/13/2012 | 9/13/2012 |
| P | 3.15 | Garage 1 Level 5 Plumbing Plan | 9/13/2012 | 9/13/2012 |
| P | 3.16 | Garage 1 Roof Plumbing Plan | 9/13/2012 | 9/13/2012 |
| P | 4.01 | Plumbing Deatails | 9/13/2012 | 9/13/2012 |
| P | 4.02 | Plumbing Schedules | 9/13/2012 | 9/13/2012 |
| P | 4.03 | Plumbing Schedules | 9/13/2012 | 9/13/2012 |
| P | 4.12 | Garage 1 fire Pump Enlarged Plan | 9/13/2012 | 9/13/2012 |

Low Voltage

| | | | | |
|---|---|---|---|---|
| T | 000 | Low Voltage Notes and Legends | 4/17/2012 | – |
| T | 001 | Site Plan Layout | 9/6/2012 | – |
| T | 002 | Site Plan Details | 9/6/2012 | – |
| T | 100 | Building I Level 1 Layout | 9/6/2012 | – |
| T | 101 | Building I Level 2 Layout | 9/6/2012 | – |
| T | 102 | Building I Level 3 Layout | 9/6/2012 | – |
| T | 103 | Building I Level 4 Layout | 9/6/2012 | – |
| T | 104 | Building I Level 5 Layout | 9/6/2012 | – |
| T | 105 | Building I Roof Layout | 9/6/2012 | – |
| T | 106 | Building II Level 1 Layout | 9/6/2012 | – |
| T | 107 | Building II Level 2 Layout | 9/6/2012 | – |
| T | 108 | Building II Level 3 Layout | 9/6/2012 | – |
| T | 109 | Building II Level 4 Layout | 9/6/2012 | – |
| T | 110 | Building II Level 5 Layout | 9/6/2012 | – |
| T | 111 | Building III Level 1 Layout | 9/6/2012 | – |
| T | 112 | Building III Level 2 Layout | 9/6/2012 | – |
| T | 113 | Building III Level 3 Layout | 9/6/2012 | – |
| T | 114 | Building III Level 4 Layout | 9/6/2012 | – |
| T | 115 | Building III Level 5 Layout | 9/6/2012 | – |
| T | 116A | Units Layout | 9/6/2012 | – |
| T | 116B | Units Layout | 9/6/2012 | – |
| T | 116C | Units Layout | 9/6/2012 | – |
| T | 116D | Units Layout | 9/6/2012 | – |
| T | 116E | Units Layout | 9/6/2012 | – |
| T | 116F | Units Layout | 9/6/2012 | – |
| T | 117 | Building I Level 1 Clubhouse Layout | 9/6/2012 | – |



Lofts at Tuscaloosa aka Wood Square
October 3, 2012 Tuscaloosa, Alabama



The Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama

| Sheet Name | | Description | Stamp Date | Revised Date |
|---|---|---|---|---|
| T | 118 | Building I Level 2 Clubhouse Layout | 9/6/2012 | – |
| T | 119 | Building III Level 1 Clubhouse Layout | 9/6/2012 | – |
| T | 200 | Building I Level 1 Access Control and Sec Cams | 9/11/2012 | – |
| T | 200 | Building I Level 1 Access Control and Sec Cams | 9/11/2012 | – |
| T | 202 | Building I Level 2 Access Control and Sec Cams | 9/11/2012 | – |
| T | 106 | Building II Level 1 Access Control and Sec Cams | 9/11/2012 | – |
| T | 204 | Building III Access Control Layout | 9/6/2012 | – |
| T | 300 | building I Level 1 A/V | 9/11/2012 | – |
| T | 301 | Building I Level 2 A/V | 9/11/2012 | – |
| T | 303 | Building III Level 1 Layout | 9/6/2012 | – |

Lofts at Tuscaloosa aka Wood Square
Tuscaloosa, Alabama
October 3, 2012

10 of 10
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

10/2/2012
97 of 174

## Exhibit D.4

## TABLE OF CONTENTS

## WOOD SQUARE PARKING GARAGE

| Section #<br>MF 04 | Section Name | Issue<br>Date |
|---|---|---|

**INTRODUCTORY INFORMATION**

| | | |
|---|---|---|
| 00 00 01 | Project Title Page | |
| 00 00 02 | Project Directory | |
| 00 00 05 | Seal Page | 07/19/1208/16/12 |
| 00 01 10 | Table Of Contents | 07/19/1208/16/12 |

**DIVISION 00 — PROCUREMENT DOCUMENTS**

| | | |
|---|---|---|
| 00 31 32 | Geotechnical Report | 07/19/12 |
| 00 72 00 | Conditions of the Contract | 07/19/12 |

**DIVISION 01 - GENERAL REQUIREMENTS**

| | | |
|---|---|---|
| 01 11 00 | Summary of Work | 07/19/12 |
| 01 23 00 | Alternates | 07/19/12 |
| 01 26 00 | Contract Modification Procedures | 07/19/12 |
| 01 26 13 | Contractor's Requests for Information | 07/19/1208/16/12 |
| 01 26 14 | Request for Information – Form | 07/19/12 |
| 01 29 00 | Payment Procedures | 07/19/12 |
| 01 31 00 | Project Management and Coordination | 07/19/12 |
| 01 32 26 | Construction Progress Documentation | 07/19/12 |
| 01 33 00 | Submittal Procedures | 07/19/12 |
| 01 40 00 | Quality Requirements | 07/19/12 |
| 01 42 00 | References and Definitions | 07/19/12 |
| 01 43 39 | Mock-Up Requirements | 07/19/12 |
| 01 50 00 | Temporary Facilities and Controls | 07/19/12 |
| 01 60 00 | Materials and Equipment | 07/19/12 |
| 01 60 01 | Substitution Request Form | 07/19/12 |
| 01 60 05 | Product Delivery, Storage and Handling to Minimize Mold | 07/19/12 |
| 01 73 00 | Execution Requirements | 07/19/12 |
| 01 73 29 | Cutting and Patching | 07/19/12 |
| 01 77 00 | Closeout Procedures | 07/19/12 |

**DIVISION 2 – EXISTING CONDITIONS**

Not used

**DIVISION 3 - CONCRETE**

| | | |
|---|---|---|
| 03 30 00 | Cast in Place Concrete | 07/19/12 |
| 03 39 16 | Unbonded Post-tensioned Concrete | 07/19/12 |
| 03 41 00 | Precast Structural Concrete | 07/19/12 |
| 03 63 29 | Drilled Concrete Piers and Shafts | 07/19/12 |

Humphreys & Partners Architects, LP
Wood Square Parking Garage

00 01 10-1

July 19, 2012
Table of Contents

October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

98 of 174



## DIVISION 4 - MASONRY

04 20 00     Unit Masonry Assemblies ................................................................07/19/12

## DIVISION 5 - METALS

05 40 00     Cold Formed Metal Framing ..........................................................07/19/12
05 50 00     Metal Fabrications .........................................................................07/19/12
05 51 00     Steel Framed Stairs ..............................................07/19/1208/16/12
05 52 14     Steel Handrails and Railings ........................................................07/19/12

## DIVISION 6 - WOOD AND PLASTICS

Not Used

## DIVISION 7 - THERMAL & MOISTURE PROTECTION

07 14 10     Cold Applied Modified Asphalt Sheet Waterproofing ..............07/19/12
07 18 00     Traffic Coating ...............................................................................07/19/12
07 21 00     Insulation .......................................................................................07/19/12
07 26 00     Under Slab Vapor Barrier .............................................................07/19/12
07 53 10     TPO Membrane Roofing System ..................................................07/19/12
07 62 00     Sheet Metal Flashing and Trim ....................................................07/19/12
07 65 00     Flexible and Manufactured Flashing ...........................................07/19/12
07 84 00     Penetration Firestopping ..............................................................07/19/12
07 92 00     Joint Sealants ...............................................................................07/19/12

## DIVISION 8 -  OPENINGS

08 11 20     Smoke Guard ................................................................................07/19/12
08 15 50     Insulated Steel Doors and Frame Unites .....................................07/19/12
08 33 10     Overhead Coiling Fire Service Doors ...........................................07/19/12
08 36 00     Upcoiling SecurityRolling Service Doors .....................................07/19/12
08 71 00     Door Hardware ..............................................................................07/19/12

## DIVISION 9 - FINISHES

09 29 00     Gypsum Board Assemblies ...........................................................07/19/12
09 91 00     Painting ..........................................................................................07/19/12
09 96 53     Elastomeric Coatings ...................................................................07/19/12

## DIVISION 10 - SPECIALTIES

10 40 00     Identifying Devices .......................................................................07/19/12
10 44 13     Fire Protection Specialties ............................................................07/19/12





| 21 05 00 | Common Work Results for Fire Suppression | 07/19/12 |
| 21 10 00 | Fire Suppression | 07/19/12 |
| 21 13 13 | Wet Pipe Sprinkler Systems | 07/19/12 |
| 21 92 00 | Fire Pumps | 07/19/12 |

## DIVISION 22 – PLUMBING

| 22 05 00 | Common Work Results for Plumbing | 07/19/12 |
| 22 05 23 | General Duty Valves for Plumbing Piping | 07/19/12 |
| 22 05 29 | Hangers and Supports for Plumbing Piping and Equipt. | 07/19/12 |
| 22 07 00 | Plumbing Insulation | 07/19/12 |
| 22 10 00 | Plumbing Piping and Pumps | 07/19/12 |
| 22 10 13 | Plumbing Specialties | 07/19/12 |
| 22 11 16 | Domestic Water Piping | 07/19/12 |
| 22 13 16 | Sanitary Waste and Vent Piping | 07/19/12 |
| 22 33 00 | Electric Domestic Water Heaters | 07/19/12 |
| 22 40 00 | Plumbing Fixtures | 07/19/12 |

## DIVISION 23 – HEATING, VENTILATING AND AIR-CONDITIONING

| 23 05 00 | Common Work Results for HVAC | 07/19/12 |
| 23 05 13 | Common Motor Requirements for HVAC Equipment | 07/19/12 |
| 23 05 48 | Vibration Control for HVAC Piping and Equipment | 07/19/12 |
| 23 05 93 | Testing, Adjusting, and Balancing for HVAC | 07/19/12 |
| 23 07 00 | HVAC Insulation | 07/19/12 |
| 23 23 00 | Refrigerant Piping | 07/19/12 |
| 23 31 13 | Ducts | 07/19/12 |
| 23 33 00 | Air Duct Accessories | 07/19/12 |
| 23 34 23 | HVAC Power Ventilators | 07/19/12 |
| 23 37 00 | Air Outlets and Inlets | 07/19/12 |
| 23 81 26 | Split-System Air-Conditioners | 07/19/12 |
| 23 82 39 | Unit Heaters | 07/19/12 |

## DIVISIONS 24 - 25

Not Used

## DIVISION 26 – ELECTRICAL

| 26 05 00 | Basic Electrical Materials and Methods | 07/19/12 |
| 26 05 19 | Low-Voltage Electrical Power Conductors and Cables | 07/19/12 |
| 26 05 26 | Grounding and Bonding for Electrical Systems | 07/19/12 |
| 26 05 33 | Raceways and Boxes for Electrical Systems | 07/19/12 |
| 26 05 53 | Identification for Electrical Systems | 07/19/12 |
| 26 24 4800 | Switchboards and Panelboards | 07/19/12 |
| 26 27 26 | Wiring Devices | 07/19/12 |
| 26 28 16 | Enclosed Switches and circuit Breakers | 07/19/12 |
| 26 50-51 00 | Interior Lighting | 07/19/12 |
| 26 56 00 | Exterior Lighting | 07/19/12 |
| 26 60 00 | Lighting Accessories | 07/19/12 |



**DIVISION 27**

Not Used

**DIVISION 28 – ELECTRONIC SAFETY AND SECURITY**

28 31 00        Fire Alarm and Detection Systems and Alarm .....................07/19/12

**DIVISIONS 29 - 30**

Not used

**DIVISION 31 - EARTHWORK**

Refer to Civil Drawings for Specifications.
31 63 29        Drilled Concrete Piers & Shafts..............................................07/19/12

**DIVISION 32 – EXTERIOR IMPROVEMENTS**

Refer to Civil Drawings for Specifications.

**DIVISION 33 – UTILITIES**

Refer to Civil Drawings for Specifications.

**DIVISIONS 34-49**

Not used

**APPENDICES – NOT INCLUDED**

*Appendix A*     *2009 IECC Electrical ComCheck – Garages*
*Appendix B*     *2009 IECC Mechanical Comcheck - Garages*

**END OF TABLE OF CONTENTS**

**TABLE OF CONTENTS**

**WOOD SQUARE APARTMENTS**

| Section #<br>MF 04 | Section Name | Issue<br>Date |
|---|---|---|

**INTRODUCTORY INFORMATION**

| | | |
|---|---|---|
| 00 00 01 | Project Title Page | |
| 00 00 02 | Project Directory | |
| 00 00 05 | Seal Page | 07/17/1208/16/12 |
| 00 01 10 | Table Of Contents | 07/17/12 |

**DIVISION 00 – PROCUREMENT DOCUMENTS**

| | | |
|---|---|---|
| 00 31 32 | Geotechnical Report | 07/17/12 |
| 00 72 00 | Conditions of the Contract | 07/17/12 |
| 00 89 00 | Finish Selection Summary | 07/17/12 |

**DIVISION 01 - GENERAL REQUIREMENTS**

| | | |
|---|---|---|
| 01 11 00 | Summary of Work | 07/17/1208/16/12 |
| 01 23 00 | Alternates | 07/17/12 |
| 01 26 00 | Contract Modification Procedures | 07/17/12 |
| 01 26 13 | Contractor's Requests for Information | 07/17/12 |
| 01 26 14 | Request for Information – Form | 07/17/12 |
| 01 29 00 | Payment Procedures | 07/17/12 |
| 01 31 00 | Project Management and Coordination | 07/17/1208/16/12 |
| 01 32 26 | Construction Progress Documentation | 07/17/1208/16/12 |
| 01 33 00 | Submittal Procedures | 07/17/12 |
| 01 40 00 | Quality Requirements | 07/17/12 |
| 01 42 00 | References and Definitions | 07/17/12 |
| 01 43 39 | Mock-Up Requirements | 07/17/12 |
| 01 50 00 | Temporary Facilities and Controls | 07/17/12 |
| 01 60 00 | Materials and Equipment | 07/17/12 |
| 01 60 01 | Substitution Request Form | 07/17/12 |
| 01 60 05 | Product Delivery, Storage and Handling to Minimize Mold | 07/17/12 |
| 01 73 00 | Execution Requirements | 07/17/12 |
| 01 73 29 | Cutting and Patching | 07/17/12 |
| 01 77 00 | Closeout Procedures | 07/17/12 |
| 01 81 13 | Sustainable Design Requirements | 07/17/12 |

**DIVISION 2 –   EXISTING CONDITIONS**

Not used

**DIVISION 3 - CONCRETE**

| | | |
|---|---|---|
| 03 30 00 | Cast In Place Concrete | 07/17/12 |
| 03 38 16 | Unbonded Post-tensioned Concrete | 07/17/12 |
| 03 52 00 | Gypsum-Based Underlayment with Acoustical Mat | 07/17/1208/16/12 |



Humphreys & Partners Architects, LP
Wood Square Apartments

00 01 10 - 1

August 17, 2012
Table of Contents

## DIVISION 4 - MASONRY

04 01 20    Masonry Cleaning ........................................................07/17/12
04 20 00    Unit Masonry Assemblies..........................................07/17/12

## DIVISION 5 - METALS

05 12 00    Structural Steel Framing ...........................................07/17/12
05 40 00    Cold-Formed Metal Framing ..........................07/17/1208/16/12
05 50 1000  Metal Fabrications....................................................07/17/12
05 51 000   Steel Framed Stairs ..................................................07/17/12
05 52 14    Steel Handrails and Railings ...................................07/17/12
05 73 50    Decorative Metal Railings        07/17/12

## DIVISION 6 - WOOD AND PLASTICS

06 10 00    Rough Carpentry........................................................07/17/12
06 16 00    Sheathing ..................................................................07/17/12
06 17 50    Metal Plate Connected Wood Trusses ....................07/17/12
06 40 00    Architectural Woodwork.............................................07/17/12
06 62 00    Solid Cast Polymer Fabrications(Solid Surface Countertops) 07/17/12

## DIVISION 7 - THERMAL & MOISTURE PROTECTION

07 13 20    Elastomeric Sheet Waterproofing ............................07/17/12
07 13 26    Self-Adhering Sheet Waterproofing ..........................07/17/12
07 14 00    Cold Applied Modified Asphalt Sheet Waterproofing ........07/17/12
07 18 00    Liquid-Applied Pedestrian Traffic Coating Waterproofing ........07/17/12
07 21 00    Insulation ....................................................07/17/1208/16/12
07 21 19    Sill Sealer .................................................................07/17/12
07 25 00    Building Wrap ............................................................07/17/12
07 26 00    Under Slab Vapor Barrier...........................................07/17/12
07 26 19    Fluid Applied Weather Barrier ..................................07/17/12
07 46 00    Fiber-Cement Panels and Trim.....................07/17/1208/16/12
07 53 10    Ultra-PlyTPO Membrane Fully Adhered Roofing System ........07/17/12
07 62 00    Sheet Metal Flashing and Trim ....................07/17/1208/16/12
07 65 00    Flexible Flashing ......................................................07/17/12
07 72 00    Roof Hatch ................................................................07/17/12
07 81 20    Intumescent Fire Resistive Material Paint ................07/17/12
07 84 00    Penetration Firestopping ..........................................07/17/12
07 92 00    Joint Sealants ...........................................................07/17/12
07 95 00    Expansion Control......................................................07/17/12

## DIVISION 8 - OPENINGS

08 11 10    Hollow Metal Doors and Frames...................07/17/1208/16/12
08 14 00    Wood Doors ...............................................................07/17/12
08 15 50    Insulated Steel Door and Frame Units ....................07/17/12
08 41 10    Aluminum Framed Entrances and Storefronts........07/17/1208/16/12
08 52 00    Vinyl Windows............................................................07/17/12
08 71 00    Door Hardware ..........................................................07/17/12

08 80 00     Glass and Glazing...............................................................07/17/12

**DIVISION 9 - FINISHES**

09 21 10     Gypsum Board Shaft Wall Assemblies ...................................07/17/12
09 29 00     Gypsum Board Assemblies.....................................................07/17/12
09 30 00     Tiling.....................................................................................07/17/12
09 38 00     Cut Natural Stone Countertops ..............................................07/17/12
09 51 13     Acoustical Ceiling Panels ...........................................5-29-1208/16/12
09 65 00     Resilient Tile Flooring.............................................................07/17/12
09 68 16     Sheet Carpeting ...................................................................07/17/12
09 91 00     Painting ................................................................................07/17/12
09 96 53     Elastomeric Coatings ...........................................................07/17/12

**DIVISION 10 - SPECIALTIES**

10 28 00     Toilet and Bath Accessories...................................................07/17/12
10 30 50     Manufactured Electric Fireplace..............................................5-29-12
10 40 00     Identifying Devices ...............................................................07/17/12
10 44 13     Fire Extinguishers.................................................................07/17/12
10 55 00     Postal Specialties..................................................................07/17/12
10 67 60     Plastic Coated Wire Shelving..................................................07/17/12

**DIVISION 11 - EQUIPMENT**

11 31 00     Residential Appliances...........................................................07/17/12
11 82 26     Waste Compactor .....................................................07/17/1208/16/12

**DIVISION 12 - FURNISHINGS**

12 21 13     Blinds....................................................................................07/17/12
12 35 30     Residential Casework ...........................................................07/17/12

**DIVISION 13 - SPECIAL CONSTRUCTION**

13 24 16     Sauna/ Steam Room.................................................5-29-1208/16/12

**DIVISION 14 - CONVEYING SYSTEMS**

14 21 00     Electric Traction Elevators .....................................................07/17/12
14 56 40     Refuse Chutes .........................................................07/17/1208/16/12

**DIVISIONS 15 - 20**

Not Used



## DIVISION 21 – FIRE SUPRESSION

21 05 00 — Common Work for Fire Suppression ........................... 07/17/12
21 10 00 — Fire suppression ........................... 07/17/12
21 13 13 — Wet Pipe Sprinkler Systems ........................... 11/08/11

## DIVISION 22 – PLUMBING

22 05 1300 — Common Work Results for Plumbing ........................... 07/17/12
22 05 17 — Sleeves and Sleeve Seals for Plumbing ........................... 07/17/12
22 05 18 — Escutcheons for Plumbing ........................... 07/17/12
22 05 19 — Meters and Gages for Plumbing Piping ........................... 07/17/12
22 05 23 — General-Duty Valves for Plumbing ........................... 07/17/12
22 05 29 — Hangers and Supports for Plumbing Piping, and Equipment ........................... 07/17/12
22 05 53 — Heat Tracing for Plumbing ........................... 07/17/12
22 05 48 — Vibration and Seismic Controls for Plumbing ........................... 07/17/12
22 05 53 — Identification for Plumbing Piping and Equipment ........................... 07/17/12
22 07 1600 — Plumbing Equipment Insulation ........................... 07/17/12
22 07 19 — Plumbing Piping Insulation ........................... 0
22 10 13 — Plumbing Specialties ........................... 07/17/12
22 11 13 — Facility Water Distribution ........................... 07/17/12
22 11 16 — Domestic Water Piping ........................... 07/17/12
22 11 19 — Domestic Water Piping Specialties ........................... 07/17/12
22 13 13 — Facility Sanitary Sewers ........................... 07/17/12
22 13 16 — Sanitary Waste and Vent Piping ........................... 07/17/12
22 13 19 — Sanitary Waste Piping Specialties ........................... 07/17/13
22 13 23 — Sanitary Waste Interceptors ........................... 07/17/12
22 33 00 — Electric, Domestic-Water Heaters ........................... 07/17/12
22 41 4000 — Residential Plumbing Fixtures ........................... 07/17/12

## DIVISION 23 – HEATING, VENTILATING AND AIR-CONDITIONING

23 05 1300 — Common Work Results for HVAC ........................... 07/17/12
23 05 13 — Common Requirements for HVAC Equipment ........................... 07/17/12
23 05 17 — Sleeves and Sleeve Seals for HVAC ........................... 07/17/12
23 05 18 — Escutcheons for HVAC ........................... 07/17/12
23 05 29 — Hangers and Supports for HVAC ........................... 07/17/12
23 05 48 — Vibration and Seismic Controls for HVAC ........................... 07/17/12
23 05 53 — Identification for HVAC Piping and Equipment ........................... 07/17/12
23 05 93 — Testing, Adjusting, and Balancing for HVAC ........................... 07/17/12
23 07 1300 — Duct HVAC Insulation ........................... 07/17/12
23 11 23 — Facility Natural-Gas Piping ........................... 07/17/12
23 23 00 — Refrigerant Piping ........................... 07/17/12
23 31 13 — Ducts ........................... 07/17/12
23 33 00 — Air Duct Accessories ........................... 07/17/12
23 34 23 — HVAC Power Ventilators ........................... 07/17/12
23 37 10 — Air Outlets and Inlets ........................... 07/17/12
23 37 13 — Diffusers, Registers, and Grilles ........................... 07/17/12
23 54 00 — Furnaces ........................... 07/17/12
23 72 00 — Air to Energy Recovery Equipment ........................... 07/17/12
23 81 26 — Split-System Air-Conditioners ........................... 07/17/12
23 82 3918 — Wall and Ceiling Unit Heaters ........................... 07/17/12

Humphreys & Partners Architects, LP
Wood Square Apartments
00 01 10 - 4
August 17, 2012
Table of Contents

October 3, 2012   The Lofts of Tuscaloosa - Tuscaloosa, Alabama   105 of 174
A141 DB/Owner Contract Agreement

## DIVISIONS 24 - 25



Not Used

## DIVISION 26 – ELECTRICAL

| | | |
|---|---|---|
| 26 05 00 | Common Work Results for Electrical | 07/17/12 |
| 26 05 19 | Low Voltage Electrical Power Conductors and Cables | 07/17/12 |
| 26 05 26 | Grounding and Bonding for Electrical Systems | 07/17/12 |
| 26 05 29 | Hangers and Supports for Electrical Systems | 07/17/12 |
| 26 05 33 | Raceways and Boxes for Electrical Systems | 07/17/12 |
| 26 05 53 | Identification for Electrical Systems | 07/17/12 |
| 26 09 23 | Lighting Control Devices | 07/17/12 |
| 26 24 1610 | Switchboards and Panelboards | 07/17/12 |
| 26 27 13 | Electricity Metering | 07/17/12 |
| 26 27 26 | Wiring Devices | 07/17/12 |
| 26 28 13 | Fuses | 07/17/12 |
| 26 28 16 | Enclosed Switches and Circuit Breakers | 07/17/12 |
| 26 51 00 | Interior Lighting | 07/17/12 |
| 26 56 00 | Exterior Lighting | 07/17/12 |
| 26 60 00 | Lighting Accessories | 07/17/12 |

## DIVISION 27 - COMMUNICATIONS

| | | |
|---|---|---|
| 27 00 00 | Communications | 11/08/11 |
| 27 10 00 | Structured Cabling | 11/08/11 |
| 27 13 00 | Backbone Cabling | 11/08/11 |

## DIVISION 28 – ELECTRONIC SAFETY AND SECURITY

| | | |
|---|---|---|
| 28 13 00 | Access Control | 11/08/11 |
| 28 16 00 | Intrusion Detection | 11/08/11 |
| 28 31 00 | Fire Detection and Alarm | 11/08/11 07/17/12 |

## DIVISIONS 29 - 30

Not used



## DIVISION 31 - EARTHWORK

Refer to Civil Drawings for Specifications.

31 31 00        Soil Treatment................................................. 11/08/11 07/17/12
31 63 29        Drilled Concrete Piers and Shafts................................. 11/08/11

## DIVISION 32 – EXTERIOR IMPROVEMENTS

Refer to Civil Drawings for Specifications.

32 01 80        Irrigation System ............................................. 11/08/11 07/17/12
32 14 00        Unit Pavers.................................................... 11/08/11 07/17/12
32 92 00        Lawn and Grasses ............................................. 11/08/11 07/17/12
32 93 00        Exterior Plants............................................... 11/08/11 07/17/12

## DIVISION 33 – UTILITIES

Refer to Civil Drawings for Specifications.

## DIVISIONS 34-49

Not used

## APPENDICES – NOT INCLUDED

Appendix A        2009 IECC Envelope Compliance Certificate
Appendix C        2009 IECC Lighting Compliance Certificate Clubhouse

### END OF TABLE OF CONTENTS

# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## EXHIBIT E

## Project Schedule





The Lofts @
Tuscaloosa, AL

| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 1 | Sitework/ Utilities PH.1 | 65 days | Mon 8/20/12 | Fri 11/16/12 |
| 2 | Site Grading | 20 days | Mon 8/20/12 | Fri 9/14/12 |
| 3 | Building Pads | 20 days | Mon 8/27/12 | Fri 9/21/12 |
| 4 | Garage Pad | 5 days | Mon 9/10/12 | Fri 9/14/12 |
| 5 | Site Utilities | 45 days | Mon 9/17/12 | Fri 11/16/12 |
| 6 | Garage Foundations | 25 days | Mon 9/17/12 | Fri 10/19/12 |
| 7 | Garage Foundations | 25 days | Mon 9/17/12 | Fri 10/19/12 |
| 8 | PreCast Garage | 134 days | Tue 9/4/12 | Fri 3/8/13 |
| 9 | Design Submittals | 25 days | Tue 9/4/12 | Mon 10/8/12 |
| 10 | Casting Fabrications | 35 days | Tue 10/9/12 | Mon 11/26/12 |
| 11 | Mobilizations & Erection Flr 1-7 | 65 days | Mon 12/10/12 | Fri 3/8/13 |
| 12 | Building Slabs | 60 days | Mon 9/17/12 | Fri 12/7/12 |
| 13 | Plumbing Slab R/I & Concrete | 60 days | Mon 9/17/12 | Fri 12/7/12 |
| 14 | Framing | 120 days | Mon 10/15/12 | Fri 3/29/13 |
| 15 | Building 1B & 1A | 120 days | Mon 10/15/12 | Fri 3/29/13 |
| 16 | MEP R/I | 65 days | Mon 2/11/13 | Fri 5/10/13 |
| 17 | Bldg 1B & 1A Inwall R/I | 65 days | Mon 2/11/13 | Fri 5/10/13 |
| 18 | Drywall | 60 days | Mon 3/25/13 | Fri 6/14/13 |
| 19 | Bldg 1B & 1A Drywall | 60 days | Mon 3/25/13 | Fri 6/14/13 |
| 20 | Finishes & CO | 60 days | Mon 5/27/13 | Fri 8/16/13 |
| 21 | Bldg 1A & 1B | 60 days | Mon 5/27/13 | Fri 8/16/13 |

Construction Enterprises, Inc.



**Wood Square Apartments**
Tuscaloosa, AL

| ID | Task Name | Duration | Start | Finish |
|----|-----------|----------|-------|--------|
| | PHASE II | 370 days | Mon 3/4/13 | Fri 8/1/14 |
| 1 | Phase II Plumbing R/I & Slab on Grade | 60 days | Mon 3/4/13 | Fri 5/24/13 |
| 2 | Framing | 120 days | Mon 5/27/13 | Fri 11/8/13 |
| 3 | MEP Rough-In | 75 days | Mon 11/11/13 | Fri 2/21/14 |
| 4 | Drywall | 65 days | Mon 2/24/14 | Fri 5/23/14 |
| 5 | Finishes & CO | 50 days | Mon 5/26/14 | Fri 8/1/14 |

Construction Enterprises, Inc.

Page 1

6/15/12

# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## <u>EXHIBIT F</u>

# Warranty Agreement





## EXHIBIT F

## FORM OF WARRANTY AGREEMENT

## WARRANTY AGREEMENT

THIS WARRANTY AGREEMENT (this "Agreement") is made this ____ day of _____, 20___ (the "Effective Date"), by and between CONSTRUCTION ENTERPRISES, INC., a Tennessee corporation ("Design-Builder"), and TUSCALOOSA I, LLC, a Delaware limited liability company ("Owner").

### Recitals:

Design-Builder and Owner are parties to that certain Standard Form of Agreement between Owner and Design-Builder dated _____, 2012 (the "Construction Agreement"). The Work (as that term is defined in the Construction Agreement) is complete. Design-Builder and Owner are entering into this Agreement pursuant to and in accordance with the terms and conditions of the Construction Agreement.

### Agreement:

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Design-Builder and Owner, intending to be legally bound, hereby covenant and agree as follows:

1.      The foregoing recitals are true and correct in all respects and form a material part of this Agreement, the same as if they were set forth in the numbered paragraphs hereof. Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Construction Agreement.

2.      Owner is unaware of any errors, omissions, defects or malfunctions relative to the Work, except as may be specifically listed in Exhibit A, which is incorporated into, and made fully a part of, this Agreement, as if attached to or repeated herein. Owner does not accept conditions at the Property that fail to materially conform to the Design-Build Documents, except as may be specifically listed in the aforementioned Exhibit A, as accepted.

3.      Design-Builder warrants to Owner that the Work is fully complete and built materially in accordance with the Design-Build Documents and manufacturer's representations, subject to the following terms and conditions (the "Warranty"):

(a)     If, within one (1) year after the Effective Date, or such longer period as may be required by, or furnished pursuant to, the Design-Build Documents with respect to specific materials, components, equipment or systems (referred to herein as the "Warranty Period"), any of the Work is found not to be materially in accordance with the Design-Build Documents, Design-Builder shall correct it promptly after receipt of written notice as provided herein and without cost to Owner.

(b)     Design-Builder shall not be responsible for the obligation to correct under this Agreement unless notice of any defect shall have been given by Owner to Design-Builder prior to the

expiration of the Warranty Period. Steps taken by Design-Builder to correct any defect(s) shall not act to extend the Warranty Period, except to the extent that such steps are defective, cause defects or fail to correct defects, in which cases such Warranty Period shall be extended with respect to the specific defect resulting therefrom.

(c)     Design-Builder does not assume responsibility for any of the following, all of which are expressly excluded from the Warranty:

    (i)     defects which are the result of characteristics inherent in the materials or equipment required or permitted by the Design-Build Documents; to the extent not contrary to characteristics inherent in the materials or equipment required or permitted by the Design-Build Documents, this may include: warping, rotting, deterioration and/or deflection of wood; mildew and fading; chalking and checking of paint; cracks, whether due to drying, curing or otherwise, of concrete, stucco, plaster, bricks, and masonry; drying, shrinking and cracking of caulking and weather stripping;

    (ii)    incidental, consequential, secondary, or punitive damages resulting from or caused by a breach of the Warranty, except to the extent that such damages result from Design-Builder's gross negligence or willful misconduct.

    (iii)   defective design or materials supplied by Owner or installed under Owner's direction;

    (iv)    personal property, appliances and tenant-furnished consumer products (as defined by the Magnuson-Moss Warranty Act) that are covered by manufacturer's warranties, provided that such warranties are furnished to Owner in accordance with the Construction Agreement and this Agreement;

    (v)     damages due to ordinary wear and tear, abuse and/or misuse of the Work (or any component thereof), or lack of proper maintenance of the Work (or any component thereof);

    (vi)    utility service lines installed by any municipality or service company, except to the extent of work furnished by or on behalf of Design-Builder; and

    (vii)   defects caused by changes or failures in the underground water table and sub surface soil structures beyond the Design-Builder's reasonable control and for which the Design-Builder is not responsible under the Construction Agreement, and exclusive of defects exacerbated by such changes or failures; and

    (viii)  any damage resulting from acts of God during the Warranty Period.

(d)     THIS WARRANTY, AS SET FORTH IN THIS AGREEMENT, IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR HABITABILITY, ALL OF WHICH ARE HEREBY DISCLAIMED.

4.      In the event of a claim to correct a condition that is covered under the Warranty (a "Warranty Claim"), Design-Builder shall (at Owner's sole option) either (a) repair the item that is the

subject of the Warranty Claim, (b) replace the item that is the subject of the Warranty Claim, or (c) pay to Owner the reasonable cost of such repairs or replacements due to such Warranty Claim.

5.      If Owner fails to give written notice to Design-Builder as required herein, or if Owner fails to provide Design-Builder with a reasonable period of time to inspect, investigate and correct any alleged Warranty Claim covered hereunder or Owner retains a third party to perform any repairs or replacements that would otherwise be covered by the Warranty, then Design-Builder shall have no Warranty with respect to such repairs or replacements.  Nothing contained herein shall be construed to establish a period of limitation with respect to other obligations the Design-Builder has under other agreements pertaining to the Work. Establishment of the Warranty Period as described herein and elsewhere relates only to the specific obligation of the Design-Builder to correct defective work, and has no relationship to the time within which the obligation to comply with its contractual obligations may be sought to be enforced, nor to the time within which proceedings may be commenced to establish its liability with respect to its obligations other than specifically to correct defective work.

6.      If Owner has given Design-Builder written notice of a Warranty Claim within the Warranty Period, and Design-Builder has failed or refused to commence corrective work to remedy the item that is the subject of said Warranty Claim of which it has notice within thirty (30) days, Owner may undertake such correction at the expense of Design-Builder. Owner shall have ninety (90) days after expiration of the Warranty Period to initiate any legal proceeding in connection with such Warranty Claim. In the event Owner shall fail to initiate any such legal proceeding prior to the expiration of said ninety (90) day period, such failure shall constitute a waiver of any right of Owner to thereafter pursue any legal proceeding with respect to or in connection with such Warranty Claim, and Owner shall forever be barred from bringing such a legal proceeding. Nothing contained herein shall be construed to establish a period of limitation with respect to other obligations the Design-Builder has under other agreements pertaining to the Work. Establishment of the Warranty Period as described herein and elsewhere relates only to the specific obligation of the Design-Builder to correct defective work, and has no relationship to the time within which the obligation to comply with its contractual obligations may be sought to be enforced, nor to the time within which proceedings may be commenced to establish its liability with respect to its obligations other than specifically to correct defective work.

7.      To the extent permissible under the terms and conditions thereof as well as any applicable law, Design-Builder hereby assigns to Owner, and agrees to execute any documentation in the future for the purpose of assigning, all of its rights, if any, under any and all manufacturers' warranties on appliances, pieces of equipment, and any other items or materials included in the Work.

8.      Nothing in this Warranty Agreement shall constitute a waiver of any remedy, right of redress, or cause of action the Owner may have under applicable law and within any applicable statute of limitations.

9.      All warranty work shall be scheduled during normal weekday working hours except in the event of emergencies that involve the potential for immediate damage to persons or property.

10.     Should any term of this Agreement be deemed by a court of competent jurisdiction to be unenforceable, such determination shall not affect the enforceability of the remaining provisions.

11.     Use of one gender shall include all other genders; use of the singular shall include the plural and vice versa; all as may be appropriate.

12.    This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama.

13.    Design-Builder and Owner agree that any claim or dispute arising out of this Agreement shall be submitted to the same dispute resolution procedures set forth in the Construction Agreement.

14.    Any notices required or permitted to be given hereunder shall be given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, (c) by a commercial overnight courier that guarantees next day delivery and provides to the sender a delivery receipt or (d) by legible facsimile or electronic transmission (followed by hard copy delivered in accordance with preceding subsections (a)-(c)). Any notice shall be effective upon mailing or delivery in accordance herewith to the intended recipient addressed as follows:

|  |  |
|---|---|
| Design-Builder: | Construction Enterprises, Inc.<br>Attn:  Giny S. Knudsen<br>325 Seaboard Lane, Suite 170<br>Franklin, TN  37067<br>Telephone: (615) 332-8880<br>Telecopy: (615) 781-0818<br>E-Mail: gknudsen@ceitn.com |
| Owner: | TUSCALOOSA I, LLC<br>Attn: John E. Vawter<br>431 Office Park Drive<br>Birmingham, AL 35223<br>Telephone: (205) 414-6400<br>Telecopy: (205) 414-6405<br>E-Mail: jvawter@capstonemail.com |
|  | With a copy to: |
|  | TUSCALOOSA I, LLC<br>c/o Kayne Anderson<br>200 Business Park Drive, Suite 309<br>Armonk, NY  10504<br>Attention: Frank L. Duemmler<br>Telephone: (914) 940-6042<br>Telecopy: (914) 273-1904<br>E-Mail: fduemmler@kaynecapital.com |

or to such other address as either party may from time to time specify in writing to the other party.

15.    This Agreement and the Construction Agreement are the entire and sole agreements of the parties pertaining to any warranties for or relating to the Work, and all prior representations and agreements are superseded.

*{Remainder of Page Intentionally Left Blank}*

October  3, 2012

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the Effective Date.

**DESIGN-BUILDER:**

**CONSTRUCTION ENTERPRISES, INC.,** a Tennessee corporation

By:_____
Name: Giny S. Knudsen
As Its: Executive Vice President

**OWNER:**

**TUSCALOOSA I, LLC,** a Delaware limited liability company

By:    Capstone Collegiate Communities, an Alabama corporation, as its manager

By:_____
Name: _____
As Its: _____

## EXHIBIT A
## KNOWN DEFECTS AND MALFUNCTIONS



# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## EXHIBIT G

## Project Forms

**G.1 – Subcontractor/Supplier Lien Waiver**
**G.2 – GC Lien Waiver**
**G.3 – Final Lien Waiver**
**G.4 – Sample G702/G703 Invoice**
**G.5 – Sample Job Cost Report**





## EXHIBIT G.1

Please sign and return to:

Construction Enterprises, Inc.
325 Seaboard Lane; Suite 170
Franklin, TN 37067
615-627-9452 - Fax

### RELEASE AND WAIVER OF LIEN
#### Subcontractor/Mechanic/Material Supplier/Laborer

Know all men by these presents that in consideration of and upon the receipt of the sum of Dollars(_____) ("current payment due") paid to the undersigned for furnishing materials, labor, equipment, warranty work or services on a construction project known as _____being constructed on real property located at _____ the undersigned does hereby conditionally waives, releases, and relinquishes any and all claims of any kind or nature, including but not limited to any and all lien rights, with the only condition being the receipt of the current payment due, except for claims, including lien rights, for amounts being retained and which will subsequently come due, which the undersigned has or may have against said real property, its owner, and its successors and assigns, Construction Enterprises, Inc., its sureties, and any other persons or entities guaranteeing payment by or through such parties on account of the furnishing of materials, labor, equipment, warranty work or services by the undersigned on or before the_____ day of____(insert current Invoice Date)  20___, for the construction of said project. The undersign understands, acknowledges and agrees that once the current payment due is received, then this conditional lien waiver shall be self-effectuating and shall be converted to an unconditional lien waiver, except for retainage and amounts that subsequently come due.  Further, the undersigned acknowledges, represents and certifies that the sum set forth herein represents payment in full to the undersigned, and said amount adequately, fully and completely pays and compensates the undersigned for all materials, labor, equipment, warranty work or services provided by the undersigned on the above-referenced project to date and that the undersigned will make no further claims of any kind, other than those specifically excepted herein, for materials, labor, equipment, warranty work or services furnished by the undersigned on the above-referenced project.  The undersigned further certifies that, in order to induce such payment, that as of the_____day of___(insert current Invoice Date)  20___, the undersigned represents that no liens or other claims could be made by creditors of the undersigned on said project and that the undersigned has paid all suppliers of materials, labor, equipment or services related to said project incurred on or before such date.

The undersigned further acknowledges and certifies receipt in full of any and all payments due to the undersigned prior to the _____ day of ___(insert previous Release date)___, 20 ___ and accordingly, the undersigned does hereby unconditionally waive, release, and relinquish any and all claims of any kind or nature, including but not limited to any and all lien rights, except for claims, including lien rights, for amounts being retained and which will subsequently come due (if any), which the undersigned has or may have against said real property, its owner, and its successors and assigns, Construction Enterprises, Inc., its sureties, and any other persons or entities guaranteeing payment by or through such parties on account of the furnishing of materials, labor, equipment, warranty work or services by the undersigned on or before _____ day of ___(insert previous Release date)___, 20 ___.  This unconditional release of all claims for all prior payments shall be effective upon execution of this Release, regardless of the receipt of the current payment due.  The undersigned further acknowledges and agrees that if any of the above representations, acknowledgments and certifications prove untrue, and should any claim be made by the undersigned or any creditor of the undersigned, the undersigned unconditionally agrees to pay to Construction Enterprises, Inc. all reasonable costs it incurs in defending, bonding off or resolving said claim, including without limitation reasonable attorneys' fees.

October 3, 2012

Further, I, _____ , do hereby certify that I am _____ (Title) of
_____ and am authorized to execute this release.  I further certify that I
have read and fully understand all statements contained herein, that I have had opportunity for the same to be
reviewed by counsel and that said statements are true and correct.

SUBCONTRACTOR: _____
ADDRESS: _____
CITY, STATE & ZIP: _____
PHONE: _____

By _____

Title _____

**This release <u>must</u> be notarized.**
Sworn to and subscribed before me on this _____ day of _____ , 2012.

My Commission expires _____

_____
Notary Public

# EXHIBIT G.2

Please sign and return to:

Construction Enterprises, Inc.
325 Seaboard Lane; Suite 170
Franklin, TN  37067
615-627-9452 - Fax

## RELEASE AND WAIVER OF LIEN
### General Contractor

Know all men by these presents that in consideration of and upon the receipt of the sum of _____ Dollars(_____) ("current payment due") paid to the undersigned for furnishing materials, labor, equipment, warranty work or services on a construction project known as _____ being constructed on real property located at _____ the undersigned does hereby unconditionally waive, release, and relinquish any and all claims of any kind or nature, including but not limited to any and all lien rights(except for claims, including lien rights, for amounts being retained and which will subsequently come due) which the undersigned has or may have against said real property, its owner and its successors and assigns, their sureties, and any other persons or entities guaranteeing payment by or through such parties on account of the furnishing of materials, labor, equipment, warranty work or services by the undersigned on or before the_____ day of____(insert current Invoice Date)_ 20___, for the construction of said project.  The undersigned acknowledges, represents and certifies that the sum set forth herein represents payment in full to the undersigned, and said amount adequately, fully and completely pays and compensates the undersigned for all materials, labor, equipment, warranty work or services provided by the undersigned on the above-referenced project and that the undersigned will make no further claims of any kind, other than those specifically excepted herein, for materials, labor, equipment, warranty work or services furnished by the undersigned on the above-referenced project.  The undersigned further certifies that, in order to induce such payment, that as of the_____day of___(insert current Invoice Date)_ 20___, no liens or other claims could be made by creditors of the undersigned on said project and that the undersigned has paid all suppliers of materials, labor, equipment or services related to said project incurred on or before such date.

The undersigned further acknowledges and certifies receipt in full of any and all payments due to the undersigned prior to the _____ day of ___(insert previous Release date)_____, 20 ___; and the undersigned does hereby unconditionally waive, release, and relinquish any and all claims of any kind or nature, including but not limited to any and all lien rights (except for claims, including lien rights, for amounts being retained and which will subsequently come due) which the undersigned has or may have against said real property, its owner and its successors and assigns, their sureties, and any other persons or entities guaranteeing payment by or through such parties on account of the furnishing of materials, labor, equipment, warranty work or services by the undersigned on or before _____ day of ___(insert previous Release date)_, 20 ___. This unconditional release of all claims for all prior payments shall be effective upon execution of this Release, irrespective of the receipt of the current payment due.  In addition to, and not in limitation of,  the defense and indemnity obligations set forth in the Agreement between Owner and the undersigned, the undersigned further acknowledges and agrees that if any of the above representations, acknowledgments and certifications prove untrue, and should any claim be made by the undersigned or any creditor of the undersigned, the undersigned unconditionally agrees to pay to Owner and its successors and assigns  all reasonable costs  incurred in defending or resolving said claim or liens, including without limitation reasonable attorneys' fees.

CONSTRUCTION ENTERPRISES, INC.

By_____
Its _____
Address: 325 Seaboard Lane, Suite170
               Franklin, TN  37067
Phone:  615-332-8880    Fax:  615-771-0818

Sworn to and subscribed before me on this _____ day of _____ , 2012.

My Commission expires: _____

_____
Notary Public

October  3, 2012

**Please sign and return to:**  **EXHIBIT G.3**  Construction Enterprises, Inc.
325 Seaboard Lane; Suite 170
Franklin, TN 37067
615-627-9452 - Fax

## FULL AND FINAL RELEASE
### Subcontractor

Know all men by these presents that in consideration of and upon the receipt of the sum of $\underline{\$}$ ------ Dollars ($\underline{\$}$ _____) to the undersigned for furnishing materials, labor, equipment or services on a construction project known as _____ being constructed on real property located at the undersigned does hereby waive, release, and relinquish any and all claims of any kind or nature, including, but not limited to any and all lien rights, with the only condition being the receipt of the sum in good funds set for the above, which the undersigned has or may have against said real property, its owner and the owner's successors and assigns, Construction Enterprises, Inc., its sureties, and any other persons or entities guaranteeing payment by or through such parties on account of the furnishing of materials, labor, equipment or services by the undersigned on or before the_____day of_____ 201__ for the construction of said project. The undersigned understands, acknowledges and agrees that once the above sum is received in good funds, then this conditional lien waiver shall be self-effectuating and shall be converted to an unconditional full and final and general release and lien waiver. The undersigned further acknowledges, represents and certifies that the sum set forth herein represents payment in full to the undersigned, and said amount adequately, fully and completely pays and compensates the undersigned for all materials, labor, equipment or services provided by the undersigned on the above-referenced project and that the undersigned will make no further claims of any kind for materials, labor, equipment or services furnished by the undersigned on the above-referenced project. The undersigned further certifies that, in order to induce such payment, that as of the____day of _____ 201__, no liens or other claims could be made by creditors of the undersigned on said project and that the undersigned represents that it has paid all suppliers of materials, labor, equipment or services related to said project incurred on or before such date. The undersigned acknowledges and agrees that if any of the above representations, acknowledgments and certifications prove untrue, and should any claim be made by the undersigned or any creditor of the undersigned, the undersigned agrees to pay Construction Enterprises, Inc., all reasonable costs in defending or resolving said claim, including without limitation reasonable attorneys fees.

SUBCONTRACTOR:

ADDRESS:
CITY, STATE, ZIP:
PHONE:

**(Subcontractor fill out & sign below)**

STATE OF _____
COUNTY OF _____

I, _____, do hereby certify that I am the _____ (Title) of _____ and am authorized to execute the foregoing release. I further certify that all statements contained in the foregoing release are true and correct.

**Subcontractor Sign Here**  **BY:** _____

**Notary Fill Out & Sign Below:**

Sworn to and subscribed before me on this _____ day of _____, 201__.

_____                    _____
Notary Public                                              Commission Expiration Date

October  3, 2012



**EXHIBIT G.4**

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702                                                                                      PAGE ONE

| | | Distribution to: |
|---|---|---|
| | APPLICATION NO: | OWNER |
| | PERIOD TO: | ARCHITECT |
| | ARCHITECT'S PROJECT NO: | CONTRACTOR |
| | CONTRACT DATE: 08/09/12 | |

**TO (OWNER):**
Tuscaloosa I, LLC
c/o Capstone Development Corp.
431 Office Park Dr. Birmingham, AL 35223

**PROJECT:**
Lofts at City Center Tuscaloosa
1025 13th St, Tuscaloosa, AL

**FROM (CONTRACTOR):**
Construction Enterprises, Inc.
325 Seaboard Ln Ste 170, Franklin, TN 37067

**VIA (ARCHITECT):**

**CONTRACT FOR:**

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . . . . . . . . . . . $
2. Net change by Change Orders . . . . . . . . . . . . . . . . . . . . . $
3. CONTRACT SUM TO DATE (Line 1 (+/-) 2) . . . . . . . . . . . . . . $
4. TOTAL COMPLETED & STORED TO DATE . . . . . . . . . . . . . . $
   (Column G on G703)
5. RETAINAGE:
   a. _____ % of Completed Work     $
      (Column D + E on G703)
   b. _____ % of Stored Material     $
      (Column F on G703)
   Total Retainage (Line 5a + 5b or
   Total in Column I of G703)
6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . . . . . . . . . $
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR
   PAYMENT (Line 6 from prior Certificate) . . . . . . . . . . . . . . $
8. CURRENT PAYMENT DUE . . . . . . . . . . . . . . . . . . . . . . . $
9. BALANCE TO FINISH, PLUS RETAINAGE . . . . . . . . . . . . . . $
   (Line 3 less Line 6)

### CHANGE ORDER SUMMARY

| Number | Date Approved | Additions | Deductions |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Net change by Change Orders | | 0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By:                                                    Date:

State of:                                              County of:
Subscribed and sworn to before me this _____ day of _____ , 2012.
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
(Attach explanation if amount certified differs from the amount applied for.)
ARCHITECT:

By:                                                    Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

October 3, 2012

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached

In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO.:

PAGE 1 OF 3 PAGES

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | WORK COMPLETED THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE |
| 1 | General Requirements | | - | - | - | - | 0% | | - |
| 2 | Building Permit | | - | - | - | - | 0% | | - |
| 3 | Owner Provided Contingency | | - | - | - | - | 0% | | - |
| 4 | Site Grading, Paving, Utilities | | - | - | - | - | 0% | | - |
| 5 | Unsuitable Soil Allowance | | - | - | - | - | 0% | | - |
| 6 | Primary Electric System Allowance | | - | - | - | - | 0% | | - |
| 7 | Gas Service Line Allowance | | - | - | - | - | 0% | | - |
| 8 | Geopiers | | - | - | - | - | 0% | | - |
| 9 | Striping, Traffic Coating, Parking Signs | | - | - | - | - | 0% | | - |
| 10 | Soil Treatment | | - | - | - | - | 0% | | - |
| 11 | Landscape/Irrigation Allowance | | - | - | - | - | 0% | | - |
| 12 | Courtyard Hardscape Allowance | | - | - | - | - | 0% | | - |
| 13 | Courtyard Amenity Allowance | | - | - | - | - | 0% | | - |
| 14 | Volleyball Court Allowance | | - | - | - | - | 0% | | - |
| 15 | Site Fencing & Rails | | - | - | - | - | 0% | | - |
| 16 | Sidewalks & Steps | | - | - | - | - | 0% | | - |
| 17 | Stamped Concrete at Street | | - | - | - | - | 0% | | - |
| 18 | Retaining Walls | | - | - | - | - | 0% | | - |
| 19 | Concrete Foundations/SOG for Apartments | | - | - | - | - | 0% | | - |
| 20 | Concrete Foundation & SOG for Garage | | - | - | - | - | 0% | | - |
| 21 | Garage Precast | | - | - | - | - | 0% | | - |
| 22 | Gypsum Underlayment | | - | - | - | - | 0% | | - |
| 23 | Lightweight Concrete | | - | - | - | - | 0% | | - |
| 24 | Masonry | | - | - | - | - | 0% | | - |
| 25 | Structural & Architectural Metals | | - | - | - | - | 0% | | - |

Lofts at City Center Tuscaloosa

October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

124 of 174

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO.

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 26 | Bridge Allowance (complete finish) | ▓ | - | - | - | - | 0% | ▓ | - |
| 27 | Gates - Vehicle | ▓ | - | - | - | - | 0% | ▓ | - |
| 28 | Rough Carpentry | ▓ | - | - | - | - | 0% | ▓ | - |
| 29 | Roof & Floor Trusses | ▓ | - | - | - | - | 0% | ▓ | - |
| 30 | Interior Trim Carpentry | ▓ | - | - | - | - | 0% | ▓ | - |
| 31 | Siding & Trim | ▓ | - | - | - | - | 0% | ▓ | - |
| 32 | Waterproofing | ▓ | - | - | - | - | 0% | ▓ | - |
| 33 | Insulation | ▓ | - | - | - | - | 0% | ▓ | - |
| 34 | Roofing | ▓ | - | - | - | - | 0% | ▓ | - |
| 35 | Flashing & Vents | ▓ | - | - | - | - | 0% | ▓ | - |
| 36 | Caulk/Sealant at Garage CMU | ▓ | - | - | - | - | 0% | ▓ | - |
| 37 | Gutters & Downspouts | ▓ | - | - | - | - | 0% | ▓ | - |
| 38 | Exterior Doors | ▓ | - | - | - | - | 0% | ▓ | - |
| 39 | Overhead Door | ▓ | - | - | - | - | 0% | ▓ | - |
| 40 | Interior Doors | ▓ | - | - | - | - | 0% | ▓ | - |
| 41 | Aluminum Storefront | ▓ | - | - | - | - | 0% | ▓ | - |
| 42 | Windows | ▓ | - | - | - | - | 0% | ▓ | - |
| 43 | Door Hardware | ▓ | - | - | - | - | 0% | ▓ | - |
| 44 | Drywall & Metal Stud | ▓ | - | - | - | - | 0% | ▓ | - |
| 45 | Floor Covering | ▓ | - | - | - | - | 0% | ▓ | - |
| 46 | Painting | ▓ | - | - | - | - | 0% | ▓ | - |
| 47 | Club Finishes & Equipment | ▓ | - | - | - | - | 0% | ▓ | - |
| 48 | Signs - Allowance | ▓ | - | - | - | - | 0% | ▓ | - |
| 49 | Bath Accessories, Misc. Specialties, Mirrors | ▓ | - | - | - | - | 0% | ▓ | - |
| 50 | Appliances | ▓ | - | - | - | - | 0% | ▓ | - |
| 51 | Cabinets & Tops | ▓ | - | - | - | - | 0% | ▓ | - |
| 52 | Window Blinds | ▓ | - | - | - | - | 0% | ▓ | - |

Lofts at City Center Tuscaloosa

# CONTINUATION SHEET

AIA DOCUMENT G703

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO.:

PAGE 3 OF 3 PAGES

Lofts at City Center Tuscaloosa

| A ITEM NO | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 53 | Swimming Pool & related features allowance | ███ | - | - | - | - | 0% | ███ | - |
| 54 | Elevators | | - | - | - | - | 0% | | - |
| 55 | Trash Chute | | - | - | - | - | 0% | | - |
| 56 | Fire Sprinkler | | - | - | - | - | 0% | | - |
| 57 | Plumbing | | - | - | - | - | 0% | | - |
| 58 | Water Submetering | | - | - | - | - | 0% | | - |
| 59 | HVAC | | - | - | - | - | 0% | | - |
| 60 | Electrical | | - | - | - | - | 0% | | - |
| 61 | Street Light Allowance | | - | - | - | - | 0% | | - |
| 62 | AV Equipment Allowance | | - | - | - | - | 0% | | - |
| 63 | P & P Bond | | - | - | - | - | 0% | | - |
| 64 | Architect Fee | | - | - | - | - | 0% | | - |
| 65 | Contractor Fee | | - | - | - | - | 0% | | - |
| | Totals | | - | - | - | - | 0% | | - |

_JEN_

October 3, 2012

**EXHIBIT G.5**

| Cost Code: | 280. | Cost Types: | LPBFMSEOC |
| To: | 280. | Items with Activity |

REPORT PROVIDED AS A SAMPLE ONLY - DOLLAR VALUES SHOWN ARE NOT FOR CONTRACT PURPOSE

Job Cost Category Totals Report
Construction Enterprises, Inc.
7/19/2012

Page 1
7/19/12 09:21
L0 9.0.120517

**Job: 280**

Contract:
Change Orders:
Revised:
Prev. Billed:
Open:

| Cat. | Description | Contract Amount | Billed To Date | Actual | Budget | Pct | Overrun | | | | |
|------|-------------|-----------------|----------------|--------|--------|-----|---------|---|---|---|---|
| | **Phase: 01 - General Requirement** | | | | | | | | | | |
| 070 | Testing | | 0 | | | | | | | | |
| 080 | Layout & Engineering | | 0 | | | | | | | | |
| 091 | License | | 0 | | | | | | | | |
| 100 | Wood Porch at Trailer | | 0 | | | | | | | | |
| 401 | Superintendent | | 0 | | | | | | | | |
| 402 | Asst Superintendent | | 0 | | | | | | | | |
| 403 | Secretary | | 0 | | | | | | | | |
| 404 | Misc Labor | | 0 | | | | | | | | |
| 409 | Office Supplies | | 0 | | | | | | | | |
| 410 | Office Trailer | | 0 | | | | | | | | |
| 416 | Job Sign | | 0 | | | | | | | | |
| 501 | Temp Power - Operations | | 0 | | | | | | | | |
| 502 | Temp Power - Start Up | | 0 | | | | | | | | |
| 505 | Temp Gas | | 0 | | | | | | | | |
| 510 | Temp Heat | | 0 | | | | | | | | |
| 515 | Temp Phone | | 0 | | | | | | | | |
| 520 | Temp Toilet | | 0 | | | | | | | | |
| 525 | Temp Water | | 0 | | | | | | | | |
| 527 | Temp Fence | | 0 | | | | | | | | |
| 530 | Temp Storage | | 0 | | | | | | | | |
| 535 | Temp Roads | | 0 | | | | | | | | |
| 550 | Travel & Entertainment | | 0 | | | | | | | | |
| 558 | Per Diem | | 0 | | | | | | | | |
| 560 | Ice & Cups | | 0 | | | | | | | | |
| 575 | Periodic Cleanup | | 0 | | | | | | | | |
| 580 | Final Cleanup | | 0 | | | | | | | | |
| 585 | Dumpster | | 0 | | | | | | | | |
| 615 | Small Tools & Misc | | 0 | | | | | | | | |
| 625 | Trucks & Pickups | | 0 | | | | | | | | |
| 630 | Gas & Oil | | 0 | | | | | | | | |
| 648 | Misc Equipment Rental | | 0 | | | | | | | | |
| 655 | Safety | | 0 | | | | | | | | |
| 665 | Security | | 0 | | | | | | | | |
| 668 | Traffic Control | | 0 | | | | | | | | |
| 670 | Photos | | 0 | | | | | | | | |
| 678 | Survey - As Built | | 0 | | | | | | | | |
| 680 | Building Permit & Impact Fees | | 0 | | | | | | | | |
| 683 | Plans & Specs | | 0 | | | | | | | | |
| 684 | Payment & Performance Bond | | 0 | | | | | | | | |
| 695 | Legal Fees | | 0 | | | | | | | | |
| 780 | Sales Tax | | 0 | | | | | | | | |
| 800 | Cost Certification | | 0 | | | | | | | | |
| 900 | Mold Remediation | | 0 | | | | | | | | |
| | Phase 01 Totals | 13,563,170 | 0 | | | | | | | | |
| | **Phase: 02 - Sitework** | | | | | | | | | | |
| 008 | Site Grading | | 0 | | | | | | | | |
| 013 | Excavation | | 0 | | | | | | | | |
| 020 | Storm Sewer | | 0 | | | | | | | | |
| 140 | Fencing & Gates | | 0 | | | | | | | | |
| 215 | Dewatering | | 0 | | | | | | | | |
| 226 | Haul-In Topsoil | | 0 | | | | | | | | |
| 250 | Soil Treatment | | 0 | | | | | | | | |
| 446 | Offsite Water & Sanitary Sewer | | 0 | | | | | | | | |
| 447 | Site Domestic Water System | | 0 | | | | | | | | |
| 580 | Light Pole Bases | | 0 | | | | | | | | |
| 596 | Site Telephone Service | | 0 | | | | | | | | |
| 597 | Site CATV Service | | 0 | | | | | | | | |
| 610 | Concrete Paving | | 0 | | | | | | | | |
| 614 | Paint Striping | | 0 | | | | | | | | |
| 619 | Parking Bumpers | | 0 | | | | | | | | |

October 3, 2012

Job Cost Category Totals Report
Construction Enterprises, Inc.
7/19/2012

Job: 280

Contract:
Change Orders:
Revised:
Prev. Billed:
Open:

| Cat. | Description | Contract Amount | Billed To Date | Cost | | | | Hours | | | |
|------|-------------|-----------------|----------------|--------|--------|-----|---------|-----|-----|-----|------|
| | | | | Actual | Budget | Pct | Overrun | Act | Bud | Pct | Over |
| | **Phase: 02 - Sitework** | | | | | | | | | | |
| 628 | Sidewalks | | 0 | | | | | | | | |
| 639 | Hardscapes Features | | 0 | | | | | | | | |
| 642 | Playground Equipment | | 0 | | | | | | | | |
| 645 | Brick Pavers | | 0 | | | | | | | | |
| 672 | Sign | | 0 | | | | | | | | |
| 680 | Traffic Signs | | 0 | | | | | | | | |
| 719 | Fountain | | 0 | | | | | | | | |
| 720 | Dumpster Enclosures | | 0 | | | | | | | | |
| 732 | Outdoor Grill | | 0 | | | | | | | | |
| 760 | Metal Carport | | 0 | | | | | | | | |
| 810 | Landscaping | | 0 | | | | | | | | |
| | Phase 02 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 03 - Concrete** | | | | | | | | | | |
| 131 | Concrete S.O.G. | | 0 | | | | | | | | |
| 138 | Stained Concrete | | 0 | | | | | | | | |
| 170 | Waterproofing | | 0 | | | | | | | | |
| 285 | Anchor Bolts | | 0 | | | | | | | | |
| 472 | Lt. Wt. Concrete Decks | | 0 | | | | | | | | |
| 473 | Gyp-Crete | | 0 | | | | | | | | |
| | Phase 03 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 04 - Masonry** | | | | | | | | | | |
| 005 | Masonry | | 0 | | | | | | | | |
| 050 | Precast Concrete Cap | | 0 | | | | | | | | |
| 070 | Stone Veneer | | 0 | | | | | | | | |
| | Phase 04 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 05 - Metals** | | | | | | | | | | |
| 010 | Stairs, Landings & Railings | | 0 | | | | | | | | |
| 020 | Lintels | | 0 | | | | | | | | |
| 606 | Entry Fence & Gates | | 0 | | | | | | | | |
| 607 | Pool Fence & Gates | | 0 | | | | | | | | |
| | Phase 05 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 06 - Carpentry** | | | | | | | | | | |
| 001 | Black In Labor | | 0 | | | | | | | | |
| 022 | 1x4 PT | | 0 | | | | | | | | |
| 031 | 2x4 PT | | 0 | | | | | | | | |
| 032 | 2x6 PT | | 0 | | | | | | | | |
| 033 | 2x8 PT | | 0 | | | | | | | | |
| 043 | 2x4 FT | | 0 | | | | | | | | |
| 071 | Nails & Misc Fasteners | | 0 | | | | | | | | |
| 072 | 2x4 SYP | | 0 | | | | | | | | |
| 073 | 2x6 SYP | | 0 | | | | | | | | |
| 074 | 2x8 SYP | | 0 | | | | | | | | |
| 075 | 2x10 SYP | | 0 | | | | | | | | |
| 076 | 2x12 SYP | | 0 | | | | | | | | |
| 080 | 2x4x8 Studs | | 0 | | | | | | | | |
| 081 | 2x4x9 Studs | | 0 | | | | | | | | |
| 084 | 2x6x9 Studs | | 0 | | | | | | | | |
| 088 | 5/8 GYP Sheathing | | 0 | | | | | | | | |
| 091 | Misc Framing | | 0 | | | | | | | | |
| 092 | PSL Stud | | 0 | | | | | | | | |
| 093 | 1x3 Exterior Trim | | 0 | | | | | | | | |
| 094 | 1x2 Exterior Trim | | 0 | | | | | | | | |
| 105 | Tyvek Wall Wrap | | 0 | | | | | | | | |
| 117 | 3/4 OSB Sub-Floor | | 0 | | | | | | | | |
| 120 | Finish Carpentry | | 0 | | | | | | | | |
| 125 | 2x12 Exterior Trim | | 0 | | | | | | | | |
| 127 | 5/4 x 4 Exterior Trim | | 0 | | | | | | | | |
| 128 | 5/4 x 6 Exterior Trim | | 0 | | | | | | | | |
| 129 | 5/4 x 8 Exterior Trim | | 0 | 25,210 | 23,100 | 109% | 2,110 | 0 | 0 | 0% | 0 |

October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Job Cost Category Totals Report
Construction Enterprises, Inc.
7/19/2012

Job: 280

Contract:
Change Orders:
Revised:
Prev. Billed:
Open:

| Cat. | Description | Contract Amount | Billed To Date | Actual | Budget | Pct | Overrun | Act | Bud | Pct | Over |
|------|-------------|-----------------|----------------|--------|--------|-----|---------|-----|-----|-----|------|
| | **Phase: 06 – Carpentry** | | | | | | | | | | |
| 130 | 5/4 x 10 Exterior Trim | | 0 | 10,910 | 15,110 | 133% | 4,800 | 0 | 0 | 0% | |
| 131 | Fascia 2x8 | | 0 | | | | | | | | |
| 133 | 5/4 x 12 Exterior Trim | | 0 | | | | | | | | |
| 160 | Simpson Hardware | | 0 | | | | | | | | |
| 161 | 5/8 Roofing Sheathing | | 0 | | | | | | | | |
| 188 | 3/4 CDX Plywood | | 0 | | | | | | | | |
| 192 | 3/4 B C Plywood | | 0 | | | | | | | | |
| 193 | 1/2 OSB Board | | 0 | | | | | | | | |
| 196 | 3/4 OSB | | 0 | | | | | | | | |
| 216 | Roof & Floor Trusses | | 0 | | | | | | | | |
| 252 | 8x8 Cedar | | 0 | | | | | | | | |
| 253 | 2x6 Cedar | | 0 | | | | | | | | |
| 254 | 2x12 Cedar | | 0 | | | | | | | | |
| 260 | Vented Hardi Soffit | | 0 | | | | | | | | |
| 262 | Panel Siding | | 0 | | | | | | | | |
| 263 | Siding Trim Aluminum | | 0 | | | | | | | | |
| 277 | Window Stool | | 0 | | | | | | | | |
| 280 | Shoe Mould | | 0 | | | | | | | | |
| 284 | Wood Base | | 0 | | | | | | | | |
| 286 | Crown | | 0 | | | | | | | | |
| 288 | Casing | | 0 | | | | | | | | |
| 295 | Misc Interior Trim | | 0 | | | | | | | | |
| 300 | Wire Shelving | | 0 | | | | | | | | |
| 302 | Wood Shelving | | 0 | | | | | | | | |
| 321 | Fiberglass Columns | | 0 | | | | | | | | |
| 322 | Window Shutters | | 0 | | | | | | | | |
| 330 | Gable Vents | | 0 | | | | | | | | |
| 401 | Foreman | | 0 | | | | | | | | |
| 510 | Fypon Trim | | 0 | | | | | | | | |
| | Phase 06 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 07 – Thermal & Moisture** | | | | | | | | | | |
| 030 | Ice & Water Shield | | 0 | | | | | | | | |
| 040 | Gutters & Downspouts | | 0 | | | | | | | | |
| 056 | Peel & Stick | | 0 | | | | | | | | |
| 200 | Insulation | | 0 | | | | | | | | |
| 310 | Shingles | | 0 | | | | | | | | |
| 315 | #15 Felt | | 0 | | | | | | | | |
| 500 | Roofing - EPDM | | 0 | | | | | | | | |
| 505 | Roofing - Standing Seam | | 0 | | | | | | | | |
| 680 | Caulking & Sealants | | 0 | | | | | | | | |
| 700 | Flashing | | 0 | | | | | | | | |
| 715 | Roof Vents | | 0 | | | | | | | | |
| 740 | Fireproofing | | 0 | | | | | | | | |
| | Phase 07 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 08 – Doors, Windows & Hardware** | | | | | | | | | | |
| 115 | Hollow Metal Doors & Frames | | 0 | | | | | | | | |
| 225 | Wood Doors | | 0 | | | | | | | | |
| 350 | Sliding Glass Doors | | 0 | | | | | | | | |
| 380 | Overhead Doors | | 0 | | | | | | | | |
| 501 | Aluminum Windows | | 0 | | | | | | | | |
| 600 | Access Doors | | 0 | | | | | | | | |
| 610 | Draft Stop Doors | | 0 | | | | | | | | |
| 710 | Finish Hardware | | 0 | | | | | | | | |
| 711 | Breakage Allowance | | 0 | | | | | | | | |
| 800 | Glazing | | 0 | | | | | | | | |
| | Phase 08 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 09 - Finishes** | | | | | | | | | | |
| 101 | Stucco | | 0 | | | | | | | | |
| 250 | Drywall | | 0 | | | | | | | | |
| 260 | Shaftwall | | 0 | | | | | | | | |

October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

129 of 114

Job Cost Category Totals Report
Construction Enterprises, Inc.
7/19/2012

Page 4
7/19/12 09:21
LO_9.0.120517

Job: 280

Contract:
Change Orders:
Revised:
Prev. Billed:
Open:

| Cat. | Description | Contract Amount | Billed To Date | Cost Actual | Budget | Pct | Overrun | Hours Act | Bud | Pct | Over |
|------|-------------|-----------------|----------------|-------------|--------|-----|---------|-----------|-----|-----|------|
| | **Phase: 09 - Finishes** | | | | | | | | | | |
| 310 | Ceramc Tile | | 0 | | | | | | | | |
| 650 | Vinyl Flooring | | 0 | | | | | | | | |
| 680 | Carpet | | 0 | | | | | | | | |
| 900 | Painting | | 0 | | | | | | | | |
| 950 | Wallcovering | | 0 | | | | | | | | |
| | Phase 09 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 10 - Specialities** | | | | | | | | | | |
| 101 | Fire Extinguishers | | 0 | | | | | | | | |
| 445 | Signage | | 0 | | | | | | | | |
| 801 | Bath Accessories | | 0 | | | | | | | | |
| | Phase 10 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 11 - Equipment** | | | | | | | | | | |
| 901 | Kitchen Appliances | | 0 | | | | | | | | |
| 902 | Washers & Dryers | | 0 | | | | | | | | |
| | Phase 11 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 12 - Furnishings** | | | | | | | | | | |
| 300 | Cabinets | | 0 | | | | | | | | |
| 360 | Granite Counter Tops | | 0 | | | | | | | | |
| 500 | Window Treatment | | 0 | | | | | | | | |
| | Phase 12 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 13 - Special Construction** | | | | | | | | | | |
| 100 | Swimming Pool | | 0 | | | | | | | | |
| 160 | Mail Boxes | | 0 | | | | | | | | |
| | Phase 13 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 15 - Mechanical** | | | | | | | | | | |
| 400 | Plumbing | | 0 | | | | | | | | |
| 425 | Water Sub-Meter System | | 0 | | | | | | | | |
| 501 | Sprinkler System | | 0 | | | | | | | | |
| 601 | HVAC | | 0 | | | | | | | | |
| | Phase 15 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 16 - Electrical** | | | | | | | | | | |
| 002 | Electrical | | 0 | | | | | | | | |
| | Phase 16 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 17 - Upgraded Items** | | | | | | | | | | |
| 010 | Contingencies | | 0 | | | | | | | | |
| RAN | B/Chg Ranger Fire | | 0 | | | | | | | | |
| | Phase 17 Totals | 0 | 0 | | | | | | | | |
| | **Phase: 50 - Backcharge Admin Fee** | | | | | | | | | | |
| ADMIN | Backcharge Admin Fee | | 0 | | | | | | | | |
| | Phase 50 Totals | 0 | 0 | | | | | | | | |
| | Job 280 Totals | 13,563,170 | 12,824,569 | 12 | | | | | | | |

Labor
Burden
Material
Subcontract
Equipment
Other
Contract Labor



The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## EXHIBIT H

## Allowances





## WOOD SQUARE - ALLOWANCES
### September 28, 2012

1) Landscape and irrigation
2) Courtyard hardscape features
3) Courtyard amenities
4) Volleyball court
5) Gas service line
6) Unsuitable soil removal
7) Brick material
8) Pedestrian bridge complete
9) Clubhouse doors
10) All interior finishes for Clubhouse
11) All project signage
12) Swimming pool and deck
13) Audio/visual equipment
14) All site lighting
15) Primary electrical power distribution system
16) Security system
17) CCTV
18) Access controls



# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## EXHIBIT I

# Quality Control Program



## QUALITY CONTROL PROGRAM

**Purpose**
The purpose of this procedure is to provide Ownership with documentation and assurance Project Design and Construction Quality Control.

**Design**
Ownership shall be provided with an opportunity to review and comment on the following prior to final approval and/or significant changes:
1. Exterior Finish and Colors
2. Interior Finish and Colors
3. Appliance Selection
4. Unit Layout
5. Internet System and Contract
6. HVAC System Selection
7. Expansion and Control Joint Layout

**Internet Service**
1. All properties shall be furnished with a <u>Managed Wifi System</u> for tenant's use.
2. All internet contracts shall have set pricing for increasing bandwidth and communication speeds and shall be reviewed and approved by KAREP prior to execution.
3. All data and cable connections shall be tested after installation.

**Construction**
Ownership shall be provided a description of Contractor's Inspection and Quality Control Plan including:
1. Documentation Control
2. Reporting Frequency and Procedures
3. Construction Detail Photographic Documentation frequency and documentation.
4. Change Order Control
5. Submission Schedule and Approval Procedure
6. Planned use of consultants during construction.
7. Description of envelope & waterproofing design and quality control measures.
8. Field tests to be performed and frequency of testing including:
   a. Sub Grade Compaction
   b. Concrete

**Major Feature Inspection Program**
Ownership shall be provided with an outlined project schedule which shall be maintained and updated monthly to outline the start of major features of construction along with the names of the consultant responsible for the specifying the work. Sample of start of work or mock up shall be provided and the responsible consultant shall review and approve in writing the mockup or sample. Schedule shall be updated monthly and coordinated with consultant to assure timely field visits. Major Feature Inspection Program shall include:
1. Rough Grading and Drainage Layout
2. Building Enclosure, Flashing and Moisture Control.
3. Caulking and Sealing Work
4. Insulation work.
5. Finish of First Unit finishes including interior paint, tile and flooring.

# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## EXHIBIT J

## Design-Builder Key Personnel

Construction Enterprises, Inc.
325 Seaboard Lane, Suite 170
Franklin, TN 37067
615-332-8880
CEO – Bill Landers
Exec. V.P. – Giny Knudsen
V.P. – Estimating – Gary Myers
Construction Manager – Justin Walker
Project Manager – Pace Cole
Project Superintendent – Bill Funderburk



# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## <u>EXHIBIT K</u>

# Owner-Provided Document Listing





RECEIVED

OCT 0 4 2012



**CAPSTONE**
C O L L E G I A T E
C O M M U N I T I E S

431 Office Park Drive . Birmingham, Alabama  35223

October 3, 2012

VIA FEDERAL EXPRESS

Ms. Giny S.  Knudsen
Executive Vice President
CEI- Construction Enterprises, Inc.
325 Seaboard Lane, Suite 170
Franklin, TN  37067

Re: Environmental and Geotechnical Reports (Exhibit L) for The Lofts at City Center Student Housing
Development

Dear Giny:

Enclosed is a binder with the following reports and documentation comprising Exhibit L to the A 141
contract that we have entered into for the Lofts at City Center Student Housing Development:

- Geotechnical Report dated May 30, 2012 and prepared by TTL;

- Report of Phase I Site Assessment dated June 5, 2012 and prepared by TTL;

- Geotechnical Report Addendum # 1- Pavement Recommendations dated June 6, 2012 and
  prepared by TTL;

- Traffic Study Report dated June 13, 2012 and prepared by Skipper Consulting Inc.;

- Wood Square No-Rise Flood Study (Cribbs Mill Creek Tributary 7) dated June 13, 2012 prepared
  by CFM Group;

- Geotechnical Report Addendum # 2- Retaining Wall and Basement Drainage Recommendations
  dated July 24, 2012 and prepared by TTL;

- Assessment of Wetlands and Waters of the U.S. Report dated August 16, 2012 and prepared by TTL;

- Limited Phase II Environmental Assessment Report dated August 8, 2012 with revised Figure 2 per Capstone Development's request on August 23, 2012 and prepared by TTL; *with Transmittal date of Aug. 24, 2012.*

- Geotechnical Report Addendum # 3- Foundation Recommendations dated September 4, 2012 and prepared by TTL; and

- Alabama Risk-Based Corrective Action Evaluation Report dated September 4, 2012 and prepared by TTL.

Please sign and date where indicated below to acknowledge receipt of Exhibit L and return a signed copy to me.

Sincerely,

Rob Howland
Tuscaloosa I, LLC

I hereby acknowledge the Receipt of Exhibit L.

Giny S. Knudsen

**Exhibit K**

**Owner Provided Documents:**

1.  9/14/12 – TTL Geotechnical Report Addendum No. 3 – Foundation Recommendation

2.  9/4/12 – TTL ALABAMA RISK-BASED CORRECTIVE ACTION EVALUATION REPORT

3.  08/24/12 – TTL Geotechnical Report Revised Report of Limited Phase II Environmental Site Assessment

4.  8/16/12 TTL Assessment of Wetland and Waters of the U.S.  - Proposed McFarland Mix Use Development, Former Wood Square Shopping Center
    Tuscaloosa, Tuscaloosa County, Alabama

5.  7/24/12 – TTL Geotechnical Report Addendum No. 2 – Retaining Wall and Basement Drainage Recommendations

6.  6/13/12 Skipper Consulting, Inc. Wood Square Mixed Use Development Traffic Study – Tuscaloosa, AL

7.  6/13/2012 – CFM Group Engineering Report – Wood Square No-Rise Flood Study (Cribbs Mill Creek Tributary 7)

8.  06/06/12 – TTL Geotechnical Report Addendum 1 Pavement Recommendations

9.  06/05/12 – TTL Geotechnical Report of Phase I Environmental Site Assessment

10. 5/30/12 – TTL Geotechnical Report



October  3, 2012

RECEIVED

OCT 0 4 2012



**CAPSTONE**
C O L L E G I A T E
C O M M U N I T I E S

431 Office Park Drive . Birmingham, Alabama  35223

October 3, 2012

VIA FEDERAL EXPRESS

Ms. Giny S.  Knudsen
Executive Vice President
CEI- Construction Enterprises, Inc.
325 Seaboard Lane, Suite 170
Franklin, TN  37067

Re: Environmental and Geotechnical Reports (Exhibit L) for The Lofts at City Center Student Housing
Development

Dear Giny:

Enclosed is a binder with the following reports and documentation comprising Exhibit L to the A 141
contract that we have entered into for the Lofts at City Center Student Housing Development:

- Geotechnical Report dated May 30, 2012 and prepared by TTL;

- Report of Phase I Site Assessment dated June 5, 2012 and prepared by TTL;

- Geotechnical Report Addendum # 1- Pavement Recommendations dated June 6, 2012 and
prepared by TTL;

- Traffic Study Report dated June 13, 2012 and prepared by Skipper Consulting Inc.;

- Wood Square No-Rise Flood Study (Cribbs Mill Creek Tributary 7) dated June 13, 2012 prepared
by CFM Group;

- Geotechnical Report Addendum # 2- Retaining Wall and Basement Drainage Recommendations
dated July 24, 2012 and prepared by TTL;

- Assessment of Wetlands and Waters of the U.S. Report dated August 16, 2012 and prepared by TTL;

- Limited Phase II Environmental Assessment Report dated August 8, 2012 with revised Figure 2 *10.9.12* per Capstone Development's request on August 23, 2012 and prepared by TTL; *with 8/9* *Transmittal date of Aug. 24, 2012*

- Geotechnical Report Addendum # 3- Foundation Recommendations dated September 4, 2012 and prepared by TTL; and

- Alabama Risk-Based Corrective Action Evaluation Report dated September 4, 2012 and prepared by TTL.


Please sign and date where indicated below to acknowledge receipt of Exhibit L and return a signed copy to me.


Sincerely,

*Rob Howland*

Rob Howland
Tuscaloosa I, LLC


I hereby acknowledge the Receipt of Exhibit L.

Giny S. Knudsen

# The Lofts of Tuscaloosa
# Tuscaloosa, Alabama

## EXHIBIT L

## Early Start Agreement





CONSTRUCTION CONTRACT
For
EARLY START
For
The Lofts of Tuscaloosa Student Housing Project

This Construction Contract for Early Start (this "Contract") is made and entered into as of the ___17___ day of August, 2012, by and between Tuscaloosa I, LLC ("OWNER") and Construction Enterprises, Inc. ("CEI") for the following preliminary work on the project to be known as The Lofts of Tuscaloosa Student Housing Project (the "Project") of which Tuscaloosa I, LLC is the OWNER:

**The scope of work to be performed pursuant to this Contract is described on the attached <u>Exhibit A</u> and is hereinafter referred to as the "Work."**

The Work is being performed by CEI for OWNER to prepare the Project for future construction and development while the parties negotiate a more comprehensive Guaranteed Maximum Price ("GMP") agreement for construction of the Project (the "Agreement"). If OWNER and CEI enter into the Agreement, this Contract will be replaced and superseded by the Agreement. In that event, CEI shall invoice OWNER for the Work completed under this Contract that has not yet been invoiced in the same manner that CEI invoices OWNER under the Agreement. In case of a conflict between this Contract and the Agreement, the instrument that imposes more restrictive conditions on the parties will apply. If OWNER and CEI enter into the Agreement, all costs and charges to OWNER associated with the performance of this Contract will be included in, and constitute part of, the GMP in the Agreement. All amounts previously funded or remaining to be funded by OWNER under this Contract shall be transferred and allocated to the Agreement accordingly. Notwithstanding the foregoing, neither OWNER nor CEI shall be under any obligation to enter into the Agreement by virtue of having executed this Contract and performed their respective obligations hereunder.

1.    **WORK AND BONDS**.    CEI agrees to provide all equipment, personnel, materials and services to perform the Work, to pay for, obtain and provide all necessary permits and licenses required for the Work as detailed on the attached Exhibit A, and to comply with the schedule attached hereto as Exhibit B (the "Work Schedule"), subject to the terms of Section 10. CEI shall purchase Payment, Performance and Lien Bonds for the Work in an amount compliant with applicable law for the state in which the Project is located.

2.    **COST**. In consideration of the Work to be performed by CEI, OWNER agrees to pay CEI, in accordance with the not-to-exceed price of $3,798,020.00 as contained in the schedule of values attached hereto as Exhibit C (the "Preliminary Project Budget") with respect to the specific expense categories described therein, for all services provided, materials supplied, and costs incurred by CEI in performing and completing the Work (collectively, the "Cost of the Work"). CEI shall submit monthly invoices to OWNER for any and all Work completed during the previous calendar month, provided, however, that if the Cost of the Work is estimated to cost less than $5,000, *only* one (1)

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 1 of 34
139 of 174

invoice at the completion of the Work shall be submitted.  CEI acknowledges, understands and agrees that any delay in furnishing monthly invoices together with all supporting material as required by the OWNER will likely result in a delay in payment to CEI.

CEI shall submit its first Application for Payment no earlier than thirty (30) days after execution of this Contract or within three (3) days of a demand for such Application for Payment from OWNER to facilitate a closing.  For the first Application for Payment, the OWNER shall pay CEI within 15 business days after receipt of such Application for Payment or where the OWNER makes a demand for an early Application for Payment, CEI shall be paid out of the closing funds for the funding of the Project.  In any case, OWNER shall pay CEI's invoices within fifteen (15) business days of receipt, with the invoice submitted to be in the format attached hereto as Exhibit E and accompanied by a computerized job cost detail report that lists each cost incurred for each cost code in the schedule of values, contained within the Preliminary Project Budget (showing actual costs and budgeted costs); conditional and unconditional lien waivers for all Work performed through the date of the invoice from CEI and all subcontractors and suppliers at all levels (collectively the "Subcontractors") and such other supporting documentation as OWNER may reasonably require.

The following are conditions precedent to OWNER's obligation to make final payment: (1) CEI and all of the Subcontractors have provided final, conditional lien waivers for all sums not disputed by Owner that are due, with the only condition being Subcontractors' receipt of good funds for current payment due (at which time the lien waiver shall be self-effectuating and become a final, unconditional lien waiver) in the form attached as Exhibit E; (2) where any Subcontractor has asserted a lien claim against the Project site, CEI shall provide OWNER with documentation necessary to demonstrate that any and all such liens have been bonded off of title to the Project site and that CEI will indemnify and defend OWNER and its successors and assigns from any such lien or claim or dispute outstanding; (3) CEI's provision of copies of checks sent to Subcontractors for final payment; and (4) OWNER has received any and all warranty and close out documentation.  OWNER shall not be required to make payment to CEI for non-conforming Work at any time during the Project until such non-conforming Work is remedied and/or cured to OWNER's reasonable satisfaction, which shall not be unreasonably withheld.  If the parties enter into the Agreement, for avoidance of any doubt, any Cost of the Work paid in connection with this Contract shall constitute part of, and be included in, the GMP, and shall be an advance on, and deducted from, any other amount, fee or profit to be paid pursuant to the Agreement.

All CEI invoices must be in a format that uses the same line item descriptions as set forth on the Preliminary Project Budget at Exhibit E.  On all invoices, OWNER shall hold retainage equal to 5% of the amount invoiced.  If the Work is completed under this Contract before the Agreement is entered into, retainage will be released to CEI within forty-five (45) days after all the Work has been completed and the conditions precedent for CEI's receipt of final payment as set forth in the preceding paragraph have been satisfied.  If the Work is not completed when the parties enter into the Agreement, retainage will be withheld and paid pursuant to the terms of the Agreement.  The Cost of the Work includes any costs or expenses related to design, permits, fees, inspections,

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 2 of 34
140 of 174

or any other costs incurred in connection with and performance of the Work, including those items that are detailed on the Preliminary Project Budget (Exhibit C). All Costs shall be paid by CEI directly to the applicable party or governmental authority to whom such costs are payable. Any and all amounts paid to CEI pursuant to this Agreement, including but not limited to the Cost of the Work and the Fee, shall constitute part of, and be included in, the GMP to be contained within the Agreement.

3.    **CONTINGENCY**. The Price includes $ 0.00  as CEI's Contingency. Subject to OWNER'S written approval, the Contingency is available for CEI to use to cover unforeseen costs. Any and all contingency costs shall be included in the GMP for the Agreement and be itemized on the schedule of values. CEI shall not allocate costs to any line items in excess of the scheduled value for those line items without OWNER's prior written approval and any approved allocation shall not be used by CEI to escape, increase or exceed the GMP absent a Change Order increasing the GMP.

Prior to any expenditure by CEI that will cause CEI's Contingency to be less than $0.00, CEI shall first obtain written approval from OWNER.

4.    **FEE**. CEI shall be paid a Fee (herein so called) equal to five (5%) percent of the total Cost of the Work (the "Fee"). A pro rata portion of the CEI's Fee, less five (5%) percent retainage) shall be paid to CEI at the same time that OWNER pays any invoice properly submitted by CEI for the Cost of the Work pursuant to Section 2. If the parties enter into the Agreement, for the avoidance of doubt, any Fee paid in connection with this Contract shall constitute part of, and be included in, the GMP, and shall be an advance on, and deducted from, any other amount, fee or profit to be paid pursuant to the Agreement.

5.    **OWNER OBLIGATIONS**. OWNER or OWNER'S consultant shall furnish or make available to CEI such documents and information within OWNER'S possession at the time of execution of this Contract relating to (i) the location, identity, quantity, nature or characteristics of any hazardous wastes, substances, contaminants, pollutants, obstructions or utilities at the Project site, (ii) specifications, plans, studies, documents or other information reasonably required by CEI for proper and timely performance of the Work, and (iii) site access necessary to perform the Work. OWNER represents that as of the time of the execution of this Contract, it has provided to CEI all documents in its possession within the scope of this paragraph as enumerated on Exhibit F and intends that CEI be able to rely on such documents.

6.    **INFORMATION**. CEI is entitled to rely upon information supplied by OWNER, OWNER'S engineers or consultants, or information available from generally accepted sources. If CEI becomes aware of any material error or omission regarding such information, CEI shall promptly notify OWNER in writing.

7.    **INSURANCE**. Prior to commencing any Work at the Project, CEI shall provide OWNER (and CEI shall at all relevant times thereafter maintain with OWNER) a current certificate of insurance, listing OWNER as an additional insured, evidencing insurance

August 17, 2012
October 3, 2012                   The Lofts of Tuscaloosa - Early Start Agreement                   Page 3 of 34
                                 The Lofts of Tuscaloosa - Tuscaloosa, Alabama                      141 of 174
                                 A141 DB/Owner Contract Agreement

in full force and effect in the types, coverages and amounts listed in Exhibit D hereto; and CEI shall maintain the aforesaid coverage throughout the term of this Contract.

**8.    TERMINATION FOR CAUSE**.  In the event of any default in the performance of this Contract by either party, the non-defaulting party may, with ten (10) calendar days prior written notice of termination to the defaulting party, terminate this Contract unless the defaulting party, within such ten (10) calendar day period, cures such default or, if the default cannot be cured in ten (10) calendar days (or a time period otherwise agreed by the parties in writing), commences and continues to take substantial steps to cure such default.

**9.    TERMINATION FOR CONVENIENCE**.  This Contract may be terminated for convenience by either party at any time upon at least ten (10) calendar days written notice to the other party, so long as there is no uncured default by the terminating party. In the event of such a termination, (i) CEI shall be compensated for all Work duly and satisfactorily performed up to the termination date; (ii) OWNER shall indemnify CEI from all liabilities thereafter arising under any subcontract or purchase order entered into by CEI with respect to the unperformed parts of the Work, provided that CEI assigns such subcontract or purchase order to OWNER; and (iii) at OWNER'S option, CEI shall assign any of the subcontracts to OWNER or OWNER's designee.

**10.    DELAY**.  CEI will not be responsible for delays in performing the Work where such delays are attributable to:  acts of God, acts of OWNER or parties over which CEI has no control or legal responsibility of any kind, inclement weather, fire, floods, industry-wide strikes, intervention of public authorities unrelated to CEI's performance of the Work, inability to obtain permits necessary to perform the Work due to no fault of CEI, or the unavailability of, or inability to obtain labor or materials due to acts of any governmental body which affect the supply or availability of necessary labor or materials, or changes in applicable laws or regulations after the date of this Contract that materially affect the time to complete the Work by the scheduled completion date. In such enumerated circumstances, CEI shall be entitled to an equitable adjustment on the Work Schedule, as reasonably determined by OWNER, but CEI shall not be entitled to any additional compensation whatsoever unless otherwise agreed in a written Change Order signed by authorized representatives of both parties.  CEI acknowledges, however, that it has included allowances for normal weather delays in the Work Schedule.  CEI agrees that adjustments in the contract time will be permitted for a delay only to the extent such delay is not caused, contributed to or could not have been anticipated, by CEI, and could not be limited or avoided by CEI's timely notice to the OWNER of the delay.

If the parties enter into the Agreement, then the provisions regarding delay and the applicability and amount of liquidated damages in the Agreement shall govern. However, if the parties do not enter into the Agreement, then CEI shall pay Owner $500 per day up to a maximum of $20,000 for failure to meet the scheduled deadline for the Work contemplated by this Contract for reasons other than those enumerated in this Section 10.  OWNER and CEI agree that the above-stated liquidated damage amounts were arrived at because (1) the actual damages and harm caused by late completion, failure to meet the Project Schedule Deadline for the Work or the interruption of the

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 4 of 34
142 of 174

critical path for the Project are incapable of being estimated, are uncertain and/or are difficult to ascertain at the present time, (2) OWNER and CEI believe that the liquidated damage rate and sum agreed to herein is a reasonable forecast of just compensation for damages in the event of CEI's failure to meet the Project Schedule Deadline for the Work and that the amount of liquidated damages set forth herein does not constitute a penalty nor is it designed to secure CEI's performance by any threat of punishment for any breach of this Contract, and (3) the liquidated damages rate and sum estimated below is a reasonable pre-breach estimate of the probable loss.

**11.    CHANGE ORDERS.**    OWNER may, by written order signed by authorized representatives of both parties (a "Change Order"), request changes in the Work. Change Orders shall become effective and become a part of this Contract only upon written execution by OWNER and CEI. In the event the Change Order increases the Cost of the Work or the time necessary to complete the Work, CEI may be entitled to an equitable increase in compensation and/or an extension of the Work Schedule.  In that event, said increase in compensation and/or schedule extension shall be set forth specifically in the applicable Change Order.  No oral authorization or prior course of dealing between the parties shall operate as a Change Order or authorization to proceed with additional or extra work or to extend the time or Work Schedule or increase the Cost of the Work or the GMP.

**12.    INDEMNIFICATION.** CEI agrees to defend, indemnify and hold OWNER, its officers, directors, members, employees and agents, harmless from and against any and all claims, demands, causes of action (including third party claims, demands or causes of action or contribution or indemnification), liabilities, penalties, losses, damages, expenses and costs (including reasonable attorneys' fees and other reasonable costs of defense), but only for damages to property or injuries to or death of any person arising out of any breach of warranty, negligent act or omission of CEI, its employees, agents, or any Subcontractor in the performance of the Work.  CEI shall not be required to defend, indemnify or hold harmless OWNER where such claims, demands, liabilities, penalties, actions or causes of action arise in whole or part from OWNER's negligence or wantonness.

**13.    LIENS.**  CEI shall defend Owner from any liens and shall bond over and remove any lien on OWNER's property at CEI's sole expense within thirty (30) days of the filing of such lien and if it fails to do so, OWNER reserves the right to remove such lien claim. Any and all costs and expenses incurred by OWNER, including any legal fees and expenses, in removing such lien may be withheld from CEI.  CEI is not, however, required to indemnify OWNER for any lien that arises from OWNER's failure to make payment to CEI for conforming Work as reasonably determined by OWNER.

**14.    NOTICES**.    Any notice, demand or communication required or permitted to be given by a provision of this Contract shall be mailed by first class, certified, or registered mail with postage prepaid and return receipt requested or sent by FedEx or by a comparable overnight mail delivery service, or hand-delivered personally to the party or to an officer of the party to whom the same is directed, or by electronic or facsimile transmission (with electronic confirmation of receipt), addressed to the address provided for the applicable party under its signature block hereto.  All such notices, demands or

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 5 of 34
143 of 174

other communications shall be effective when received by the intended addressee.  Any party may change the address where notice shall be sent hereunder by notifying the other parties of its new address in the manner set forth herein.

OWNER:                                          CEI:

Tuscaloosa I, LLC                               Construction Enterprises, Inc.
431 Office Park Drive                           325 Seaboard Lane, Suite 170
Birmingham, AL 35223                            Franklin, TN  37067
Attn:  John Acken                               Attn:  Giny S. Knudsen, Exec. V P

With a copy to:

Kayne Anderson Real Estate Advisors
Attn:  Mr. Russell Reiter
200 Business Park Drive, Suite 309
Armonk, NY 10504

and

Kayne Anderson Real Estate Advisors
Attn:  Mr. Frank Duemmler
200 Business Park Drive, Suite 309
Armonk, NY 10504

**15.    INDEPENDENT CONTRACTOR**.    CEI shall be considered an independent contractor and not an employee, agent, representative or joint venture of OWNER. CEI shall determine the time, manner, means and method of doing the Work and shall furnish all labor, tools, materials and equipment necessary to perform the Work.

**16.    COMPLIANCE WITH LAWS**.    The parties hereto shall comply with all laws applicable to the Project and the Work.  In carrying out the Work, CEI will satisfy its obligation to perform the Work in conformity with all laws applicable to the performance of the Work, and shall assume appropriate responsibility for such Work and shall bear costs attributable to correction if CEI performs contrary to said laws.  Notwithstanding the foregoing, CEI shall have no responsibility to ensure that plans and specifications relating to the Work comply with the applicable laws, statutes, codes, regulations and ordinances.  CEI also shall satisfy its obligation to perform the Work in conformity with the related plans and specifications and with the standard of care of an experienced, qualified contractor performing similar work in the location of the Project; and CEI agrees that any employee or Subcontractor of CEI performing any portion of the Work will maintain all proper licenses, registrations, and certifications required by applicable law in the state in which the Work is to be performed.

**17.    HAZARDOUS MATERIAL**.  CEI is not, and has no authority to act as, a handler, generator, operator, treater, storer, transporter or disposer of hazardous waste, substances, pollutants or contaminants found or identified at the Project, except as specifically set forth in Exhibit A or in a properly-executed Change Order. CEI shall have

August 17, 2012                    The Lofts of Tuscaloosa - Early Start Agreement                    Page 6 of 34
October 3, 2012                    The Lofts of Tuscaloosa - Tuscaloosa, Alabama                        144 of 174
                                   A141 DB/Owner Contract Agreement

no responsibility for the transportation, storage, treatment or disposition of contaminated or potentially contaminated materials of any kind, whether or not directly or indirectly generated from CEI'S performance of the Work, except for any such materials brought to the Project site by CEI or as specifically set forth in Exhibit A or in such a Change Order.  Title to and responsibility for all hazardous wastes, materials, substances, pollutants and contaminants originating at or removed from the Project site by CEI will remain with OWNER, except with respect to any such materials brought to the Project site by CEI.

**18.    WARRANTY**.   CEI warrants that any Work found to be defective or non-conforming with this Contract due to the fault of CEI or its Subcontractors, shall be promptly remedied by CEI at its sole cost.  If CEI fails to remedy such Work, OWNER reserves the right to remedy such Work.  Any and all costs incurred by OWNER in remedying such Work may be withheld from CEI.

**19.    SAFETY**.   CEI will be solely and completely responsible for working conditions related to the performance of the Work, including the safety of all affected persons and property during performance of the Work. These requirements will apply continuously and not be limited to normal working hours.

**20.    EQUAL OPPORTUNITY**.  OWNER supports the principle of equal opportunity for all, without regard to race, creed, color, sex, age, national origin, handicap or veteran's status. OWNER is an equal opportunity employer and it expects its suppliers and CEI to honor the principles of opportunity for all without prohibited discrimination. CEI commits to compliance with applicable executive orders, and applicable federal, state and local laws supporting equal opportunity for all.

**21.    NOTIFICATION TO OWNER OF IMMIGRATION AND EMPLOYMENT ACTIONS**.
CEI warrants that it will notify OWNER immediately, and in no event later than, or within one (1) business day, orally and in writing and by in-person voice communication of its knowledge or discovery of any scheduled or unscheduled inspection, worksite enforcement action, investigation, inquiry, receipt of Notice of Inspection of its I-9 Forms, receipt of Notice of Intent to Fine, receipt of Notice of Suspect Documents, visit or audit by the United States Department of Homeland Security ("DHS"), E-Verify desk audit or compliance notice, United States Department of Labor ("DOL"), Department of Justice, Office of Special Counsel ("DOJ-OSC") any other Federal, State or municipal governmental agency or authority related to immigration issues of CEI or its Subcontractors, sub-subcontractors, and their corresponding employees and/or agents, related to its workforce or the workforce of any Subcontractor or sub-subcontractors employees or agents performing any work on OWNER's premises. Furthermore, CEI will subsequently provide to OWNER a detailed explanation of its response and the results of any such notice, inspection/audit request. This obligation applies as well to any compliance notices received from any applicable State or municipal authority. Furthermore, CEI warrants that during the term of this Contract, it shall and shall cause its directors, officers, managers, agents and employees to fully cooperate in all respects with any such audit, inquiry, inspection, investigation conducted by any Federal, State or Municipal governmental authority, including but not limited to the DHS, DOL and/or

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 7 of 34
145 of 174

DOJ-OSC of CEI, Subcontractor or any of their employees or the employees of their sub-subcontractors and its use of the E-Verify program.

**22.    INTERPRETATION.**   This Contract shall be governed by and construed in accordance with the laws of the state in which the Project is located. If any term, provision or condition contained in this Contract shall, to any extent, be invalid or unenforceable, pursuant to state law or otherwise, the remainder of the terms, provisions and conditions of this Contract (or the application of such term, provision, or condition to persons or circumstances other than those in respect of which it is invalid or unenforceable) shall not be affected, and each term, provision and condition of this Contract shall be valid and enforceable to the fullest extent permitted by law.

**23.    KEY PERSONNEL, TRANSFER, ASSIGNMENT & SUBCONTRACTING.**   CEI shall list all key personnel assigned to the Project on Exhibit H (the "Key Personnel") and shall not remove any Key Personnel without the Owner's written approval (except in case of death, disability or termination of employment).   OWNER shall have the right to reasonably require the replacement of any Key Personnel with another person acceptable to the OWNER.   CEI shall not have the right to transfer or assign (with a transfer of controlling Ownership in CEI to any entity or person other than existing CEI employees or shareholders or their legal beneficiaries being deemed an assignment) its rights and/or obligations under this Contract to any third party, related or unrelated, without the express written consent of OWNER. Any approved transfer or assignment shall not relieve CEI of any of its obligations under this Contract.   Notwithstanding the foregoing, all or any part of the Work may be performed by Subcontractors under subcontract agreements.   OWNER shall be an express third party beneficiary under all subcontracts and supply contracts entered into by CEI with respect to the Work.

**24.    MODIFICATIONS.**   The provisions of this Contract shall be modified only in a writing signed by both OWNER and CEI.

**25.    DISPUTES.**   The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Contract between their respective project representatives within fourteen (14) days of such dispute arising.   If unsuccessful, within the next thirty (30) days, the parties shall engage in confidential mediation under the mediation procedures commonly used in the jurisdiction of the Project before initiating any binding dispute resolution action. The parties shall equally split any mediator fees and expenses.   Any dispute not resolved by mediation shall be resolved by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association.   However, any such arbitration shall not be administered by the American Arbitration Association. The parties agree, however, that there shall be one (1) arbitrator who shall be a recognized construction attorney/arbitrator and that the parties shall be allowed to take reasonable discovery.   Any such arbitration proceeding shall be held in the city of the Project unless otherwise mutually agreed by the parties.   Each party shall bear its own attorneys' fees and costs associated with the dispute and arbitration of the dispute and shall split equally any and all arbitrator fees and expenses.   Notwithstanding the foregoing dispute resolution requirements, either party may initiate litigation for statute of limitations reasons or to seek a preliminary injunction or other provisional judicial relief if in such party's sole judgment such action is necessary to preserve its rights.

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 8 of 34
148 of 174

Despite such action, the parties will continue to participate in good faith in the dispute resolution processes required herein.

**26.    MISCELLANEOUS.**    The terms and conditions set forth in this Contract constitute the entire understanding of the parties with respect to the completion of the Work. All previous proposals, offers and other communications relative to the provisions of this Contract, oral or written, are hereby superseded. This Contract shall take effect upon acceptance and execution by both parties and may be executed in counterparts.

**CEI:**

**Construction Enterprises, Inc.**

By: _____    Date: _8/17/12_____

Name/Title:  Giny S. Knudsen, Exec. V.P.

**OWNER:**

**Tuscaloosa I, LLC**

By: _____    Date: _Aug 17, 2012_____

Name/Title

_John E. Vawter, member_

**EXHIBIT A**

SCOPE OF THE WORK

[Attach all proposals for each scope of work]

August 17, 2012
October 3, 2012

**The Lofts of Tuscaloosa - Early Start Agreement**
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

**Page 10 of 34**
148 of 174



**CONSTRUCTION ENTERPRISES, INC.**
325 Seaboard Lane, Suite 170
Franklin, TN  37067
Phone:  615-332-8880
Fax:  615-771-0818
www.constructionenterprises.com

GENERAL CONTRACTOR

| The Lofts at Tuscaloosa<br>Qualifications & Clarifications<br>Early Start Agreement<br>August 9, 2012 | | Div. Total |
|---|---|---|
| **GENERAL REQUIREMENTS** | $ | |
| Our price is based on information provided on the plans by Gonzalez-Strength & Associates, which include plans dated 6/25/12 and a Geotechnical Engineering Report prepared by TTL dated May 30, 2012. | | |
| General Requirements include one time mobilization and start-up costs along with reoccurring operational costs to cover the duration of the early start agreement. | | |
| Our pricing for this early start agreement is based on the civil plans provided along with this list of qualifications and clarifications. | | |
| We include supervision, field administration, temporary utilities and project facilities. | | |
| We include building permit fees only | | |
| **SITEWORK** | $ | |
| We exclude all demolition. All asphalt paving, site concrete, concrete slabs, and concrete foundations will be removed by others. We exclude the removal of any hazardous materials, fuel tanks, or the remediation of any contaminated areas. We exclude the relocation of any existing utilities. | | |
| We assume that any existing site utilities that are under the proposed building footprints may be abandoned and left in the ground or they will be removed before our work commences. | | |
| We include all erosion control work and maintenance that is not required to be installed by the demolition contractor. | | |
| We have included unclassified excavation to plan grade for the building pads. This includes over excavation of the building pads 3' deep, haul the unsuitable material offsite and hauling in select fill and placement of the material to plan subgrade. | | |



August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 11 of 34
149 of 174

| | |
|---|---|
| To include classified excavation to plan grade and exclude unclassified soils, there is a price deduct of **($384,500)** with cubic yardage pricing options if areas are deemed with unsuitable material by the geotechnical engineers. The pricing breakdown is as follows: $18.00 cy to over excavate and haul-off site the unsuitable soils and haul-in and place the select fill soils. $7.50 cy to over excavate the unsuitable soils haul-off and use onsite cut material as select fill if deemed acceptable by the geotechnical engineer, and $3.00 cy to excavate the unsuitable soils and redistribute on site and use onsite cut material as select fill if deemed acceptable by the geotechnical engineer. | |
| There is an additional option of balancing the jobsite if we raise the grades approximately 1'-0". This elevation change would effect the Lofts at Tuscaloosa site and the retail area. If this option is taken, there is a deduct of **($124,334.00)**. | |
| We have not included any rock excavation. | |
| We include the excavation of Garage 1 subterrian level only. Grade 2 is excluded. | |
| We exclude all storm drainage systems, downspout rain leader drainage systems, water distribution systems, sanitary sewer systems, all gas services, and dry utilities (i.e..underground telephone, power, and television). | |
| We include dewatering. | |
| All offsite improvements are excluded. | |
| We exclude all asphalt paving striping or signage, curb and gutter, landscaping, site retaining walls, site railings, and site stairs. | |
| We exclude all deposits and fees that the City of Tuscaloosa Water Department will require for the labor and material for the underground domestic and fire water lines. | |
| | |
| **DEEP FOUNDATION PILING** | |
| We include the deep foundation concrete pier shafts for Garage 1 only. | |
| | |
| **PRE-CAST GARAGE** | |
| We include the pre-cast erection design drawing fees for Garage 1 only. | |
| | |
| | |
| | |
| Allowance for Building Permit Fee | |
| City of Tuscaloosa License Fee | |
| Bond Fee | |
| Contractor Fee (5%) | |
| **TOTAL PRICE FOR THE PROJECT** | |

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 12 of 34
150 of 174

**EXHIBIT B**

PROJECT SCHEDULE

[Attach Schedule]



**August 17, 2012**
October 3, 2012

**The Lofts of Tuscaloosa - Early Start Agreement**
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

**Page 13 of 34**
151 of 174



Wood Square Apartments
Tuscaloosa, AL

| ID | Task Name | Duration | Start | Finish | Predecessors |
|---|---|---|---|---|---|
| 1 | SITEWORK | 24 days | Mon 8/13/12 | Thu 9/13/12 | |
| 2 | Site Grading | 20 days | Mon 8/13/12 | Fri 9/7/12 | |
| 3 | Building Pad | 15 days | Mon 8/20/12 | Fri 9/7/12 | |
| 4 | Excavate Garage | 14 days | Mon 8/27/12 | Thu 9/13/12 | 2FS-15 days |
| 5 | Subterranean Level | | | | |
| 6 | GARAGE FOUNDATIONS | 6 days | Mon 9/17/12 | Mon 9/24/12 | |
| | Start of Garage Piles thru ESA date | 6 days | Mon 9/17/12 | Mon 9/24/12 | |

Construction Enterprises, Inc.

Page 1

October 3, 2012
August 17, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A741 DB/Owner Contract Agreement

6/15/12

Page 14 of 34

152 of 174

**EXHIBIT C**

**PRELIMINARY PROJECT BUDGET INCLUDING
SCHEDULE OF VALUES/COST OF THE WORK**

[Include a summary of costs, including CEI's General Conditions and Fee]

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 15 of 34
153 of 174

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703

The Lofts at Tuscaloosa

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

PAGE 1 OF 1 PAGES

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE |
| | | | FROM PREVIOUS APPLICATION (D + E + F) | THIS PERIOD | | | | | |
| 1 | General Requirements | | | | - | - | 0% | | - |
| 2 | Earthwork | | | | - | - | 0% | | - |
| 3 | Dewatering | | | - | - | - | 0% | | - |
| 4 | Deep Foundation Piles | | | - | - | - | 0% | | - |
| 5 | Pre-Cast Garage Design Fee | | | - | - | - | 0% | | - |
| 6 | Bond Fee | | | - | - | - | 0% | | - |
| 7 | City of Tuscaloos Liscense Fee | | | - | - | - | 0% | | - |
| 8 | Building Permit Fee | | | - | - | - | 0% | | - |
| 9 | Contractors Fee (5%) | | | - | - | - | 0% | | - |
| 10 | | | - | - | - | - | 0% | | - |
| 11 | | | - | - | - | - | 0% | | - |
| 12 | | | - | - | - | - | 0% | | - |
| 13 | | | - | - | - | - | 0% | | - |
| 14 | | | - | - | - | - | 0% | | - |
| 15 | | | - | - | - | - | 0% | | - |
| 16 | | | - | - | - | - | 0% | | - |
| 17 | | | - | - | - | - | 0% | | - |
| 18 | | | - | - | - | - | 0% | | - |
| 19 | | | - | - | - | - | 0% | | - |
| 20 | | | - | - | - | - | 0% | | - |
| 21 | | | - | - | - | - | 0% | | - |
| 22 | | | - | - | - | - | 0% | | - |
| 23 | | | - | - | - | - | 0% | | - |
| 24 | | | - | - | - | - | 0% | | - |
| 25 | | | - | - | - | - | 0% | | - |
| 26 | TOTAL | | | | - | - | 0% | | - |



October 3, 2012

The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

# EXHIBIT D

## INSURANCE REQUIREMENTS

1220686.1

**August 17, 2012**
October  3, 2012

**The Lofts of Tuscaloosa - Early Start Agreement**
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 17 of 34
155 of 174



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 08/17/2012 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Marsh USA, Inc. | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| 1801 West End Avenue, Suite 1500 | E-MAIL ADDRESS: | | |
| Nashville, TN 37219 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| 033700—GAWU-11-12          N/A | INSURER A : Zurich American Insurance Company | | 16535 |
| INSURED | INSURER B : American Guarantee & Liability Ins Co | | 26247 |
| CONSTRUCTION ENTERPRISES, INC. | INSURER C : | | |
| 325 SEABOARD LANE, SUITE 170 | INSURER D : | | |
| FRANKLIN, TN  37067 | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES     CERTIFICATE NUMBER: ATL-003107051-02     REVISION NUMBER: 9

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES, LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | PRA 9377666-08 | 12/16/2011 | 12/16/2012 | EACH OCCURRENCE | |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | |
| | CLAIMS-MADE  X  OCCUR | | | | | | MED EXP (Any one person) | |
| | | | | | | | PERSONAL & ADV INJURY | |
| | | | | | | | GENERAL AGGREGATE | |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | |
| | POLICY  X  PRO-JECT  LOC | | | | | | | |
| A | **AUTOMOBILE LIABILITY** | | | BAP 9377865-08 | 12/16/2011 | 12/16/2012 | COMBINED SINGLE LIMIT (Ea accident) | |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | |
| | ALL OWNED AUTOS   SCHEDULED AUTOS | | | Deductibles: | | | BODILY INJURY (Per accident) | |
| | X HIRED AUTOS  X NON-OWNED AUTOS | | | Owned Comp/Coll: | | | PROPERTY DAMAGE (Per accident) | |
| | | | | Hired Comp/Coll: $ | | | | |
| B | **UMBRELLA LIAB**  X  OCCUR | | | AUC 5945574-03 | 12/16/2011 | 12/16/2012 | EACH OCCURRENCE | |
| | **EXCESS LIAB**   CLAIMS-MADE | | | | | | AGGREGATE | |
| | DED   RETENTION $ | | | | | | | |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**   Y/N | | | WC 9377867 08 | 12/16/2011 | 12/16/2012 | X WC STATU-TORY LIMITS  OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N N/A (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Re: The Lofts of Tuscaloosa
Tuscaloosa I, LLC is included as additional insured where required by written contract with respect to general liability.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Tuscaloosa I, LLC<br>431 Office Park Drive<br>Birmingham, AL  35223 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE of Marsh USA Inc.<br>John A. Goley |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD



August 17, 2012          The Lofts of Tuscaloosa - Tuscaloosa, Alabama          Page 16 of 34
October 3, 2012          The Lofts of Tuscaloosa, Early Start Agreement          156 of 174
A141 DB/Owner Contract Agreement



**EXHIBIT E**

PROJECT FORMS

Lien Waiver Forms

Job Cost Report

Invoices

JEV   1220686.1

14

August 17, 2012
October  3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 19 of 34
157 of 174


**Please sign and return to:**                                    **Construction Enterprises, Inc.**
                                                                 **325 Seaboard Lane; Suite 170**
                                                                 **Franklin, TN  37067**
                                                                 **615-627-9452 - Fax**

### RELEASE AND WAIVER OF LIEN
#### Subcontractor/Mechanic/Material Supplier/Laborer

Know all men by these presents that in consideration of and upon the receipt of the sum of Dollars(_____) ("current payment due") paid to the undersigned for furnishing materials, labor, equipment, warranty work or services on a construction project known as _____being constructed on real property located at _____ the undersigned does hereby conditionally waives, releases, and relinquishes any and all claims of any kind or nature, including but not limited to any and all lien rights, with the only condition being the receipt of the current payment due, except for claims, including lien rights, for amounts being retained and which will subsequently come due, which the undersigned has or may have against said real property, its owner, and its successors and assigns, Construction Enterprises, Inc., its sureties, and any other persons or entities guaranteeing payment by or through such parties on account of the furnishing of materials, labor, equipment, warranty work or services by the undersigned on or before the_____ day of___(insert current Invoice Date)  20____, for the construction of said project. The undersign understands, acknowledges and agrees that once the current payment due is received, then this conditional lien waiver shall be self-effectuating and shall be converted to an unconditional lien waiver, except for retainage and amounts that subsequently come due.  Further, the undersigned acknowledges, represents and certifies that the sum set forth herein represents payment in full to the undersigned, and said amount adequately, fully and completely pays and compensates the undersigned for all materials, labor, equipment, warranty work or services provided by the undersigned on the above-referenced project to date and that the undersigned will make no further claims of any kind, other than those specifically excepted herein, for materials, labor, equipment, warranty work or services furnished by the undersigned on the above-referenced project. The undersigned further certifies that, in order to induce such payment, that as of the_____day of___(insert current Invoice Date)  20___, the undersigned represents that no liens or other claims could be made by creditors of the undersigned on said project and that the undersigned has paid all suppliers of materials, labor, equipment or services related to said project incurred on or before such date.

The undersigned further acknowledges and certifies receipt in full of any and all payments due to the undersigned prior to the _____ day of ___(insert previous Release date)_____, 20 ___ and accordingly, the undersigned does hereby unconditionally waive, release, and relinquish any and all claims of any kind or nature, including but not limited to any and all lien rights, except for claims, including lien rights, for amounts being retained and which will subsequently come due (if any), which the undersigned has or may have against said real property, its owner, and its successors and assigns, Construction Enterprises, Inc., its sureties, and any other persons or entities guaranteeing payment by or through such parties on account of the furnishing of materials, labor, equipment, warranty work or services by the undersigned on or before _____ day of ___(insert previous Release date)_, 20 ___.  This unconditional release of all claims for all prior payments shall be effective upon execution of this Release, regardless of the receipt of the current payment due.  The undersigned further acknowledges and agrees that if any of the above representations, acknowledgments and certifications prove untrue, and should any claim be made by the undersigned or any creditor of the undersigned, the undersigned unconditionally agrees to pay to Construction Enterprises, Inc. all reasonable costs it incurs in defending, bonding off or resolving said claim, including without limitation reasonable attorneys' fees.

August 17, 2012
October  3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 20 of 34
158 of 174

Further, I, _____ , do hereby certify that I am _____ (Title) of _____ and am authorized to execute this release.  I further certify that I have read and fully understand all statements contained herein, that I have had opportunity for the same to be reviewed by counsel and that said statements are true and correct.

| | |
|---|---|
| SUBCONTRACTOR: | _____ |
| ADDRESS: | _____ |
| CITY, STATE & ZIP: | _____ |
| PHONE: | _____ |

By _____

_____     Title _____

**This release <u>must</u> be notarized.**
Sworn to and subscribed before me on this _____ day of _____ , 2012.

My Commission expires: _____

_____
Notary Public



August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 21 of 34
159 of 174

Please sign and return to:

Construction Enterprises, Inc.
325 Seaboard Lane; Suite 170
Franklin, TN 37067
615-627-9452 - Fax

## FULL AND FINAL RELEASE
### Subcontractor

Know all men by these presents that in consideration of and upon the receipt of the sum of  $\underline{\$}$
_____ ------ Dollars ($_____) to the undersigned for
furnishing    materials,    labor,    equipment    or    services    on    a    construction    project    known    as
_____ being constructed on real property located at
the undersigned does hereby waive, release, and relinquish any and all claims of any kind or nature, including, but
not limited to any and all lien rights, with the only condition being the receipt of the sum in good funds set for the
above, which the undersigned has or may have against said real property, its owner and the owner's successors and
assigns, Construction Enterprises, Inc., its sureties, and any other persons or entities guaranteeing payment by or
through such parties on account of the furnishing of materials, labor, equipment or services by the undersigned on or
before the_____day of_____ 201__ for the construction of said project.  The undersigned understands,
acknowledges and agrees that once the above sum is received in good funds, then this conditional lien waiver shall
be self-effectuating and shall be converted to an unconditional full and final and general release and lien waiver. The
undersigned further acknowledges, represents and certifies that the sum set forth herein represents payment in full to
the undersigned, and said amount adequately, fully and completely pays and compensates the undersigned for all
materials, labor, equipment or services provided by the undersigned on the above-referenced project and that the
undersigned will make no further claims of any kind for materials, labor, equipment or services furnished by the
undersigned on the above-referenced project.  The undersigned further certifies that, in order to induce such
payment, that as of the_____day of _____ 201__, no liens or other claims could be made by creditors of the
undersigned on said project and that the undersigned represents that it has paid all suppliers of materials, labor,
equipment or services related to said project incurred on or before such date.  The undersigned acknowledges and
agrees that if any of the above representations, acknowledgments and certifications prove untrue, and should any
claim be made by the undersigned or any creditor of the undersigned, the undersigned agrees to pay Construction
Enterprises, Inc., all reasonable costs in defending or resolving said claim, including without limitation reasonable
attorneys fees.

SUBCONTRACTOR: _____

ADDRESS: _____
CITY, STATE, ZIP: _____
PHONE: _____

**(Subcontractor fill out & sign below)**

STATE OF _____
COUNTY OF _____

I, _____, do hereby certify that I am the _____ (Title) of
_____ and am authorized to execute the
foregoing release.  I further certify that all statements contained in the foregoing release are true and correct.

Subcontractor Sign Here  BY: _____

**Notary Fill Out & Sign Below:**

Sworn to and subscribed before me on this _____ day of _____ , 201__.

_____
Notary Public

_____
Commission Expiration Date

August 17, 2012
October  3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 22 of 34
160 of 174

| Cost Code: | 280. | Cost Types: | LPBFMSEOC | Labor Detail |
| To: | 280. | Items with Activity | | |

**Job Cost Category Totals Report**
**Construction Enterprises, Inc.**
**7/19/2012**

Page 1
7/19/12 09.21
L0 9.0.120517

**Job: 280**

Contract: 13,563,170.00
Change Orders: 0.00
Revised: 13,563,170.00
Prev. Billed: 12,824,569.00
Open: 738,601.00

| Cat. | Description | Contract Amount | Billed To Date | Actual | Budget | Pct | Overrun | Act | Bud | Pct | Over |
|------|-------------|-----------------|----------------|--------|--------|-----|---------|-----|-----|-----|------|
| | **Phase: 01 - General Requirement** | | | | | | | | | | |
| 070 | Testing | | | | | | | | | | |
| 080 | Layout & Engineering | | | | | | | | | | |
| 091 | License | | | | | | | | | | |
| 100 | Wood Porch at Trailer | | | | | | | | | | |
| 401 | Superintendent | | | | | | | | | | |
| 402 | Asst Superintendent | | | | | | | | | | |
| 403 | Secretary | | | | | | | | | | |
| 404 | Misc Labor | | | | | | | | | | |
| 409 | Office Supplies | | | | | | | | | | |
| 410 | Office Trailer | | | | | | | | | | |
| 416 | Job Sign | | | | | | | | | | |
| 501 | Temp Power - Operations | | | | | | | | | | |
| 502 | Temp Power - Start Up | | | | | | | | | | |
| 505 | Temp Gas | | | | | | | | | | |
| 510 | Temp Heat | | | | | | | | | | |
| 515 | Temp Phone | | | | | | | | | | |
| 520 | Temp Toilet | | | | | | | | | | |
| 525 | Temp Water | | | | | | | | | | |
| 527 | Temp Fence | | | | | | | | | | |
| 530 | Temp Storage | | | | | | | | | | |
| 535 | Temp Roads | | | | | | | | | | |
| 550 | Travel & Entertainment | | | | | | | | | | |
| 558 | Per Diem | | | | | | | | | | |
| 560 | Ice & Cups | | | | | | | | | | |
| 575 | Periodic Cleanup | | | | | | | | | | |
| 580 | Final Cleanup | | | | | | | | | | |
| 585 | Dumpster | | | | | | | | | | |
| 615 | Small Tools & Misc | | | | | | | | | | |
| 625 | Trucks & Pickups | | | | | | | | | | |
| 630 | Gas & Oil | | | | | | | | | | |
| 648 | Misc Equipment Rental | | | | | | | | | | |
| 655 | Safety | | | | | | | | | | |
| 665 | Security | | | | | | | | | | |
| 668 | Traffic Control | | | | | | | | | | |
| 670 | Photos | | | | | | | | | | |
| 678 | Survey - As Built | | | | | | | | | | |
| 680 | Building Permit & Impact Fees | | | | | | | | | | |
| 683 | Plans & Specs | | | | | | | | | | |
| 684 | Payment & Performance Bond | | | | | | | | | | |
| 695 | Legal Fees | | | | | | | | | | |
| 780 | Sales Tax | | | | | | | | | | |
| 800 | Cost Certification | | | | | | | | | | |
| 900 | Mold Remediation | | | | | | | | | | |
| | **Phase 01 Totals** | | | | | | | | | | |
| | **Phase: 02 - Sitework** | | | | | | | | | | |
| 008 | Site Grading | | | | | | | | | | |
| 013 | Excavation | | | | | | | | | | |
| 020 | Storm Sewer | | | | | | | | | | |
| 140 | Fencing & Gates | | | | | | | | | | |
| 215 | Dewatering | | | | | | | | | | |
| 226 | Haul-In Topsoil | | | | | | | | | | |
| 250 | Soil Treatment | | | | | | | | | | |
| 446 | Offsite Water & Sanitary Sewer | | | | | | | | | | |
| 447 | Site Domestic Water System | | | | | | | | | | |
| 580 | Light Pole Bases | | | | | | | | | | |
| 596 | Site Telephone Service | | | | | | | | | | |
| 597 | Site CATV Service | | | | | | | | | | |
| 610 | Concrete Paving | | | | | | | | | | |
| 614 | Paint Striping | | | | | | | | | | |
| 619 | Parking Bumpers | | | | | | | | | | |

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Job Cost Category Totals Report
Construction Enterprises, Inc.
7/19/2012

Page 2
7/19/12 09:21
L0 9.0.120517

**Job: 280**

| | | Contract: | 13,563,170.00 |
|---|---|---|---|
| | | Change Orders: | 0.00 |
| | | Revised: | 13,563,170.00 |
| | | Prev. Billed: | 12,824,569.00 |
| | | Open: | 738,601.00 |

| Cat. | Description | Contract Amount | Billed To Date | Cost ———————— Actual | Budget | Pct | Overrun | Hours ———— Act | Bud | Pct | Over |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Phase: 02 – Sitework** | | | | | | | | | | |
| 628 | Sidewalks | | | | | | | | | | |
| 639 | Hardscapes Features | | | | | | | | | | |
| 642 | Playground Equipment | | | | | | | | | | |
| 645 | Brick Pavers | | | | | | | | | | |
| 672 | Sign | | | | | | | | | | |
| 680 | Traffic Signs | | | | | | | | | | |
| 719 | Fountain | | | | | | | | | | |
| 720 | Dumpster Enclosures | | | | | | | | | | |
| 732 | Outdoor Grill | | | | | | | | | | |
| 760 | Metal Carport | | | | | | | | | | |
| 810 | Landscaping | | | | | | | | | | |
| | Phase 02 Totals | | | | | | | | | | |
| | **Phase: 03 – Concrete** | | | | | | | | | | |
| 131 | Concrete S.O.G. | | | | | | | | | | |
| 138 | Stained Concrete | | | | | | | | | | |
| 170 | Waterproofing | | | | | | | | | | |
| 285 | Anchor Bolts | | | | | | | | | | |
| 472 | Lt. Wt. Concrete Decks | | | | | | | | | | |
| 473 | Gyp-Crete | | | | | | | | | | |
| | Phase 03 Totals | | | | | | | | | | |
| | **Phase: 04 – Masonry** | | | | | | | | | | |
| 005 | Masonry | | | | | | | | | | |
| 050 | Precast Concrete Cap | | | | | | | | | | |
| 070 | Stone Veneer | | | | | | | | | | |
| | Phase 04 Totals | | | | | | | | | | |
| | **Phase: 05 – Metals** | | | | | | | | | | |
| 010 | Stairs, Landings & Railings | | | | | | | | | | |
| 020 | Lintels | | | | | | | | | | |
| 606 | Entry Fence & Gates | | | | | | | | | | |
| 607 | Pool Fence & Gates | | | | | | | | | | |
| | Phase 05 Totals | | | | | | | | | | |
| | **Phase: 06 – Carpentry** | | | | | | | | | | |
| 001 | Black In Labor | | | | | | | | | | |
| 022 | 1x4 PT | | | | | | | | | | |
| 031 | 2x4 PT | | | | | | | | | | |
| 032 | 2x6 PT | | | | | | | | | | |
| 033 | 2x8 PT | | | | | | | | | | |
| 043 | 2x4 FT | | | | | | | | | | |
| 071 | Nails & Misc Fasteners | | | | | | | | | | |
| 072 | 2x4 SYP | | | | | | | | | | |
| 073 | 2x6 SYP | | | | | | | | | | |
| 074 | 2x8 SYP | | | | | | | | | | |
| 075 | 2x10 SYP | | | | | | | | | | |
| 076 | 2x12 SYP | | | | | | | | | | |
| 080 | 2x4x8 Studs | | | | | | | | | | |
| 081 | 2x4x9 Studs | | | | | | | | | | |
| 084 | 2x6x9 Studs | | | | | | | | | | |
| 088 | 5/8 GYP Sheathing | | | | | | | | | | |
| 091 | Misc Framing | | | | | | | | | | |
| 092 | PSL Stud | | | | | | | | | | |
| 093 | 1x3 Exterior Trim | | | | | | | | | | |
| 094 | 1x2 Exterior Trim | | | | | | | | | | |
| 105 | Tyvek Wall Wrap | | | | | | | | | | |
| 117 | 3/4 OSB Sub-Floor | | | | | | | | | | |
| 120 | Finish Carpentry | | | | | | | | | | |
| 125 | 2x12 Exterior Trim | | | | | | | | | | |
| 127 | 5/4 x 4 Exterior Trim | | | | | | | | | | |
| 128 | 5/4 x 6 Exterior Trim | | | | | | | | | | |
| 129 | 5/4 x 8 Exterior Trim | | | | | | | | | | |

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 24 of 34
162 of 174



**Job Cost Category Totals Report**
**Construction Enterprises, Inc.**
**7/19/2012**

Page 3
7/19/12 09:21
LO 9.0.120517

**Job: 280**

Contract: 13,563,170.00
Change Orders: 0.00
Revised: 13,563,170.00
Prev. Billed: 12,824,569.00
Open: 738,601.00

| Cat. | Description | Contract Amount | Billed To Date | Cost Actual | Budget | Pct | Overrun | Hours Act | Bud | Pct | Over |
|------|-------------|-----------------|----------------|-------------|--------|-----|---------|-----------|-----|-----|------|
| | **Phase: 06 – Carpentry** | | 0 | | | | | | | | |
| 130 | 5/4 x 10 Exterior Trim | | | | | | | | | | |
| 131 | Fascia 2x8 | | | | | | | | | | |
| 133 | 5/4 x 12 Exterior Trim | | | | | | | | | | |
| 160 | Simpson Hardware | | | | | | | | | | |
| 161 | 5/8 Roofing Sheathing | | | | | | | | | | |
| 188 | 3/4 CDX Plywood | | | | | | | | | | |
| 192 | 3/4 B C Plywood | | | | | | | | | | |
| 193 | 1/2 OSB Board | | | | | | | | | | |
| 196 | 3/4 OSB | | | | | | | | | | |
| 216 | Roof & Floor Trusses | | | | | | | | | | |
| 252 | 8x8 Cedar | | | | | | | | | | |
| 253 | 2x6 Cedar | | | | | | | | | | |
| 254 | 2x12 Cedar | | | | | | | | | | |
| 260 | Vented Hardi Soffit | | | | | | | | | | |
| 262 | Panel Siding | | | | | | | | | | |
| 263 | Siding Trim Aluminum | | | | | | | | | | |
| 277 | Window Stool | | | | | | | | | | |
| 280 | Shoe Mould | | | | | | | | | | |
| 284 | Wood Base | | | | | | | | | | |
| 286 | Crown | | | | | | | | | | |
| 288 | Casing | | | | | | | | | | |
| 295 | Misc Interior Trim | | | | | | | | | | |
| 300 | Wire Shelving | | | | | | | | | | |
| 302 | Wood Shelving | | | | | | | | | | |
| 321 | Fiberglass Columns | | | | | | | | | | |
| 322 | Window Shutters | | | | | | | | | | |
| 330 | Gable Vents | | | | | | | | | | |
| 401 | Foreman | | | | | | | | | | |
| 510 | Fypon Trim | | | | | | | | | | |
| | **Phase 06 Totals** | 0 | 2, | | | | | | | | |
| | **Phase: 07 – Thermal & Moisture** | | | | | | | | | | |
| 030 | Ice & Water Shield | | | | | | | | | | |
| 040 | Gutters & Downspouts | | | | | | | | | | |
| 056 | Peel & Stick | | | | | | | | | | |
| 200 | Insulation | | | | | | | | | | |
| 310 | Shingles | | | | | | | | | | |
| 315 | #15 Felt | | | | | | | | | | |
| 500 | Roofing - EPDM | | | | | | | | | | |
| 505 | Roofing - Standing Seam | | | | | | | | | | |
| 680 | Caulking & Sealants | | | | | | | | | | |
| 700 | Flashing | | | | | | | | | | |
| 715 | Roof Vents | | | | | | | | | | |
| 740 | Fireproofing | | | | | | | | | | |
| | **Phase 07 Totals** | | | | | | | | | | |
| | **Phase: 08 – Doors, Windows & Hardware** | | | | | | | | | | |
| 115 | Hollow Metal Doors & Frames | | | | | | | | | | |
| 225 | Wood Doors | | | | | | | | | | |
| 350 | Sliding Glass Doors | | | | | | | | | | |
| 380 | Overhead Doors | | | | | | | | | | |
| 501 | Aluminum Windows | | | | | | | | | | |
| 600 | Access Doors | | | | | | | | | | |
| 610 | Draft Stop Doors | | | | | | | | | | |
| 710 | Finish Hardware | | | | | | | | | | |
| 711 | Breakage Allowance | | | | | | | | | | |
| 800 | Glazing | | | | | | | | | | |
| | **Phase 08 Totals** | | | | | | | | | | |
| | **Phase: 09 – Finishes** | | | | | | | | | | |
| 101 | Stucco | | | 6 | | | | | | | | |
| 250 | Drywall | | | | | | | | | | |
| 260 | Shaftwall | | | | | | | | | | |

August 17, 2012
October 3, 2012



The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Job Cost Category Totals Report
Construction Enterprises, Inc.
7/19/2012

Page 4
7/19/12 09:21
L0 9.0.120517

**Job: 280**

| | |
|---|---|
| Contract: | 13,563,170.00 |
| Change Orders: | 0.00 |
| Revised: | 13,563,170.00 |
| Prev. Billed: | 12,824,569.00 |
| Open: | 738,601.00 |

| Cat. | Description | Contract Amount | Billed To Date | Cost Actual | Budget | Pct | Overrun | Hours Act | Bud | Pct | Over |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Phase: 09 - Finishes** | | | | | | | | | | |
| 310 | Ceramic Tile | | | | | | | | | | |
| 650 | Vinyl Flooring | | | | | | | | | | |
| 680 | Carpet | | | | | | | | | | |
| 900 | Painting | | | | | | | | | | |
| 950 | Wallcovering | | | | | | | | | | |
| | Phase 09 Totals | | | | | | | | | | |
| | **Phase: 10 - Specialities** | | | | | | | | | | |
| 101 | Fire Extinguishers | | | | | | | | | | |
| 445 | Signage | | | | | | | | | | |
| 801 | Bath Accessories | | | | | | | | | | |
| | Phase 10 Totals | | | | | | | | | | |
| | **Phase: 11 - Equipment** | | | | | | | | | | |
| 901 | Kitchen Appliances | | | | | | | | | | |
| 902 | Washers & Dryers | | | | | | | | | | |
| | Phase 11 Totals | | | | | | | | | | |
| | **Phase: 12 - Furnishings** | | | | | | | | | | |
| 300 | Cabinets | | | | | | | | | | |
| 360 | Granite Counter Tops | | | | | | | | | | |
| 500 | Window Treatment | | | | | | | | | | |
| | Phase 12 Totals | | | | | | | | | | |
| | **Phase: 13 - Special Construction** | | | | | | | | | | |
| 100 | Swimming Pool | | | | | | | | | | |
| 160 | Mail Boxes | | | | | | | | | | |
| | Phase 13 Totals | | | | | | | | | | |
| | **Phase: 15 - Mechanical** | | | | | | | | | | |
| 400 | Plumbing | | | | | | | | | | |
| 425 | Water Sub-Meter System | | | | | | | | | | |
| 501 | Sprinkler System | | | | | | | | | | |
| 601 | HVAC | | | | | | | | | | |
| | Phase 15 Totals | | | | | | | | | | |
| | **Phase: 16 - Electrical** | | | | | | | | | | |
| 002 | Electrical | | | | | | | | | | |
| | Phase 16 Totals | | | | | | | | | | |
| | **Phase: 17 - Upgraded Items** | | | | | | | | | | |
| 010 | Contingencies | | | | | | | | | | |
| RAN | B/Chg Ranger Fire | | | | | | | | | | |
| | Phase 17 Totals | | | | | | | | | | |
| | **Phase: 50 - Backcharge Admin Fee** | | | | | | | | | | |
| ADMIN | Backcharge Admin Fee | | | | | | | | | | |
| | Phase 50 Totals | | | | | | | | | | |
| | Job 280 Totals | | | | | | | | | | |
| | Labor | | | | | | | | | | |
| | Burden | | | | | | | | | | |
| | Material | | | | | | | | | | |
| | Subcontract | | | | | | | | | | |
| | Equipment | | | | | | | | | | |
| | Other | | | | | | | | | | |
| | Contract Labor | | | | | | | | | | |



August 17, 2012
October  3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 26 of 34
164 of 174



# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702

PAGE ONE

| Distribution to: | |
|---|---|
| OWNER | ☐ |
| ARCHITECT | ☐ |
| CONTRACTOR | ☐ |
| | ☐ |

**TO (OWNER):**
Tuscaloosa I, LLC
c/o Capstone Development Corp.
431 Office Park Dr, Birmingham, AL 35223

**PROJECT:**
The Lofts of Tuscaloosa

APPLICATION NO:

PERIOD TO:

**FROM (CONTRACTOR):**
Construction Enterprises, Inc.
325 Seaboard Ln Ste 170, Franklin, TN 37067

**VIA (ARCHITECT):**

ARCHITECT'S
PROJECT NO:

**CONTRACT FOR:**

CONTRACT DATE:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for Payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

### CHANGE ORDER SUMMARY

| Number | Date Approved | Additions | Deductions |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Net change by Change Orders | | 0.00 | |

1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . . . . . $
2. Net change by Change Orders . . . . . . . . . . . . . . . . $
3. CONTRACT SUM TO DATE (Line 1 (+/-) 2) . . . . . . . . $
4. TOTAL COMPLETED & STORED TO DATE . . . . . . . . . $
   (Column G on G703)
5. RETAINAGE:
   a. _____ % of Completed Work    $
      (Column D + E on G703)
   b. _____ % of Stored Material    $
      (Column F on G703)
   Total Retainage (Line 5a + 5b or
   Total in Column I of G703)
6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . . . . $
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR
   PAYMENT (Line 6 from prior Certificate) . . . . . . . . . . $
8. CURRENT PAYMENT DUE . . . . . . . . . . . . . . . . . . $
9. BALANCE TO FINISH, PLUS RETAINAGE . . . . . . . . . $
   (Line 3 less Line 6)

The undersigned Contractor certifies that to the best of the Contractor's knowledge,
information and belief the Work covered by this Application for Payment has been
completed in accordance with the Contract Documents, that all amounts have been
paid by the Contractor for Work for which previous Certificates for Payment were
issued and payments received from the Owner, and that current payment shown
herein is now due.

**CONTRACTOR:**

By: _____   Date: _____

State of:
Subscribed and sworn to before me this
County of:
day of
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . . . . . . . . $
(Attach explanation if amount certified differs from the amount applied for.)
**ARCHITECT:**

By: _____   Date: _____

In accordance with the Contract Documents, based on on-site observations and the
data comprising the above application, the Architect certifies to the Owner that to the
best of the Architect's knowledge, information and belief the Work has progressed
as indicated, the quality of the Work is in accordance with the Contract Documents,
and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

This Certificate is not negotiable.  The AMOUNT CERTIFIED is payable only to the
Contractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

_JEV_

August 17, 2012
October  3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 27 of 34
165 of 174

# CONTINUATION SHEET

AIA DOCUMENT G703

PAGE 1 OF 1 PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

The Lofts of Tuscaloosa

APPLICATION NUMBER: 1
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D + E + F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | I RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | General Requirements | █████ | - | - | - | - | 0% | █████ | - |
| 2 | Earthwork | █████ | - | - | - | - | 0% | █████ | - |
| 3 | Dewatering | █████ | - | - | - | - | 0% | █████ | - |
| 4 | Deep Foundation Piles | █████ | - | - | - | - | 0% | █████ | - |
| 5 | Pre-Cast Garage Design Fee | █████ | - | - | - | - | 0% | █████ | - |
| 6 | Bond Fee | █████ | - | - | - | - | 0% | █████ | - |
| 7 | City of Tuscaloosa License Fee | █████ | - | - | - | - | 0% | █████ | - |
| 8 | Building Permit Fee | █████ | - | - | - | - | 0% | █████ | - |
| 9 | Contractors Fee | █████ | - | - | - | - | 0% | █████ | - |
| | Totals | | - | - | - | - | 0% | | - |

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 28 of 34
166 of 174

**EXHIBIT F**

OWNER DOCUMENTS PROVIDED TO CEI REGARDING SITE CONDITIONS

I220686.1

15

**August 17, 2012**
October 3, 2012

The Lofts of Tuscaloosa – Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

**Page 29 of 34**
167 of 174



The Lofts of Tuscaloosa
Tuscaloosa, Alabama

Geotechnical Engineering Report
Prepared by TTL
Dated May 30, 2012

### Index of Drawings

| Sheet Name | Description | Plan Date | Revised Date |
|---|---|---|---|

Architect:

Humphreys & Partners
5339 Alpha Road, Suite 300
Dallas, TX. 75240
972-701-9636
972-701-9639

Civil Engineer:

Gonzales-Strength and Associates, Inc
2176 Parkway Lake Drive
Birmingham, Alabama 35244
205-942-2486
205-942-3033

| Sheet Name | | Description | Plan Date | Revised Date |
|---|---|---|---|---|
| - | - | Cover Sheet | 7/17/2012 | - |
| | | | | |
| S | 1 | ALTA/ACSM Land Title Survey | 5/21/2012 | - |
| | | | | |
| Civils | | | | |
| C1 | R0 | Demo Plan | 6/25/2012 | - |
| C2 | R0 | Phase I CBMPP | 6/25/2012 | - |
| C3 | R0 | Master Plan | 6/25/2012 | - |
| C4 | R0 | Phase I Site Layout Plan | 6/25/2012 | - |
| C5 | R0 | Master Grading and Drainage Plan | 6/25/2012 | - |
| C6 | R0 | Phase I Site Grading Plan | 6/25/2012 | - |
| C7 | R0 | Phase II CBMPP | 6/25/2012 | - |
| C8 | R0 | Storm Sewer Profiles | 6/25/2012 | - |
| C9 | R0 | Storm Sewer Profiles | 6/25/2012 | - |
| C10 | R0 | Site Utility Plan | 6/25/2012 | - |
| C11 | R0 | Sanitary Sewer Plan and Profile | 6/25/2012 | - |
| C12A | R0 | Sanitary Sewer Details | 6/25/2012 | - |
| C12B | R0 | Sanitary Sewer Details | 6/25/2012 | - |
| C13 | R0 | Sections and Details | 6/25/2012 | - |
| C14 | R0 | Sections and Details | 6/25/2012 | - |
| C15 | R0 | Sections and Details | 6/25/2012 | - |



August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 30 of 34
168 of 174

The Lofts of Tuscaloosa
Tuscaloosa, Alabama

Structural Engineer:

Integrity Structural Corporation
12777 Jones Road, Suite 388
Houston, TX. 77070
281-894-7099
281-894-8943

Structural

| GS0 | 1 | Title Sheet and Structural Specs | 7/19/2012 | – |
|---|---|---|---|---|
| GS0 | 2 | Standard Reinforced Concrete Details | 7/19/2012 | – |
| GS1 | 1 | Garage I - Foundation Plan | 7/19/2012 | – |
| GS2 | 1 | Foundation Sections (1 of 2) | 7/19/2012 | – |
| GS2 | 2 | Foundation Sections (2 of 2) | 7/19/2012 | – |



August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 31 of 34
169 of 174

# EXHIBIT G

## QUALITY CONTROL PROGRAM



1220686.1

16

August 17, 2012
October  3, 2012

**The Lofts of Tuscaloosa - Early Start Agreement**
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 32 of 34
170 of 174



## QUALITY CONTROL PROGRAM

**Purpose**

The purpose of this procedure is to provide Ownership with documentation and assurance Project Design and Construction Quality Control.

**Design**

Ownership shall be provided with an opportunity to review and comment on the following prior to final approval and/or significant changes:

1. Exterior Finish and Colors
2. Interior Finish and Colors
3. Appliance Selection
4. Unit Layout
5. Internet System and Contract
6. HVAC System Selection
7. Expansion and Control Joint Layout

**Internet Service**

1. All properties shall be furnished with a <u>Managed Wifi System</u> for tenant's use.
2. All internet contracts shall have set pricing for increasing bandwidth and communication speeds and shall be reviewed and approved by KAREP prior to execution.
3. All data and cable connections shall be tested after installation.

**Construction**

Ownership shall be provided a description of Contractor's Inspection and Quality Control Plan including:

1. Documentation Control
2. Reporting Frequency and Procedures
3. Construction Detail Photographic Documentation frequency and documentation.
4. Change Order Control
5. Submission Schedule and Approval Procedure
6. Planned use of consultants during construction.
7. Description of envelope & waterproofing design and quality control measures.
8. Field tests to be performed and frequency of testing including:
   a. Sub Grade Compaction
   b. Concrete

**Major Feature Inspection Program**

Ownership shall be provided with an outlined project schedule which shall be maintained and updated monthly to outline the start of major features of construction along with the names of the consultant responsible for the specifying the work. Sample of start of work or mock up shall be provided and the responsible consultant shall review and approve in writing the mockup or sample. Schedule shall be updated monthly and coordinated with consultant to assure timely field visits. Major Feature Inspection Program shall include:

1. Rough Grading and Drainage Layout
2. Building Enclosure, Flashing and Moisture Control.
3. Caulking and Sealing Work
4. Insulation work.
5. Finish of First Unit finishes including interior paint, tile and flooring.

August 17, 2012
October 3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 33 of 34
171 of 174

EXHIBIT H


CEI KEY PERSONNEL


Construction Enterprises, Inc.
325 Seaboard Lane, Suite 170
Franklin, TN 37067
P: 615-332-8880
CEO/President:          Bill Landers
Executive VP:           Giny Knudsen
Exec. VP - Estimator:   Gary Myers
Construction Mgr.:      Justin Walker
Superintendent:         Bill Funderburk

1220686.1

17

August 17, 2012
October  3, 2012

The Lofts of Tuscaloosa - Early Start Agreement
The Lofts of Tuscaloosa - Tuscaloosa, Alabama
A141 DB/Owner Contract Agreement

Page 34 of 34
172 of 174

**CHANGE
ORDER**
*AIA DOCUMENT G701*

Distribution to:
OWNER: X
ARCHITECT:
CONTRACTOR:
OTHER:

| | |
|---|---|
| **PROJECT:** The Lofts at Tuscaloosa Student Housing | **CHANGE ORDER NUMBER:** One   (1) |
| Tuscaloosa, AL | **INITIATION DATE:** September 5, 2012 |
| | **ARCHITECT'S PROJECT NO:** |
| **TO (Contractor):** Construction Enterprises, Inc. 325 Seaboard Lane, Suite 170 Franklin, TN 37067 | **CONTRACT FOR:** The Lofts at Tuscaloosa Student Housing |
| | **EARLY START AGREEMENT DATE:** August 17, 2012 |

**You are directed to make the following changes in this Contract:**

**Description**

**Ext. Cost**

**Deduct the following:**
**"DEEP FOUNDATION PILING"** work within The Lofts at Tuscaloosa Qualifications & Clarifications Early Start Agreement dated August 17, 2012.

**Add the following:**
Underground plumbing rough-in for Building 1A and 1B. This scope of work is based from the plumbing drawings dated 7/17/12 by Bury & Partners Solutions.

All site storm drainage systems, rain leader systems and site sanitary sewer systems. This scope of work is based from the Civil drawings dated 6/25/12 provided by Gonzalez-Strength & Associates, Inc. We exclude all site domestic water and site fire water distribution systems and dry utilities.



**TOTAL COST OF THESE CHANGES:**

The original Contract Sum was...................................................................... $
Net change by previously authorized Change Orders.................................... $
The Contract Sum prior to this Change Order was......................................... $
The Contract Sum will be increased by this Change Order............................. $
The new Contract Sum including this Change Order will be ........................... $

The Contract Time will be increased by zero (0) days.
The date of Substantial Completion as of the date of this Change Order therefore is:

**Authorized**

**OWNER**
Tuscaloosa I, LLC
c/o Capstone Development Corp.
431 Office Park Drive
Birmingham, AL 35223

By:

Date: 9/14/2012

**CONTRACTOR**
Construction Enterprises, Inc.
325 Seaboard Lane
Suite 170
Franklin, TN 37067

By:

Date: 9-7-12

JEV

**CHANGE
ORDER
*AIA DOCUMENT G701***

Distribution to:
OWNER: X
ARCHITECT:
CONTRACTOR:
OTHER:

---

**PROJECT:**
The Lofts at Tuscaloosa Student Housing
Tuscaloosa, AL

**TO (Contractor):**
Construction Enterprises, Inc.
325 Seaboard Lane, Suite 170
Franklin, TN 37067

**CHANGE ORDER NUMBER:**    Two    (2)

**INITIATION DATE:**    Sept. 11, 2012

**ARCHITECT'S PROJECT NO:**

**CONTRACT FOR:**    Lofts at Tuscaloosa

**EARLY START AGREEMENT**  August 17, 2012

You are directed to make the following changes in this Contract:

**Add the following:**
Provide the labor, tools and materials to implement the "Wood Square Leasing Center: Civil plans produced by Gonzalez-Strength & Associates, Inc., dated 8/22/2012. **This cost includes the following:**

1) All grading work, erosion control, silt fence, storm drainage and sewer and water utilities.

2) Concrete patching work.

3) Cleaning of existing concrete slab area and concrete paving.

4) Parking lot striping and parking signage.

5) Gravel crushed stone parking lot.

6) Leasing area chain-link fencing with wind screening.

**We exclude the following:**

1) Leasing office trailer, set up of trailer, removal of trailer and any fees.

2) All permits & fees (utility tapping fees, meter fees, etc.).

3) All geotechnical testing.

4) All exterior work as shown on Page A1-0, Dungun Nequette Architects plans dated 8/5/12 (wood porch, metal roofing, exterior trim, signage, electrical work and light fixtures).

SUBTOTAL
5% PROFIT
TOTAL ADD TO CHANGE

---

The original Contract Sum was…………………………………………………………………
Net change by previously authorized Change Orders………………………………………
The Contract Sum prior to this Change Order was…………………………………………
The Contract Sum will be increased by this Change Order…………………………………
The new Contract Sum including this Change Order will be …………………………………

The Contract Time will be increased by zero **(0)** days.
The date of Substantial Completion as of the date of this Change Order therefore is:

**Authorized**

**OWNER**
Tuscaloosa I, LLC
c/o Capstone Development Corp.
431 Office Park Drive
Birmingham, AL 35223

By: _____

Date: __9/14/2012__

**CONTRACTOR**
Construction Enterprises,
325 Seaboard Lane
Suite 170
Franklin, TN 37067

By: _____

Date: __9-11-12__



**Exhibit C.5**

Interchange Corporate Center
450 Plymouth Road, Suite 400
Plymouth Meeting, PA. 19462-1644
Ph. (610) 832-8240

# RIDER ADDING ADDITIONAL OBLIGEE

This rider is to be attached to and form a part of surety bond number 83B108541 , dated the 3rd day of October , 2012 executed by LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts stock insurance company, as surety (the "Surety"), on behalf of _____
Construction Enterprises, Inc.
325 Seaboard Lane Ste 170, Franklin, TN 37067 , as principal (the "Principal"), in favor of _____
Tuscaloosa I, LLC
c/o CAPSTONE COLLEGIATE COMMUNITIES, 431 Office Park Drive, Birmingham, AL 35223 , as obligee (the "Obligee").

WHEREAS, the Principal has by written agreement dated the 3rd day of October 2012 , entered into a contract (the "Contract") with the Obligee for: Design-Build - The Lofts of Tuscaloosa, Tuscaloosa, AL

WHEREAS, upon the request of the Principal and Obligee, the attached bond is hereby amended to add _____ Regions Bank, as Administrative Agent
_____ , as additional obligee(s) [the "Additional Obligee(s)"] to the bond, and the Obligee and Additional Obligees shall be joint and several beneficiaries of the bond and shall be collectively referred to as the "Bond Obligee(s)".

PROVIDED, HOWEVER, there shall be no liability under the attached bond to the Bond Obligee(s), either jointly or severally, unless and until the Bond Obligee(s), shall make payment to the Principal or to the Surety (should the Surety arrange for or undertake the completion of the Contract upon the default of the Principal), strictly in accordance with the terms of the Contract; and otherwise satisfy all terms and conditions and perform all of the other obligations to be performed under the Contract at the time and in the manner therein set forth; all of the acts of one Bond Obligee being binding upon the other.

In no event shall the aggregate liability of the Surety to the Bond Obligee(s), either jointly or severally, exceed the penal sum of the attached bond, nor shall the Surety be liable except for a single payment for each single breach or default. At the Surety's election, any payment due any Bond Obligee may be made by its check issued to all Bond Obligee(s).

This change is effective the 3rd day of October , 2012 .

The attached bond shall be subject to all of its terms, conditions and limitations except as herein modified.

IN WITNESS WHEREOF, said Principal, Surety, Obligee and Additional Obligee have caused these presents to be duly signed and sealed this 3rd day of October , 2012 .

Construction Enterprises, Inc.
_____     By: _____ (Seal)
(Principal)     Title: _____
                Date: 10-3-12

**LIBERTY MUTUAL INSURANCE COMPANY**     By: _____ (Seal)
(Surety)     Title: Attorney-In-Fact/ Chris James
             Date: October 3, 2012

Tuscaloosa I, LLC     By: _____ (Seal)
_____     Title: Manager
(Obligee)     Date: 10/4/12

Regions Bank, as Administrative Agent     By: _____ (Seal)
_____     Title: SVP
(Additional Obligee)     Date: 10/24/12

_____     By: _____ (Seal)
(Additional Obligee)     Title: _____
                         Date: _____