IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JEFFERSON LOFT, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 7:21-cv-00389-LSC |
| ) | |
| CONSTRUCTION ) | |
| ENTERPRISES, INC. and ) | |
| PHOENIX FRAMING, LLC. ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OF OPINION AND ORDER

Before the Court is Defendants' Motions to Dismiss. (Doc. 3 and Doc. 6.) The motions have been fully briefed and are ripe for review. For the reasons stated below, Defendants' motions to dismiss (doc. 3 and doc. 6) are due to GRANTED in part and DENIED in part.

I.   **BACKGROUND**[1]

In January 2021, Jefferson Loft, LLC ("Jefferson Loft") sued Construction

---

[1] In evaluating a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The following facts are, therefore, taken from Plaintiff's allegations contained in the Complaint, and the Court makes no ruling on their veracity.

Enterprises, Inc. ("CEI") and Phoenix Framing, LLC ("Phoenix"). (Doc. 1-1, Ex. 1.) Jefferson Loft currently owns the Lofts at City Center ("the Lofts") in Tuscaloosa, having purchased the property from the original owner, Tuscaloosa I, LLC ("Tuscaloosa I") in 2016. (Doc. 1-1 at 6.) Jefferson Loft is a limited liability company whose members are citizens of the Republic of Singapore. (Doc. 1 at 4.) CEI, a Tennessee corporation, is a general contractor for commercial properties, performing work in Alabama and throughout the nation. (Doc. 1-1 at 6.) Phoenix, a commercial subcontractor, is a limited liability company whose members are citizens of Tennessee. (Doc. 1 at 4.)

In 2012, Tuscaloosa I entered a design-build construction contract with CEI to design and build the Lofts, which included installation of the "fiber cement panel cladding system" that comprises the exterior of the Lofts. (Doc. 1-1 at 6.) CEI subsequently contracted with Phoenix to install, or assist CEI with the installation of, the fiber cement panel cladding system. (*Id.*) The construction was to take place over two phases. (*Id.* at 7.) The City of Tuscaloosa issued a Commercial Certificate of Occupancy for Phase I on August 5, 2013, and for Phase II on December 4, 2014. (*Id.*) In 2016, Jefferson Loft purchased the Lofts from Tuscaloosa I. (*Id.* at 6.)

According to the Complaint, Jefferson Loft discovered in later spring or early summer of 2020 that the fiber cement panel cladding system was "in a state of disrepair" and had caused other damage to the Lofts. (*Id.*) Jefferson Loft claims that

2

the panel cladding system is prematurely degrading because of improper installation techniques. (*Id.*) Believing CEI and Phoenix to be at fault for damage to the building, Jefferson Loft sued CEI and Phoenix for negligence and statutory nuisance and CEI for breach of contract. (Doc. 1-1). On March 15, 2021, CEI removed this case from state to federal court. (Doc. 1.)

## II.   STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts*

*v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

III.  DISCUSSION

A. STATUTE OF REPOSE

Defendants' CEI and Phoenix both assert that the claims relating to the construction of Phase I are due to be dismissed because they are barred by the statute of repose, Ala. Code § 6-5-221(a). (Doc. 4 at 4-6.) Phase I of the construction was completed and a Certificate of Occupancy issued on August 5, 2013. (Doc. 1-1 at 7.)

Jefferson Loft filed the complaint in Tuscaloosa County Circuit Court on January 13, 2021, but it alleges that the damage was discovered within the period of repose during the late spring or early summer of 2020. (Doc. 1-1 at 2, 7.) Jefferson Loft counters that the statute permits a two-year discovery period within which it may still bring its claim, so long as it discovered or should have discovered the defect before the seven-year period of repose expired. (Doc. 10 at 4-8.) The Court agrees with Jefferson Loft.

> Ala. Code § 6-5-221(a) states in relevant part
>
> All civil actions in tort, contract, or otherwise against any architect or engineer … or against builders … for:
> (i) Any defect or deficiency in the design, planning, specifications, testing, supervision, administration, or observation of the construction of any such improvement, or any defect or deficiency in the construction of any such improvement; or
> (ii) Damage to real or personal property caused by any such defect or deficiency; …
> shall be commenced within two years next after a cause of action accrues or arises, and not thereafter. Notwithstanding the foregoing, no relief can be granted on any cause of action which accrues or would have accrued more than seven years after the substantial completion of construction of the improvement on or to the real property, and any right of action which accrues or would have accrued more than seven years thereafter is barred….

The interpretation of the statute in this context turns on when the cause of action accrues. The preceding section provides the following definition for when the "cause of action accrues or arises":

5

> The time … when property is damaged as a proximate result of a defect or deficiency in design, planning, testing, supervision, administration, or observation of construction of an improvement by an architect or engineer or in the construction of an improvement on or to real estate, constructed, performed, or managed by a builder; or where the damage or injury either is latent or by its nature is not discoverable in the exercise of reasonable diligence at the time of its occurrence, the claim for relief shall be deemed to arise or accrue at the time the damage or injury is or in the exercise of reasonable diligence should have been first discovered, whichever is earlier. The cause of action accrues or arises whether or not the full amount of damages is apparent at the time of the first injury or damage, and cannot be extended as a continuous wrong. Property damage shall include both physical damages to, and defective condition of, the property.

Ala. Code § 6-5-220(e). Ala. Code § 6-5-225(c) also provides valuable instruction by describing how the "discovery rule" can operate to extend the period of limitation:

> It is the legislative intent and purpose to establish a single period of limitation for all civil actions, whether in tort, contract, or otherwise, commenced against architects and engineers and builders, which limitation period is two years from the date the cause of action accrues…. The proposed two-year statute provides a uniform period of two years for filing all causes of action against architects in tort, contract, or otherwise, but provides that the statute of limitation does not commence until the time of injury or damage, which extends the commencement of the time for filing contract actions, or where latent or by its nature not reasonably discovered, does not commence until the time of discovery thereby applying for the first time to both these tort and contractual actions, the so-called "discovery rule."

Subsection (d) further explains

> Where causes of action accrue during the seven years from completion, an action may be brought within two years of accrual even though this extends beyond the seven-year period. This permits all injured parties a period of two years to file suit unless already barred because the cause

6

of action accrues after the passage of seven years, which would in certain circumstances permit the filing of an action up to nine years after the completion of the improvement….

Ala. Code § 6-5-225(d).

Phoenix argues that, as a statute of repose, the time began to run when the Certificate of Occupancy was issued, regardless of notice, accrual, or discovery. (Doc. 7 at 14-15.) In support of its position, Phoenix cites several cases, including *Baugher v. Beaver Constr. Co.*, 791 So. 2d 932 (Ala. 2000), which relied on the dictionary definition of "statute of repose" to distinguish such a statute from a statute of limitations:

> A statute of repose ... limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.

*Id.* at 934 n.1 (quoting Black's Law Dictionary 1423 (7th ed. 1999)). Phoenix asserts that Ala. Code § 6-5-221 is a statute of repose rather than a statute of limitations. The Court disagrees. The text of the § 6-5-221 does not refer to a period of repose. The title of the statute, however, is "Limitation on time for commencement of action." Moreover, § 6-5-222, titled "Statute of limitations -- Computation of period" refers to § 6-5-221 and the "law relating to the computation of statutory

periods of limitations for the commencement of actions." And most importantly, § 6-5-221 specifically limits the time for initiating a cause of action based on the time when "a cause of action accrues or arises."

Defendant CEI contends that in order for Jefferson Loft to receive the benefit of the discovery rule, it must plead specific facts and circumstances to show that its claim falls within the ambit of the rule, which it argues involves a showing that the defect was latent or by its nature not reasonably discovered in this case. (Doc. 11 at 2-4.) CEI cites *Amason v. First State Bank of Lineville*, 369 So. 2d 547, 550-51 (Ala. 1979) and *Angell v. Shannon*, 455 So. 2d 823, 823-24 (Ala. 1984), as support for this position. Both of those cases, however, deal with claims of fraud, which carries a heightened pleading standard of particularity for claims to survive. Ala. R. Civ. P. 9.

Jefferson Loft asserts that under Ala. Code § 6-5-225(d), the discovery rule does not take effect "until the time of injury or damage… or where latent… does not commence until the time of discovery." Plaintiff argues that the time of injury or damage is not necessarily the time that the work was performed. In support of this argument, Jefferson Loft points to *Bella Investments, Inc. v. Multi-Family Services, Inc.*, 97 So.3d 787. The Alabama Court of Civil Appeals reversed the trial court's granting of summary judgment against Bella because it was not clear that the

allegedly defective siding was clearly visible and because evidence indicated that later testing revealed further damage. *Id.* at 795-97.

Jefferson Loft has sufficiently carried its burden to survive CEI's motion to dismiss. In the complaint, Jefferson Loft described the external defects that came to its attention in late spring or early summer of 2020, including "visible cracks, bowing and buckling" and "[n]umerous fiber cement panel nail fasteners [that] are loose or backing out of their panels." (Doc. 1-3 at 5.) Plaintiff also alleges that "the nail fasteners were improperly spaced…, were installed using inconsistent and improper installation patterns…, and … were overdriven into the fiber cement panels" and that further investigation will be necessary to assess the full extent of the damage to other portions of the Lofts. (*Id.*)

The Court finds that Plaintiff has alleged sufficient facts to survive Defendants' motions to dismiss by describing the underlying defects that, by their nature, were not reasonably discoverable until the effects of such alleged errors developed over time.

### B. NUISANCE PURSUANT TO ALA. CODE § 6-5-120 AS A COGNIZABLE CLAIM

In Count III, Jefferson Lofts alleges a nuisance claim pursuant to Ala. Code § 6-5-120 against CEI and Phoenix. (Doc. 1-1 at 11-13.) A nuisance is "anything that works hurt, inconvenience, or damage to another." Ala. Code § 6-5-120. The

Supreme Court of Alabama acknowledged that the statute has been "liberally interpreted to effect its broadly stated purpose" and agreed that "'anything' (i.e., a nuisance, public or private) may consist of conduct that is intentional, unintentional, or negligent." *Tipler v. McKenzie Tank Lines*, 547 So. 2d 438, 440 (Ala. 1989). However, the Alabama Supreme Court has also relied on definitions of the term that are more aligned with its traditional usage of "anything constructed on a person's premises which, of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property." *Baldwin v. McClendon*, 292 Ala. 43, 48 (Ala. 1974) (citing *Grady v. Wolsner*, 46 Ala. 381). Another form the rule has taken is that "a man may do an act on his own land which is not unlawful or wrong – not using it in such manner as to injury another, for he may not so use his property as to injure another." *Id.* (citing *Hundley v. Harrison*, 26 So. 294, 296 (Ala. 1899)). As examples of what qualifies under this definition, the Court stated, "In applying this principle, it has been repeatedly held that smoke, offensive odors, noise, or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance." *Id.* at 49.

While acknowledging the broad application of the nuisance statute, the Alabama Supreme Court emphasized that the plaintiff "must comport with the classical tort concepts of duty and causation." *Tipler*, 547 So. 2d at 440. In doing so,

the court instructed that analysis of such claims requires a review of "particular facts of each case to determine whether the party charged with creating and maintaining a nuisance has engaged in a course of conduct, or has permitted to exist a set of circumstances, that, in its natural and foreseeable consequences, proximately caused the hurt, inconvenience, or damage complained about." *Id.* at 440-41.

Defendants CEI and Phoenix both contend that nuisance is not a cognizable claim in this context because no Alabama court has recognized a claim against a contractor for alleged negligent construction. (Docs. 4 at 8, 7 at 16.) Instead, they cite the approaches of other jurisdictions. CEI notes that some jurisdictions recognize that such claims are most appropriately addressed under the laws of negligence and consequently reject attempts at duplicative nuisance actions based on the same facts. (Doc. 4 at 8-9) Phoenix points to other jurisdictions that require the defendant to have control over the offensive instrumentality such that it could stop the offensive interference or pay damages. (Doc. 7 at 16-17.)

Jefferson Loft refutes this argument by citing a case out of the Middle District of Alabama, *Atkinson v. Jeff Lindsey Communities, Inc.*, No. 3:14-CV-1132-WHA, 2016 WL 1312320 (M.D. Ala. Apr. 4, 2016), and two Jefferson County Circuit Court cases, *Riggs v. Riverwood Const., LLC*, CV-2017-901262, Doc. 17 (Jefferson County Circuit Court, May 1, 2017) and *Barton v. Stacy Alliston Design and Bldg., Inc.*, CV-

2011-900187, Doc. 135 (Jefferson County Circuit Court, Nov. 12, 2014). In *Atkinson*, a nuisance claim was allowed to proceed past the summary judgment stage in a case involving alleged construction defects. *Atkinson*, 2016 WL 1312320, at *5. However, the defendant did not include the nuisance claim in its motion for summary judgment. *Id.* at *2.

In *Riggs*, the court denied defendants' motion to dismiss for failure to state a claim in a case where the complaint included a nuisance claim for "acts and omissions in the construction of Plaintiffs' home [that] has created a private nuisance by causing hurt, inconvenience or damage to Plaintiffs." *Riggs*, CV-2017-901262, Doc. 2. The motion to dismiss, however, set forth seven separate grounds for dismissal with no explanation as to which claims they applied or why they were valid grounds for dismissal. *Id.* at Doc. 15.

In *Barton*, the court granted summary judgment to the plaintiffs in a case in which they likewise alleged nuisance on the part of the defendants in the construction of the plaintiff's home. *Barton*, CV-2011-900187, Doc. 135. The court's granting of the motion for summary judgment in *Barton* is misleading. The plaintiffs moved for summary judgment on their negligence and wantonness claims, and the corporate defendant had failed to retain counsel or defend itself in the case. *Id.* at

Doc. 115. These examples cited by Jefferson Loft lend little credibility to the cognizability of its claim.

The Alabama Supreme Court has had the opportunity to consider a nuisance claim outside of its typical context in *Tipler*. 547 So. 2d 438 (Ala. 1989). In that case, the plaintiff alleged that Exxon Corporation created a public nuisance because trucks needing to access its facility were required to swing wide into oncoming traffic to turn onto the road leading to the facility, which contributed to the accident in the case. *Id.* at 439-440. Alabama's Supreme Court determined that the trial court did not err in granting summary judgment in favor of Exxon on the nuisance claim. *Id.* at 439. The court explained, "The problem is one of remoteness…. Exxon cannot be charged and held liable either for maintaining, or for failing to prevent, a chain of events and circumstances over which it had no reasonable means of control." *Id.* at 441.

In much the same way that Exxon did not have a way to control the traffic on the roads leading to its facility, CEI and Phoenix no longer had control over the Lofts or any adjacent property that could contribute to the conditions Jefferson Loft alleges in its complaint. No Alabama court has extended nuisance claims to such circumstances, and when the Alabama Supreme Court had the opportunity to do so, it declined. This Court will not so extend the doctrine either. Without a cognizable

claim, the Court finds that Defendants' motion to dismiss the nuisance claims against them is due to be granted.

### C. ESTABLISHING DUTY OWED BY PHOENIX FRAMING

In Count II, Jefferson Loft alleges a negligence claim against both CEI and Phoenix. (Doc. 1-1 at 9-11.) Only Phoenix moves for this claim to be dismissed. (*See* Doc. 7 at 5-12; Doc. 4.) Phoenix asserts that Jefferson Loft cannot maintain a claim of negligence against it because it cannot establish that Phoenix owed Jefferson Loft a duty. (Doc. 7 at 5-12.) The Court disagrees.

"The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala. 2001)). Thus, if Plaintiff is unable to establish that Phoenix owed it a duty, the claim will fail. It appears that Plaintiff has alleged sufficient facts for this claim to survive Phoenix's motion to dismiss. The Court will further consider Phoenix's arguments in a motion for summary judgment if appropriately filed.

### IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (docs. 3 and 6) is due to be GRANTED in part and DENIED in part. Jefferson Loft's claim of

nuisance is due to be dismissed against both defendants, but Jefferson Loft may proceed on its breach of contract and negligence claims.

**DONE** AND **ORDERED** ON FEBRUARY 8, 2022.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
<span style="font-size:smaller">206728</span>